1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>    vs.<br><br><br>DONALD J. TRUMP,<br><br>                                    Defendant. | CASE NO. 13-cv-2519-GPC-WVG<br>Related Case: 10-cv-0940-GPC-WVG<br><br>**ORDER:**<br><br>**1. DENYING MOTION TO DISMISS**<br><br>[Dkt. No. 9.]<br><br>**2. DENYING MOTION TO STRIKE**<br><br>[Dkt. No. 10.] |

18
19
20
21
22
23
24
25
26

        Defendant Donald J. Trump ("Defendant") moves to dismiss Plaintiff Art Cohen's ("Plaintiff") putative class action Complaint on multiple grounds pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(f). (Dkt. Nos. 9, 10.) The Parties have fully briefed both motions. (Dkt. Nos. 16-19.) Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument. Having considered the parties' submissions and the applicable law, the Court DENIES Defendant's motions.

**BACKGROUND**

27

**I. Cohen's Allegations**

28

        Plaintiff, a resident of California, sues on behalf of himself and all others

similarly situated.  Defendant is a resident of the State of New York and was "a founder and Chairman, officer, director, managing member, principal and/or controlling shareholder of Trump University." (Dkt. No. 1, Compl. ¶ 5.)

Plaintiff alleges learning about Trump University from a 2009 San Jose Mercury News advertisement. (Compl. ¶ 4.) Plaintiff alleges receiving a "special invitation" by mail to attend a Trump University seminar. (Compl. ¶ 13.) Drawn in by Defendant's name and reputation, Plaintiff attended a free preview event. (Id.) Plaintiff then paid $1,495 to Trump University to attend a real estate retreat, where he subsequently purchased a "Gold Elite" program for $34,995. (Id.) Plaintiff alleges that, but for misrepresentations made by Trump University, he would not have paid for Trump University programs. (Compl. ¶ 14.) Specifically, Plaintiff alleges the following misrepresentations: that the programs would give access to Donald Trump's real estate investing secrets; that Donald Trump had a meaningful role in selecting the instructors for Trump University programs; and that Trump University was a "university." (Id.)

On October 18, 2013, Plaintiff filed a complaint in the above-captioned matter, alleging a single cause of action for mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Defendant now moves the Court for dismissal of the Complaint. (Dkt. No. 9.) In the alternative, Defendant moves the Court to strike portions of Plaintiff's Complaint. (Dkt. No. 10.)

**II. Related Case, <u>Makaeff v. Trump University LLC</u>**

On October 18, 2013, Plaintiff filed a "notice of related case" requesting that the above-captioned matter be transferred to the undersigned Judge because the present action is related to <u>Makaeff v. Trump University LLC</u>, Case No. 10-cv-940-GPC-WVG. Filed on April 30, 2010, the initial complaint in <u>Makaeff</u> alleged ten causes of action under state consumer protection statutes and common law. (Case No. 10-cv-940-GPC-WVG, Dkt. No. 1.) On October 7, 2013, the Court denied plaintiff Makaeff's motion to modify the scheduling order in that case to file a fourth amended complaint to include a RICO cause of action. (<u>Id.</u>, Dkt. No. 248.) On February 21, 2014 the Court

granted plaintiff Makaeff's motion for class certification, certifying a class of plaintiffs defined as: "All persons who purchased a Trump University three-day live "Fulfillment" workshop and/or a "Elite" program ("Live Events") in California, New York and Florida, and have not received a full refund." (Id., Dkt. No. 298 at 35.)

## DISCUSSION

### I. Requests for Judicial Notice

Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). However, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute." Intri-Plex Technologies, Inc. v. Crest Group Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting Lee, 250 F.3d at 689); Fed. R. Civ. P. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" under Rule 201(b)(2). Fed. R. Civ. P. 201(b).

### A.    Plaintiff's Declaration

In support of Plaintiff's opposition to Defendant's Motion to Dismiss, Plaintiff submits a declaration by attorney Jason A. Forge and an attached exhibit. Plaintiff fails to properly seek judicial notice of the exhibit under Federal Rule of Evidence 201. Accordingly, the Court declines to convert the present motion into a motion for summary judgment by accepting Plaintiff's declaration or exhibit in consideration of the present Motion to Dismiss. Lee, 250 F.3d at 688.

### B.    Defendant's Request for Judicial Notice

Defendant seeks judicial notice of two documents in support of his Motion to Dismiss the Complaint: (1) Plaintiff's evaluation of a Trump University training course; and (2) the ethics complaint filed by Trump against the New York Attorney General. (Dkt. No. 18-1 at 2.) The Court declines to take judicial notice of the filed documents,

for two primary reasons. First, Defendant submits the request for judicial notice as part of Defendant's reply to Plaintiff's opposition to Defendant's motion. (Id.) As such, Plaintiff has had no opportunity to respond to the propriety of taking judicial notice of the documents. See U.S. v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003) ("[e]ven if the government's attached documents were properly the subject of judicial notice, [plaintiff] should have been given some opportunity to respond to the propriety of taking judicial notice of the facts alleged therein.") (citing Fed. R. Evid. 201(e)).

Second, the Court does not find the documents relevant to the present motion to dismiss. While the Court may take judicial notice of the fact that Plaintiff completed an evaluation or that Trump filed a complaint against the New York Attorney General, the Court may not take notice of disputed facts or the truth of the facts recited therein. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). The Court therefore finds the fact that Plaintiff completed an evaluation of a Trump University class and the fact that Trump filed an ethics complaint against one of the eleven Attorneys General referenced in the Complaint, (Compl. ¶¶ 7, 50, 52), irrelevant to whether the Complaint has properly alleged a cause of action under RICO, 18 U.S.C. § 1962(c). Accordingly, Defendant's two requests for judicial notice are DENIED.

**II. Motion to Dismiss**

    **A.    Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations, brackets, & citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the

truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). Courts generally do not look beyond the complaint for additional facts when deciding a Rule 12(b)(6) motion. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).

**B.     Analysis**

Plaintiff's Complaint alleges a single cause of action for "Violations of the Racketeer Influenced and Corrupt Organizations [("RICO")] Act, 18 U.S.C. § 1962(c)." (Compl. at 30.) To state a claim under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P. R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). A plaintiff must also show harm of a specific business or property interest by the racketeering conduct. Id.; Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005). "Racketeering activity" is any act indictable under the several provisions of Title 18 of the United States Code, including the predicate acts alleged by Plaintiff in this case: mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343.

Defendant moves to dismiss Plaintiff's Complaint on four grounds: (1) Plaintiff's Complaint constitutes impermissible claim splitting; (2) Plaintiff's RICO claim is time barred; (3) Defendant's allegedly fraudulent misrepresentations constitute non-actionable puffery; and (4) Plaintiff has failed to plead his claims of fraud with the required specificity. (Dkt. No. 19-1 at 1-3.)

**1.     Claim Splitting**

Defendant first argues the Court should dismiss Plaintiff's Complaint due to

impermissible claim splitting. (Dkt. No. 9-1 at 5-9) (citing Adams v. California Dep't of Health Services, 487 F.3d 684 (9th Cir. 2007); Single Chip Sys. Corp. v. Intermec IP Corp., 495 F. Supp. 2d 1052, 1058 (S.D. Cal. 2007) (Houston, J.)). Under the claim splitting doctrine, "plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Adams, 487 F.3d at 688 (citing Walton v. Eaton Corp., 563 F.2d 66, 70-71 (3d Cir. 1977) (en banc)) (internal quotation marks omitted), cert. denied, 128 S. Ct. 807, 169 L. Ed. 2d 607 (2007). In order to promote judicial economy and the comprehensive disposition of litigation, protect the parties from vexatious and expensive litigation, and serve the societal interest in bringing an end to disputes, courts have discretion to: (1) dismiss a duplicative complaint with prejudice; (2) stay the later filed action pending resolution of the previously filed action; (3) enjoin the parties from proceeding with the later filed action; or (3) consolidate the duplicative actions. Id. at 691.

Plaintiff responds that while the Ninth Circuit has not expressly addressed the application of the claim splitting doctrine to a plaintiff who is a member of a potential class in another case, "other Circuits have considered and rejected its application in the class action context." (Dkt. No. 16 at 4) (citing Gooch v. Life Investors Ins. Co. of Am., 672 F.3d 402, 428 n.16 (6th Cir. 2012); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 432 (4th Cir. 2003); Valentine v. WideOpen West Fin., LLC, 288 F.R.D. 407, 415 (N.D. Ill. 2012)). Plaintiff argues precluding his RICO claim based on a separate proposed class action prior to certification of that class action would run afoul of the Supreme Court's holding in Standard Fire Ins. Co. v. Knowles, _U.S._, 133 S. Ct. 1345, 1348-49 (2013), that a "plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." (Dkt. No. 16 at 5.)

As an initial matter, the Court notes that the parties briefed the present motion prior to the Court's grant of class certification in Makaeff v. Trump, Case No. 10-cv-

940-GPC-WVG. Although the Court disagrees with Plaintiff's assertion that the claim splitting doctrine does not apply to class action complaints, see Moreno v. Castlerock Farming & Transport, Inc., No. CIV-F-12-0556 AWI JLT, 2013 WL 1326496 (E.D. Cal. Mar. 29 2013); Weinstein v. Metlife, Inc., No. C 06-0444 SI, 2006 WL 3201045 (N.D. Cal. Nov. 6, 2006), the Court finds that the policies behind the claim splitting doctrine do not weigh in favor of dismissing the present action. In Makaeff v. Trump, the Court certified a narrow class and three subclasses of Trump University customers for state statutory unfair competition and false advertising claims in the states of California, Florida, and New York. (Case No. 10-cv-940-GPC-WVG, Dkt. No. 298.) The Court declined to certify any fraud claims. (Id.) Here, Plaintiff's Complaint alleges a single cause of action under a federal statute, alleging fraud and racketeering, on behalf of a nationwide class.

Furthermore, although the Court denied plaintiffs' motion to file a fourth amended complaint to add a RICO cause of action in Makaeff v. Trump , the Court did so on procedural grounds due to lack of timeliness rather than due to a finding of prejudice to defendants. (Id., Dkt. No. 271); cf. Adams v. California Dept. of Health Servs., 487 F.3d 684, 687 (district court denied leave to amend in the first-filed action because plaintiff failed to demonstrate good cause and because granting leave to amend would prejudice the defendants already named in the complaint). Accordingly, the Court DENIES Defendant's motion to dismiss the present action due to claim splitting.

### 2.    Statute of Limitations

Defendant further seeks dismissal of Plaintiff's RICO claims on the ground that they are barred by the four-year statute of limitations set forth in the Clayton Act, 15 U.S.C. § 15b. (Dkt. No. 9-1 at 10-11.) Defendant argues that because Plaintiff attended the Foreclosure Real Estate Retreat in May, 2009, and purchased the Gold Elite Program on May 10, 2009, Plaintiff knew or should have known about any allegedly fraudulent misrepresentations by May 2009. (Id.) According to Defendants, "all of the predicate acts underlying Plaintiff's RICO claim occurred . . . in May 2009," more than

1    four years before Plaintiff filed the Complaint on October 18, 2013. (Id. at 11.)

2         In support of his motion, Defendant argues the civil RICO limitations period

3    began to run when Plaintiff knew or should have known about the injury that underlies

4    the RICO cause of action. (Dkt. No. 9-1 at 10-11) (citing Rotella v. Wood, 528 U.S.

5    549, 556 (2000), and Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996)). In Rotella,

6    the U.S. Supreme Court rejected the "injury and pattern discovery rule" adopted by

7    some Circuit Courts of Appeal in favor of the "injury discovery rule" adopted by the

8    majority of the Circuit Courts of Appeal,[1] including the Ninth Circuit in Grimmett, to

9    have considered the question of when the statute of limitations begins to run on a RICO

10   claim. 528 U.S. at 554. Under the injury discovery rule, the civil RICO limitations

11   period "begins to run when a plaintiff knows or should know of the injury that

12   underlies his cause of action." Grimmet, 75 F.3d at 510 (citing Pocahontas Supreme

13   Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 220 (4th Cir. 1987)). The court in

14   Grimmett held that where a plaintiff's primary alleged injury was the "loss of her

15   interest in [defendant's] medical practice," the injury was perfected, and the statute of

16   limitations began to run, upon reorganization of the medical practice. 75 F.3d at 511.

17        Defendant argues that, pursuant to the injury discovery rule, the running of the

18   statute of limitations on Plaintiff's RICO claim is apparent on the face of Plaintiff's

19   Complaint. (Dkt. No. 18 at 6) (citing Jablon v. Dean Witter & Co., 614 F.2d 677, 682

20   (9th Cir. 1980) (statute of limitations defense may be raised on a motion to dismiss if

21   "the running of the statute is apparent on the face of the complaint")). According to

22   Defendant, Plaintiff knew or should have known "whether or not Trump was present

23   and whether or not Trump was giving the lectures" as well as "that the seminar was not

24   in a traditional university setting" when Plaintiff attended the Trump University

25   programs. (Dkt. No. 18 at 7.)

26   _____

27        [1]The Supreme Court noted, however, that it did not "settle upon a final rule," but
     merely eliminated the minority "injury pattern and discovery rule" while leaving in tact

28   the "injury discovery rule" followed by the majority of Circuit Courts of Appeal to
     consider the RICO statute of limitations. Rotella v. Wood, 528 U.S. 549, 554 n.2
     (2000).

1      However, the Ninth Circuit has held that RICO fraud claims accrue when
2  plaintiffs have "actual or constructive knowledge" of the fraud. <u>Living Designs, Inc.</u>
3  <u>v. E.I. Dupont de Nemours & Co.</u>, 431 F.3d 353, 365 (9th Cir. 2005). To impute
4  constructive knowledge on a plaintiff, the plaintiff must be deemed to have "enough
5  information to warrant an investigation which, if reasonably diligent, would have led
6  to discovery of the fraud." <u>Id.</u> (citing <u>Pincay v. Andrews</u>, 238 F.3d 1106, 1110 (9th Cir.
7  2001)). "[T]he question of whether a plaintiff knew or should have become aware of
8  a fraud" is ordinarily left to the jury. <u>Living Designs, Inc.</u>, 431 F.3d at 365.

9      The Court therefore disagrees with Defendant that, reading the Complaint's
10  allegations with the required liberality, Plaintiff may not prove that the statute of
11  limitations was tolled as a matter of law. <u>See</u> <u>Jablon</u>, 614 F.2d at 682. In particular,
12  Plaintiff alleges the "uniform deceptive portrayal of Trump University," (Compl. ¶ 21j),
13  continued the representations made by Defendant in the allegedly offending
14  advertisements and letters, (Compl. ¶¶ 21g-h). The Complaint includes multiple
15  allegations that Trump misrepresentations continued throughout Trump University
16  programs. (Compl. ¶¶ 32-38.) The Court therefore rejects Defendant's argument at this
17  stage of the litigation that Plaintiff "knew or should have become aware of the fraud"
18  on the date Plaintiff purchased his final Trump product in May 2009 as a matter of law.
19  (Dkt. No. 18 at 7.) Accordingly, the Court DENIES Defendant's motion to dismiss
20  Plaintiff's Complaint as time-barred under the Clayton Act, 15 U.S.C. § 15b.

21            **3.**     **Non-Actionable Puffery**

22      Defendant next moves to dismiss Plaintiff's RICO claim on substantive grounds,
23  arguing the advertising identified in the Complaint constitutes "mere puffery" not
24  actionable under RICO. (Dkt. No. 9-1 at 11) (citing <u>County of Marin v. Deloitte</u>
25  <u>Consulting, LLP</u>, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011)). In <u>County of Marin</u>,
26  the court found the following statements, among others, were "mere puffery" failing
27  to state the predicate act of fraud for a RICO claim:

28          [Defendant] is "uniquely qualified"; has "deep experience"; has
             "assembled a highly skilled and experienced" team; has "experienced

consultants"; has a "seasoned team"; has a "breadth" of capability and "unmatched" understanding of the County's needs; has "[c]ommitment to dedicate our best resources"; has "deep bench strength"; has an "experienced team that has worked together before"; has "solid" references from every one of its North American installation clients; has great "strength" in integration of "all aspects of ERP implementations"; will "draw upon the experience of a full range of public sector specialists"; is "absolutely committed to the success of this project"; and that Deloitte and SAP have a "winning solution, a proven implementation approach, and the strong project team needed to meet" the County's requirements.

836 F. Supp. 2d at 1038-39 (citing amended complaint).

In opposition, Plaintiff argues that while many of the advertisements at issue in this action contained "puffing" or "sales puffery," Plaintiff's allegations center on the relationship, or lack thereof, between Trump and Trump University rather than Defendant's claims of general program quality. (Dkt. No. 16 at 13-14.) Plaintiff argues County of Marin is distinguishable from the present case, because the plaintiff in that case challenged the quality of service obtained rather than the identity of the service provider. (Id. at 11-12.)

A statement is considered "mere puffery" when the statement is general rather than specific and thus "extremely unlikely to induce consumer reliance." Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1052-54 (9th Cir. 2008) (finding a statement that a company would deliver flexibility and lower costs was "mere puffery," while finding actionable a statement that contracts intended to be for a fixed term of sixty months would expire after that term). In other words, "misdescriptions of specific or absolute characteristics" are actionable while advertising "which merely states in general terms that one product is superior is not actionable." Cook, Perkis & Liehe v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990) (internal quotations and citation marks omitted).

Here, although many of Plaintiff's allegations challenged by Defendant as "mere puffery" contain classic "seller's talk," (see, e.g., Compl. ¶ 20) ("Learn from the Master"), the gravamen of Plaintiff's allegations is that Trump's advertising falsely marketed Trump University as both an institution with which Donald Trump was

1   integrally involved as well as "an actual university with a faculty of professors and

2   adjunct professors." (Compl. ¶ 19.) Rather than challenging Trump's subjective and

3   general claims as to quality, Plaintiff challenges whether Trump University delivered

4   the specific or absolute characteristics of (1) Donald Trump involvement; and (2) an

5   "actual university." The Court therefore agrees with Plaintiff that the present case is

6   distinguishable from the statements that failed to state a RICO claim in County of

7   Marin. 836 F. Supp. 2d at 1038-39.

8       In reply, Defendant compares Trump University classes to Michael Jordan brand

9   sneakers and Fred Astaire's Dance Studio, arguing Trump's name is attached to Trump

10  University as a "brand." (Dkt. No. 18 at 9-10) ("a consumer action for fraud could not

11  be brought against Fred Astaire Dance Studio on the grounds that Fred Astaire himself

12  does not teach classes there.").

13      As an initial matter, the Court notes that Defendant offers only hypothetical

14  examples, and not legal support, for his claim that "Trump" in "Trump University" is

15  merely a brand. However, the Court finds even Defendant's hypothetical examples

16  distinguishable. Plaintiff's Complaint includes extensive allegations that Trump made

17  repeated representations as to his participation with Trump University beyond lending

18  his name to the institution. (Compl. ¶¶ 20-21.) For example, the Complaint alleges

19  advertisements featured Trump's signature, with statements such as "I can turn anyone

20  into a successful real estate investor, even you. - Donald Trump." (Compl. ¶ 21(a).)

21  Taking Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently alleges

22  a relationship between Trump and Trump University to state a claim for the predicate

23  act of mail or wire fraud for a claim under RICO. While Defendant may seek to prove

24  that "Trump" was a brand or that Trump's statements constituted mere puffery as a

25  factual matter, the Court declines to find that Plaintiff's fraudulent statement

26  allegations fail to state a RICO claim as a matter of law. See Hansen Beverage Co. v.

27  Innovation Ventures, LLC, No. 08-cv-1166-IEG POR, 2009 WL 6597891 at *17 (S.D.

28  Cal. Dec. 23, 2009) (Gonzalez, J.) (declining to dismiss plaintiff's statement that a

1  drink provided "twice the buzz" as mere puffery because "it is a question of fact

2  whether the level of 'buzz' or energy can be scientifically quantified or whether it is

3  a subjective feeling.").

4           **4.    Particularity Requirement of Fed. R. Civ. P. 9(b)**

5           Defendant further argues Plaintiff's allegations fail to meet the Federal Rules of

6  Civil Procedure 9(b) requirements of stating allegations of fraud with particularity.

7  (Dkt. No. 9-1 at 14-15) (citing <u>City of Marin</u>, 836 F. Supp. 2d at 1038). Defendant

8  argues Plaintiff "does not allege exactly what statements he relied upon, who made

9  them, the content of such statements, when the alleged statements were made, or in

10  what format they were made." (<u>Id.</u> at 15; Dkt. No. 18 at 10.)

11          Under Rule 9(b), the pleader of a RICO fraud claim "must state the time, place,

12  and specific content of the false representations as well as the identities of the parties

13  to the misrepresentation." <u>Schrieber Distributing Co. v. Serv-Well Furniture Co., Inc.</u>,

14  806 F.2d 1393, 1400 (9th Cir. 1986) (citing <u>Bosse v. Crowell Collier & MacMillan</u>,

15  565 F.2d 602, 611 (9th Cir. 1977). "[T]he circumstances constituting the alleged fraud

16  [must] be specific enough to give defendants notice of the particular misconduct . . .

17  so that they can defend against the charge and not just deny that they have done

18  anything wrong." <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009)

19  (internal quotation marks omitted).

20          As Plaintiff notes, the Complaint includes detailed allegations regarding the

21  letter, invitation, and main promotional video viewed by Plaintiff. (Dkt. No. 16 at 15-

22  16) (citing Compl. ¶¶ 3, 4, 13). For example, Plaintiff alleges that:

23          Cohen learned about Trump University in 2009 when he saw an
           advertisement in the San Jose Mercury News, which is delivered daily to
24          his home. Cohen believes that he also received by mail a 'special
           invitation' to Trump University from Donald Trump, which included 2
25          VIP tickets to the free seminar. . . . Cohen attended the Preview Live
           Event at the Fremont Marriott Silicon Valley in Fremont, California, on
26          April 29, 2009, where Cohen was shown the Main Promotional Video.
           Based on Defendant's misrepresentations and material omissions that he
27          would receive Donald Trump's real estate secrets from his handpicked
           'professors' and mentors at his 'University,' Cohen purchased the $1,495
28          Fast Track to Foreclosure Real Estate Retreat, which he attended from
           May 8-10, 2009, at the Sheraton Palo Alto Hotel in Palo Alto.

1
2
3
4
5
6
7
8
9
10

(Compl. ¶ 13.) The Complaint further alleges the special invitation was sent from Trump to Cohen in March or April 2009, and that an email was sent from Trump University to Cohen with a link to the Main Promotional Video on August 26, 2009. (Compl. ¶¶ 73(a)-(b).) The Court therefore finds that, contrary to Defendant's assertion, Plaintiff's Complaint alleges the "statements [Cohen] relied upon, who made them, the content of such statements, when the alleged statements were made, and in what format they were made." (Dkt. No 9-1 at 14-15.) Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's RICO claim for lack of specificity under Federal Rule of Civil Procedure 9(b).

## III. Motion to Strike

11
12
13
14
15
16
17

In addition, Defendant moves to strike two categories of allegations from Plaintiff's Complaint: (1) allegations of puffery used in Trump's advertising; and (2) allegations concerning government investigations into Trump University and Trump University's Better Business Bureau rating. (Dkt. No. 10-1 at 1) (seeking to strike paragraphs 2-4; 6-7; 19-21(a)-(b), (d)-(I) and (l); 24-26; 32; 49-52; and 53-56 from Plaintiff's Complaint).

### A. Legal Standard

18
19
20
21
22
23
24
25
26
27
28

A motion to strike is brought under Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that a "court may strike from a pleadings an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike is to avoid unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. Sidney–Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Thus, courts generally grant a motion to strike only where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Walters v. Fidelity Mortg. of Cal., 730 F. Supp.

2d 1185, 1196 (E.D. Cal. 2010) (citing Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996)).

"A motion to strike is . . . not normally granted unless prejudice would result to the movant from the denial of the motion."  United States v. 729,773 Acres of Land, 531 F. Supp. 967, 971 (D. Haw. 1982).  The Ninth Circuit has found a motion to strike appropriately granted where the allegations at issue "created serious risks of prejudice . . ., delay, and confusion of the issues."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

**B. Analysis**

**1. Sales Puffery**

Defendant first moves to strike as immaterial Plaintiff's allegations of representations made by Trump University that constitute "slogans, 'puffery' or 'seller's talk' in advertisements marketing Trump University to the general public." (Dkt. No. 10-1 at 1.) As discussed at length above, although the challenged statements may contain slogans or "seller's talk" found non-actionable when challenged as general claims as to superior quality, the Court finds that issues of fact exist as to whether the statements also make absolute claims regarding Trump's involvement with Trump University and whether the program was a university. In addition, Trump makes no claim that the statements at issue create serious risk of prejudice, delay, or confusion of the issues. See Fantasy, Inc., 984 F.2d at 1528. Accordingly, the Court DENIES Defendant's motion to strike the paragraphs of the Complaint containing statements considered by Defendant to constitute "mere puffery." (Dkt. No. 10-1 at 2-3.)

**2. Governmental Investigations**

Defendant also moves the Court to strike allegations from Plaintiff's Complaint describing "irrelevant government agency investigations into Trump University and Trump University's Better Business Bureau ("BBB") rating." (Dkt. No. 10-1 at 3.) Defendant argues the allegations regarding investigations have no bearing on Plaintiff's RICO claim and unduly prejudice Trump because they are likely to "cause

a trier of fact to draw unwarranted inferences at trial." (Dkt. No. 10-1 at 4) (citing Fantsay, Inc., 984 F.2d at 1528).

In response, Plaintiff argues the investigations are potentially probative of Trump's knowledge and intent to defraud. (Dkt. No. 17 at 2.) The Court agrees. Plaintiff's Complaint alleges Defendant committed mail and wire fraud as predicate acts of racketeering under RICO. (Compl. ¶¶ 84(a)-(b).) A claim for violation of the mail fraud statute, 18 U.S.C. § 1341, requires a showing that "(1) defendant devised a scheme or artifice to defraud; (2) defendant used the mails in furtherance of the scheme; and (3) defendant did so with the specific intent to deceive or defraud." Sun Sav. & Loan Ass'n v. Dierdorff, 825 F.2d 187, 195 (9th Cir. 1987) (citing Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1399 (9th Cir. 1986)). The gravamen of a mail fraud claim is the "scheme to defraud." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008). Furthermore, the Ninth Circuit has found that evidence of continuing participation in a fraudulent scheme despite knowledge of complaints regarding the scheme can support a conviction for mail fraud under 18 U.S.C. § 1341. See U.S. v. Peters, 962 F.2d 1410, 1414 (9th Cir. 1992). The Court therefore finds Plaintiff's allegations regarding governmental investigations into Trump University and Trump University's Better Business Bureau ("BBB") rating are related to and potentially probative of Trump's intent to defraud.

In addition, although Defendant claims undue prejudice would result from inclusion of the allegations at issue, the Court finds the allegations in this case distinguishable from those found prejudicial in Fantasy Inc. v. Fogerty, 984 F.2d at 1528. In Fantasy, Inc., the court found allegations regarding Fantasy, Inc's predecessor-in-interest to create a risk of prejudice to Fantasy, Inc. where the allegations consisted of "stale and [time] barred charges that had already been extensively litigated and would have been burdensome for Fantasy to answer." 984 F.2d at 1528. Here, as explained above, the Court finds the allegations regarding governmental investigations and Better Business Bureau ratings relevant to an element of the prima facie case for

1  violation of the mail fraud statute. Furthermore, the allegations at issue in this case are

2  not time barred; have not been extensively litigated; and relate to a party in this case

3  rather than a third-party predecessor-in-interest not before the court.  Accordingly, the

4  Court DENIES Defendant's motion to strike Plaintiff's allegations related to

5  governmental investigations into Trump University and Trump University's Better

6  Business Bureau rating.

7                              **CONCLUSION**

8        Based on the foregoing, **IT IS HEREBY ORDERED** that:

9        1.    Defendant's request for judicial notice, (Dkt. No. 18-1), is DENIED;

10       2.    Defendant's Motion to Dismiss, (Dkt. No. 9), is DENIED; and

11       3.    Defendant's Motion to Strike, (Dkt. No. 10), is DENIED.

12       Accordingly, Defendant shall file an answer to the Complaint within 14 days of

13  entry of this Order. Fed. R. Civ. P. 12(a)(4)(A).

14  **IT IS SO ORDERED.**

15  DATED:  February 21, 2014

16

17                              HON. GONZALO P. CURIEL
                                United States District Judge

18

19

20

21

22

23

24

25

26

27

28