1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated, | CASE NO. 13-cv-2519-GPC-WVG<br>Related Case: 10-cv-0940-GPC-WVG |
| Plaintiff, | **ORDER GRANTING MOTION FOR CLASS CERTIFICATION**; **APPOINTING CLASS REPRESENTATIVE; AND APPOINTING CLASS COUNSEL** |
| vs. | |
| DONALD J. TRUMP, | [Dkt. No. 39.] |
| Defendant. | |

Presently before the Court is Plaintiff Art Cohen's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel. (Dkt. No. 39.) Plaintiff's proposed Class consists of:

> [A]ll persons who purchased Live Events from Trump University throughout the United States from January 1, 2007 to the present. Excluded from the Class are Trump University, its affiliates, employees, officers and directors, persons or entities that distribute or sell Trump University products or programs, the Judge(s) assigned to this case, and the attorneys of record in the case.

(Dkt. No. 1, Compl. ¶ 75.)

Defendant Donald J. Trump ("Defendant") has filed a response, (Dkt. No. 45), Plaintiff has filed a reply, (Dkt. No. 46), and Defendant has filed a supplemental declaration, (Dkt. No. 51). A hearing on Plaintiff's motion was held on September 26, 2014. Jason A. Forge, Esq., Rachel Jensen, Esq., and Amber Eck appeared on behalf

of Plaintiff; Nancy Stagg, Esq., Jill Martin, Esq., and Benjamin Morris, Esq. appeared on behalf of Defendant. Having considered the parties' submissions, oral arguments, and the applicable law, the Court GRANTS Plaintiff's motion.

## BACKGROUND

### I.    Cohen's Allegations

Plaintiff, a resident of California, sues on behalf of himself and all others similarly situated.  Defendant is a resident of the State of New York. Plaintiff's briefing describes Defendant as an "iconic billionaire who portrays himself as one of the world's most important people, a potential presidential candidate, and an unrivaled real estate expert." (Dkt. No. 46 at 2) (citing Dkt. No. 39-3, Forge Decl. Ex. 13, Trump Depo. at 36:7-8). Defendant has testified that the "Trump" brand is "very visible," and that brand estimates have valued the brand at "over $3 billion or $3 billion." (Dkt. No. 39-3, Forge Decl. Ex. 13, Trump Depo. at 44:6-9, 14-17.) Relevant to the present action, Defendant is also "a founder and Chairman, officer, director, managing member, principal and/or controlling shareholder of Trump University." (Dkt. No. 1, Compl. ¶ 5.)

As set forth in the Declaration of Michael Sexton, Trump University co-founder and former President, Trump University began in 2004 with the concept of delivering "a business education in real estate and other related accelerated self-study courses, learning experiences and interactive case studies on line." (Dkt. No. 49-1, Stagg Decl. Ex. 1, Sexton Decl. ¶ 3.) In 2007, Trump University introduced "live seminars," called "Live Events" by the Parties. (Id. ¶ 6.) As described by Sexton,

> By mid to late-2007, Trump University had reached the basic teaching model of offering a free 90-minute preview program, which was followed by an initial 3-day seminar in basic real estate investing. At the 3-day program, attendees had the opportunity to purchase additional training, including standard and custom programs, if they chose. Those programs ranged from commercial real estate to wealth preservation to tax liens to group mentoring to telephonic coaching to one-on-one mentoring and dozens of other programs - on-line, live lectures, and self-study.

(Id. ¶ 9.)

Plaintiff alleges learning about Trump University from a 2009 San Jose Mercury

News advertisement. (Compl. ¶ 4.) Plaintiff alleges receiving a "special invitation" by mail to attend a Trump University seminar. (Compl. ¶ 13.) Drawn in by Defendant's name and reputation, Plaintiff attended a free preview event. (Id.) Plaintiff then paid $1,495 to Trump University to attend a three-day real estate retreat, where he subsequently purchased a "Gold Elite" program for $34,995. (Id.)

Although Plaintiff initially wrote a positive review of the three-day real estate retreat he attended from May 8 to May 10, 2009, (Dkt. No. 45-2, Stagg Decl. Ex. 23, Cohen Evaluation), Plaintiff's Complaint alleges Defendant and Michael Sexton "devised and executed a scheme to make tens of millions of dollars" by falsely marketing Trump University as an institution with which Donald Trump was integrally involved as well as an actual university with a faculty of professors and adjunct professors. (Compl. ¶ 19.) Plaintiff alleges the "scheme" was fueled by a "national advertising campaign with an annual budget at one time of $6 million dollars," which included YouTube, email, website, and traditional postal mail solicitations. (Compl. ¶¶ 20, 21(e), 21(f), 21(g), 21(h).) Plaintiff alleges that, but for the alleged misrepresentations made by Trump University, he would not have paid for Trump University programs. (Compl. ¶ 14.) Specifically, Plaintiff alleges the following "uniform" misrepresentations were made: that the programs would give access to Donald Trump's real estate investing secrets; that Donald Trump had a meaningful role in selecting the instructors for Trump University programs; and that Trump University was a "university." (Id.)

On October 18, 2013, Plaintiff filed a complaint in the above-captioned matter, alleging a single cause of action for mail and wire fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Plaintiff claims that common evidence will prove that Defendant "sold real estate seminars and mentorships ('Live Events') through 'Trump University,' which he marketed nationally as a premier institution of higher learning rivaling Wharton Business School and with which he was so integrally involved, students would effectively be learning from him."

(Dkt. No. 39-1 at 3; see also Compl. ¶ 2.) Plaintiff argues Defendant insured the consistency of his misrepresentations regarding Trump University by: (1) making the representations himself, as in the Main Promotional Video played at free preview seminars, (2) reviewing Trump University's advertisements, (3) providing a "Playbook" to Trump University instructors/speakers/mentors, and (4) providing PowerPoint presentations and scripts. (Id. at 4) (citing Dkt. No. 39-3, Forge Decl. Exs. 15-18).

## II.    Related Case, Makaeff v. Trump University LLC

On October 18, 2013, Plaintiff filed a "notice of related case" requesting that the above-captioned matter be transferred to the undersigned Judge because the present action is related to Makaeff v. Trump University LLC, Case No. 10-cv-940-GPC-WVG. (Dkt. No. 3.) Filed on April 30, 2010, the initial complaint in Makaeff alleged ten causes of action under state consumer protection statutes and common law. (Case No. 10-cv-940-GPC-WVG, Dkt. No. 1.) On October 7, 2013, the Court denied plaintiff Makaeff's motion to modify the scheduling order in that case to file a fourth amended complaint to include a RICO cause of action. (Id., Dkt. No. 248.) On February 21, 2014 the Court granted plaintiff Makaeff's motion for class certification, certifying a class of plaintiffs defined as: "All persons who purchased a Trump University three-day live 'Fulfillment' workshop and/or a 'Elite' program ('Live Events') in California, New York and Florida, and have not received a full refund." (Id., Dkt. No. 298 at 35.)

## LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citations omitted). To fit within the exception, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with [Federal Rule of Civil

1   Procedure] 23." <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1432 (2013) (quoting

2   <u>Dukes</u>, 131 S. Ct. at 2551-52).

3          Rule 23 contains two sets of requirements. First, "Rule 23(a) ensures that the

4   named plaintiffs are appropriate representatives of the class whose claims they wish

5   to litigate. The Rule's four requirements-numerosity, commonality, typicality, and

6   adequate representation-effectively limit the class claims to those fairly

7   encompassed by the named plaintiff's claims." <u>Dukes</u>, 131 S. Ct. at 2550 (internal

8   quotation marks and citations omitted). Second, "[w]here a putative class satisfies

9   all four requirements of 23(a), it still must meet at least one of the three additional

10  requirements outlined in 23(b)." <u>United Steel, Paper & Forestry, Rubber, Mfg.</u>

11  <u>Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v.</u>

12  <u>ConocoPhillips Co.</u>, 593 F.3d 802, 806 (9th Cir. 2010).

13         On a motion for class certification, the Court is required to "examine the

14  merits of the underlying claim . . . only inasmuch as it must determine whether

15  common questions exist; not to determine whether class members could actually

16  prevail on the merits of their claims." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d

17  970, 981 n. 8 (9th Cir. 2011) (citations omitted).

18                                 **<u>DISCUSSION</u>**

19         RICO's civil action provision states that "[a]ny person injured in his business

20  or property by reason of a violation of section 1962 of this chapter may sue therefor

21  in any appropriate United States district court and shall recover threefold the

22  damages he sustains and the cost of the suit, including a reasonable attorney's fee."

23  18 U.S.C. § 1964(c). Under section 1962, a RICO plaintiff must demonstrate "(1)

24  conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

25  <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985). In addition, a

26  plaintiff may only recover "to the extent that, he has been injured in his business or

27  property by the conduct constituting the violation." <u>Id.</u>

28         As articulated by Plaintiff, his theory of recovery under RICO is that

1  Defendant committed "fraud and racketeering" by marketing Trump University

2  "Live Events" as an institution with which he was integrally involved as well as "an

3  actual university with a faculty of professors and adjunct professors." (Dkt. No. 39-

4  1 at 1) (citing Compl. ¶ 19). As set forth above, Plaintiff moves to certify a

5  nationwide class of "all persons who purchased Live Events from Trump University

6  throughout the United States from January 1, 2007 to the present," with certain

7  exclusions. (See Dkt. No. 39-1 at 2) (citing Compl. ¶ 75).

8      For the following reasons, the Court GRANTS the motion to certify a single

9  nationwide class of Plaintiffs under RICO.

10  **I.    Rule 23(a)**

11      The Court first examines Plaintiff's showing on each of the requisite prongs

12  of Federal Rule of Civil Procedure 23, starting with Rule 23(a) requirements of

13  numerosity, commonality, typicality, and adequate representation.

14      **A.    Numerosity and Commonality**

15      As to the first two requirements of Rule 23(a), Defendant fails to challenge

16  Plaintiff's claim that the putative class is sufficiently numerous or that common

17  issues of law or fact are common to the class. Plaintiff states that the members of the

18  proposed nationwide class in this action "number in the thousands," (Dkt. No. 39-1

19  at 14), and the Court agrees that this estimate meets the numerosity requirements of

20  Rule 23(a)(1). See Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal.

21  1988) ("classes of 40 or more are numerous enough").

22      With regard to commonality, Rule 23(a)(2) requires Plaintiff to demonstrate

23  that "there are questions of law or fact common to the class." Fed. R. Civ. P.

24  23(a)(2). The commonality requirement demands only that "class members'

25  'situations share a common issue of law or fact, and are sufficiently parallel to

26  insure a vigorous and full presentation of all claims for relief.' " Wolin v. Jaguar

27  Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting Cal. Rural

28  Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990)).

Here, Plaintiff argues his RICO claim raises common questions as to "Trump's scheme and common course of conduct, which ensnared Plaintiff[] and the other Class Members alike." (Dkt. No. 39-1 at 14.) The Court agrees. Plaintiff has introduced evidence that Defendant's marketing campaign repeatedly made at least the two representations that Defendant was integrally involved in Trump University and that Trump University was an "actual university." (See Dkt. No. 39-2, Eck Decl. Exs. 4, 8-12.) The Court therefore finds that common questions exist as to all members of the putative class regarding whether Defendant made these representations and whether these representations were false and materially misleading. See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556-57 (2011) (agreeing with precedent that "even a single common question will do" under Rule 23(a)(2) but finding that respondents had provided "no convincing proof of a companywide discriminatory pay and promotion policy") (internal quotation marks and alterations omitted). Accordingly, the Court finds that Plaintiff's uncontroverted showing has met the Rule 23(a) requirements of "numerosity" and "commonality."

**B.    Typicality**

Under the third Rule 23(a) requirement, the Court must determine whether the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id.

Plaintiff claims typicality is "readily met" in this case because Plaintiff's allegations are that the same fraudulent scheme affected every member of the class. (Dkt. No. 39-1 at 15-16.) Defendant makes several arguments in opposition to a finding that Plaintiff's claims are typical of the class: (1) Cohen has "failed to show that [the alleged predicate act] caused his alleged injury"; (2)"Cohen has failed to provide any evidence of actual harm"; (3) Cohen "admits to a number of intervening circumstances that sever the 'direct' link between any claim of injury and the alleged racketeering acts of Donald Trump; and (4) Cohen's claim is barred by the statute of limitations. (Dkt. No. 45 at 6-8, 14-16.)

The Court finds that Defendant's arguments are not properly considered under the "typicality" framework of Rule 23(a). See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 n. 8 (9th Cir. 2011) (the purpose of class certification is not to determine whether class members could actually prevail on the merits of their claims). The focus of the "typicality" requirement is on whether the named Plaintiff's claims and defenses are typical of the class; that is, whether "a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon, 976 F.2d at 508 (citing Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), cert. denied, 498 U.S. 1025 (1991)).

Here, as set forth above, Defendant's arguments against a finding that Cohen is typical of the class are that Plaintiff's own claim is barred by the statute of limitations and that Plaintiff cannot show causation. These are the very arguments and defenses Defendant raises against this Court's finding that common issues predominate in this action. (See Dkt. No. 45 at 8-11; 16-22.) In essence, Defendant attempts to argue that Plaintiff's claim is atypical because his claim is subject to unique defenses, yet individual inquiries into these same defenses defeat the predominance of common questions in this case. Both cannot be true - either Plaintiff's claim is atypical such that it raises unique statute of limitations and

1   causation defenses, or Plaintiff's claim is typical such that these defenses may apply

2   to various class members necessitating an individualized determination as to these

3   defenses for every member of the putative class.

4   Upon review of the evidence submitted by both Parties, the Court concludes

5   that Plaintiff is not a unique class representative. Plaintiff has submitted a

6   declaration stating that he saw an advertisement for Trump University in 2009;

7   received a "special invitation" by mail to attend a free preview seminar; attended a

8   free preview seminar; viewed the promotional video featuring Donald Trump; and

9   purchased and attended Live Events. (Dkt. No. 39-6, Forge Decl. Ex. 41, Cohen

10   Decl. ¶¶ 3-7.) Plaintiff's description of his experience with Trump University

11   matches the allegations alleged on behalf of the putative class in his Complaint,

12   (Compl. ¶¶ 19-73(b), 79-91), regarding a common fraudulent "scheme" to which all

13   class members were allegedly exposed. While Defendant may yet raise the statute of

14   limitations and causation as defenses to the claims of the putative class, these

15   defenses are not unique to Plaintiff's claim and do not defeat a finding that Plaintiff

16   Art Cohen's claims are typical of the claims of the class. Accordingly, the Court

17   concludes that Plaintiff has satisfied the typicality requirement of Rule 23(a).

18   **C.   Adequacy**

19   Rule 23(a)(4) requires the representative parties to fairly and adequately

20   protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Adequate representation

21   'depends on the qualifications of counsel for the representatives, an absence of

22   antagonism, a sharing of interests between representatives and absentees, and the

23   unlikelihood that the suit is collusive.'" Crawford v. Honig, 37 F.3d 485, 487 (9th

24   Cir. 1994) (quoting Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir.

25   1992).

26   Relying on this Court's finding that the named plaintiffs in Makaeff v. Trump

27   University LLC, Case No. 10-cv-541-GPC-WVG, Plaintiff argues he "does not have

28   any interests antagonistic to absent Class members and will vigorously protect the

interests of the Class. (Dkt. No. 39-1 at 16.) Plaintiff further claims his counsel were approved as class counsel in <u>Makaeff</u> and should likewise be approved by the Court in the present action. (<u>Id.</u> at 16-17.)

Defendant opposes, arguing proposed class counsel is inadequate because they failed to bring the present RICO claim until October 18, 2013 which has "created the myriad of statute of limitations defects . . . that now preclude class certification." (Dkt. No. 45 at 27 n. 29.) Defendant further argues Plaintiff's counsel is inadequate because counsel "cannot fairly and adequately represent the interests of the putative class and . . . may not serve as class counsel" where "a class action is already pending involving the same plaintiff's counsel, same defendants, and substantially similar claims and evidence." (<u>Id.</u> at 27) (citing <u>Lou v. Ma Laboratories, Inc.</u>, No. C 12-05409 WHA, 2014 WL 68605 (N.D. Cal. Jan. 8, 2014); <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815, 856 (1999)) (internal quotation marks omitted).

The Court finds that neither argument rebuts Plaintiff's showing that he and class counsel adequately represent the putative class. With respect to Defendant's argument regarding the statute of limitations, as set forth below, this Court does not agree that the statute of limitations precludes class certification in this case.

With respect to Defendant's conflict of interest argument, the Court finds that Defendant has not identified an actual conflict of interest and has failed to explain how simultaneous representation in <u>Makaeff</u> and the present matter might undermine Cohen's ability or counsel's ability to adequately represent the class. <u>See</u> <u>Keilholtz v. Lennox Hearth Prods.</u>, 268 F.R.D. 330, 338 (N.D. Cal. 2010) (finding no evidence that the plaintiffs in multiple classes had antagonistic interests and that defendants appeared to be able to satisfy a judgment in both cases); <u>see also</u> <u>Sandoval v. Ali</u>, No. C-13-03230(EDL), -- F. Supp. 2d --, 2014 WL 1311776 at *10 (N.D. Cal. 2014) (finding disqualification premature in part because defendants had only raised "speculative concerns about conflicts of interest between the superior

court plaintiffs and the federal Plaintiffs"). Accordingly, the Court concludes that Plaintiff and Plaintiff's counsel have met the adequate representation requirement of Rule 23(a).

## II.   Rule 23(b)(3)

Notwithstanding the requirements of Rule 23(a), a putative class must also meet the requirements of 23(b). Plaintiff asserts that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" under Federal Rules of Civil Procedure 23(b)(3). (Dkt. No. 39-1 at 17.) Rule 23(b)(3) lists factors pertinent to a court's assessment of the predominance and superiority criteria: (A) the interest of members of the class; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

### A.   Predominance

Defendant argues individualized inquiries related to three issues prevent the predominance of common questions of law and fact in this action: (1) whether Defendant's allegedly unlawful actions proximately caused the injuries alleged by the various class members; (2) whether class members' claims are barred by the statute of limitations; and (3) whether each class member is entitled to damages, and if so, the amount of damages. (Dkt. No. 45 at 8-11, 16-22, 22-26.) For the following reasons, the Court disagrees that these three issues require individualized inquiries that defeat predominance in this case.

#### 1.   Causation

Defendant argues that common issues of fact or law relating to proximate cause do not predominate in this action.  Defendant asserts Plaintiff may not benefit

from either a presumption of reliance applied in securities cases or an inference of reliance from a "common sense" or "logical explanation" for putative class members' actions. (Dkt. No. 45 at 11-13) (citing Hemi Group, LLC v. City of New York, 559 U.S. 1 (2010) for the proposition that "[a] direct link establishing proximate cause is required" in RICO cases, and Poulos v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004)). Defendant further argues Plaintiff has failed to "present any evidence that the class' injury resulted from class members' reliance on Defendant's alleged 'scheme.'" (Dkt. No. 45 at 16.) Defendant claims there is "no single 'common sense' or 'logical explanation' for TU participation" as evidenced by declarations submitted by various putative class members articulating differing reasons for attending and expectations of Trump University programs. (Id. at 18-19) (citing Dkt. No. 45-2 and 45-3, Stagg Decl. Exs. 7-11, 14, 16, 21, 22, 26, 30, 36-39).

Plaintiff disagrees, claiming his RICO claim will turn on common proof, and that the causal relationship between Defendant's alleged scheme and the putative class members is the "same for everyone." (Dkt. No. 39-1 at 20.) Plaintiff sets forth a "common sense" or "logical explanation" theory of causation that does not rely on individualized inquiries. (Id. at 21.)

As an initial matter, the Court agrees with Defendant that Plaintiff's theory of liability under RICO requires a showing that the putative class relied on the alleged fraudulent misrepresentations. Although a RICO plaintiff's reliance on alleged misrepresentations is not always required in RICO cases, see, e.g., Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008), Plaintiff's theory of liability under RICO is that Defendant schemed to misrepresent the Trump University Live Event programs, which caused the putative class members to make Live Event purchases. Reliance is, therefore, at the heart of Plaintiff's theory of causation between Defendant's actions and the alleged injury to the putative class.

However, the Court finds that Plaintiff has demonstrated that the "reliance"

inquiry in this case does not require individualized inquiries. Courts have found that reliance can be established on a class-wide basis where the behavior of plaintiffs and class members cannot be explained in any way other than reliance upon the defendant's conduct. See Peterson v. H & R Block Tax Services, Inc., 174 F.R.D. 78, 84-85 (N.D. Ill. 1997) (reliance apparent because class members paid a significant fee for a service for which they were not eligible); Garner v. Healy, 184 F.R.D. 598, 602 (N.D. Ill. 1999) (plaintiffs "paid money for a 'wax,' but instead received a worthless 'non-wax' product"); Negrete, 238 F.R.D. at 491-92 (finding common sense inference that no rational class member would have purchased annuities if adequate disclosure of facts had been made); Kennedy v. Jackson National Life Ins. Co., No. C 07-0371 CW, 2010 WL 2524360 at *8 (N.D. Cal. June 23, 2010) (product offered no benefit in relation to its cost); Minter v. Wells Fargo Bank, N.A., 274 F.R.D. 525, 546 (D. Md. 2011) ("[I]t is reasonable to infer that plaintiff class members would not have transacted with Prosperity had they known Prosperity was not a legitimate lender, especially given that the class members were using Prosperity to secure mortgages and agree to very substantial personal liabilities.").

Here, Plaintiff's theory of causation is that people who paid for "Trump University" Live Events "would not have done so if informed they were getting neither Trump nor a university." (Dkt. No. 46 at 12.) Plaintiff has introduced evidence that the alleged misrepresentations of a "university" and of Donald Trump participation in the Trump University Live Events were prominently featured in all Trump University marketing materials; and that a "Playbook," Powerpoint presentations, and scripts encouraged if not required Trump University representatives to continue these representations. (Dkt. No. 39-3, Forge Decl. Exs. 15-18.) The Court finds that this evidence provides a method for Plaintiff to establish proximate causation on a classwide basis without resort to individualized inquiries, by relying on a common sense inference that consumers are likely to rely

on prominently marketed features of a product which they purchase. <u>See, e.g.</u>, <u>In re:</u>
<u>National Western Life Insurance Deferred Annuities</u>, No. 3:05-cv-1018-GPC-WVG,
2013 WL 593414 at * 4 (S.D. Cal. Feb. 14, 2013).

Defendant argues this case is like <u>In re Countrywide Financial Corp.</u>
<u>Mortgage Marketing and Sales Practices Litigation</u>, 277 F.R.D. 586 (S.D. Cal.
2011), or <u>Poulos</u>, cases in which courts found that alleged misrepresentations were
not susceptible to a class-wide inference of reliance due to the multiple, highly
individualized, possible motivations behind putative class member decisions. (<u>See</u>
Dkt. No. 45 at 16, 20.) The Court finds these cases distinguishable.

In <u>Countrywide</u>, the court denied certification of a RICO putative class where
the alleged misrepresentations were "not susceptible to a sweeping, class-wide
inference of reliance as there are reasonable explanations for members of the class
taking on a POA or subprime loan despite the risks associated with such loans." 277
F.R.D. at 604. In particular, the court found that the defendant had introduced
evidence demonstrating that "many borrowers with knowledge of essential loan
terms nevertheless elected to proceed given the benefits of the loan under then-
favorable market conditions" and that this evidence corroborated defendant's claim
that the class took out loans for a variety of reasons. <u>Id.</u> at 605. The evidence
showed that the defendant's loan officers described their loans "from start to
finish," and "explained in detail the pros and cons of the [product at issue]." Here,
on the other hand, Defendant has not demonstrated any such transparency on the
part of Defendant or Trump University such that it may be inferred that putative
class members had knowledge of the alleged misrepresentations yet chose, for other
reasons, to purchase Trump University Live Event programs.

Likewise in <u>Poulos</u>, the Ninth Circuit considered allegations that defendants
induced people to play their video poker and electronic slot machines based on a
false perception that the machines were true games of chance. 379 F.3d 654. The
court stated there was no single logical explanation for gambling, and rejected the

1  plaintiff's position that causation could be inferred through class-wide

2  circumstantial evidence. Poulos, 379 F.3d at 668 (gambling "may be an addiction, a

3  form of escape, a casual endeavor, a hobby, a risk-taking money venture, or scores

4  of other things"). However, the Ninth Circuit expressly applied its holding to the

5  "unique nature of gambling transactions and the allegations underlying the class

6  claims," finding that Poulos was "not a case in which there is an obvious link

7  between the alleged misconduct and harm." 379 F.3d at 665.

8        Here, the Court finds that, unlike gambling, purchasing real estate seminars is

9  not the type of consumer activity that is susceptible to wide-ranging behavioral

10  rationales. Furthermore, unlike in Poulos, Plaintiff has introduced evidence that

11  Defendant marketed the Trump University Live Events with prominent pictures and

12  quotes from Defendant as well as the allegedly ubiquitous use of the name "Trump

13  University" as well as a coat of arms and educational language. (See Dkt. No. 39-3,

14  Forge Decl. Exs. 15-18.) The Court is satisfied that Plaintiff has produced evidence

15  of uniform marketing of the alleged misrepresentations such that a common sense

16  link between the misrepresentations and putative class members' reliance on those

17  representations is appropriate.

18        At the hearing on the present motion for class certification, Defendant argued

19  he is entitled to mount a defense on the issue of causation, and that his defense

20  would require individualized inquiries into whether each putative class member

21  relied on the alleged misrepresentations. The Court finds this argument

22  unpersuasive. Because the Court finds that an inference of reliance is appropriate in

23  this case, the inference may only be rebutted by evidence that can be properly

24  generalized to the class as a whole. See Plascencia v. Lending 1st Mortg., No. C 07-

25  4485 CW, 2011 WL 5914278 at *2 (N.D. Cal. Nov. 28, 2011) ("The presumption

26  [of reliance] could be rebutted on a class-wide basis only if there is evidence that

27  can be properly generalized to the class as a whole.") (citing Iorio v. Allianz Life

28  Ins. Co. of N. Am., 2008 U.S. Dist. LEXIS 118344 at *93-94) (Wilken, J.); In re

National Western Life Ins. Deferred Annuties Litig., No. 3:05-cv-1018-GPC-WVG, 2013 WL 593414 at *5 (S.D. Cal. Feb. 14, 2013) ("The Plascencia court's conclusion that a classwide presumption of reliance can only be rebutted by evidence that can be properly generalized to the whole class is well taken."). Accordingly, the Court finds that Plaintiff has made a sufficient showing that common issues predominate on the element of causation for Plaintiff's RICO claim.

### 2.     Statute of Limitations

Defendant argues that individual issues of proof predominate with regard to the statute of limitations affirmative defense. Civil RICO claims are subject to a four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assoc's, Inc., 483 U.S. 143, 156 (1987).  A plaintiff seeking to recover under RICO must file suit within four years of the date when he knew or should have known of his injury. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 365 (9th Cir. 2005) ("The limitations period for civil RICO actions begins to run when a plaintiff knows or should know of the injury which is the basis for the action.").

On October 18, 2012, Plaintiff filed this RICO case.  Defendant argues that "anyone's claim that accrued prior to October 18, 2009 is . . . time-barred." (Dkt. No. 45 at 8.) According to Defendant, individualized inquiries as to "(1) when [each class member had] actual knowledge of the alleged injury; or (2) when [each class member had] enough information to put him/her on constructive notice - and could investigation have led to discovery of the alleged injury" defeats the predominance of common questions in this case. (Id. at 9) (relying on Henson v. Fidelity Nat'l Financial Inc., 300 F.R.D. 413 (C.D. Cal. 2014) (by its very nature the application of the discovery rule requires fact-intensive and highly individualized inquiry)).

Plaintiff Cohen responds by characterizing his RICO claim as involving a scheme by Defendant to market his enterprise as a "university" in which students would effectively learn from him, while Defendant in fact concealed the unqualified nature of his "university" and lack of participation in shaping the curricula or

instructors for Live Events. (Dkt. No. 46 at 7.) Cohen claims that he did not discover the alleged fraud until June 2011 when he learned of Makaeff's lawsuit. Cohen argues that Defendant has failed to show how his statute of limitations defense is likely to raise any individual issues and that this is a "prototypical case where [a statute of limitations] defense does not undermine class certification because all of the facts that Trump claims satisfy the discovery rule are the same as to all Class members." (Id. at 6.)

Defendant disputes this contention and points to the individual circumstances involving Cohen and others which illustrate the need for individualized determinations on the statute of limitations defense. Defendant asserts that all the facts as to whether Trump University was a "university" were available to or known by Cohen as of July 2009.  According to Defendant, these available facts were that Cohen was a college graduate who was not looking for a diploma; Cohen knew that the Trump seminars were taking place in a hotel; and Cohen had not made any inquiry into the accreditation status of TU. As to the lack of Trump's involvement, Defendant argues that Cohen knew, while he was in the programs, whether he was receiving useful information or not so that if Trump's alleged lack of involvement resulted in teachings of no value, Cohen should have been aware of it by the time he completed the program. (Dkt. No. 45 at 16.)

The above facts do not prove that Cohen uniquely discovered the injury resulting from the concealed fraud as of October 2009.  Instead, they appear to be facts that apply to nearly all of the putative class members and constitute common proof which Defendant may offer to support their position that class members should have discovered the alleged injury prior to October 18, 2009.

Defendant also argues that Cohen's claim that he did not discover the alleged fraud until June 2011 is belied by the actions of another potential class member who criticized Trump University.  Defendant points to a Los Angeles Times reporter's article published in December 2007 describing his experience at a Trump seminar

that was described as a two-hour sales pitch for a three-day workshop that would cost $1,495. However, the fact that a public article criticized the alleged practice of upselling does not establish inquiry notice for the alleged false claims regarding Trump University.

In addition, Defendant's argument relies heavily on the exemplar of Tarla Makaeff, a named plaintiff in the Makaeff v. Trump University LLC related action. According to evidence unearthed in discovery in that case, Makaeff participated in Trump University programs between June 2008 and June 2009; received a letter from the Orange County District Attorney's Office which caused her to "realize what had happened to her" in mid-June, 2009; and wrote a letter to Bank of America accusing Trump University of "deceptive business practices," "fraud," "grand larceny," and "identity theft," among a number of allegations on September 10, 2009. (Dkt. No. 45 at 10) (citing Dkt. Nos. 45-3, 48-7, 48-8, 48-9, Stagg Decl. Exs. 32-34). Defendant argues that Makaeff's had "actual knowledge of the alleged injury or, at a minimum, sufficient facts to put her on constructive notice of the alleged injury at least as early as September 10, 2009, if not much earlier," which "illustrates the detailed inquiry necessary to determine if each class member's claim is time barred." (Id. at 10.)

Plaintiff responds by pointing out that the September 2009 letter to Bank of America confirms that Makaeff did not claim that Trump knowingly and unlawfully marketed a "university" or that he lacked any meaningful involvement.  According to Plaintiff, these facts show that Makaeff had not discovered the RICO claim as of September 2009 and lacked inquiry notice to learn of the alleged injury.

However, even assuming that Makaeff had constructive notice of the alleged injury on September 10, 2009, the existence of a statute of limitations issue as to her does not by itself compel a finding that individual issues predominate over common ones. Cameron v. E.M. Adams & Co., 547 F.2d 473 (9th Cir. 1976) ("presence of individual issues of compliance with the statute of limitations here does not defeat

the predominance of the common questions.") Plaintiff in this case alleges a single
cause of action for mail fraud and wire fraud in violation of RICO. As articulated by
Plaintiff, the alleged fraudulent scheme in this case focuses on two
misrepresentations repeated in various mail and wire communications. The Court
has found a nucleus of common issues and is not convinced at this point that the
inquiry into whether the individual class members in this case knew or should have
known about the fraudulent scheme as alleged in the present action will require
individualized determinations or may depend on facts peculiar to each class
member's case. Although Defendant may yet show that Plaintiff and the putative
class members knew or should have known that Defendant had devised a scheme to
falsely market Trump University via mail or wire prior to October 2009, the Court is
satisfied that determination of Defendant's statute of limitations defense in this case
will not defeat the predominance of common issues in this case.[1]  See Baker v.
Castle & Cooke Homes Hawaii, Inc., No. 11-00616 SOM-RLP, 2014 WL 1669158
at *14 (D. Haw. Apr. 28, 2014) ("When there is no reason to suspect that potential
class members have or will discover product defects at significantly different times,
the presence of a statute of limitations provision, by itself, is insufficient reason to
compel all potential class members to pursue their claims individually.").

### 3. Damages

Plaintiff argues Trump University's records will be used to calculate each
class member's damages based upon trebled refunds. (Dkt. No. 39-1 at 22.)
Analogizing to a Seventh Circuit case involving fraudulent artwork, Plaintiff argues
the "actual loss" attributable to Defendant's alleged misrepresentations is the "entire
amount paid" by the putative class members. (Id. at 23) (citing United States v.
Kennedy, 726 F.3d 968, 974 (7th Cir. 2013)).

Defendant argues individual inquiries into entitlement and amount of

---

[1] In the event that defendant demonstrates in the future that individualized statute-of-limitations
problems actually shift the balance and undercut the predominance of common issues, the district court
may modify its class certification order or even decertify the class. See Fed.R.Civ.P. 23(c)(1).

damages precludes predominance. Taking issue with Plaintiff's "full refund" model, Defendant argues a full refund damages model improperly assumes that the putative class members received nothing and does not account for the "actual value received by the purchaser." (Dkt. No. 45 at 23) (citing Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013)). Defendant offers evidence of evaluations showing different amounts of approval for Trump University programs, claiming that this evidence "belies any claim that the TU programs were worthless when class members remain happy and satisfied with their experience at TU . . . and are now successful in real estate and have made profitable investments using the tools and strategies taught by TU." (Dkt. No. 45 at 24-25) (citing participant evaluations).

    As an initial matter, as this Court found in the Makaeff v.Trump University LLC related case, individual questions as to damages cannot, by themselves, defeat class certification. No. 10-cv-541-GPC-WVG, Dkt. No. 298 at 27 (citing Leyva v. Medline Indus. Inc., 716 F.3d 510, 513-14 (9th Cir. 2013) (reiterating, after Comcast, that "[i]n this circuit . . . damage calculations alone cannot defeat certification."); see also Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1167 (9th Cir. 2014) ("In this circuit, Leyva is the controlling case.") (citation omitted). The Ninth Circuit has specifically approved the reservation of individual questions regarding damages after class action resolution of the common questions of liability. Jimenez, Id. at 1168 (citing In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litigation, 722 F.3d 838, 850-61 (6th Cir. 2013)). Here, Defendant's due process right to present individualized defenses as to damages claims may be addressed after the common liability questions of whether Defendant's Trump University violated the federal civil RICO statute. Id. These individualized questions do not defeat class certification.

    Furthermore, the Court finds that Comcast does not dictate a contrary result in this case. 133 S. Ct. 1426. In Comcast, the Supreme Court held that a plaintiff's proposed damages model must "measure only those damages attributable to [the

plaintiff's] theory [of liability]." 133 S. Ct. at 1433. The court reiterated that "[c]alculations need not be exact," but found that "at the class-certification stage (as at trial), any model supporting 'a plaintiff's damages case must be consistent with its liability case.'" Id. (citing Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931); ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)).

Here, the Court finds that Plaintiff's damages model matches Plaintiff's theory of liability. Although some courts have found a "full refund" model of damages inappropriate where the plaintiff's theory of liability seeks restitutionary damages, see Werdebaugh v. Blue Diamond Growers, No. 12-cv-02724-LHK, 2014 WL 2191901 at *22 (N.D. Cal. Oct. 2, 2013), Plaintiff brings this claim under RICO, which provides for statutory trebled damages, attorney's fees, and cost of suit, 18 U.S.C. § 1964(c). "[D]amages under RICO do not depend on subjective valuations, but rather on objective losses." Negrete v. Allianz Life Ins. Co. of N. Am., Nos. CV 05-6838 CAS (MANx), CV 05-8908 CAS (MANx), 2013 WL 6535164 at *4 (C.D. Cal. Dec. 9, 2013). The Court therefore finds that while Plaintiff must still prove its damages case, his theory of damage recovery does not conflict with his theory of liability under Comcast. Accordingly, the Court finds that individualized questions as to damages do not defeat predominance in this case.

### B.   Superiority

Rule 23(b)(3) requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998) (internal citation omitted). Two of the key factors to determining superiority are the "extent and nature of any litigation concerning the controversy already commenced by or against members of the class," and "the likely difficulties

1   in managing a class action." Fed. R. Civ. P. 23(b)(3)(B), (D).

2       Defendant argues that class resolution is not superior in this case because of

3   the "mini-trials required" to resolve the "substantial individual inquir[ies] at least

4   related to the statute of limitations, reliance/causation, and damages for each class

5   member." (Dkt. No. 45 at 28.) As discussed in detail above, however, the Court

6   finds that common issues predominate on these issues, making class resolution of

7   these issues more efficient as a whole.

8       In addition, Defendant argues that "management difficulties and related

9   litigation weigh against class treatment" due to the related <u>Makaeff</u> action and a

10  pending action brought by the New York Attorney General against Trump

11  University, <u>The People of the State of New York v. Trump Entrepreneur Initiative</u>

12  <u>LLC et al.</u>, Index No. 451463/2013. (Dkt. No. 45 at 29.) However, as this Court has

13  previously recognized, courts "often certify class actions arising from similar facts."

14  <u>Makaeff v. Trump University LLC</u>, No. 10-cv-541-GPC-WVG, Dkt. No. 298 at 34

15  (citing <u>Cartwright v. Viking Indus., Inc.</u>, 2009 WL 2982887, *15 (E.D. Cal. 2009)

16  (certifying a class for CLRA, UCL, fraudulent concealment, unjust enrichment, and

17  warranty claims despite a concurrent state court class action certified for warranty

18  claims), and <u>In re Wells Fargo Home Mortgage Overtime Pay Litig.</u>, 527 F. Supp.

19  2d 1053, 1069 (N.D. Cal. 2007) (concurrent FLSA and UCL class actions)). As this

20  Court found in the <u>Makaeff</u> action, this Court finds that class-wide litigation of

21  Plaintiff's claims here will reduce litigation costs and promote greater efficiency in

22  a single nation-wide class alleging one cause of action. The Court finds the

23  superiority requirement of Rule 23(b) is satisfied for Plaintiff's RICO claim.

## CONCLUSION

24

25      Based on the foregoing, Plaintiff's motion for class certification is

26  GRANTED. The Court hereby GRANTS Plaintiff's motion for class certification

27  for the following class:

28          All persons who purchased Live Events from Trump University
            throughout the United States from January 1, 2007 to the present.

1    Excluded from the Class are Trump University, its affiliates,
     employees, officers and directors, persons or entities that distribute or
2    sell Trump University products or programs, the Judge(s) assigned to
     this case, and the attorneys of record in the case.
3        Additionally, the Court appoints Art Cohen as class representative. The Court

4    appoints Robbins Geller Rudman & Dowd LLP and Zeldes Haeggquist & Eck, as

5    class counsel.

6        **IT IS SO ORDERED.**

7

8    DATED:  October 24, 2014

9                                    _Gonzalo Cur._
                                     _____
10                                   HON. GONZALO P. CURIEL
                                     United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28