UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, | ) Civil No. 13-CV-2519-GPC (WVG) |
| Plaintiff, | ) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY |
| v. | ) |
| DONALD J. TRUMP, | ) |
| Defendant. | ) [DOC. NO. 86] |

## I. **INTRODUCTION**

On May 28, 2015, counsel for both parties informed the Court of several discovery disputes. Because the fact discovery deadline is July 2, 2015 (Doc. No. 58 at 3), the Court issued an expedited briefing schedule for the resolution of <u>all</u> pending discovery disputes, and set a Discovery Hearing for June 5, 2015, at 10:00 a.m. (Doc. No. 85.) On June 2, 2015, Defense counsel informed the Court that the parties had resolved Defendant's two discovery issues and therefore, Defendant would not be filing a Discovery Motion. Also on June 2, 2015, Plaintiff filed a Motion to Compel Discovery. (Doc. No. 86.) On June 4, 2015, Defendant filed a Response to Plaintiff's Motion to Compel. (Doc. No. 91.)

13CV2519

On June 5, 2015, at 10:00 a.m., the Court held a Discovery Hearing.  Mr. Jason Forge and Ms. Rachel Jensen appeared on behalf of Plaintiff.  Ms. Nancy Stagg and Mr. Benjamin Morris appeared on behalf of Defendant.  During the Discovery Hearing, the Court issued tentative rulings and due to the compressed time period before the close of fact discovery, ordered the parties to proceed in accordance with its tentative rulings.

## II. PLAINTIFF'S MOTION TO COMPEL DISCOVERY

### A. PLAINTIFF'S ISSUE NO. 1- PAYMENT OF ATTORNEYS' FEES

#### 1. PLAINTIFF'S ARGUMENT

During the depositions of Trump University's ("TU") former Controller, Mr. Steven Matejek, and TU's former President, Mr. Michael Sexton, Defendant did not allow questioning about who was responsible for paying the witnesses' attorneys' fees. Plaintiff believes this is an appropriate line of inquiry, as Defendant has directly or indirectly provided thousands, or tens of thousands, of dollars in benefits to witnesses in the form of paying for attorneys to represent them.  (Doc. No. 86-1 at 8.)  Defendant has now offered a stipulation that Defendant Trump and TU are paying Mr. Matejek's and Mr. Sexton's attorneys' fees.  Plaintiff argues that the stipulation is not a replacement for asking questions about that subject during deposition.  Because that line of questioning was foreclosed, Plaintiff seeks the opportunity to reopen both depositions and ask Mr. Matejek and Mr. Sexton about the payment of their attorneys' fees.

Plaintiff argues that the benefits the witnesses have received from Defendant in the form of attorneys' fees is relevant to show the witnesses' bias.  (Doc. No. 86-1 at 9.)  Plaintiff contends that, "the fact that a billionaire defendant may be providing thousands, or tens of thousands, of dollars in benefits to important witnesses is plainly the type of information that could induce bias, which makes it undeniably relevant."  Id.

Further, Plaintiff argues that because Defense counsel's improper instructions not to answer questions during the depositions of Mr. Matejek and Mr. Sexton are the only reason that the depositions will be reopened and additional expenses will be incurred, Defendant should pay the price for its own discovery violations. (Doc. No. 86-1 at 21.) Plaintiff contends that Defendant should pay all reasonable costs for the next sessions of Mr. Matejek and Mr. Sexton's depositions. Id. Otherwise, he argues, it will be Plaintiff, not Defendant, who will be punished for Defense counsel's improper instructions not to answer. Id.

Further, although the fact discovery deadline is July 2, 2015, Plaintiff asks the Court to extend the deadline for the sole purpose of allowing the depositions of Mr. Matejek and Mr. Sexton to take place by July 16, 2015.[1] (Doc. No. 86-1 at 22.)

## 2. **DEFENDANT'S ARGUMENT**

Before Plaintiff filed his Motion to Compel, Defendants offered to stipulate that Defendant Trump and TU are paying Mr. Matejek's and Mr. Sexton's attorneys' fees. Plaintiff rejected that stipulation. Defendant now cautions the Court that Plaintiff seeks to reopen the depositions of Mr. Matejek and Mr. Sexton for an unlimited purpose, and not simply to inquire about the payment of attorneys' fees or the fee arrangements. Defendant notes that Plaintiff argues in his Motion to Compel that, "[b]ecause the bias such benefits induces may extend to all subjects [of testimony], the Matejek and Sexton depositions should be reopened with no restrictions on the areas of inquiry . . ." (Doc. No. 91; quoting Doc. No. 86-1 at 11.) Defendant asserts that Plaintiff wants another bite at the apple as to topics already covered, or that could have been covered, in prior testimony. Id. Defendant argues that Plaintiff should not be allowed to reopen the depositions for an unlimited purpose under these circumstances. Id.

---

[1] On May 14, 2015, the Court granted the parties' Joint Motion to extend the fact discovery cutoff by one week (until July 9, 2015) for the sole purpose of taking Defendant's deposition. (Doc. No. 74.)

Defendant argues that it should not have to pay for additional depositions because his positions in these discovery disputes have been substantially justified, and Plaintiff has flatly rejected all of Defendant's compromise proposals. (Doc. No. 91 at 14.) Defendant also argues that the fact discovery cutoff should not be extended, even for limited purposes. Id. at 15.

### 3. APPLICABLE LAW

#### a. FEE ARRANGEMENTS GENERALLY NOT PROTECTED BY ATTORNEY-CLIENT PRIVILEGE

Generally the attorney-client privilege "does not safeguard against the disclosure of either the identity of the fee-payer or the fee arrangement." Ralls v. U.S., 52 F.3d 223, 225 (9th Cir. 1995) (citing In re Grand Jury Proceedings (Goodman), 33 F.3d 1060, 1063 (9th Cir. 1994); see also In re Osterhoudt, 722 F.2d 591, 593 (9th Cir. 1983) ("Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating."); In re Michaelson, 511 F.2d 882, 888 (9th Cir. 1975) ("Thus it has generally been held that information concerning the fee arrangement between an attorney and his client, or the existence of the attorney-client relationship is not privileged or protected by the attorney-client privilege."); U.S. v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege.").

### b. PAYMENT OF EXPENSES

A court may impose an appropriate sanction, including reasonable expenses and attorneys' fees that are incurred by any party, on a person who impedes, delays, or frustrates the fair examination of the deponent. Fed. R. Civ. P. 30(d)(2). There are few situations where an instruction not to answer a deposition question is appropriate. Brincko v. Rio Props., Inc., 278 F.R.D. 576, 581 (D. Nev. 2011). A person may instruct a deponent not to answer only when necessary to preserve a privilege, to

13CV2519

enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). Fed R. Civ. P. 30(c)(2).

The court may order depositions to be taken a second time and order the cost be borne by the party whose counsel's conduct necessitated retaking the deposition. Brincko, 278 F.R.D at 581; O'Brien v. Amtrak, 163 F.R.D. 232, 236 (E.D. Pa. 1995). Because there are many instances where a party taking a deposition may ask a question that a deponent or counsel considers improper but is unable to show it was asked in bad faith, or to annoy, embarrass or harass the witness, the court should evaluate on a case-by-case basis. Brincko, 278 F.R.D at 584.

An award of expenses against an attorney advising a deponent not to answer is proper when the attorney's advice is not justified. Rockewell Intern., Inc. v. Pos-A-Traction Industries, Inc., 712 F.2d 1324 (9th Cir. 1983). An attorney can fail to meet the standard imposed by the Federal Rules of Civil Procedure to deal fairly and sincerely with the court and opposing counsel to conserve time and expense resulting in an "unreasonable and vexatious delay." City of New York v. Coastal Oil New York, Inc., No. 96 Civ. 8667 (RPP), 2000 WL 97247, at *2.

Even negligent failure to allow reasonable discovery may be punished. See Lew v. Kona Hosp., 754 F.2d. 1420, 1426 (9th Cir. 1985); see also Marquis v. Chrysler Corp., 577 F.2d 624, 642 (9th Cir.1978). "In view of the range of sanctions available, even negligent failures to allow reasonable discovery may be punished." Marquis, at 642.

Courts can order the payment of fees for any costs arising out of the discovery misconduct. See Raygoza v. City of Fresno, 297 F.R.D. 603, 607-10 (2014)(ordering payment of attorneys' fees, expert witness fees, court reporter fees, and costs the attorney incurred traveling to and from the deposition that did not take place); see F.C.C. v. Mizuho Medy Co. Ltd., 257 F.R.D. 679 (S.D. Cal. 2009)(because plaintiff caused the need to continue the deposition of corporate designee, plaintiff bears the

costs of resuming the deposition and must reimburse defendant for roundtrip train fare and for attorney's travel time to the second deposition).

## 4. DISCUSSION AND RULING

### a. DEFENDANT IMPROPERLY OBJECTED TO THIS LINE OF QUESTIONING

The Court agrees with Plaintiff that with respect to Mr. Matejek and Mr. Sexton, the identity of the fee-payer is not protected by the attorney-client privilege, and therefore, Defendant improperly foreclosed this line of questioning during both depositions. It is clear from Defendant's Opposition that Defendant agrees he should not have instructed the witnesses not to answer. As Defendant himself implicitly acknowledged in previous depositions of other witnesses, there was no objection to those questions, nor should there have been. The source of attorneys' fees is not privileged information. Although a stipulation may be appropriate in some circumstances to cure a party's mistake, this is not one of those times. The Court agrees that Plaintiff should not be forced to rely on a stipulation that Defendant and TU are paying the witnesses' attorneys' fees. Plaintiff is entitled to fully explore this area, and Defendant cannot foreclose this line of questioning by asserting improper objections.

Plaintiff seeks to reopen the depositions of Mr. Matejek and Mr. Sexton for an unlimited purpose because the bias induced by these benefits may extend to all subjects. The Court agrees with Plaintiff to some extent that the acknowledgment of bias through payment of fees could have permeated Mr. Matejek and Mr. Sexton's deposition testimony. The Court is persuaded by Plaintiff's argument that Plaintiff should not be prohibited from exploring these other areas.

Plaintiff's strongest argument, asserted during the Discovery Hearing, is that limiting Plaintiff's line of questioning strictly to the payment of attorneys' fees and fee arrangements will only facilitate more bickering between the parties over what questions specifically relate to the limited scope. Additionally, when asked by the Court during the Discovery Hearing whether Mr. Matejek or Mr. Sexton would

13CV2519

voluntarily appear at trial, Defense counsel was understandably non-committal.  If the witnesses do not appear to testify at trial, the deposition testimony is the only testimony that will be presented at trial.  Plaintiff has the right to depose these witnesses about all subjects, and has a right to explore certain areas after asking about the payment of attorneys' fees.  Plaintiff should not be prejudiced because of Defendant's improper instructions not to answer.

The Court hereby **GRANTS** Plaintiff's Motion to Compel as to this issue and **ORDERS** that the depositions of Mr. Matejek and Mr. Sexton be reopened to fully explore the questions foreclosed by Defendant's objection to the source of payment for the witnesses' attorneys' fees.  The depositions of Mr. Matejek and Mr. Sexton shall be reopened for a maximum of **two hours each**[2] to fully explore this line of questioning, as well as other areas that Plaintiff believes were affected by Defendant's improper instructions not to answer.  There will be no restrictions or limitations on Plaintiff's ability to explore previously addressed or new areas during two designated hours of the re-opened depositions of Mr. Matejek and Mr. Sexton.

**The depositions of Mr. Matejek and Mr. Sexton shall take place on or before July 9, 2015.  No further extensions will be granted.**  The fact discovery deadline will be extended solely for purposes of re-opening the depositions of Mr. Matejek and Mr. Sexton in compliance with this Order.[3]

### b. DEFENDANT SHALL PAY EXPENSES

The sole reason for reopening the depositions of Mr. Matejek and Mr. Sexton is because of Defendant's improper instructions not to answer and Defendant's unjustified objections during the first depositions.  The Court agrees with Plaintiff that

---

[2] After further consideration of Plaintiff's argument, and though Plaintiff did not object to the one hour limitation, the Court believes one hour is insufficient time to explore all of the potential areas that may tend to demonstrate the witnesses' bias.

[3] On May 14, 2015, the Court granted the parties' Joint Motion to extend the fact discovery cutoff by one week (until July 9, 2015) for the sole purpose of taking Defendant's deposition.  (Doc. No. 74.)

13CV2519

it should be Defendant who bears the costs associated with reopening these two depositions. Therefore, the Court **GRANTS** Plaintiff's Motion to Compel as to this issue. Defendant shall pay the full cost of the court reporter and the videographer, if any, as well as any other miscellaneous costs associated with the continued depositions of Mr. Matejek and Mr. Sexton.

Despite Plaintiff's request, the Court will not order Mr. Matejek or Mr. Sexton to travel to Plaintiff's counsel's offices in San Francisco or San Diego for the continued depositions. These are third party witnesses who have already been deposed and neither the Court, nor Plaintiff, has the authority to compel these witnesses to travel across the country for trial, let alone for their re-opened depositions. The parties have conducted depositions in New York, and the Court is aware of at least one more deposition scheduled to take place in New York. Therefore, the re-opened depositions of Mr. Matejek and Mr. Sexton shall be held in New York, New York. Defendant will not be responsible for payment of Plaintiff's counsel's airfare or lodging, <u>unless</u> these depositions require additional travel, change to existing travel, or an extended stay by Plaintiff. If so, Defendant shall pay for Plaintiff's counsel's airfare, any additional costs to changed travel plans, and extended lodging stay in New York, New York.

## B. <u>PLAINTIFF'S ISSUE NO. 2 - TRUMP UNIVERSITY'S FINANCES</u>

### 1. <u>PLAINTIFF'S ARGUMENT</u>

During the deposition of Mr. Matejek, Defendant did not allow Plaintiff to ask questions about the business operations, performance, or finances of TU. Plaintiff argues that Defendant did not allow any questions "with a percentage or dollar sign." Plaintiff argues that this Court has already found such questions to be properly subject to discovery. (Doc. No. 86-1 at 11; citing <u>Makaeff v. Trump University, LLC, et al.</u>, Case No. 10-CV-0940-GPC (WVG), Doc. No. 93 at 13 ("Defendant Trump University's financial information is discoverable information and is not public information or readily available.").) Plaintiff asserts that Defendant has "essentially conceded" the

impropriety of the instruction not to answer, and has agreed to make Mr. Matejek available for three additional hours of deposition testimony.  Id.

## 2. DEFENDANT'S ARGUMENT

Defendant may be willing to make Mr. Matechek available for a second deposition in New York to discuss certain issues if key witnesses are not able to answer those questions.  Defendant contends that the deposition would be limited in time and scope to address these issues in dispute.  Defendant notes that some of the questions in dispute are related to the financial issue recently ruled on by the Court and Plaintiff's objection to that ruling is now pending before the District Judge.  Defendant notes that there are other questions related to TU financials which are not currently before the Court, and will also be addressed during the deposition.

Defendant argues that although Plaintiff's discussion of this issue focuses on Mr. Matejek's testimony, Plaintiff "slyly" requests relief in the form of another deposition of both Mr. Matejek and Mr. Sexton.  (Doc. No. 91 at 6.)  Defendant notes that Plaintiff does not explain why his complaints regarding Mr. Matejek's testimony equate to a continued deposition of Mr. Sexton, and during meet and confer efforts, the parties only discussed Mr. Matejek's testimony and Plaintiff's alleged need for further deposition testimony from him. Id.  Thus, Defendant argues, Plaintiff's requested relief as to Mr. Sexton regarding TU finances is improper because it was not part of meet and confer discussions.  Id.

## 3. DISCUSSION AND RULING

Plaintiff is correct that this Court has already ruled in the Makaeff action that "Defendant Trump University's financial information is discoverable information and is not public information or readily available.  Defendant Trump University shall respond to this RFP." (Makaeff, Doc. No. 93 at 13.)  These questions were appropriate and therefore Defendant should not have instructed Mr. Matejek not to answer. Plaintiff's Motion to Compel Defendant to reopen Mr. Matejek's deposition for the purpose of inquiring about TU's business operations, performance, or finances, is

13CV2519

hereby **GRANTED**.  As noted above, Mr. Matejek's deposition shall be reopened for a maximum of four hours total, to allow Plaintiff an opportunity to seek information related to payment of his attorneys' fees (two hours) and the business operations, performance, and finances of TU (two hours).

Although the Court has granted Plaintiff's request to reopen the deposition of Mr. Sexton for the purpose of inquiring about the payment of his attorneys' fees and his fee arrangements, the Court will <u>not</u> permit Plaintiff to reopen Mr. Sexton's deposition to ask questions related to TU's business operations, performance, or finances.  As noted in Defendant's Opposition, Plaintiff's argument regarding questions about TU finances was limited to Mr. Matejek's deposition.  Plaintiff has not made any substantive argument as to why he should be allowed to reopen Mr. Sexton's deposition to inquire about the business operations, performance, or finances of TU.

In line with the guidance set forth above, Mr. Matejek's deposition will take place in New York, New York, on or before **July 9, 2015**.  Defendant shall pay for the expenses related to the reopening of Mr. Matejek's deposition, subject to the same guidance stated in the Court's ruling on Plaintiff's Issue No. 1.

## C. **PLAINTIFF'S ISSUE NO. 3 - DOCUMENT PRESERVATION**
### 1. **PLAINTIFF'S ARGUMENT**

During his deposition, Plaintiff sought to question Mr. Matejek about his role in the preservation and production of documents when the related <u>Makaeff</u> action was filed, as well as a May 12, 2010, email chain regarding document preservation that he sent to his direct reports. (Doc. No. 86-1 at 12.) Defense counsel objected and directed Mr. Matejek not to answer on the basis that such questions were related to the <u>Makaeff</u> action and were impermissible.  <u>Id.</u>

Plaintiff argues that Defendant's objections were baseless, as Defendant is relying extensively on the production from the <u>Makaeff</u> action to satisfy his discovery obligations in the <u>Cohen</u> action. (Doc. No. 86-1 at 12.)  Therefore, Plaintiff argues,

13CV2519

1    questions regarding the steps taken to preserve documents in <u>Makaeff</u> is a proper topic

2    for discovery in the <u>Cohen</u> action and should be permitted.  <u>Id.</u>

3         Mr. Matejek was identified by TU through its Rule 30(b)(6) designee, Mr.

4    Sexton, as an individual likely responsible for implementing the litigation hold in the

5    <u>Makaeff</u> action.  (Doc. No. 86-1 at 13.)  Plaintiff asserts that, having taken the position

6    that the <u>Makaeff</u> production fulfills his obligations to produce documents in <u>Cohen</u>, it

7    was improper for Defense counsel to instruct Mr. Matejek not to answer questions

8    about his role in the preservation, search, collection, and production of documents

9    during his deposition.  <u>Id.</u> at 14.  Plaintiff argues that these questions will provide a

10   better understanding of what evidence was preserved or destroyed, and whether

11   Plaintiff should pursue further discovery from third parties to address any shortcom-

12   ings.  <u>Id.</u>

### 2. **DEFENDANT'S ARGUMENT**

14        Defendant asserts that Mr. Matejek left TU prior to the filing of the <u>Cohen</u>

15   action.  Defendant believes that questions related to the <u>Makaeff</u> litigation hold are

16   related only to the <u>Makaeff</u> discovery, and discovery in the <u>Makaeff</u> action is closed.

17   Defendant argues that this Court issued an Order in the <u>Makaeff</u> case addressing the

18   litigation hold issue.  (<u>Makaeff</u>, Doc. No. 188.)  Further, Defendant states he has

19   submitted a Declaration about the litigation hold efforts, that Declaration was not

20   challenged, and Plaintiff has not been prohibited from asking questions about the

21   litigation hold in <u>Cohen</u>.

### 3. **APPLICABLE LAW**

23        A party must preserve evidence it knows or should know is relevant to a claim

24   or defense of any party, or that may lead to the discovery of relevant evidence.  <u>Lopez</u>

25   <u>v. Santoyo</u>, 2012 WL 5427957, at *6 (S.D. Cal. Nov. 7, 2012); <u>see also</u> <u>United States</u>

26   <u>v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1001 (9th Cir. 2002).  The duty to preserve

27   arises not only during litigation, but also extends to the period before litigation when

28   a party should reasonably know that evidence may be relevant to anticipated litigation.

13CV2519

1  Patton v. Wal-Mart Stores, Inc., 2013 WL 6158467, at *6 (D.Nev. Nov. 20, 2013)

2  (citing In re Napster, Inc. Copyright Litig., 462 F.Supp.2d 1060, 1067 (N.D. Cal.

3  2006).)  As soon as a potential claim is identified, a litigant is under a duty to preserve

4  evidence which it knows or reasonably should know is relevant to the action, is

5  reasonably calculated to lead to the discovery of admissible evidence, is reasonably

6  likely to be requested during discovery, or is the subject of a pending discovery request.

7  In re Napster, Inc., 462 F.Supp.2d at 1067.

8  **4. DISCUSSION AND RULING**

9  　　　As Plaintiff notes in his Motion to Compel, this Court has previously

10  recognized that discovery regarding the circumstances of a company's litigation hold

11  is not privileged, even if the hold memo itself is privileged.  See Makaeff, Doc. No. 188

12  at 12.  On December 23, 2012, this Court issued a Discovery Order in Makaeff,

13  partially in response to Plaintiffs' claim that Defendants had failed to produce all

14  relevant documents within their possession, custody, and control, and that Defendants'

15  litigation hold was untimely and insufficient.  Id. at 1.  Plaintiffs in Makaeff requested

16  that the Court order Defendants to produce all documents relevant to the litigation hold,

17  including documents sufficient to show: (1) the names and titles of the persons notified

18  of the litigation hold and the dates of such notifications; (2) the types of documents and

19  files (including ESI) subject to the litigation hold; and (3) any efforts to enforce the

20  litigation hold. (Makaeff, Doc. No. 188 at 11-12.)  The Court stated that, "[a]lthough

21  a litigation hold letter is likely not discoverable, particularly where it is shown that the

22  letter includes material protected by the attorney-client privilege or the work product

23  doctrine, the basic details surrounding the litigation hold are not."  Id. at 12; citing

24  Cannata v. Wyndham Worldwide Corp, 2011 WL 3495987, at 2, 3 (D. Nev. Aug. 10,

25  2011).  The Court also noted that, "[a] party may not foreclose any inquiry into the

26  contents of those notices at deposition or through other means."  Id; citing Cannata,

27  2011 WL 3495987, at *2; In re Ebay Seller Antitrust Litig., 2007 WL 2852364, at 2

28  (N.D. Cal. Oct. 2, 2007).  The Court stated that Plaintiffs were "entitled to know 'what

kinds and categories of ESI [the defendant's] employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end.'" Id; citing Cannata, 2011 WL 3495987, at *2. The Court ultimately ordered Defendants to provide Plaintiffs and the Court with a sworn Declaration detailing their litigation hold efforts and directly addressing Plaintiffs three requests. (Makaeff, Doc. No. 188 at 12-13.)

There does not appear to be any dispute that Defendant is relying on documents produced in the Makaeff action to satisfy his discovery obligations in the Cohen action. However, the Court has already ruled that Defendant's litigation hold in the Makaeff action was sufficient. (Doc. No. 188 at 10.) The Court also found that no documents were lost or destroyed. Id. at 10, 12. Plaintiff did not pose any objection to the Declaration provided by Defendant, although the Court noted that if the Declaration did not answer all of Plaintiff's questions, the discussion could be revisited. Id. at 12. Plaintiff did not notify the Court of any issues with the Declaration, and therefore, the issue was not revisited.

Plaintiff is essentially asking the Court to reconsider its prior ruling as to the Makaeff litigation hold. Motions for reconsideration should be granted only in rare circumstances. Defenders of Wildlife v. Browner, 909 F.Supp. 1342, 1351 (D. Ariz. 1995). "Reconsideration is appropriate if the district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in the controlling law." School Dist. No. 1 J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Plaintiff has not presented any newly discovered evidence, nor has Plaintiff asserted that the previous order was wrong or manifestly unjust, or that the law has changed in any way. The only argument asserted by Plaintiff is that because Defendant is relying on Makaeff documents to satisfy his Cohen discovery obligations, Plaintiff should be allowed to depose Mr. Matejek about the litigation hold and preservation efforts. The Court finds that this does not meet the standard for granting a motion for reconsideration.

The Court hereby **DENIES** Plaintiff's Motion to Compel as to the request to re-open the Makaeff discovery regarding the litigation hold and document perseveration.  As the Court stated in a December 3, 2014, Discovery Order in the Makaeff action,

> [f]act discovery ends on December 19, 2014.  The Court will not reopen discovery after it closes, even for a limited purpose.  To allow discovery to blossom again in May 2015 could potentially open a Pandora's Box of additional discovery disputes, causing further delay of the trial.

(Doc. No. 360 at 8.)  Fact discovery closed in the Makaeff action on December 19, 2014, and will not be reopened.

### D. PLAINTIFF'S ISSUE NO. 4 - COMMUNICATIONS RELATED TO USE OF "UNIVERSITY"

#### 1. PLAINTIFF'S ARGUMENT

Plaintiff asserts that in 2005, the New York State Education Department ("NYSED") sent letters to Defendant and Mr. Sexton personally, informing them that TU did not qualify as a university and instructing them to stop unlawfully operating and using that designation.  (Doc. No. 86-1 at 14; citing Exs. 13-14.)  Plaintiff alleges that in the weeks that followed, Defendant and Mr. Sexton used Trump Organization lawyer Jason Greenblatt to create a Delaware Limited Liability Company ("LLC").  Id. Attorney Greenblatt signed the June 24, 2005 Certificate of Formation as an "Authorized Person." Id; citing Ex. 15.  Plaintiff alleges that Defendant and Mr. Sexton did this in order to mislead Mr. Joseph Frey, the NYSED's Associate Commissioner of the Office of Quality Assurance for the Office of Higher Education, into believing that TU had moved its headquarters to Delaware and was no longer operating out of New York. Id; citing Exs. 16-18; Ex. 19 (Frey Tr.) at 66:24- 69:3.  Plaintiff alleges that Mr. Sexton admitted to Trump Organization's Chief Financial Officer ("CFO") Allen Weisselberg, that TU was merely setting up a fictitious office in Delaware.  Id. at 14; citing Ex. 20.  Plaintiff argues that, throughout the class period, TU's headquarters

13CV2519

1  never changed from 40 Wall Street in New York City, and that TU never dissolved the

2  New York LLC as Mr. Sexton had assured Mr. Frey was in progress.

3          Plaintiff states that, on October 8, 2014, the New York Supreme Court granted

4  partial summary judgment in favor of the New York Attorney General ("NYAG"),

5  finding that Defendant, Mr. Sexton, and the successor entity to TU (Trump Entrepre-

6  neur Initiative ("TEI")) had violated N.Y. Educ. Law §§5001-5010 by operating

7  without a license after May 31, 2010, and that "[i]t is undisputed that Mr. Trump never

8  complied with the licensing requirements for TEI despite this [2005] notice."  (Doc.

9  No. 86-1 at 15; citing Ex. 21 (October 8, 2014 Order) at 18, 21-22.)  Due to the

10  expiration of the applicable statute of limitations, the Court did not make any holdings

11  regarding TU's activities prior to May 2010, but Plaintiff argues there is no dispute that

12  it operated as TU in New York without a license throughout the class period, and thus

13  it is apparent that Defendant, Mr. Sexton, and TU violated the same laws throughout

14  the class period.  Id.

15          Plaintiff also argues that the Honorable Gonzalo P. Curiel, United States

16  District Judge, has held in this action that Plaintiff has adduced evidence that

17  Defendant's marketing campaign repeatedly represented "that Trump University was

18  an 'actual university'" (Doc. No. 53 at 7), and that such a misleading representation is

19  sufficient to support Trump's alleged violation of the RICO Act."  (Doc. No. 86-1 at

20  15; citing Doc. No. 21 at 11.)

21          Plaintiff contends that, in depositions and in responses to Requests for

22  Production of Documents ("RFPs"), Defendant has asserted the attorney-client

23  privilege in instructing witnesses not to answer questions and withholding documents

24  related to his unlawful operation and use of the "university" designation for TU.

25  Plaintiff claims that attorney Greenblatt sent or received every NYSED-related email

26  on Defendant's privilege log.  Plaintiff argues that Defendant's assertion of the

27  attorney-client privilege in this context is improper for at least two reasons.  (Doc. No.

28  86-1 at 15.)  First, Plaintiff claims that the crime-fraud exception to the attorney-client

privilege applies here because it is clear that attorney Greenblatt was used to lull the NYSED into believing that Defendant had complied with the order to stop using and perpetuate the unlawful operation of and use of the "university" designation for TU. (Doc. No. 86-1 at 15-16.)  Second, Plaintiff notes that most of the communications that Defendant is withholding were shared with third-party, non-lawyer, Mr. Weisselberg, and thus any privilege was waived.  Id. at 16.

### a. CRIME-FRAUD EXCEPTION

Plaintiff argues that there is no question that attorney Greenblatt was used to create the Delaware LLC, and that the Delaware LLC was used to buttress the false impression that TU had moved its headquarters to Delaware and was no longer operating in New York. (Doc. No. 86-1 at 18.)  Plaintiff alleges that this conduct lulled the NYSED and enabled Defendant to continue operating TU out of New York, that it was unlawful under New York law for TU to continue to operate in New York, and that Defendant's unlawful operating out of New York and use of "university" was sufficiently misleading to support an alleged violation of the RICO Act.  Id.

Plaintiff contends that he has gone far beyond establishing mere reasonable cause to believe that attorney Greenblatt's services were utilized in furtherance of the violations of New York's education laws and the RICO Act.  (Doc. No. 86-1 at 19.) Therefore, Plaintiff argues, he has established that the crime-fraud exception applies to all of the communications involving attorney Greenblatt related to the NYSED and Defendant's unlawful operation and use of "university" for TU.  Id.

### b. COMMUNICATIONS SHARED WITH THIRD PARTY

Plaintiff argues that Mr. Weisselberg, the CFO of Trump Organization, sent or received the majority of the communications on Defendant's privilege log.  (Doc. No. 86-1 at 20.)  Plaintiff asserts that Trump Organization is a separate legal entity from TU, and that Mr. Weisselberg was never employed by or under contract to TU, is not a practicing lawyer, and as a chief financial officer could never be essential to the

13CV2519

1    provision of legal services related to Defendant and Mr. Sexton's unlawful operation

2    of TU in New York.  Id.

3         Plaintiff notes that Defendant failed to prove that NYSED-related questions

4    and communications implicate any actual legal advice, and to the extent Defendant, Mr.

5    Sexton, and TU sought Mr. Weisselberg's advice, no privilege would apply. (Doc. No.

6    86-1 at 20.)  Moreover, Plaintiff argues that Defendant failed to prove that Mr.

7    Weisselberg's role in the provision of unproven legal advice was akin to the integral

8    role of an interpreter.  Id.  Accordingly, Plaintiff argues, as to all communications

9    involving Mr. Weisselberg, TU waived whatever privileges, if any, may have otherwise

10   applied.  Id.

11              **2. DEFENDANT'S ARGUMENT**

12              **a. 2005 DOCUMENTS**

13        Defendant argues that the crime-fraud exception does not apply.  He argues

14   that Plaintiff presents no evidence that attorney Greenblatt's advice or services were

15   obtained for the purpose of furthering an alleged fraud. (Doc. No. 91 at 13.) Defendant

16   argues that it has agreed, and continues to agree, to produce the 2005 documents under

17   a waiver reasonably limited in scope to apply only to the 2005 documents, only to the

18   individuals involved in those communications, only as to the specific time period

19   reflected in the 2005 documents, and only as to the specific issues reflected in those

20   2005 documents. (Doc. No. 91 at 10.)

21        Further, Defendant argues that Plaintiff's counsel knew about the existence of

22   the 2005 documents at least two years ago when TU first identified them on a privilege

23   log in Makaeff. (Doc. No. 91 at 10.) He argues that Plaintiff has not previously sought

24   disclosure of the documents.  Id.

25              **b. 2011 DOCUMENTS**

26        Defendant agrees to waive the attorney-client privilege as to the 2005

27   documents, but argues that now, for the first time, Plaintiff seeks production of an

28   additional set of documents, the 2011 documents, despite never having met and

conferred as to those documents. (Doc. No. 91 at 10.)  Defendant argues that the 2011 documents are privileged and Plaintiff is not entitled to their production.  Id.  Defendant argues that all of the 2011 documents were sent from or to in-house counsel at Trump Organization and are squarely protected by the attorney-client privilege.  Id. at 12. He argues that these documents contain communications between in-house counsel of Trump Organization in connection with its investigation and legal analysis of issues raised in Makaeff and a subpoena from the Attorney General of New York.  Id. Defendant argues that the 2011 documents relate solely to the provision of legal advice and are therefore securely protected from production.  Id.  He argues that Mr. Weisselberg is a proper client representative included in the communications.  Id.

### 3. APPLICABLE LAW

### a. CRIME-FRAUD EXCEPTION

Federal law "recognizes a privilege for communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential." Gomez v. Vernon, 255 F.3d. 1118, 1131 (9th Cir. 2001). This privilege is regarded as "the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  This privilege serves the purpose "to encourage full and frank communication between attorneys and their clients and thereby [to] promote broader public interests in the observance of law and administration of justice."  Id.

"[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976).  The privilege ceases to serve this purpose when a client "consults an attorney for advice that will serve him in the commission of a fraud..." Clark v. United States, 289 U.S. 1, 15 (1933).  In Clark, the United States Supreme Court emphatically stated that a client who seeks legal advice for the commission of a crime or fraud "will have no help from the law.  He must let the truth be told." Id.

13CV2519

Thus, the attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." U.S. v. Zolin, 491 U.S. 554, 562 (1989)(internal quotation omitted). The crime-fraud exception to the attorney-client privilege does not apply to "past wrongdoings." In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996). The exception only applies to communications "made in furtherance of a crime, fraud, or other misconduct" which includes future or ongoing wrongdoings. See Clark, 289 U.S. at 14; Zolin, 491 U.S. at 562.

The party seeking to invoke the crime-fraud exception to the attorney-client privilege must make "a prima facie showing that (1) the client was committing or intending to commit a fraud or crime; and (2) the attorney-client communications were in furtherance of that alleged crime or fraud." In re Chevron Corp., 650 F.3d 276, 291 (3rd Cir. 2011). The first prong is the intent prong which permits the exception "only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the criminal activity." In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2nd Cir.1986). The intent requirement does not apply to the attorney; the attorney need not have any knowledge of the crime or fraud. See In re Grand Jury Proceedings, 87 F.3d at 381. The Ninth Circuit articulated this point by stating, "Inasmuch as today's attorney-client privilege exists for the benefit of the client, not the attorney, it is the client's knowledge and intentions that are of paramount concern to the application of the crime-fraud exception; the attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply." Id.

To overcome the attorney-client privilege, the moving party must make a prima facie case. See Clark, 289 U.S. at 15. In Clark, the Court discussed this standard by noting, "to satisfy the judge that the light should be let in....To drive the [attorney-client] privilege away, there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact." Id.(internal citation

omitted).  The Ninth Circuit has further clarified the requirements of a prima facie case in stating, "the district court must find 'reasonable cause to believe' that the attorney's services were "utilized ... in furtherance of the ongoing unlawful scheme."  In re Grand Jury Proceedings, 87 F.3d at 381 (9th Cir. 1996); citing In re Grand Jury Proceedings, 867 F.2d 539, 541 (9th Cir. 1989).

There is a circuit split with respect to the standard of proof.  There are three prevailing approaches, with the First, Second, Third, Sixth, and Ninth Circuits all relying upon the "reasonable basis" approach.  See In re Grand Jury Proceedings, 417 F.3d 18, 23 (1st Cir. 2005) ("to overcome the privilege that there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud"); United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997); In re Grand Jury, 705 F.3d 133, 153 (3d Cir. 2012); United States v. Collis, 128 F.3d 313, 321 (6th Cir. 1997); In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996).

With respect to the procedure for review, the Supreme Court resolved the issue in Zolin.  See Zolin, 491 U.S. at 557-574.  The Court rejected the independent-evidence requirement and permitted the use of *in camera* review in cases involving the crime-fraud exception.  Id. at 574.  The Court stated that,

> *In camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception. We further hold, however, that before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability. Finally, we hold that the threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.

Id. at 574-575.

### b. COMMUNICATIONS REVEALED TO THIRD PARTIES

Federal Rule of Evidence 501 provides generally that questions of privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. Federal law "recognizes a privilege for communications between client and attorney for

the purpose of obtaining legal advice, provided such communications were intended to be confidential." <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1131 (9th Cir. 2001).  The recognition of a privilege should be determined on a case-by-case basis.  <u>Trammel v. United States</u>, 445 U.S. 40, 47 (1980).

As a general rule, the attorney-client privilege is waived by voluntary disclosure of private communications to third parties.  <u>See</u> <u>In re Grand Jury Proceedings October 12, 1995</u>, 78 F.3d 251, 254 (6th Cir.1996); <u>see also</u> <u>In re Teleglobe Commc'ns Corp.</u>, 493 F.3d 345, 361 (3d Cir. 2007), as amended (Oct. 12, 2007) (holding that "disclosing a communication to a third party unquestionably waives the privilege").  When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised.  <u>In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp)</u>, 348 F.3d 16, 22 (1st Cir. 2003).  It is generally accepted that conduct can serve to waive attorney-client privilege by implication.  <u>Id.</u>

As the Supreme Court has recognized, "[t]he administration of the attorney-client privilege in the case of corporations, however, presents special problems. As an inanimate entity, a corporation must act through agents."  <u>Commodity Futures Trading Comm'n v. Weintraub</u>, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).  "A corporation is entitled to the same treatment as any other 'client'-no more and no less.  If it seeks legal advice from an attorney, and in that relationship confidentially communicates information relating to the advice sought, it may protect itself from disclosure, absent its waiver thereof."  <u>Radiant Burners, Inc. v. Am. Gas Ass'n</u>, 320 F.2d 314, 324 (7th Cir. 1963).  "Communications can, as Supreme Court Standard 503(b)(1) indicates, be privileged if they are between a representative of the client and the client's lawyer."  <u>In re Bieter Co.</u>, 16 F.3d 929, 936 (8th Cir. 1994); <u>see</u> <u>Roe v. Catholic Health Initiatives Colorado</u>, 281 F.R.D. 632 (D. Colo. 2012) ("the presence of a third-party will not destroy the attorney-client privilege if the third-party is the attorney's or client's agent or possesses commonality of interest with the client").

"Privileged persons" include the client, the attorneys, and any of their agents that help facilitate attorney-client communications or the legal representation.  In re Teleglobe Commc'ns Corp., 493 F.3d at 359 (quoting Restatement § 70).

The mere presence of a third party at an attorney-client meeting does not necessarily destroy the privilege.  United States v. Landof, 591 F.2d 36, 39 (9th Cir. 1978).  "As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services."  Miller v. Haulmark Transp. Sys., 104 F.R.D. 442, 445 (E.D. Pa. 1984).  "Where the presence of a third person is indispensable in order for the communication to be made to the attorney, the policy of the privilege will protect the client, that is, his presence is required in order to 'secure the client's subjective freedom of consulta- tion.'"  Himmelfarb v. United States, 175 F.2d  924, 939 (9th Cir. 1949) (quoting 8 Wigmore on Evidence (3rd Ed.), § 2311, p. 602).  When the presence is merely for convenience, the privilege is removed from whatever communications are made.  "Communications made by the client to such a third party in the presence of the attorney are not within the privilege."  Id.

"[T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents."  Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir.1977).

The attorney-client privilege can extend to communications between representatives of the client or between the client and a representative of the client, if the communication was made in confidence for the primary purpose of obtaining legal

advice.  See, e.g., Weatherford v. Bursey, 429 U.S. 545, 554, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (finding that attorney-client communications in the presence of a third-party not the agent of either are generally not protected by privilege).  The penultimate question is whether the third-party communication was made in confidence for the purpose of obtaining legal advice from the lawyer.  Roe v. Catholic Health, 281 F.R.D. at 637.

The third-party communications must be "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."  Cavallaro v. United States, 284 F.3d 236, 247-48 (1st Cir. 2002) (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)).  "[T]he 'necessity' element means more than just useful and convenient."  Id. at 249.  The privilege does not apply if the attorney's ability to represent the client is merely improved, instead, "the involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications."  See id. (The fact that "[accountant] double-checked [lawyers'] legal advice to make sure it was consistent with the accounting records ... is not enough to show that [accountant] was necessary, or at least highly useful, in facilitating [lawyers'] provision of legal advice."); see also United States v. Ackert, 169 F.3d 136, 139 (2d Cir.1999) (Communications found not to be privileged even though investment banker "significantly assisted the attorney in giving his client legal advice about its tax situation").

The third-party communications must be interpretive and serve to translate informative information between the client and the attorney.  Dahl v. Bain Capital Partners, LLC, 714 F. Supp. 2d 225, 227-28 (D. Mass. 2010); see, e.g., Ackert, 169 F.3d at 139-40 ("[Lawyer] was not relying on [accountant] to translate or interpret information given to [lawyer] by his client."); In re G-I Holdings Inc., 218 F.R.D. 428, 434 (D.N.J.2003) (Exception applies only "when the accountant functions as a 'translator' between the client and the attorney"); United States v. Chevron Texaco Corp., 241 F.Supp.2d 1065, 1071 (N.D.Cal.2002) (Privilege does not "extend ... beyond

the situation in which an accountant was interpreting the client's otherwise privileged communications or data in order to enable the attorney to understand those communications or that client data"); <u>Calvin Klein Trademark Trust v. Wachner</u>, 124 F.Supp.2d 207, 209 (S.D.N.Y.2000) (Investment bank "serv[ed] ... an interpretive function" where it advised lawyers "as to what a reasonable business person would consider 'material'" for the purposes of legal disclosures); <u>Comm'r of Revenue v. Comcast Corp.</u>, 453 Mass. 293, 901 N.E.2d 1185, 1198 (2009) ("We agree with the majority of courts that the [exception] applies only when the accountant's role is to clarify or facilitate communications between attorney and client.").

The privilege may also be waived in the corporate context "if the communications are disclosed to employees who did not need access to them." <u>SmithKline Beecham Corp. v. Apotex Corp.</u>, 232 F.R.D. 467, 476 (E.D.Pa. 2005) (citing <u>Baxter Travenol Labs., Inc. v. Abbott Labs.</u>, 1987 WL 12919, *5 (N.D.Ill. 1987)). This waiver applies only "when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company." <u>Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.</u>, 174 F.R.D. 609, 633 (M.D.Pa.1997); <u>Cottillion v. United Ref. Co.</u>, 279 F.R.D. 290, 298 (W.D. Pa. 2011).

It is well established that the privilege applies to communications between corporate counsel and a corporation's employees, made "at the direction of corporate superiors in order to secure legal advice from counsel." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 394, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). It protects communications with in-house counsel as well as outside attorneys. <u>Upjohn</u>, 449 U.S. at 395, 101 S.Ct. at 685. Because the attorney-client privilege only applies to communications made in confidence, a communication loses its protection if made in the presence of third parties, or disseminated beyond the group of corporate employees who have a need to know in the scope of their corporate responsibilities. <u>United States v. Davita, Inc.</u>, 301 F.R.D. 676 (N.D. Ga. 2014); <u>In re Vioxx Prods. Liab. Litig.</u>, 501 F.Supp.2d 789, 796 (E.D. La. 2007); <u>United States v. Davita, Inc.</u>, 301 F.R.D. 676, 682 (N.D. Ga. 2014).

Corporations can claim an attorney-client privilege over their own communications with attorneys, and courts have extended the privilege to communications between a parent corporation and its attorneys which are also communicated to a subsidiary. See Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1184-85 (D.S.C.1974); United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 359 (D.Mass.1950); Ins. Co. of North America v. Superior Court, 108 Cal.App.3d 758, 166 Cal.Rptr. 880 (1980); Roberts v. Carrier Corp., 107 F.R.D. 678, 687 (N.D. Ind. 1985). Thus, if a corporation with a legal interest in an attorney-client communication relays it to another related corporation, the attorney-client privilege is not thereby waived. Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1184-85 (D.S.C.1974). "The third party corporation need not be a party to any anticipated or pending litigation; it may share a community of interest (so as to keep communications privileged) if it shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney." Roberts v. Carrier Corp., 107 F.R.D. 678, 687-88 (N.D. Ind. 1985) (quoting Duplan Corp., 397 F.Supp. at 1172).

The Ninth Circuit has observed in dicta that "communications between employees of a subsidiary corporation and counsel for the parent corporation, like communications between former employees and corporate counsel, would be privileged if the employee possesses information critical to the representation of the parent company and the communications concern matters within the scope of employment." Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona, 881 F.2d 1486, 1493 (9th Cir. 1989). Moreover, the clear implication of this dictum—that a parent corporation and its wholly owned subsidiary should be treated as a single entity for purposes of applying the attorney-client privilege doctrine—has found support in a number of district court decisions applying federal common law privilege rules. See Glidden Co. v. Jandernoa, 173 F.R.D. 459, 472-73 (W.D.Mich 1997); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1184–85 (D.S.C.1974).

13CV2519

## 4. DISCUSSION AND RULING

### a. 2005 DOCUMENTS

The Court agrees with Plaintiff that there does appear to be a basis for the crime-fraud exception to apply to the 2005 documents.  Plaintiff must make a prima facie showing that the client was committing or intending to commit a fraud or crime, and that the attorney-client communications were in furtherance of that alleged crime or fraud.  Plaintiff notes that the New York Supreme Court found that Defendant, Mr. Sexton, and the successor entity to TU violated N.Y. Educ. Law §§ 5001-5010 by operating without a license, and determined it was undisputed that Defendant never complied with the licensing requirements despite the 2005 notice.  (Doc. No. 86-1 at 15.)  Additionally, Plaintiff asserts that Defendant, Mr. Sexton, and TU used attorney Greenblatt to create a Delaware LLC to mislead the NYSED into believing that TU had moved its headquarters to Delaware and was no longer operating out of New York.  (Doc. No. 86-1 at 14.)  Therefore, if Defendant had not proposed a compromise to produce the 2005 documents prior to the Discovery Hearing, the Court would likely Order Defendant to produce the documents for an *in camera* review to determine whether the allegedly privileged attorney-client communications fall within the crime-fraud exception.

However, during a meet and confer session, Defendant offered to produce the documents then-identified by Plaintiff, i.e, only the 2005 Documents.[4]  Defendant still agrees to produce the 2005 documents under a waiver reasonably limited in scope to apply only to the 2005 documents, only to the individuals involved in those communications, only as to the specific time period reflected in the 2005 documents, and only as to the specific issues reflected in those 2005 documents.  As part of the compromise,

---

[4] During the meet and confer, Plaintiff sought production of certain emails exchanged between Michael Sexton, CEO of TU, and Jason Greenblatt, Executive Vice President and General Counsel of Trump Org in 2005, which are labeled with the following Bates numbers: DT-PRIV-00262-00267 (the "2005 documents").

1   Plaintiff would be foreclosed from using the 2005 documents to re-open any prior

2   deposition (taken either in this case or in <u>Makaeff</u>), seek additional discovery, or extend

3   the discovery deadline.

4        As discussed during the Discovery Hearing, the Court finds Defendant's

5   proposed compromise to be reasonable and sufficient.  Defendant is hereby **OR-**

6   **DERED** to produce all documents pursuant to the compromise set forth above on or

7   before **June 12, 2015**.

8   **b. 2011 DOCUMENTS**

9        Plaintiff seeks the documents corresponding to Defendant's privilege log

10  classification for "communications with counsel re: legal advice on entity or naming,"

11  except for the five May 27, 2011 emails on which Mr. Weisselberg was not copied.

12  (Doc. No. 86-1 at 25.)  Plaintiff also requests that Defense counsel not instruct any

13  witness to refuse to answer questions related to the subject matter of these emails.  <u>Id.</u>

14       First, Defendant argues that the parties did not meet and confer about the 2011

15  emails.  Plaintiff did not dispute this contention during the Discovery Hearing.  The

16  parties in this action are well aware that this Court's Chambers Rules require all parties

17  to meet and confer in good faith prior to bringing a dispute to the Court's attention.

18  This Court's Chambers Rules state,

19  > The Court expects strict compliance with the meet and confer requirement.
20  > It is the experience of the Court that the vast majority of disputes can be
    > resolved without the necessity of court intervention by means of this
21  > process **providing** counsel **thoroughly** meet and confer in **good faith** to
    > resolve all disputes.

22  
23  Judge Gallo's Chambers Rule IV(B).  The Court will not entertain this dispute, as

    Plaintiff failed to initiate and engage in a good faith meet and confer session.
24  
25       Second, Plaintiff's substantive motion only addresses the 2005 documents and

26  makes absolutely no mention of the 2011 documents except for one conclusory

27  

28  

27

13CV2519

sentence at the end of Plaintiff's motion.[5]  Plaintiff provided no details about the 2011 documents, and no argument as to why the documents are not privileged.  Plaintiff has failed to provide the Court with any basis at all on which to rule.

Finally, the Court finds that Mr. Weisselberg was the client of Trump Organization for purposes of the 2011 communications, and therefore, the 2011 documents are protected by the attorney-client privilege.  According to Defendant, the 2011 documents reflect communications between in-house counsel of Trump Organization in connection with its investigation and legal analysis of issues raised in Makaeff and a subpoena from the Attorney General of New York.  (Doc. No. 91 at 9, n. 6, 12.)  Defendant argues that the 2011 documents relate solely to the provision of legal advice and are therefore securely protected from production.  (Doc. No. 91 at 12.)  Mr. Weisslberg was the CFO of Trump Organization, and the recipient of a subpoena from the New York Attorney General's Office.

"Privileged persons" include the client, the attorneys, and any of their agents that help facilitate attorney-client communications or the legal representation.  In re Teleglobe Commc'ns Corp., 493 F.3d at 359.  A waiver of the attorney-client privilege applies only "when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company."  Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D.Pa.1997); Cottillion v. United Ref. Co., 279 F.R.D. 290, 298 (W.D. Pa. 2011).  Such is not the case here, as it appears that Mr. Wesiellberg was integral to the legal discussions.  TU was no longer in operation at that time, and the Makaeff action had already been filed.  Defendant has provided a compelling argument that, as CFO of Trump Organization and recipient of a subpoena from the NYAG, Mr. Weisselberg was

---

[5] In his Motion, Plaintiff identified the additional documents he seeks, which are emails exchanged among in-house counsel of Trump Organization in 2011 with a copy to Trump Organization's CFO, Mr. Weisselberg, which documents are labeled with the following Bates numbers: DT-PRIV-00247-00249, DT-PRIV-00253-00260 (the "2011 Documents").

13CV2519

1   included in the communications with Trump Organization's in-house counsel for the
2   purpose of obtaining legal advice.  The Court finds that Mr. Weisselberg is a proper
3   client representative included in the communications.

4          Therefore, the Court finds that Defendant has not waived any claims of
5   attorney-client privilege with respect to the 2011 documents that included Mr.
6   Weisselberg.  For all of the above-stated reasons, the Court hereby **DENIES** Plaintiff's
7   Motion to Compel as to the 2011 documents.

8          **E. PLAINTIFF'S ISSUE NO. 5 - TRUMP ORGANIZATION**
                **SUBPOENAS**
9

10                **1. PLAINTIFF'S ARGUMENT**

11         On May 20, 2015, Plaintiff issued a subpoena duces tecum to third party, the
12   Trump Organization.   Defendant objects that the documents have already been
13   produced in the Makaeff action and, in some instances, the Cohen action from both TU
14   and Trump Organization.  However, Plaintiff does not have the ability to discern from
15   which entity these documents came.  Plaintiff believes the location of the files and who
16   had the files, either TU or Trump Organization, is relevant and discoverable informa-
17   tion.

18         Plaintiff asserts that Defendant Trump's knowledge about certain facts in this
19   litigation is disputed, and thus, whether his agents had some of those documents is
20   relevant to this litigation.  Plaintiff claims that Defendant simply said that someone
21   produced this document, but Plaintiff does not know who or where it came from.
22   Plaintiff argues that this response fails to satisfy Defendant's discovery obligations
23   because of the relevance of who had what document and when they had that document.

24                **2. DEFENDANT'S ARGUMENT**

25         Defendant argues that these documents have already been produced, and that
26   the subpoena is overly burdensome, overbroad, and calls for privileged information.
27   He asserts that the parties had a significant meet and confer session about this and
28   Defendant provided detailed information about what searches were performed, whose

13CV2519

documents were searched, and the search terms used.  Defendant is unwilling to make the effort to re-search for those documents, as they have already been produced. Defendant proposed that Plaintiff identify a few specific documents, and Defendant will try to research which entity was the source of documents.  But Defendant refuses to identify all documents, especially given all the information that Defendant already provided to Plaintiff about the search and how it was performed.

Defendant argues that for Trump Organization to determine the exact Bates numbers for these documents within the over 438,000 pages of production, or to determine what else in the production may have come from Trump Organization's files, is a burden the Court simply should not impose on Trump Organization when it is clear its records were included within the prior searches and productions.  (Doc. No. 91 at 17.)

## 3. <u>APPLICABLE LAW</u>

Rule 45 governs subpoenas duces tecum for the production of documents with or without the taking of a deposition and allows parties to compel a non-party to produce documents.  <u>Forsythe v. Brown</u>, 281 F.R.D. 557, 587 (D. Nev. 2012).  The producing party is obligated to either produce the documents as they are kept in the ordinary course of business, or organize and label them to correspond to the categories in the demand. Fed. R. Civ. P. 45(e)(1)(A).  If the subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms. Fed. R. Civ. P. 45(e)(1)(B).  The producing party does not need to produce the same electronically stored information in more than one form.  Fed. R. Civ. P. 45(e)(1)(C).  Additionally, the producing party does not need to provide discovery of electronically stored information from sources they identify as not readily accessible due to undue burden or cost.  On a motion to compel discovery, the person responding must show that the information is not readily available because of undue burden or cost.  If the showing is made, the court may nonetheless order discovery if the requesting

party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may also specify the conditions for discovery. Fed. R. Civ. P. 45(e)(1)(D).

The producing party must take reasonable steps to comply with the subpoenas and may not prevent the requesting party from receiving documents to which they are entitled. Forsythe, 281 F.R.D. at 589. The producing party must produce all documents within the scope of the subpoena. The producing party cannot only produce documents they deem relevant. Id. The producing party must provide information for purposes of establishing the integrity and authenticity. A document index, while it may be attorney work product, can be fact-based work product due to the sheer volume of documents. See Washington Bancorporation v. Said, 145 F.R.D. 274 (D.D.C. 1992) (holding a document index is factual because its size made it impossible to glean any litigation strategy from the index); Miller v. Holzmann, 238 F.R.D. 30 (D.D.C.2006) (following Washington Bancorporation and concluding that "the number of documents that were scanned, approximately 20,000, is so large that it would be difficult to conceive of [the defendant] gleaning plaintiffs' trial strategy solely by virtue of plaintiffs' disclosing the identity of the documents." Id. at 32-33 (citing In re Shell Oil Refinery, 125 F.R.D. 132 (E.D.La.1989) ("[I]t is highly unlikely that Shell will be able to discern the PLC's 'theory of the case' or thought processes simply by knowing which 65,000 documents out of 660,000 documents have been selected for copying.")). Therefore, the process of compilation of large volumes of documents should be disclosed if there is a showing of substantial need or undue hardship.

Several courts have held that emails should be produced along with their attachments. See, e.g., PSEG Power N.Y., Inc. v. Alberici Constructors, Inc., No. 1:05-cv-657, 2007 WL 2687670, at *12 (N.D.N.Y. Sept. 7, 2007) ("Without question, attachments should have been produced with their corresponding emails such as are kept in the usual course of business."); CP Solutions PTE, Ltd. v. Gen. Elec. Co., No. 3:04cv2150, 2006 WL 1272615, at *4 (D.Conn. Feb. 6, 2006) ("Defendants chose to provide the documents in the manner in which they were kept in the ordinary course of

13CV2519

business. Attachments should have been produced with their corresponding e-mails."); see also Miller v. IBM, No. C 02-2118, 2006 WL 995160, at *7 (N.D.Cal. Apr. 14, 2006) (ordering the production of "relevant emails with the attachments ... or ... specific references (i.e., date of production, Bates and/or page numbers, and labels) which enable IBM to identify which attachments belong to which emails"); In re Denture Cream Products Liab. Litig., 292 F.R.D. 120, 125 (D.D.C. 2013).

Further, the producing party must produce documents in a manner that allows them to be identified.  In re Denture Cream, 292 F.R.D. at 125 ("Given that there is evidence in the documents produced to date which shows that certain other documents have been wrongfully withheld, and given also the failure to produce emails in a manner that allows the defendants to match the emails with their attachments, the Court finds that the Sarfez Entities' document production to date does not comply with the requirements of Rule 45"). Further, underlying data and non-privileged correspondence is relevant within the meaning of Rule 45.  In re Denture Cream Products Liab. Litig., 292 F.R.D. 120, 124 (D.D.C. 2013) See Barnes v. Dist. of Columbia, 289 F.R.D. 1, 19-24 (D.D.C.2012) (compelling the production of data and information associated with reports because, "[i]n order for the [requesting party] to understand fully the ... [r]eports, they need to have all the underlying data and information on how" the reports were prepared).  See Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L., No. 04 C 3109, 2006 WL 665005, at*3 (N.D. Ill. Mar. 8, 2006) (compelling production of metadata which "will allow [the receiving party] to piece together the chronology of events and figure out, among other things, who received what information and when").

## 4. DISCUSSION AND RULING

The Court agrees with Plaintiff that if Defendant and TU are claiming that thousands of pages of documents produced in Makaeff satisfy their production obligations in Cohen, and there is no way to distinguish who produced what document, then Defendant shall identify where the documents came from, including what individual or entity produced each document, and when.  Knowing the source of the

13CV2519

disclosed documents is just as important as the content of the documents.  Plaintiff argues that of the 6,000 potentially responsive documents, there is no way to determine the source.  Defendant acknowledges as much, arguing that it is too burdensome to go back now and determine the source.

The Court is not sympathetic to Defendant's objections, as Defendant should have identified the source of these documents when they were originally produced.  Plaintiff should not be left to guess which documents came from TU, and which documents came from Trump Organization.

Defendant is hereby **ORDERED** to identify all previously disclosed documents of which Trump Organization was the source on or before **June 12, 2015**. If a PDF document includes a full email address in both the "to" and "from" fields, making it clear the source of the document, then Defendant need not identify the source of the document.  However, the Court will not allow Defendant to simply provide Plaintiff with an index of individuals to then match up with the emails.[6/]  Defendant shall produce all responsive documents to the subpoena duces tecum.  If the documents previously produced by Defendant do not fully respond to Plaintiff's subpoena duces tecum, Defendant shall also produce all previously undisclosed and responsive documents on or before **June 12, 2015**.

Additionally, Plaintiff has telegraphed that the separation of attachments from emails will be the subject of upcoming litigation.  The Court is not interested in entertaining additional litigation, as the fact discovery deadline is July 2, 2015.  In accordance with the Court's Order that Defendant identify the source of all Trump Organization documents that have been produced, Defendant shall also identify the attachments that correspond to each email produced by Trump Organization.

---

[6/] During the Discovery Hearing, Plaintiff provided the Court with an example of an email produced by Defendant (Bates stamp TU 170161).  The "to" and "from" fields of the email reflected names, but no email addresses.  The source of the email was unclear from the face of the document.

13CV2519

Defendant shall provide the email attachment information to Plaintiff on or before **June 12, 2015**.

**III. CONCLUSION**

In sum, the Court hereby **ORDERS** the following:

1.      The Court **ORDERS** that the depositions of Mr. Matejek and Mr. Sexton be reopened to fully explore the questions foreclosed by Defendant's objection to the source of payment for the witnesses' attorneys' fees.  The depositions of Mr. Matejek and Mr. Sexton shall be reopened for a maximum of **two hours each** to fully explore this line of questioning, as well as other areas that Plaintiff believes were affected by Defendant's instructions not to answer.  There will be no restrictions or limitations on Plaintiff's ability to explore other areas during the two designated hours of re-opened depositions of Mr. Matejek and Mr. Sexton.

2.      The Court **ORDERS** that the deposition of Mr. Matejek be reopened for the purpose of inquiring about TU's business operations, performance, or finances.  Mr. Matejek's deposition shall be reopened for a maximum of two hours to explore questions related to the business operations, performance, and finances of TU.

3.      Although the Court has granted Plaintiff's request to reopen the deposition of Mr. Sexton for the purpose of inquiring about the payment of his attorneys' fees and his fee arrangements, the Court will <u>not</u> permit Plaintiff to reopen Mr. Sexton's deposition to ask questions related to TU's business operations, performance, or finances.

4.      The depositions of Mr. Matejek and Mr. Sexton shall take place on or before **July 9, 2015.**  No further extensions will be granted.  The fact discovery deadline will be extended solely for purposes of re-opening the depositions of Mr. Matejek and Mr. Sexton in compliance with this Order.[7/]

---

[7/] On May 14, 2015, the Court granted the parties' Joint Motion to extend the fact discovery cutoff by one week (until July 9, 2015) for the sole purpose of taking

(continued...)

13CV2519

5.      The re-opened depositions of Mr. Matejek and Mr. Sexton shall be held in New York, New York.  Defendant will not be responsible for payment of Plaintiff's counsel's airfare or lodging, <u>unless</u> these depositions require an extended stay by Plaintiff.  If so, Defendant shall for Plaintiff's counsel's extended stay in New York, New York.  If Plaintiff's counsel's airfare needs to be changed, any added costs will be paid for by Defendant.

6.      The Court **DENIES** Plaintiff's request to re-open the <u>Makaeff</u> discovery regarding the litigation hold and document perseveration.

7.      Defendant shall produce the 2005 documents under a waiver reasonably limited in scope to apply only to the 2005 documents, only to the individuals involved in those communications, only as to the specific time period reflected in the 2005 documents, and only as to the specific issues reflected in those 2005 documents. Plaintiff is foreclosed from using the 2005 documents to re-open any prior deposition (taken either in this case or in <u>Makaeff</u>), seek additional discovery, or extend the discovery deadline.  Defendant is **ORDERED** to produce all documents pursuant to this compromise on or before **June 12, 2015**.

8.      The Court **DENIES** Plaintiff's Motion to Compel as to the 2011 documents.

9.      Defendant is **ORDERED** to identify all previously disclosed documents of which Trump Organization was the source on or before **June 12, 2015**.  If a PDF document includes a full email address in the "to" and "from" fields, making it clear the source of the document, then Defendant need not identify the source.  However, the Court will not allow Defendant to simply provide Plaintiff with an index of individuals to then match up with the emails.[8]  Defendant shall produce all responsive documents

---

[7](...continued)
Defendant's deposition.  (Doc. No. 74.)

[8] During the Discovery Hearing, Plaintiff provided the Court with an example of an
(continued...)

13CV2519

1  to the subpoena duces tecum.  If the documents previously produced by Defendant do

2  not fully respond to Plaintiff's subpoena duces tecum, Defendant shall also produce all

3  previously undisclosed and responsive documents on or before **June 12, 2015**.

4  Defendant shall also identify the attachments that correspond to each email produced

5  by Trump Organization.  Defendant shall provide the email attachment information to

6  Plaintiff on or before **June 12, 2015**.

7  IT IS SO ORDERED.

8  DATED:  June 9, 2015

9

10

11  Hon. William V. Gallo
   U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  [8]/(...continued)
   email produced by Defendant (Bates stamp TU 170161).  The "to" and "from" fields

28  of the email reflected names, but no email addresses.  The source of the email was
   unclear from the face of the document.

13CV2519