1
2
3
4
5
6
7
8
9
10        **UNITED STATES DISTRICT COURT**
11      **SOUTHERN DISTRICT OF CALIFORNIA**

| 12 ART COHEN, Individually and on Behalf of All Others Similarly Situated, | CASE NO. 13-cv-2519-GPC-WVG<br>Related Case: 10-cv-0940-GPC-WVG |
|---|---|
| 14                        Plaintiff,<br>15    v. | **ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S MAY 13, 2015 ORDER** |
| 17 DONALD J. TRUMP, | [ECF No. 76] |
| 18                     Defendant. | |

20      Before the Court is Plaintiff's objection to the Magistrate Judge's May 13, 2015

21 discovery order (ECF No. 73).    (ECF No. 76.)    Defendant Donald J. Trump

22 ("Defendant" or "Trump") filed an opposition of May 29, 2015.  (ECF No. 84.)  On

23 June 3, 2015, Plaintiff filed a reply.  (ECF No. 87.)  Based on the reasoning below, the

24 Court sustains in part and overrules in part Plaintiff's objections to the Magistrate

25 Judge's discovery order.

26 ///

27 ///

28 ///

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 72(a), aggrieved parties may file objections to the rulings of a magistrate judge in non-dispositive matters within fourteen days.  In reviewing a magistrate judge's order, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002).  Consequently, discretionary orders, such as those denying discovery, "will be overturned only if the district court is left with the definite and firm conviction that a mistake has been made." *Ctr. for Biological Diversity v. Fed. Highway Admin.*, 290 F. Supp. 2d 1175, 1199–1200 (S.D. Cal. 2003) (*quoting Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997)).

**DISCUSSION**

Plaintiff objects to the Magistrate Judge's ruling that Plaintiff shall not be permitted to question Defendant or any other deponent about the capital contributions Defendant and others made directly or indirectly to Trump University, or the capital contributions received directly or indirectly from Trump University, because such information is irrelevant.  (ECF No. 73 at 3, 12.)

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.*  Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable. *Id.*  There is no requirement that the information sought directly relate to a particular issue in the case.  Rather, relevance encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  District courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C); *see also  Crawford–El v. Britton*, 523 U.S. 574, 598 (1998) (trial court has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").  Limits should be imposed where the burden or expense outweighs the likely benefits.  *Id.*

Plaintiff disputes the Magistrate Judge's holding that evidence of profits made by a fraud defendant through his alleged scheme are irrelevant and non-discoverable. (ECF No. 76 at 1.)  Specifically, he objects to the Magistrate Judge's order on the grounds that the Magistrate Judge (1) did not acknowledge the broad scope of discovery, (b) did not put the burden on Defendant to justify his resistance to the discovery Plaintiff requested, (3) did not reject Plaintiff's argument that the evidence sought is relevant to showing Trump's control over Trump University, and (4) failed to address three additional reasons Plaintiff proffered as to why the evidence is relevant—namely, motive, bias, and piercing the corporate veil.  (*Id.* at 2-3.)  Plaintiff asks this Court to "permit him to obtain complete information about Trump and his partners' direct and indirect contributions into, and benefits from, Trump University, including all related documents and all related testimony from all past and future deponents in this case."  (ECF No. 76 at 1.)

## A.    Instructions Not to Respond

This discovery dispute arose because Defendant's counsel refused to allow deponents to answer any questions concerning money or benefits Defendant and others contributed to, or received from, Trump University, either directly or indirectly (and because Plaintiff expressed its intent to ask similar questions at future depositions). (ECF No. 73 at 1-2.)  As the Magistrate Judge recently acknowledged in this case,

> There are few situations where an instruction not to answer a deposition question is appropriate. *Brincko v. Rio Props., Inc.*, 278 F.R.D. 576, 581 (D.Nev. 2011). A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). Fed R. Civ. P. 30(c)(2)."

(ECF No 93 at 4-5.)[1]   It appears Defendant's counsel instructed deponents not to answer in reliance on the Magistrate Judge's February 13, 2012 (ECF No. 93) and June 26, 2012 (ECF No. 111) rulings denying discovery of similar information in *Makaeff v. Trump University, LLC, et al.*, Case. No. 10cv940-GPC-WVG ("the Makaeff case"). (*See* ECF No. 73 at 3 (explaining that Defendant argued the inquires were impermissible because the Magistrate Judge previously ruled in the *Makaeff* case (ECF Nos. 93 & 111) that such financial information was irrelevant and, thus, Plaintiff's questions were an attempted end-run around the Court's orders in *Makaeff*).)   This was not a valid grounds for instructing witnesses not to answer.   Though the parties have shared discovery between this case and the *Makaeff* case, the cases are not consolidated such that the Magistrate Judge's ruling in *Makaeff* was binding in this case.   The Magistrate Judge acknowledges as much in the challenged May 13, 2015 order in this case by expressly "extend[ing] its ruling in the <u>Makaeff</u> case to the instant case." (ECF No. 73 at 6.)   Thus, the, burden on the motion before the Magistrate Judge should have been on Defendant to explain why his counsel instructed witnesses not to answer and why he should not have to disclose financial information.   *See* Fed R. Civ. P. 30(c)(2).

Plaintiff argues that the Magistrate Judge instead put the onus on Plaintiff. The Magistrate Judge's order states that "[s]imply because Defendant is a public figure and regularly discusses his wealth does not negate any right that he has to object to

---

[1] Rule 30(d)(3)(A) of the Federal Rules of Civil Procedure states that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A).   It does not appear that Defendant's counsel based their instruction not to answer on this rule and Defendant makes no such argument in the briefing before this Court.

disclosing information about money that he, or others, have put into or taken out of Trump University." (ECF No. 73 at 4.) There is no explanation as to the legal basis for such an objection and no indication that Defendant made a sufficient showing to justify an instruction not to answer on these grounds. The order then goes on to distinguish an unpublished case cited by Plaintiff refuting the existence of a federal right to financial privacy, but again, it was Defendant's burden to support his claim that such a right existed in the first place, and there is no indication in the order that Defendant met his burden.

In its opposition brief before this Court, Defendant cites *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012), which notes a Supreme Court decision discussing a constitutional right of privacy in personal information. But both cases involve confidential *medical* information. Moreover, *Stallworth* goes on to state that "[t]his right, however, is not absolute and . . . is subject to a balancing test."[2] Defendant did not address this balancing test. Defendant also cites *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975), wherein the Ninth Circuit affirmed a district court's order quashing a subpoena for tax returns based on the public policy of encouraging taxpayers to file complete and accurate returns, but noted that "[t]ax returns do not enjoy an absolute privilege from discovery." Neither of these cases support a finding that a broad federal right to financial privacy exists that bars discovery regarding any financial transactions of a defendant accused of defrauding large numbers of people. Further, Defendant has not explained, and the Magistrate Judge did not clarify, why Trump's financial information would not adequately be protected by the protective order. (*See* ECF No. 73 at 4.)

---

[2] "Relevant factors to be considered in this balancing test include the type of record requested, the information it does or might contain, the potential for harm in any subsequent non-consensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Stallworth*, 288 F.R.D. at 444 (*citing Doe v. Attorney General,* 941 F.2d 780, 796 (9th Cir.1991).

While the Magistrate Judge did not make clear that the burden fell on Defendant to initially justify his counsel's instructions not the answer, the Magistrate Judge did, in fact, base his order on arguments made by Defendant.  The Court now reviews those grounds.  In arguing this issue before the Magistrate Judge, Defendant relied on the Magistrate Judge's prior orders in the *Makaeff* case (ECF Nos. 93 & 111) and his argument that these financial questions are irrelevant to Plaintiff's civil RICO action. (ECF No. 73 at 3.)

In discussing his prior rulings in the *Makaeff* case, the Magistrate Judge first cited his February 13, 2012 order, wherein the Magistrate Judge held:

> Whether [Donald] Trump received money from Trump University, or the amount of money he received, will not provide information on the extent of Trump's personal involvement in running Trump University. An absentee shareholder or owner could just as easily receive compensation without any participation.

(ECF No. 73 at 3 (citing Makaeff, Doc. No. 93 at 14.)) The argument about an absentee shareholder is generally true, however, as the Magistrate Judge highlights, Trump has already admitted in response to Defendant's Interrogatory No. 10 to having had "significant involvement with both the operation and overall business strategy of Trump University." (ECF No. 73 at 6.)  And, while the Magistrate Judge opines that Plaintiff does not need Trump's financial information to show Trump's level of involvement in running the organization when he already has better evidence (Trump's admission), one somewhat vague interrogatory response does not substitute for more detailed information showing the level of day-to-day transactions Defendant was involved in. Cumulative evidence is not irrelevant evidence.[3]  The scope of discovery is broad, authorizing discovery of any nonprivileged material relevant to any claim or defense.  Fed. R. Civ. P. 26(b)(1).  Under the RICO statue, Plaintiff must prove that

---

[3] Moreover, while the court may, on its own motion, limit discovery if the requested discovery is "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(I), there is no indication in the Magistrate Judge's order that he found the financial information to be "unreasonably" cumulative of other discovery.

1    Trump "conduct[ed] or participate[ed], directly or indirectly, in the conduct of such

2    enterprise's affairs through a pattern of racketeering activity or collection of unlawful

3    debt." 18 U.S.C.A. § 1962(c).  In his complaint, Plaintiff alleged that Trump exercised

4    substantial control over Trump University, that Trump provided the operating capital,

5    that Trump participated in operations and management of Trump University, that

6    Trump knowingly and willfully conducted and participated in Trump University, and

7    made money from Trump University.  (ECF No. 1 ¶¶ 64, 67, 70, 81, 86.)  Thus,

8    Trump's payments to, and receipt of funds from, Trump University would be relevant

9    to supporting Plaintiffs claims.

10          The Magistrate Judge also cited his June 26, 2012 ruling:

11          Finally, on the first page of Plaintiffs' Second Amended Complaint,
            Plaintiffs themselves refer to Defendant Trump as a "billionaire land
12          mogul." (Doc. No. 41 at 2.) Defendant Trump's financial wherewithal
            cannot seriously be in question by Plaintiffs. If Plaintiffs truly believe that
13          Defendant Trump's net worth information is necessary to this litigation,
            there are other, less burdensome avenues available to them to obtain the
14          information. As the Court noted in its February Order, "Defendant Donald
            Trump's net worth is publicly-available information and can be obtained
15          through a simple Google search, which reveals sources for the
            information." (Doc. No. 93 at 13.)
16

17    (Makaeff, Doc. No. 111 at 3-4.)  In this case, Plaintiffs seeks more than just a figure

18    of Trump's net worth.  Moreover, the Court finds it is not fair to say that Trump's net

19    worth is equally available to Plaintiff from publicly-available sources.  Publicly-

20    available figures of Trump's wealth have been the subject of wild speculation and

21    range anywhere from $4 to $9 billion.  Simply stated, Plaintiffs are entitled to answers

22    made under penalty of perjury.

23          Next, Defendant argued, and the Magistrate Judge agreed, that evidence of an

24    economic motive is irrelevant in a RICO action.  (ECF No. 73 at 5-6.)  The Magistrate

25    Judge is correct that in *Nat'l Org. Of Women v. Scheidler*, 510 U.S. 249, 252 (1994),

26    the Court stated: "[w]e granted certiorari to determine whether RICO requires proof

27    that either the racketeering enterprise or the predicate acts of racketeering were

28    motivated by an economic purpose. We hold that RICO requires no such economic

motive."  However, the Court does not read the Supreme Court's holding that an economic motive is not required, as implying that a evidence showing that one exists is, therefore, *per se* irrelevant.

Though district courts have broad discretion to determine relevancy for discovery purposes, *see Hallett*, 296 F.3d at 751, and also to limit discovery where its burden outweighs its likely benefit,  Fed. R. Civ. P. 26(b)(2)(C), the Court finds the Magistrate Judge's conclusions that Defendant's financial information is *per se* irrelevant to this case, that one interrogatory response provides a better showing of control, and that the information is obtainable from a less burdensome public source to be contrary to law.  Finally, the Court finds no evidence on the record before it that the protective order would not adequately protect Trump's confidential, financial information.

**B.    Plaintiff's Arguments**

Next, the Court addresses the argument that the Magistrate Judge erred by not addressing the motive, bias, or piercing arguments Plaintiff raised in the instant action.

Plaintiff argues that a showing that Trump invested millions of dollars in a fraudulent scheme and took millions more in profits from that scheme is relevant to Trump's motive or intent to defraud.  (ECF No. 76 at 1, 6.)  While the Supreme Court made clear in *Nat'l Org. Of Women* that an economic motive is not a required element of a RICO claim, Plaintiff correctly points out that motive is not an element of any offense, yet courts routinely admit evidence of motive to prove a range of offenses. (ECF No. 76 at 3.)  In *United States v. Reyes*, 660 F.3d 454, 463 (9th Cir. 2011), the Ninth Circuit upheld the district court's decision to admit at trial evidence that the defendant had made money on a fraudulent scheme involving backdated stock options, explaining: "[t]he district court permitted the introduction of the Options Gains Evidence because it related to motive, knowledge, and intent, and because it demonstrated that Reyes made money in the backdating scheme."  The court expressly acknowledged that "the Government was allowed to introduce evidence about Reyes's

motivation for his involvement in the backdating scheme, his scienter, even if such evidence is generally not sufficient, standing alone, to prove intent to defraud." *Reyes*, 660 F.3d at 464 (noting that the district court did forbid introduction of the total amount of money Reyes made ($500 million) only out of concern that the amount was so high as to be unduly prejudicial). The rationale offered for doing so was that this "relevant and not unfairly prejudicial evidence related to Reyes's motive" and "permitted the jury to draw a reasonable inference that he knew what he was doing, and how the scheme operated to his benefit." *Id.* The Court finds the same is true here.[4] Moreover, *Reyes* found motive evidence to be *admissible at trial*. At issue here is simply what evidence is *discoverable* and the scope of discovery extends beyond admissible evidence. Fed. R. Civ. P. 26(b)(1). The Court finds that financial evidence showing Trump's motive is relevant and discoverable.

Plaintiff also argues that evidence of Trump's financial gain is relevant to show bias. (ECF No. 76 at 7.) The Supreme Court has explained bias as follows:

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*United States v. Abel*, 469 U.S. 45, 52 (1984). The Court finds that the amount of money Trump made from Trump University and the extent to which he controlled decisions about how the school was run and when distributions were made to him bear on Trump's self-interest and represents evidence of possible bias. The Court, therefore, finds financial evidence showing Trump's potential bias is relevant and discoverable.

---

[4] Defendant argues that what must be shown is intent at beginning of the enterprise, so Trump's ultimate profit is irrelevant. (ECF No. 84 at 4.) However, Defendant provides no case citation for this proposition and *Reyes* suggests otherwise. Further, Plaintiff seeks testimony regarding financial transactions throughout the course of the enterprise, not simply a single figure of Trump's total profits.

1    Finally, Plaintiff argues that evidence of the money Trump invested in Trump
2  University through shell entities and evidence of what he personally received is
3  relevant to piercing the corporate veil. (ECF No. 76 at 7-8.) While Plaintiff points to
4  evidence in this case that Trump invested in Trump University through two LLCs, but
5  then had payments made out directly to him—which suggests some piercing
6  issues—Plaintiff has not sufficiently articulated how this is relevant in a case where
7  Trump is a defendant in his individual capacity. The Court, therefore, finds that this
8  argument fails.

9  **C.    Trump's Partners' Financial Information and Other Discovery**

10    The relief Plaintiff seeks is somewhat of a moving target throughout his
11  objection. At certain points, Plaintiff also requests discovery of contributions made,
12  and benefits received, by Trumps' partners. (ECF No. 76 at 1; ECF No. 87 at 7.)
13  However, Plaintiff rarely mentions these unnamed individuals in his argument and does
14  not explain why discovery of these non-parties' financial information is warranted.
15  The Court, therefore, OVERRULES Plaintiff's objection as to "Trump's partners."

16    Plaintiff also seeks "complete information" about Trump's contributions into,
17  and benefits from, Trump University. (*Id.*) However, the Court finds that the
18  Magistrate Judge's May 13, 2015 order was limited to appropriate areas of inquiry
19  during depositions and this Court's order is thus limited in scope as well. This Court's
20  order shall not be construed as allowing any further written or document discovery or
21  as authorizing any further discovery of any kind in the *Makaeff* case. Thus, to the
22  extent Plaintiff seeks anything other than permission to question Defendant or any
23  other deponent about the capital contributions Defendant made directly or indirectly
24  to Trump University, or the capital contributions he received directly or indirectly from
25  Trump University, Plaintiff's objection is OVERRULED.

26  ///
27  ///
28  ///

**CONCLUSION**

In sum, the Court finds the Magistrate Judge's order contrary to law in that questioning regarding the capital contributions Defendant made directly or indirectly to Trump University, or the capital contributions he received directly or indirectly from Trump University is relevant to showing Defendant's motive and bias, is not equally-available from other sources, and is not covered by a federal right to privacy. The Court, therefore, **SUSTAINS** Plaintiff's objection. To the extent Plaintiff seeks information related to Trump's partners' contributions into, and benefits from, Trump University, the Court finds that Plaintiff has failed to make a sufficient showing as to these non-party defendants and, therefore, **OVERRULES** Plaintiff's objection. The Court also **OVERRULES** Plaintiff's objection to the extent he seeks an order allowing any further written or document discovery or authorizing any further discovery of any kind in the *Makaeff* case.

Plaintiff shall be allowed to reopen any depositions where Defendant's counsel instructed a witness not to answer financial questions regarding Trump and Defendant shall bear the cost of said depositions. However, Plaintiff's questioning shall be limited in accordance with this order and shall not exceed two hours for any reopened deposition. The fact discovery cut-off date shall be extended to **August 10, 2015** for the limited purpose of completing these depositions.

**IT IS SO ORDERED.**

DATED:  June 30, 2015

HON. GONZALO P. CURIEL
United States District Judge