UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, | Civil No. 13-CV-2519-GPC (WVG) |
| Plaintiff, | ORDER RULING ON JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTES |
| v. | |
| DONALD J. TRUMP, | |
| Defendant. | |

## I. **BACKGROUND**

On July 8, 2015, counsel for all parties notified the Court of three discovery disputes. On July 9, 2015, counsel notified the Court of a fourth discovery dispute. On July 10, 2015, at 8:00 a.m., the Court held a telephonic Discovery Conference with counsel for all parties. Ms. Rachel Jensen, Mr. Daniel Pfefferbaum, Ms. Maureen Mueller, and Ms. Amber Eck participated on behalf of Plaintiff Art Cohen ("Plaintiff"), and Ms. Nancy Stagg and Mr. Benjamin Morris participated on behalf of Defendant Donald J. Trump ("Defendant").

On July 15, 2015, the Court issued an Order Following Discovery Conference. (Doc. No. 106.) In its Order, the Court resolved two disputes and ordered the parties to file a Joint Statement for the remaining two disputes involving Defendant's privilege

13CV2519

log entries and Defendant's contributions to and from Trump University, LLC ("TU"). Id. On July 16, 2015, the parties lodged a Joint Statement for Determination of Discovery Disputes, along with numerous exhibits.

## II. PRIVILEGE LOG ENTRIES

### A. PLAINTIFF'S ARGUMENT

#### 1. DEPOSITION TESTIMONY CONTRADICTS DEFENDANT'S ARGUMENTS

Plaintiff seeks documents that correspond to privilege log entries related to Mr. Jason Greenblatt, General Counsel of Trump Organization ("Trump Org"), and Mr. Allen Weisselberg, Chief Financial Officer ("CFO") of Trump Org. On June 2, 2015, Plaintiff filed a Motion to Compel, among other discovery, emails that Defendant withheld from 2011 concerning TU's name (the "2011 Emails"). (Doc. No. 86.) Mr. Greenblatt was included on every withheld email, and Mr. Weisselberg was included on most of the withheld emails. Also included on many of the 2011 Emails was Mr. George Sorial, Executive Vice President ("EVP") and Counsel for Trump Org. Other withheld emails were between Mr. Greenblatt and Mr. Bradley Cox, Mr. Greenblatt's "former assistant/paralegal/legal development associate" on the transactional (not litigation) side.

During a June 5, 2015, Discovery Hearing before this Court on Plaintiff's Motion to Compel, Defendant made representations about the roles of Mr. Greenblatt and Mr. Weisselberg in the email communications from both 2005 (the "2005 Emails") and the 2011 Emails. On June 9, 2015, the Court denied Plaintiff's Motion to Compel production of the 2011 Emails.[1] (Doc. No. 93.)

On June 24 and June 30, 2015, Plaintiff deposed Mr. Weisselberg and Mr. Greenblatt, respectively. Plaintiff contends that both witnesses flatly contradicted Defendant's statements by confirming that they played no role in providing, receiving,

_____

[1] The Court ordered Defendant to produce the 2005 Emails pursuant to a compromise that Defendant proposed prior to the filing of Plaintiff's Motion to Compel. (Doc. No. 93 at 26-27.)

or facilitating any legal advice related to this issue.  Plaintiff now argues that these individuals, whom Defendant claimed were integral in the rendering of legal advice, played no part.  Plaintiff asserts that, given Mr. Greenblatt's actual testimony that he was not involved in any investigation, his presence on every 2011 Email waives the privilege, and there is an overlapping waiver for the 2011 Emails copied to Mr. Weisselberg.

Plaintiff contends that Defendant bears the burden of establishing the attorney-client privilege by a preponderance of evidence.  Plaintiff asserts that the Supreme Court has rejected a "control group" test based on one's position in favor of a case-by-case analysis that hinges on whether "[t]he communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." Upjohn Co. v. U.S., 449 U.S. 383, 394-95 (1981).  Plaintiff cites U.S. ex rel. Parikh v. Premera Blue Cross, 2006 WL 3733783, at *9 (W.D. Wash. Dec. 15, 2006), which stated, "Upjohn plainly suggests that in order for the privilege to apply, an employee must be aware that the communication to counsel is being made to enable the corporation to obtain legal advice."

## 2. MR. SORIAL'S DECLARATION SHOULD BE DISREGARDED

Along with the instant Joint Statement, Defendant submitted a declaration from Mr. Sorial.  Plaintiff argues that Mr. Sorial's declaration contradicts his deposition testimony, and therefore, his declaration should be disregarded.  See Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009) ("[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

On January 18, 2013, Mr. Sorial was deposed in the Makaeff case.  Plaintiff claims that Mr. Sorial testified that his involvement in the New York Attorney General ("NYAG") subpoena to Trump Org was limited to retaining outside counsel, providing the subpoena to counsel, and turning the matter over to be handled externally.

13CV2519

In his Declaration, dated July 14, 2015, Mr. Sorial stated that in May of 2011, after Trump Org and TU received a subpoena from the NYAG's Office, and after the Makaeff case was filed, he, along with Mr. Alan Garten, EVP and General Counsel of Trump Org, spearheaded an internal investigation relating to the prior operations of TU in order to provide legal advice to Trump Org and TU on how to respond to the subpoena.  Mr. Sorial stated that in the process of that investigation, he and others working at his direction and at the direction of Mr. Garten, sent email communications to corporate representatives of Trump Org to facilitate the investigation and to obtain information necessary to render legal advice.  Those corporate representatives included Mr. Greenblatt and Mr. Weisselberg.

### 3. COURT SHOULD FIND A WAIVER AS TO MR. SORIAL

Plaintiff contends that the Court should find a waiver of the privilege as to Mr. Sorial because Defendant has used Mr. Sorial's statements about this same subject as a sword in opposing Makaeff class certification.  To support this argument, Plaintiff cites one excerpt from Mr. Sorial's declaration in Makaeff, in which he stated, "Trump University LLC ('TU') began operations in approximately 2005, . . . [NYSED] subsequently requested that TU no longer use 'University' in its name based on a [NY] statute restricting the use of 'University' to certain institutions and businesses.  TU agreed to change its name, and the company continued its operations. . ."  (Joint Statement at 15, n.11, citing Makaeff Doc. No. 138-1, Ex. 52, ¶3.)  Plaintiff argues that Defendant elected to use Mr. Sorial to provide a self-serving summary of events concerning the use of "university," and therefore Defendant has waived any privileges as to information that Mr. Sorial received on this same topic.

### 4. *IN CAMERA* REVIEW AND REQUEST TO DEPOSE MR. SORIAL

Plaintiff notes that, although not necessary, the Court may conduct an *in camera* review of the 2011 Emails to assess Defendant's assertion of privilege.  Further, Plaintiff asks that if the Court's determination of the issue relies on Mr. Sorial's declaration, Plaintiff be granted leave to depose Mr. Sorial.

### B. DEFENDANT'S ARGUMENT

Defendant asserts that the 2011 Emails are protected by the attorney-client privilege, as this Court held in its June 9, 2015 Order.  See Doc. No. 93.  The 2011 Emails are privileged communications between an attorney and proper corporate client representatives during an in-house investigation and there is no basis to compel their production.  Plaintiff's untimely attempt to obtain production of the 2011 Emails is without merit and should be rejected.

### 1. REQUEST IS UNTIMELY AND PROCEDURALLY IMPROPER

#### a. UNTIMELY

Defendant argues that Plaintiff has brought this dispute to the Court in an untimely manner.  This Court's Chambers Rules require that a party notify the Court of a discovery dispute within 30 days of the date upon which the event giving rise to the dispute occurred.  This dispute arose on May 18, 2015, when Defendant asserted the attorney-client privilege as to the 2011 Emails in its privilege log.  Plaintiff waited until July 8, 2015, more than 30 days later, to bring this dispute to the Court's attention.

Plaintiff argues that the dispute arose during the June 24 and 30, 2015 depositions of Mr. Weisselberg and Mr. Greenblatt, and therefore it was timely brought.  However, Defendant counters that this argument is without merit because Plaintiff's counsel learned years ago in the Makaeff case that Mr. Weisselberg and Mr. Greenblatt were parties to privileged communications concerning TU's formation and location of operation.  Despite years of notice, Plaintiff waited until just days before the July 2, 2015 discovery cutoff to depose these individuals.

#### b. NO NEW EVIDENCE FOR MOTION FOR RECONSIDERATION

Plaintiff's request for the 2011 Emails also fails because the Court has already ruled on this request.  In its June 9, 2015 Order, the Court denied Plaintiff's request for compelled production of the 2011 Emails due to Plaintiff's counsel's failure to meet and confer, and also based on the merits of the dispute.  (Doc. No. 93 at 28-29.)  After

13CV2519

denial by this Court, Plaintiff's only procedural options were to file an objection to this Court's ruling under Federal Rule of Civil Procedure ("Rule") 72(a) by June 26, 2015, or file an application for reconsideration pursuant to Rule 60 by July 9, 2015.  Plaintiff failed to take either of the procedural options available.

Plaintiff argues that, even if the Court were to consider Plaintiff's request as a timely motion for reconsideration of its Order, it is still fatally defective.  A movant seeking reconsideration on the basis of newly discovered evidence must establish that the newly discovered evidence could not have been discovered with due diligence.  See Daul v. PPM Energy, Inc., 2010 WL 3945001 (D. Ore. Oct. 6, 2010).  Additionally, the new evidence must be materially different than that previously presented to the Court. Aniel v. GMAC Mortg., LLC, 2012 WL 5389706 (N.D. Cal. Nov. 2, 2012).  Here, the deposition testimony of Mr. Weisselberg and Mr. Greenblatt does not constitute sufficient "new" evidence because the testimony has been available to Plaintiff for years, had he decided to take these depositions earlier.  Further, the information has no material bearing on the Court's ruling.

### 2. THE 2011 EMAILS ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

Defendant argues that Plaintiff seeks discovery of information well within the protection of the attorney-client privilege.  The 2011 Emails pertain to an investigation led by Mr. Sorial and Mr. Garten, both attorneys for Trump Org, commenced for the purpose of responding to a subpoena received by Trump Org and TU in 2011 from the NYAG.   In the 2011 Emails, Mr. Sorial and Mr. Garten sought and received information about TU's formation, status, and dissolution, or plans thereof.  Communications in the course of such investigations are well within the attorney-client privilege. Upjohn, 449 U.S. at 390-91 ("The first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant.").

Both Mr. Weisselberg and Mr. Greenblatt fall squarely within Upjohn's principles for determining representatives of a corporate client.  The inclusion of these

6

13CV2519

individuals on the 2011 Emails was necessary for Mr. Sorial to effectively represent Trump Org in the NYAG subpoena matter. Upjohn, 449 U.S. at 389, 391. Due to the investigation of TU by the NYAG and the allegations asserted by the Makaeff plaintiffs, Mr. Sorial sought primary and reliable evidence related to the past operations of TU. Further, both Mr. Weisselberg and Mr. Greenblatt were aware that the 2011 Emails, seeking information concerning TU shortly after receiving the NYAG subpoena, were intended for the purpose of obtaining information for legal representation. Accordingly, Mr. Weisselberg and Mr. Greenblatt were proper client representatives on the 2011 Emails and their presence did not waive the attorney-client privilege.

Plaintiff seeks to avoid this result by seizing on excerpts from the deposition transcripts of Mr. Weisselberg and Mr. Greenblatt. With respect to Mr. Weisselberg, Plaintiff asks this Court to ignore over 40 surrounding pages of deposition questions and testimony that expressly concern only events of 2005, not once mentioning 2011 or the 2011 Emails. By mid-2010, the conflict over the use of "university" had been resolved as TU's name had been changed. The 2011 Emails concerned an investigation into issues broader than only the use of the term "university," including such issues as the formation, merger, and dissolution of TU. Mr. Sorial included Mr. Weisselberg on the 2011 Emails not only for his potential knowledge about the narrow issue of the naming of TU, but for his potential knowledge about TU's formation, merger, relocation, and/or dissolution.

Plaintiff relies on Mr. Greenblatt's testimony that he did not recall giving legal advice to TU in 2011. This testimony is irrelevant to his status as a client representative. Mr. Greenblatt also testified that he did not recall receiving or facilitating legal advice in 2011 concerning TU, being a part of an internal investigation at Trump Org in 2011, or being involved in the NYAG action. Mr. Greenblatt's failure to remember Mr. Sorial's investigation does not diminish his role as a client on the 2011 Emails.

13CV2519

### D. <u>COURT'S DISCUSSION AND RULING</u>

For the reasons set forth below, the Court once again DENIES Plaintiff's request to compel production of the 2011 Emails.  Plaintiff's request for the Court to conduct an in camera review of the documents, and Plaintiff's request to depose Mr. Sorial, are also DENIED.

### 1. <u>THIS COURT HAS PREVIOUSLY DENIED PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF 2011 EMAILS</u>

In his June 2, 2015 Motion to Compel, Plaintiff identified the 2011 documents sought, which were emails exchanged among in-house counsel of Trump Org in 2011 with a copy to Mr. Weisselberg, labeled with the following Bates numbers: DT-PRIV-00247-00249, DT-PRIV-00253-00260.  (Doc. No. 93 at 28, n.5.)  In his Motion, Plaintiff argued that Defendant's assertion of the attorney-client privilege was improper for two reasons.  (Doc. No. 93 at 15.)  First, Plaintiff claimed that the crime-fraud exception to the attorney-client privilege applied to the requested 2005 Emails because Mr. Greenblatt was used to lull the New York State Education Department ("NYSED") into believing that Defendant had complied with the order to stop using and perpetuate the unlawful operation and use of the "university" designation for TU. (Doc. No. 93 at 15-16.)  Second, Plaintiff asserted that most of the withheld communications were shared with third party, non-lawyer, Mr. Weisselberg, and thus any privilege was waived.  (Doc. No. 93 at 16.)  Plaintiff only sought the 2011 Emails on which Mr. Weisselberg was copied.  He did not challenge Defendant's assertion of the attorney-client privilege as it related to Mr. Greenblatt's presence on the 2011 Emails. (Doc. No. 93 at 27; Doc. No. 86-1 at 25.)

The Court ruled that it would not entertain the dispute related to the 2011 Emails, as Plaintiff failed to initiate and engage in a good faith meet and confer session. (Doc. No. 93 at 27.)  Further, the Court noted that Plaintiff's Motion only addressed the 2005 Emails and made absolutely no mention of the 2011 Emails except for one conclusory sentence at the end of Plaintiff's Motion.  (Doc. No. 93 at 27-28.)  Plaintiff

provided no details about the 2011 Emails, and asserted no argument as to why the documents were not privileged.  (Doc. No. 93 at 28.)  Plaintiff failed to provide the Court with any basis at all on which to rule.  (Doc. No. 93 at 28.)

Despite these procedural failures, the Court continued with its analysis and determined that Mr. Weisselberg was the client of Trump Org for purposes of the 2011 Emails, and therefore, the 2011 Emails were protected by the attorney-client privilege. (Doc. No. 93 at 28.)  According to Defendant, the 2011 Emails reflected communications between in-house counsel of Trump Org in connection with its investigation and legal analysis of issues raised in Makaeff and a subpoena from the NYAG.  (Doc. No. 93 at 28; citing Doc. No. 91 at 9, n. 6, 12.)  Mr. Weisslberg was the CFO of Trump Org, and the recipient of the subpoena from the NYAG.  (Doc. No. 93 at 28.)  Defendant argued that the 2011 Emails related solely to the provision of legal advice and were therefore securely protected from production.  (Doc. No. 93 at 28; citing Doc. No. 91 at 12.)   Accordingly, the Court found that Defendant had not waived any claims of attorney-client privilege with respect to the 2011 Emails that included Mr. Weisselberg, and denied Plaintiff's Motion to Compel as to those documents.  (Doc. No. 93 at 29.)

## 2. PLAINTIFF HAS FAILED TO PRESENT NEWLY DISCOVERED FACTS

The Court construes Plaintiff's instant request for production as a motion for reconsideration of its June 9, 2015 Order.  Motions for reconsideration should be granted only in rare circumstances.  Defenders of Wildlife v. Browner, 909 F.Supp. 1342, 1351 (D. Ariz. 1995).  "Reconsideration is appropriate if the district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in the controlling law."  School Dist. No. 1 J, Multnomah County v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

Here, Plaintiff does not argue that the Court committed clear error, that the initial decision was manifestly unjust, or that there has been an intervening change in controlling law.  Rather, Plaintiff essentially asserts that recent deposition testimony

from both Mr. Weisselberg and Mr. Greenblatt constitutes newly discovered evidence to demonstrate that the 2011 Emails are not protected by the attorney-client privilege because neither Mr. Weisselberg nor Mr. Greenblatt provided, received, or facilitated legal advice related to the issue of TU's name change or the use of "university."

A party relying on newly discovered evidence to support its request for reconsideration must establish that "the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.' " Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir.1990)( quoting Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir.1987)). Evidence is not newly discovered if it was in the moving party's possession or the moving party could have, with due diligence, discovered and produced the evidence to the court prior to, or at the time of, the hearing. Frederick S. Wyle Prof'l Corp. v. Texaco, Inc., 764 F.2d 604, 609 (9th Cir.1985).

The Court agrees with Defendant that the testimony of Mr. Weisselberg and Mr. Greenblatt does not constitute newly discovered evidence because the testimony has been available to Plaintiff for years.  As Defendant notes, Plaintiff's counsel learned years ago in the Makaeff litigation that these individuals were parties to privileged communications concerning TU's formation and location of operation. However, Plaintiff chose to depose both individuals at the end of fact discovery in the Cohen litigation.  The timing of depositions is most certainly strategic.  But the Court cannot construe this deposition testimony as newly discovered evidence when Plaintiff's counsel had access to this information long ago and simply chose not to conduct the depositions until recently.

More importantly, even if the Court were to find that Plaintiff was diligent in procuring the deposition testimony of these witnesses, which it does not, Plaintiff has failed to present any newly discovered evidence to persuade the Court to deviate from its prior ruling.  As to Mr. Weisselberg, Plaintiff has presented absolutely no evidence

13CV2519

that his presence on the 2011 Emails waives the attorney-client privilege.   As Defendant points out, Plaintiff relied on fragments of Mr. Weisselberg's deposition testimony to showcase that he was not involved in any way with the provision of legal advice in the 2011 communications.  However, Plaintiff failed to reveal to the Court, whether deliberately or not, that his selected snippets of Mr. Weisselberg's deposition involved only communications from 2005, and did not in any way address the 2011 communications.  In this regard, Plaintiff's argument was misleading and undermines his credibility on this and other arguments he makes.

In the only deposition excerpts used by Plaintiff to support his renewed argument that Mr. Weisselberg's presence on the 2011 Emails waives the privilege, Mr. Weisselberg was responding to a line of questioning framed in the context of 2005 communications.  For example, Plaintiff's counsel asked Mr. Weisselberg, "What I'm getting at is, you do recall that, in this time frame, **June 2005 and earlier – in the first half of the 2005 time frame**, you recall having conversations about the conflict with the State Board of Education over the use of the word 'university' in Trump University's corporate name; correct?"  (Joint Statement Ex. 17 (Weisselberg Tr.) at 177:23-178:5)(emphasis added).  Throughout this line of questioning, Plaintiff's counsel never deviated from the 2005 time frame.  The question immediately following the last deposition excerpt in the Joint Statement asks Mr. Weisselberg, "...you were aware in **June of 2005** that there was a conflict with the State Board of Education over the use of the word 'university' in Trump University's corporate name; correct?"  (Joint Statement Ex. 17 (Weisselberg Tr.) at 184:2-6)(emphasis added).   The Court is confounded that Plaintiff would present this dispute to the Court, claiming that recent deposition testimony "flatly contradict[s]" Defendant's statements that Mr. Weisselberg played no role in providing, receiving, or facilitating any legal advice related to this issue and therefore the **2011 Emails** should be produced, when all of the deposition testimony relied upon by Plaintiff clearly related to communications in 2005.

13CV2519

1    Relationships, roles, and responsibilities within a corporation are subject to

2    change.  Even if Mr. Weisselberg's involvement in communications in 2005 would

3    have waived the privilege because he was not a necessary party under the privilege, that

4    conclusion does not automatically and unequivocally carry over to communications in

5    2011.  Nothing that Plaintiff has presented to the Court with respect to Mr. Weisselberg

6    supports Plaintiff's position.

7    The Court agrees that Defendant has the burden of establishing the privilege

8    by a preponderance of the evidence.  Once again, the Court finds that Defendant has

9    satisfied his burden with respect to the 2011 Emails.  The Court held in its June 9, 2015

10   Order that Mr. Weisselberg was the client of Trump Org for purposes of the 2011

11   communications, and that the 2011 Emails were protected by the attorney-client

12   privilege.  (Doc. No. 93 at 28.)  Defendant represented to the Court that the 2011

13   Emails reflected communications between in-house counsel of Trump Org in

14   connection with its investigation and legal analysis of issues raised in Makaeff and the

15   NYAG subpoena.  (Doc. No. 93 at 28.)  Defendant represented that the 2011 Emails

16   related solely to the provision of legal advice, and in the instant Joint Statement,

17   Defendant asserts that both Mr. Weisselberg and Mr. Greenblatt "were aware that the

18   2011 Documents, seeking information concerning TU shortly after receiving the

19   NYAG Subpoena, were intended for the purpose of obtaining information for legal

20   representation."  (Joint Statement at 19.)  The Court has been presented with no new

21   facts related to Mr. Weisselberg's role in the 2011 Emails, and therefore has no basis

22   to alter its prior ruling.

23   With respect to Mr. Greenblatt, Plaintiff relies solely on his deposition

24   testimony that he does not recall giving, receiving, or facilitating legal advice in 2011

25   concerning TU, being a part of an internal investigation at Trump Org in 2011, or being

26   involved in the NYAG action.  First, the Court finds Plaintiff's argument regarding

27   waiver of the attorney-client privilege as it relates to Mr. Greenblatt's presence on the

28   2011 Emails to be untimely.  Until the instant dispute was brought on July 8, 2015,

13CV2519

Plaintiff made no argument that Mr. Greenblatt's presence on the 2011 Emails waived the attorney-client privilege. In his June 2, 2015, Motion to Compel, Plaintiff sought only 2011 Emails on which Mr. Weisselberg was included. Any argument that the 2011 Emails were not privileged due to Mr. Greenblatt's presence should have been raised within 30 days of the May 18, 2015, privilege log production. See Joint Statement at 16. Plaintiff brings this dispute after the expiration of the 30 day deadline required by this Court.[2/] See Judge Gallo's Chambers Rule IV(B).

However, even if the Court determined that Plaintiff brought this dispute in a timely manner, which it does not, the Court finds that Defendant has satisfied its burden to establish the attorney-client privilege by a preponderance of the evidence, as Defendant has demonstrated that Mr. Greenblatt was a proper client representative on the 2011 Emails. Defendant asserts that Mr. Greenblatt, EVP and counsel for Trump Org, was included on the 2011 Emails so that Mr. Sorial could effectively represent Trump Org in the NYAG subpoena matter. He argues that, due to the investigation of TU by the NYAG, and the allegations asserted in the Makaeff case, Mr. Sorial sought primary and reliable evidence related to the past operations of TU. Additionally, Defendant claims that Mr. Greenblatt was aware that the 2011 Emails were intended for the purpose of obtaining information for legal representation.

The deposition excerpts highlighted by Plaintiff in the Joint Statement do nothing to persuade the Court otherwise, or to weaken Defendant's claims of privilege. As Defendant argues, simply because Mr. Greenblatt does not recall receiving or

---

[2/] Judge Gallo's Chambers Rule IV(B) states, "The Court expects strict compliance with the meet and confer requirement. It is the experience of the Court that the vast majority of disputes can be resolved without the necessity of court intervention by means of this process **providing** counsel **thoroughly** meet and confer in **good faith** to resolve all disputes. If the dispute cannot be resolved through good faith meet and confer efforts, counsel shall contact the Court to schedule an informal teleconference within **thirty (30) calendar days** of the date upon which the event giving rise to the dispute occurred. (See IV.F. below for guidance on calculating the **30 day deadline**)." (emphasis in original).

13CV2519

facilitating legal advice in 2011 concerning TU, being a part of an internal investigation in 2011, or being involved in the NYAG action, does not diminish his role as a client on the 2011 Emails.  His testimony was not that he did not facilitate or receive legal advice, it was that he did not recall whether he facilitated or received legal advice. Plaintiff also argues that, even if there was such an investigation, the underlying facts are not privileged, and under Upjohn, 449 U.S. at 395-96, "the protection of the privilege extends only to communications and not to facts."  (Joint Statement at 15, n.12.)  The Court agrees - facts are not privileged, only communications.  But here, Plaintiff is, in fact, seeking communications in the form of 2011 Emails, not the underlying facts.  Once again, the Court is perplexed as to why Plaintiff chose this quote from the United States Supreme Court to support his position, as it undermines Plaintiff's own argument.  The Court has been presented with no new facts related to Mr. Greenblatt's role in the 2011 Emails to warrant a deviation from its prior ruling.

### 3. **PLAINTIFF NOT PERMITTED TO DEPOSE MR. SORIAL**

Plaintiff argues that the Court should find a waiver of the privilege as to Mr. Sorial because Defendant has used Mr. Sorial's statements about this same subject as a sword in opposing Makaeff class certification.  To support this argument, Plaintiff cites one selection from Mr. Sorial's declaration in Makaeff, in which he stated,

> Trump University LLC ("TU") began operations in approximately 2005, . . . [NYSED] subsequently requested that TU no longer use "University" in its name based on a [NY] statute restricting the use of "University" to certain institutions and businesses. TU agreed to change its name, and the company continued its operations. . . .

(Joint Statement at 15, n. 11; citing Makaeff Doc. No. 138-1, Ex. 52, ¶3.)

The Court does not understand, and Plaintiff does not explain, how Mr. Sorial waived the privilege by this statement in his Makaeff declaration.  He simply reported the outcome of the name change issue.  Nothing in this excerpt from his declaration reveals any privileged communications, attorney thought processes, or legal analysis. As a result of this baseless argument that he has waived any privilege by this statement, Plaintiff's entire argument loses credibility.

14

Further, in the Joint Statement, Plaintiff omits a crucial piece of information when discussing Mr. Sorial's deposition testimony from <u>Makaeff</u>. Plaintiff asserts, "Sorial testified his involvement in the NYAG subpoena was limited to retaining outside counsel, providing the subpoena to counsel, and turning the matter over to be handled externally." (Joint Statement at 14.) Plaintiff neglected to report that Mr. Sorial also testified that he had status calls with his attorney and had been provided with updates and the status of the matter. (Joint Statement Ex. 18 (1/18/13 Sorial Tr.) at 27:22, 81:16-17.) Therefore, it appears that Mr. Sorial was not completely uninvolved in this matter, as argued by Plaintiff.

Plaintiff also contends that Mr. Sorial's recent declaration contradicts his deposition testimony, and therefore, his declaration should be disregarded. On January 18, 2013, Mr. Sorial was deposed in the <u>Makaeff</u> case and testified that his involvement in the NYAG subpoena to Trump Org was limited to retaining outside counsel, providing the subpoena to counsel, turning the matter over to be handled externally, participating in status calls with his attorney, and receiving updates and the status of the matter. In his Declaration, dated July 14, 2015, Mr. Sorial stated that in May of 2011, after Trump Org and TU received a subpoena from the NYAG's Office, and after the <u>Makaeff</u> case was filed, he and Mr. Garten spearheaded an internal investigation relating to the prior operations of TU in order to provide legal advice to Trump Org and TU on how to respond to the subpoena.

The Court recognizes that Mr. Sorial's declaration may contradict his 2013 deposition testimony by omission, as the excerpts of his deposition that have been provided to the Court do not mention his spearheading an internal investigation. However, despite the fact it may be at odds through omission with a portion of his deposition from 2013 where it summarized his involvement, the Court will take the declaration at face value. Plaintiff asks that leave by granted to depose Mr. Sorial if the Court's determination of this issue turns on Mr. Sorial's declaration. Although the Court declines to disregard Mr. Sorial's declaration, the Court's ruling does not turn

solely on the declaration.  For all of the reasons outlined above, the Court finds that Plaintiff is not entitled to the 2011 Emails.  Plaintiff's request to depose Mr. Sorial is therefore DENIED.

### 4. COURT WILL NOT CONDUCT AN *IN CAMERA* REVIEW

Plaintiff notes that the Court may conduct an *in camera* review of the 2011 Emails to assess Defendant's assertion of privilege.  Plaintiff has failed to provide information to convince the Court that an in camera review is warranted or necessary. The Court will not expend even more time and resources when it has been presented with no new evidence and an untimely request.

### III. PRODUCTION OF DOCUMENTS SHOWING DEFENDANT'S CONTRIBUTIONS TO AND FROM TRUMP UNIVERSITY

#### A. PLAINTIFF'S ARGUMENT

Plaintiff seeks documents in response to his prior discovery requests concerning Defendant's contributions to and distributions from TU.  Plaintiff served requests for production of documents (the "Financial RFPs") related to this issue. Defendant objected to producing responsive documents.  Plaintiff now asserts the parties agreed that whether or not Defendant produced documents would be determined when the Court issued a final ruling regarding deposition questions related to Defendant's contributions to and distributions from TU.

On May 13, 2015, this Court denied Plaintiff's request to allow deposition questions related to Defendant's (and others) capital contributions directly or indirectly to TU, as well as capital distributions received directly or indirectly from TU.  (Doc. No. 73 at 3.)  On May 19, 2015, Plaintiff filed an Objection to this Court's Order. (Doc. No. 76.)  On June 30, 2015, Judge Curiel issued an Order on this issue as it related to deposition questions.  (Doc. No. 102.)  Judge Curiel's Order held that "Trump's payments to, and receipt of funds from, TU would be relevant to supporting Plaintiffs claims," yet Defendant has refused to make a full production in response to the pending Financial RFPs.  Defendant has instead produced a few summary

documents.  (Doc. No. 102 at 7.)  As the party resisting discovery, it is Defendant's burden to demonstrate that the requests are overly burdensome or otherwise improper, and he has failed to come forward with any such evidence.  Plaintiff asks the Court to compel Defendant to make a full production in response to the outstanding Financial RFPs.

In addition, Plaintiff represents that Defendant has agreed the Court's decision on this dispute will govern production of documents in response to a document subpoena issued to Trump Org, which also refused to produce information regarding Defendant's contributions to or distributions from TU.

## 1. <u>DISPUTE IS TIMELY</u>

On May 6, 2015, counsel met and conferred regarding Defendant's responses to Plaintiff's Financial RFPs, and while the parties did not agree on the scope of the production in the event Plaintiff prevailed on the deposition dispute, both sides agreed any decision from the Court on the deposition dispute would determine Plaintiff's entitlement to the information in the Financial RFPs.

## 2. <u>DOCUMENTS ARE RELEVANT</u>

Plaintiff contends that "the party resisting discovery bears the burden of showing that the requested discovery is irrelevant to the issues."  <u>Brady v. Grendene USA, Inc.</u>, 2012 WL 6086881 (S.D. Cal. Dec. 6, 2012).  Judge Curiel's Order on the deposition dispute rejected the same objections Defendant made to the Financial RFPs. The Order held that "Trump's payments to, and receipt of funds from, Trump University would be relevant to supporting Plaintiffs claims"; and that "financial evidence showing Trump's motive is relevant and discoverable."  (Doc. No. 102 at 7, 9.)  Plaintiff asserts there is no reason that this holding would not be equally applicable to RFPs, and that nothing in Judge Curiel's Order should be read to excuse Defendant from making a complete document production.

Plaintiff argues that Judge Curiel attributed the limitation in the scope of his Order to depositions to the fact that this Court's "May 13, 2015 order was limited to

appropriate areas of inquiry during depositions and this Court's order is thus limited in scope as well." (Doc. No. 102 at 10.) Plaintiff contends, however, that neither this Court nor Judge Curiel was apprised of the outstanding Financial RFPs or the parties' agreement that the scope of Defendant's production hinged on the outcome of the deposition dispute.

Further, none of the documents sought violate Judge Curiel's Order with respect to "further written or document discovery or . . . any further discovery of any kind in the Makaeff case." (Doc. No. 102 at 10.) Plaintiff only seeks compliance with existing discovery requests in the Cohen case. To meaningfully effectuate Judge Curiel's Order, and to allow Plaintiff an opportunity to effectively examine the witnesses, Plaintiff needs the source documents related to Defendant's contributions and distributions.

## B. DEFENDANT'S ARGUMENT

Defendant argues that Plaintiff's request for production of additional financial information should be denied, as it is beyond the scope of Judge Curiel's Order, untimely, unreasonably cumulative and duplicative, and unduly burdensome. In his Order, Judge Curiel outlined the scope of the remaining discovery Plaintiff is allowed in this case, and there is no reason to deviate from that Order.

### 1. UNTIMELY

Fact discovery closed on July 2, 2015. Plaintiff now seeks documents requested in a March 24, 2015 RFP which Defendant objected to on April 27, 2015. Plaintiff failed to bring this dispute to the Court's attention within 30 days of receiving Defendant's discovery responses, and now attempts to belatedly obtain cumulative evidence already denied by Judge Curiel.

### 2. THE PARTIES DID NOT HAVE AN AGREEMENT

Defendant contends that there was no agreement that Plaintiff's entitlement to any and all information relating to Defendant's financials produced in Makaeff and Cohen would be determined after the Court's ruling on the deposition dispute. During

a May 6, 2015 meet and confer session, Defendant agreed that if the Court ruled in Plaintiff's favor on the deposition dispute, he would produce a list of contributions and distributions related to TU. Defendant has produced this information and more, including: (1) TU Balance Sheets for 2005-2010; (2) unredacted LLC operating agreements; and (3) Defendant's business records, "Detail General Ledger[s]", showing each advance from Defendant to TU and each distribution from TU to Defendant between 2004 and 2015. There was never an agreement by Defendant that all of the objections or Plaintiff's entitlement to all financial documents was contingent on the Court's eventual order, or that Defendant would agree to additional production beyond what was offered. Prior to bringing this matter to the Court, Plaintiff failed to produce documentation of any such agreement because there was no agreement.

Plaintiff sought relief from Judge Curiel to allow discovery of the amount of money invested in TU by Defendant and the amount taken from TU by Defendant as profit from the alleged "scheme." This is exactly what Judge Curiel allowed Plaintiff to do in the upcoming deposition of Defendant and the reopened depositions of other witnesses not questioned on this subject previously: Mr. Sexton, Mr. Matejek, Mr. McConney, and Mr. Weisselberg. Defendant facilitated this effort by its production of the documents it agreed it would produce during the parties' discussions, despite the fact that Judge Curiel's Order was specifically limited to only deposition testimony. Plaintiff can use these documents at the upcoming depositions to gain additional discovery related to Defendant's financial involvement with TU. If Judge Curiel had wanted his Order to have a different effect or a different application to past discovery in light of Plaintiff's request for additional documents, certainly the Order would have been so tailored. It was not.

### 3. <u>REQUEST IS CUMULATIVE AND OVERBROAD</u>

Plaintiff's request should also be denied because the discovery is unnecessarily cumulative and duplicative. Plaintiff has the opportunity to obtain further details about the contribution and distribution process at the upcoming deposition of Defendant and

13CV2519

the continued depositions of the two individuals most involved with the process, Mr. Matejek and Mr. McConney.

Plaintiff's request that Defendant unredact each document listed on Defendant's and Trump Org's redaction logs is overbroad and unduly burdensome in light of the prior and forthcoming discovery.  The vast majority of these redactions relate to the personal financial information (social security numbers, 401(k) details, payroll and compensation records, and related personal financial information) of TU employees and independent contractors.  The burden to review each of the redacted documents, many of which are multiple pages and contain numerous redactions, to locate only that limited information related to Defendant's financials would require many man-hours, and is an undue burden when balanced against the alleged need for this information in light of current productions and upcoming depositions.  Moreover, in the spirit of compromise, Defendant previously offered to unredact an additional limited set of documents if Plaintiff's would identify the documents they wanted unredacted. Plaintiff rejected this offer.

### D. COURT'S DISCUSSION AND RULING

For the reasons set forth below, the Court hereby DENIES Plaintiff's request for an order to compel production of additional documents in response to Plaintiff's Financial RFPs.

### 1. THE DISTRICT JUDGE HAS ALREADY DENIED PLAINTIFF'S REQUEST

Judge Curiel has already addressed and ruled on this issue.  In his May 19, 2015 Objection to this Court's Discovery Order, Plaintiff "asks that the Court permit him to obtain complete information about Trump and his partners' direct and indirect contributions into, and benefits from, Trump University, **including all related documents** and all related testimony from all past and future deponents in this case." (Doc. No. 76 at 7; Doc. No. 102 at 3)(emphasis added).  Plaintiff requested that Judge Curiel order the production of "**all related documents** within three (3) business days of the Court's order . . . ." (Doc. No. 76 at 18.) Judge Curiel rejected Plaintiff's request

and overruled any relief sought other than permission to question Defendant and other witnesses regarding Defendant's financials during depositions.

Judge Curiel's Order ruling on Plaintiff's Objection is clear that Plaintiff may only reopen the depositions of certain individuals for the limited purpose of asking about the capital contributions Defendant made directly or indirectly to TU, or the capital contributions he received directly or indirectly from TU.  (Doc. No. 102 at 10.) Judge Curiel specifically overruled Plaintiff's objection with respect to additional discovery, holding,

> Plaintiff also seeks "complete information" about Trump's contributions into, and benefits from, Trump University.  (Id.)  However, the Court finds that the Magistrate Judge's May 13, 2015 order was limited to appropriate areas of inquiry during depositions and this Court's order is thus limited in scope as well.  This Court's order shall not be construed as allowing any further written or document discovery or as authorizing any further discovery of any kind in the <u>Makaeff</u> case.  Thus, to the extent Plaintiff seeks anything other than permission to question Defendant or any other deponent about the capital contributions Defendant made directly or indirectly to Trump University, or the capital contributions he received directly or indirectly from Trump University, Plaintiff's objection is OVERRULED.

(Doc. No. 102 at 10.)

Plaintiff ignores Judge Curiel's clear ruling and crafts his instant argument by claiming that he only seeks discovery that was previously propounded.  In this Court's view, Plaintiff is playing a semantical word game and requesting from this Court, in an untimely manner, documents that the District Judge expressly ruled Plaintiff is not entitled to receive at this point in the litigation.

## 2. <u>NO EVIDENCE OF AN AGREEMENT</u>

In support of his assertion that Defendant agreed to produce documents after the Court resolved the deposition dispute, Plaintiff argues that counsel met and conferred on May 6, 2015 about Defendant's responses to the Financial RFPs.  In a declaration provided by Ms. Rachel Jensen, Plaintiff's counsel, in support of the Joint Statement, she states that it is her <u>understanding</u> that her partner, Mr. Dan Pfefferbaum, and Defense counsel, Mr. Benjamin Morris, met and conferred regarding the Financial

13CV2519

RFPs.  She notes that it is also her <u>understanding</u> that counsel did not reach an agreement on the scope of production, and it is her <u>understanding</u> from Mr. Pfefferbaum that counsel agreed to table the dispute in light of the deposition dispute. Ms. Jensen's statements in support of an agreement lack certainty (her understanding) about any such agreement, and therefore do very little to instill confidence in the Court that such an agreement ever existed.  Interestingly, Mr. Pfefferbaum, counsel for Plaintiff who actually was involved in the meet and confer session and alleged agreement, did not provide a declaration.

Ms. Jensen also states in her declaration that, in a July 10, 2015 email from Mr. Morris to Mr. Pfefferbaum, Defendant agreed that the Court's ruling on the instant Financial RFPs dispute would also determine whether similar information will be produced by Trump Org in response to Plaintiff's subpoena.  In his declaration, Mr. Morris states in a footnote that the parties have agreed that the Court's ruling on the issue related to unredaction of financial information related to Defendant will apply to documents produced in <u>Cohen</u> by both Defendant and Trump Org.

First, both parties appear to agree on one thing: that there was no agreement as to the scope of any production if Plaintiff prevailed on the deposition dispute.  Ms. Jensen confirms this in her declaration, and Mr. Morris states in his declaration that while Defendant agreed to produce a list of contributions and distributions if the Court ruled in Plaintiff's favor, "[t]here was no further agreement regarding the other documents Plaintiff claimed to seek by this RFP to which Defendant objected, no agreement to table all further discussions of this RFP or Plaintiff's entitlement to all financial documents relating to Defendant until after the Court ruled..." The Court will not enforce a phantom agreement between the parties.

Second, despite the parties' submission of nearly 500 pages of exhibits to accompany the Joint Statement for two discovery disputes, Plaintiff failed to provide the Court with a copy of the July 10, 2015 email between Mr. Pfefferbaum and Mr. Morris regarding the agreement about the Trump Org subpoena.  Plaintiff claims the

13CV2519

July 10, 2015 email provides the basis for his representation that Defendant agreed that the Court's decision on this issue will determine whether Trump Org will produce similar information in response to Plaintiff's subpoena. According to footnote four on page four of Mr. Morris' declaration, it appears the parties have agreed that the Court's ruling on this dispute will also resolve the issue regarding the subpoena to Trump Org, and thus, there does not appear to be any dispute for the Court to address related to the Trump Org subpoena.

### 3. REQUEST IS UNTIMELY

Defendant responded to the Financial RFPs on April 27, 2015. Despite the parties' dispute regarding the scope of any production, Plaintiff failed to bring this dispute to the Court's attention within 30 days of receiving Defendant's discovery responses. Plaintiff conceded in the Joint Statement that neither this Court nor Judge Curiel was apprised of the outstanding Financial RFPs or the parties' agreement that the scope of Defendant's production hinged on the outcome of the deposition dispute. If there was no agreement as to the scope of a possible production, then there was a dispute. All disputes must be brought to the Court's attention within 30 days. That did not occur. For this reason, and the additional reasons outlined above, Plaintiff's request to compel additional documents in response to his Financial RFPs is DENIED. Fact discovery closed on July 2, 2015. Discovery must come to an end.

### IV. FACT DISCOVERY DEADLINE

On July 30, 2015, Judge Curiel granted Plaintiff's unopposed *Ex Parte* Application to Amend the Court's June 30, 2015 Order. (Doc. No. 109.) Judge Curiel amended his June 30, 2015 Order to replace the following sentence on page 11:

"The fact discovery cut-off date shall be extended to August 10, 2015 for the limited purpose of completing these depositions."

with the following sentence:

"For the limited purpose of completing these depositions, the fact discovery cut-off date shall be extended to a date to be determined by the Magistrate Judge after the parties' dispute over related documents has been fully resolved."

13CV2519

(Doc. No. 109 at 2.)

Given this Court's rulings, the Court hereby declines to extend the fact discovery deadline previously set by Judge Curiel. Therefore, the fact discovery cut-off date shall be **August 10, 2015** for the limited purpose of completing the remaining depositions outlined in Judge Curiel's June 30, 2015 Order.

IT IS SO ORDERED.

DATED:  July 31, 2015

Hon. William V. Gallo
U.S. Magistrate Judge

13CV2519