# EXHIBIT 1

Exhibit 1
page 1

1          UNITED STATES DISTRICT COURT

2      FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4   ART COHEN, individually; and )
    on Behalf of all others      )
5   Similarly Situated,          )
                                 )
6              Plaintiff,        )   Case No.
                                 )   2:13-cv-2519-GPC-WVG
7        VS.                     )
                                 )
8   DONALD J. TRUMP,             )
                                 )
9              Defendants.       )
    _____)

10

11

12

13   VIDEOTAPED DEPOSITION OF JOEL H. STECKEL, PH.D.

14            Los Angeles, California

15           Monday, April 18, 2016

16

17

18

19

20

21

22

23   Reported by:
     NIKKI ROY
24   CSR No. 3052

25   Job No. 10022816

Exhibit 1
page 2

1    A.   And apart from that I do not -- without

2    studying everything in particular, I -- I -- I'm not

3    aware of any errors or omissions.

4        **Q.   Are you putting yourself forward as an**

5    **expert in real estate in this matter?**

6            MR. KIRMAN:   Objection; vague.

7            THE WITNESS:   I can answer?

8            I'm not putting my for -- counsel I believe

9    puts my -- puts me forth as an expert in certain

10   dimensions.   However, I do not consider myself an

11   expert in real estate.

12           MR. KIRMAN:   Dr. Steckel, for the record you

13   can answer.   I'm going to lodge objections for the

14   record, but generally you do have to answer unless

15   there's a privilege and I direct you not to answer.

16           THE WITNESS:   Thank you.

17   BY MR. PFEFFERBAUM:

18       **Q.   Do you consider yourself an expert in real**

19   **estate investment?**

20       A.   No.

21       **Q.   Do you consider yourself an expert in real**

22   **estate education?**

23       A.   I do not consider my -- I'm not sure what

24   real estate education means.

25           MR. KIRMAN:   I'm -- object; vague and calls

Exhibit 1
page 3

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

```
 1   for a legal conclusion.
 2   BY MR. PFEFFERBAUM:
 3        Q.   Do you have any academic training in real
 4   estate?
 5        A.   No.
 6        Q.   Okay.  Are you a registered real estate
 7   agent?
 8        A.   No.
 9        Q.   Or a broker?
10        A.   No.
11        Q.   Do you consider yourself a real estate
12   investor?
13             MR. KIRMAN:  Objection; vague.
14             THE WITNESS:  I don't know.
15   BY MR. PFEFFERBAUM:
16        Q.   Have you in -- well, have you purchased any
17   real estate for the purposes of investment as opposed
18   to being a residence?
19             MR. KIRMAN:  Objection; vague.
20             THE WITNESS:  No.
21   BY MR. PFEFFERBAUM:
22        Q.   Have you ever attended any real estate
23   courses in any capacity?
24        A.   I do not believe so.
25        Q.   Have you attended -- ever attended any
```

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

1    for-profit real estate seminars?

2        A.    I do not believe so.

3        Q.    Have you ever taught any courses related to

4    real estate?

5        A.    No.

6        Q.    Do you consider yourself an expert on Donald

7    Trump's real estate techniques?

8            MR. KIRMAN:  Objection; lack of foundation,

9    vague.

10            THE WITNESS:  No.

11    BY MR. PFEFFERBAUM:

12        Q.    You wouldn't be able to opine on any real

13    estate techniques that are unique to Donald Trump,

14    would you?

15            MR. KIRMAN:  Objection; foundation, vague,

16    compound.

17            THE WITNESS:  Not as I sit here today.

18    BY MR. PFEFFERBAUM:

19        Q.    Do you consider yourself an expert with

20    respect to Donald Trump?

21            MR. KIRMAN:  Objection; vague, foundation.

22            THE WITNESS:  No, no more than anybody who

23    watches the news.

24    BY MR. PFEFFERBAUM:

25        Q.    Did you ever attend a Trump University free

Joel Steckel, Ph.D.                    Art Cohen, et al. vs. Donald J. Trump

1   as to how Dr. Kamins characterized the complaint?

2   BY MR. PFEFFERBAUM:

3       **Q.   Did you make any assumptions as to the truth**

4   **or falsity of these allegations in drafting your**

5   **report?**

6       A.   No.

7       **Q.   So you don't know whether or not**

8   **Donald Trump handpicked Trump University professors,**

9   **correct?**

10          MR. KIRMAN:  Objection; lack of foundation,

11  vague.

12          THE WITNESS:  That's not my -- part of the

13  opinion that I'm -- I'm here today to testify about.

14  BY MR. PFEFFERBAUM:

15      **Q.   You're not here today to testify about the**

16  **truth -- I'm sorry.**

17          **You're not here today to opine about the**

18  **truth or falsity of those allegations, correct?**

19          MR. KIRMAN:  Objection; calls for a legal

20  conclusion, vague, lack of foundation, calls for

21  speculation.

22          THE WITNESS:  I'm here to testify about the

23  processes and the analyses that Dr. Kamins reports.

24          MR. KIRMAN:  I'll just instruct the witness

25  to answer the question pending.

Joel Steckel, Ph.D.                    Art Cohen, et al. vs. Donald J. Trump

1    BY MR. PFEFFERBAUM:

2         Q.    So is that a "no"?

3         A.    I think that's a "no."

4         Q.    What would you -- what information would you

5    need to give a definitive answer?

6         A.    I'd need to hear the question again.

7         Q.    I asked you -- you're not here today to

8    testify about the truth or falsity -- I'm sorry.  Let

9    me rephrase that.

10             You're not here today to opine on the truth

11   or falsity of plaintiff's allegations regarding

12   the -- whether Donald Trump handpicked the

13   instructors, whether he was integrally involved in

14   the curriculum or whether students knew that

15   Trump University was an illegal entity, are you?

16             MR. KIRMAN:  Objection; compound, vague.

17             THE WITNESS:  I believe that is correct.  I

18   am not.

19   BY MR. PFEFFERBAUM:

20        Q.    Okay.  Thank you.

21             Can you turn to paragraph 15 of your report,

22   please.

23             Dr. Steckel, I want to direct you to the

24   last sentence of paragraph 15 where you say

25   (reading):

1    on the analogous example to your Exhibit 3?

2         A.   Can you give me his report?

3         Q.   Did somebody provide you with a listing of

4    what those Bates numbers represented on the analogous

5    Exhibit 3?

6         A.   I would like to see his report.

7         Q.   I -- I understand.  But I'm asking you a

8    question.

9         A.   And I'm not going to answer it until you

10   show me what -- what numbers that you're asking me

11   about.

12        Q.   Did somebody provide you with a listing of

13   what the Bates numbers reviewed by Dr. Kamins

14   correlated to in terms of a plain description of the

15   exhibit?

16             MR. KIRMAN:  Objection; vague, asked and

17   answered, harassing.

18             THE WITNESS:  I don't recall.

19   BY MR. PFEFFERBAUM:

20        Q.   Is that a "no"?

21             MR. KIRMAN:  Objection; misstates the

22   testimony, argumentative, harassment.

23             THE WITNESS:  I think it's time for a break.

24   There's no question pending.

25   ///

Exhibit 1
page 8

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

 1   BY MR. PFEFFERBAUM:

 2      **Q.    I -- I'm sorry.  You're not -- you're not**

 3   **going to determine when we go on break.  We're not --**

 4              MR. KIRMAN:   Counsel, the witness --

 5              THE WITNESS:   The witness is going to the

 6   bathroom.

 7              MR. KIRMAN:   All right.  Let's go.

 8              MR. PFEFFERBAUM:   Let the -- let the record

 9   show that plaintiffs' counsel has not agreed to go

10   off the record and the witness has left the

11   deposition room.

12              MR. KIRMAN:   Let -- let the record reflect

13   that the witness needed to use the restroom and we've

14   been going for over an hour.

15              MR. PFEFFERBAUM:   All right.

16              MR. KIRMAN:   We agree to go off the record?

17              MR. PFEFFERBAUM:   Off the record.

18              THE VIDEOGRAPHER:   Going off the record at

19   10:09 a.m.

20              (Recess held 10:09 a.m. to 10:19 a.m.)

21              THE VIDEOGRAPHER:   Going back on the record

22   at 10:19 a.m.

23              MR. KIRMAN:   Just before we continue, I'd

24   just like to put on the record, the witness informed

25   me that he does have a health issue that causes him

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

1    to need to use the restroom possibly more frequently

2    than other people.

3              So we would appreciate it if you would allow

4    him to do so when requested.  He will not do so while

5    a question is pending, but if there's no question and

6    he needs to use the restroom, we would request that

7    you extend him that courtesy.

8              MR. PFEFFERBAUM:  I have no problem

9    extending you that courtesy.

10             You need to respect counsel in the room with

11   respect to whether or not there's a question pending

12   before you go next time.

13   BY MR. PFEFFERBAUM:

14      **Q.   Before we went off the record, I was asking**

15   **you if you received any key or any document that told**

16   **you what the Bates numbers were considered by**

17   **Dr. Kamins.**

18      A.   And I believe I said that I didn't recall

19   whether I did or not.

20             MR. KIRMAN:  Object; asked and answered.

21             THE WITNESS:  And I didn't mean to leave

22   while a question was pending.  I didn't think I did.

23   I apologize if I did.

24             MR. KIRMAN:  And the record will reflect

25   whether or not he did or not.

Joel Steckel, Ph.D.                              Art Cohen, et al. vs. Donald J. Trump

```
 1   testimony, lacks foundation, misleading.
 2            THE WITNESS:  My writing preferences.
 3   BY MR. PFEFFERBAUM:
 4       Q.   Okay.  If -- looking at conclusion 1 which
 5   is five paragraphs approximately, is there anywhere
 6   in those five paragraphs in which you offer support
 7   for your opinion that Dr. Kamins' conclusions were
 8   unreliable because they were formed without factual
 9   support?
10       A.   Yes.
11       Q.   And what is that?
12       A.   Paragraphs 40 -- the entirety of
13   paragraph 42 and the second sentence of paragraph 43.
14       Q.   Did you review the factual support -- let me
15   strike that question.
16            So let's look at paragraph 42, Dr. Steckel.
17   You say on number 1, "Some students were told that
18   instructors were hired by TU president Michael
19   Sexton, not by Mr. Trump," correct?
20            MR. KIRMAN:  Objection; vague,
21   argumentative, misleading.
22   BY MR. PFEFFERBAUM:
23       Q.   You -- you cite -- oh, go ahead.
24       A.   That's what it says.
25       Q.   Are you offering an expert opinion that
```

Joel Steckel, Ph.D.                          Art Cohen, et al. vs. Donald J. Trump

```
 1    Trump did not represent to consumers that instructors
 2    were handpicked?
 3         A.   I --
 4              MR. KIRMAN:  Objection; vague, confusing,
 5    misstates the testimony.
 6              THE WITNESS:  And asked and answered.
 7              No, I'm not here offering that opinion
 8    either way.
 9              MR. KIRMAN:  And I'll belatedly interject
10    the asked and answered objection.
11    BY MR. PFEFFERBAUM:
12         Q.   You cite to footnote 27, in footnote 27 to a
13    transcript that says, "Let me tell you what I had to
14    go through to get on with this company.  I had four
15    phone interviews with Michael Sexton."
16              Do you see that?
17         A.   Yes.
18         Q.   And.
19              And you recall that's a -- that's a Steve
20    Goff Live Event transcript?
21         A.   That's correct.
22         Q.   And do you have any other support for the
23    statement that "some students were told that
24    instructors were hired by TU president Michael
25    Sexton, not by Mr. Trump"?
```

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

1      A.   No, only sampling theory.

2      Q.   And did you document your analysis that

3   supports your conclusion that many students were told

4   this anywhere in the report?

5           MR. KIRMAN:  Objection; lacks foundation,

6   misleading, vague.

7           THE WITNESS:  And silly, but you're entitled

8   to ask silly questions.

9           No, I didn't.  That's why it says "many."

10  BY MR. PFEFFERBAUM:

11     Q.   Are you offering the opinion that

12  Trump University did not represent to potential

13  customers that Mr. Trump was integrally involved in

14  the Trump University curriculum?

15          MR. KIRMAN:  Objection; argumentative,

16  compound, confusing, vague.

17          THE WITNESS:  No.

18          MR. KIRMAN:  Lacks foundation.

19          THE WITNESS:  Oops.  Sorry.

20          MR. KIRMAN:  Lacks foundation.

21          THE WITNESS:  No, I'm not offering that

22  opinion.

23          I need to know when you're done.

24  BY MR. PFEFFERBAUM:

25     Q.   Are you offering -- are you offering the

www.aptusCR.com

Exhibit 1
page 13

Joel Steckel, Ph.D.                    Art Cohen, et al. vs. Donald J. Trump

1   opinion that Trump University customers were not

2   deceived by advertising that stated that students

3   would learn Donald Trump's techniques or strategies?

4           MR. KIRMAN:   Objection; lacks foundation,

5   argumentative, compound, vague, misleading, calls for

6   a legal conclusion, calls for speculation.

7           THE WITNESS:   No.

8   BY MR. PFEFFERBAUM:

9       Q.   I'd like to come back to paragraph 42,

10  number 1 for a second.

11          (The document referred to was marked

12          by the CSR as Deposition Exhibit 3 for

13          identification and attached to the

14          deposition transcript hereto.)

15  BY MR. PFEFFERBAUM:

16      Q.   I'm going to hand you what's been marked

17  Exhibit 3.  It's the deposition of Donald Trump dated

18  December 10, 2015.

19          MR. KIRMAN:   Counsel, is this the whole

20  deposition?

21          MR. PFEFFERBAUM:   This is the whole

22  deposition.

23  BY MR. PFEFFERBAUM:

24      Q.   I'd just asked that you turn to page 135.

25          Dr. Steckel, I direct your attention to

Joel Steckel, Ph.D.                          Art Cohen, et al. vs. Donald J. Trump

```
 1   Mr. Trump that was cited by Dr. Kamins in his report?

 2      A.   No.

 3      Q.   Are you an expert in Trump University's

 4   hiring process?

 5           MR. KIRMAN:  Objection; argumentative, lacks

 6   foundation, vague, calls for a legal conclusion.

 7           THE WITNESS:  No.

 8   BY MR. PFEFFERBAUM:

 9      Q.   Are you an expert in what was represented to

10   class members regarding whether or not instructors

11   were handpicked by Donald Trump?

12           MR. KIRMAN:  Objection; lacks foundation,

13   vague, argumentative, calls for a legal conclusion.

14           THE WITNESS:  No.

15   BY MR. PFEFFERBAUM:

16      Q.   Did you review a sampling of Trump

17   University advertising to see how prevalent the

18   representation that instructors would be handpicked

19   by Mr. Trump was?

20           MR. KIRMAN:  Objection; compound, vague.

21           THE WITNESS:  No.

22           MR. KIRMAN:  Also object; lacks foundation.

23   BY MR. PFEFFERBAUM:

24      Q.   What -- Dr. Steckel, what is the purpose of

25   paragraph 42, number 1, with respect to the opinion
```

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

1  BY MR. PFEFFERBAUM:

2      Q.   And you don't have -- you -- you reference

3  just one document that we looked at earlier, correct,

4  Exhibit 2?

5      A.   No.

6      Q.   With respect to footnote 27?

7      A.   There's only one document in footnote 27.

8      Q.   Do you -- are you aware of any other

9  documents that support your position in 42, number 1,

10 that some students were told that instructors were

11 hired by TU president Michael Sexton, not by

12 Mr. Trump?

13     A.   Not as I sit here today.

14     Q.   Looking at number 3 in paragraph 42 you

15 state (reading):

16             "Students largely understood that

17         TU was not a real university."

18         Do you see that?

19     A.   I do.

20     Q.   And you're -- again, you're offering that as

21 an opinion in this case about what students largely

22 understood about whether TU was a real university,

23 correct?

24     A.   I'm sorry.  Repeat the question.

25     Q.   Are you offering the opinion in this case

1    that students largely understood that TU was not a

2    real university?

3          A.    That is not part of my expert opinion, no,

4    it is not.

5          Q.    So is your opinion then in paragraph 42,

6    number 3, limited to the fact that -- limited to the

7    three -- the two depositions you cite -- I'm sorry --

8    the -- the three depositions you cite in footnote 29?

9              MR. KIRMAN:    Objection; compound, vague,

10   ambiguous.

11   BY MR. PFEFFERBAUM:

12         Q.    I'll withdraw the question.

13             When you state that "students largely

14   understood," do you mean that more than half the

15   students understood that TU was not a real

16   university?

17         A.    I don't know what the percentage is.

18         Q.    How did you arrive at the descriptor

19   "largely"?

20         A.    Simply by comparing the number of students

21   through whose deposition testimony I was able to

22   infer that TU was not a real university compared to

23   the number of students who were of the impression

24   that TU was a real university.

25         Q.    And of those depositions that you read, how

1          Is it -- is it your opinion that someone

2    with a college or graduate degree understood that TU

3    was not a real university?

4            MR. KIRMAN:  Objection; calls for

5    speculation, lacks foundation, vague.

6            THE WITNESS:  Are you asking me whether it's

7    my expert opinion or whether my personal opinion?

8    BY MR. PFEFFERBAUM:

9        Q.    I'm asking you whether it is your expert

10   opinion in this case that individuals with a college

11   or graduate degree understood that TU was not a real

12   university?

13       A.    No.

14           MR. KIRMAN:  Objection; calls for

15   speculation, lacks foundation, vague.

16           THE WITNESS:  That is not part of the expert

17   opinions that I'm planning to offer at this time.

18   BY MR. PFEFFERBAUM:

19       Q.    Are you offering the opinion that students

20   were not deceived by Trump University's use of the

21   university moniker?

22           MR. KIRMAN:  Objection; calls for

23   speculation, lacks foundation, calls for a legal

24   conclusion, vague.

25           THE WITNESS:  I am not offering an expert

1   opinion in that regard.

2   BY MR. PFEFFERBAUM:

3        **Q.    Could you turn to page 16, your conclusion**

4   **number 2.**

5        A.    I'm there.

6        **Q.    Excellent.**

7             **This is where you're addressing Dr. Kamins'**

8   **opinion that Trump University advertising focused**

9   **almost exclusively on Trump and his expertise as a**

10  **real estate mogul; is that correct?**

11            MR. KIRMAN:  Counsel, I'm not on the same --

12  what page are you on?

13            MR. PFEFFERBAUM:  Page 16, conclusion

14  number 2, paragraph 44.  It says (reading):

15            "In his first opinion, Dr. Kamins

16            condemns TU's advertising and

17            marketing campaign for" --

18            THE DEPOSITION OFFICER:  I'm sorry.

19            MR. PFEFFERBAUM:  I'm sorry.  (Reading):

20            "In his first opinion, Dr. Kamins

21            condemns TU's advertising and

22            marketing campaign for focusing

23            'almost exclusively on Trump' and for

24            targeting Mr. Trump's fan base."

25            Dr. Steckel, you see that?

Exhibit 1
page 19

Joel Steckel, Ph.D.                    Art Cohen, et al. vs. Donald J. Trump

1        A.    Not specifically.  I'm relying on my general

2    background as a marketing professor who understands

3    the mechanics of how celebrity endorsements work, and

4    they are not necessarily directed at fan base.

5        **Q.    You didn't cite Dr. Kamins' work in your**

6    **report, did you?**

7        A.    No.

8            MR. KIRMAN:  Objection; misleading, vague.

9    BY MR. PFEFFERBAUM:

10       **Q.    Were you relying on that work in forming**

11   **your opinions?**

12       A.    No, I was just pointing out to you right now

13   that my opinions, which have a very strong basis in

14   other literature, are consistent with some of the

15   work that Dr. Kamins did over 20 years ago.  That's

16   all.

17       **Q.    Are you offering the opinion that**

18   **Trump University's marketing and advertising was only**

19   **targeted at those individuals who had previously**

20   **expressed interest in real estate?**

21           MR. KIRMAN:  Objection; misstates the

22   testimony, vague, calls for speculation.

23           THE WITNESS:  No.

24   BY MR. PFEFFERBAUM:

25       **Q.    Do you dispute that Trump University's**

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

1  refers to that people can generate interest in things

2  that they don't want advertising -- you know, that's

3  what you may believe, but it don't work that way.

4  BY MR. PFEFFERBAUM:

5      **Q.   So in that -- your -- your testimony is that**

6  **there's some sort of latent interest in real estate**

7  **investment that Trump University's advertising**

8  **attempts to tap into?**

9          MR. KIRMAN:  Dr. Steckel, were you done with

10  your answer before you were cut off?

11          THE WITNESS:  I was.

12          MR. KIRMAN:  Okay.  You could go ahead and

13  answer.

14          THE WITNESS:  Okay.  No, I'm not saying that

15  at all.  I need to see -- I -- I would -- before I

16  answer that question, exactly what they were doing,

17  I'd like to take a look at all their advertising

18  plans.

19          I'm just objecting to your characterization

20  that anybody can manufacture interest in real estate

21  simply through advertising.  That's preposterous.

22  BY MR. PFEFFERBAUM:

23      **Q.   Looking at footnote 32 on paragraph -- on**

24  **page 16 there.**

25          **Do you see that?**

1    The Trump Institute?

2         A.   Yes.

3         Q.   And do you have an understanding of the

4    difference between Trump University and

5    Trump Institute?

6         A.   No.

7         Q.   Are you aware that counsel for Mr. Trump --

8    previous counsel for Mr. Trump represented that

9    Trump Institute is a separate party from

10   Trump University?

11             MR. KIRMAN:  Objection; lacks foundation,

12   calls for speculation, vague, asked and answered.

13             THE WITNESS:  No.

14   BY MR. PFEFFERBAUM:

15        Q.   Okay.  If you had known that this document

16   did not come from Trump University, would you have

17   relied upon it?

18             MR. KIRMAN:  Objection; incomplete

19   hypothetical, vague, calls for speculation.

20             THE WITNESS:  Yes.

21   BY MR. PFEFFERBAUM:

22        Q.   You would have relied on it -- upon it?

23        A.   Yes.

24        Q.   And what basis -- why would you have

25   relied -- never mind.  That's fine.

Joel Steckel, Ph.D.                          Art Cohen, et al. vs. Donald J. Trump

 1            MR. KIRMAN:  Objection; argumentative,
 2    vague, misleading, harassing.
 3            THE WITNESS:  What do you mean by
 4    "principled inquiry"?
 5    BY MR. PFEFFERBAUM:
 6        Q.   Did you do a content analysis of the
 7    advertising?
 8        A.   No, I did not.
 9        Q.   You didn't look at any advertising, right?
10            MR. KIRMAN:  Objection; misstates the
11    testimony.
12            THE WITNESS:  I didn't need to.  I looked at
13    the advertising that Dr. Kamins tested, as well as a
14    few small pieces that were in the documents or
15    referenced in the documents that were in Exhibit 3 or
16    the list that counsel forwarded to you last night.
17    BY MR. PFEFFERBAUM:
18        Q.   You were referencing your Exhibit 3, not
19    Dr. Kamins' Exhibit 3, correct?
20        A.   Yes, that's correct.
21        Q.   So you're not offering the opinion that
22    Trump University did not offer to teach Mr. Trump's
23    strategies and techniques, are you?
24            MR. KIRMAN:  Objection; vague, misstates the
25    testimony, vague.

**www.aptusCR.com**

Exhibit 1
page 23

Joel Steckel, Ph.D.                           Art Cohen, et al. vs. Donald J. Trump

1    the bottom of 22?

2         A.   Michael Sexton's?

3         Q.   Yes.

4         A.   Yes.

5         Q.   And what opinion are you supporting here

6    by -- with the quotation of this email from page 22

7    to 23?

8         A.   Okay.  The opinion that I am supporting

9    there is the opinion that -- well, I guess that

10   supports two opinions.  No, actually maybe only one.

11   Hold on.

12             MR. KIRMAN:  Take your time, Dr. Steckel.

13             THE WITNESS:  Yeah.

14             MR. KIRMAN:  Make sure you read the relevant

15   passage.

16             THE WITNESS:  Okay.  Okay.  So as I've tried

17   to make clear, my overarching opinions are not

18   related to what Trump University did or didn't do.

19   They're what -- they relate to what Dr. Kamins did or

20   didn't do.

21             So I believe this email in that regard

22   supports two things within the framework of my

23   report.  Number one, that he neglected evidence that

24   contradicts his opinions, and I think the email

25   speaks for itself with respect to what it says about

www.aptusCR.com

Exhibit 1
page 24

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

1    the marketing strategy of Trump University.

2            Second, if you go to the bullet point and

3    the graph above, which I understand you had an

4    alternative graph that -- or -- or a table that you

5    showed Dr. Kamins on redirect in his deposition, that

6    the -- this is a supplementary point that just

7    shows -- that lends credibility to the graph, and the

8    implications of the graph, that Trump University was

9    accomplishing in its marketing what the email says

10   that it is trying to accomplish.

11   BY MR. PFEFFERBAUM:

12       Q.    You've already testified today that you

13   don't dispute that Trump University's advertising

14   focused on Donald Trump, correct?

15           MR. KIRMAN:    Objection; misstates the

16   testimony.

17           THE WITNESS:    Right.  I don't -- I testified

18   that I don't dispute it.  I also testified that I

19   didn't necessarily agree with the opinion either, and

20   I believe you were perplexed at the time.  The reason

21   was because I have no opinion on that matter.

22   BY MR. PFEFFERBAUM:

23       Q.    How --

24       A.    For or against.

25       Q.    Well, how is it then that you can have an

1    **opinion with respect to the 2006 email that you quote**

2    **that it reflects Trump University's advertising if**

3    **you did not, in fact, examine Trump University's**

4    **advertising?**

5                MR. KIRMAN:  Objection; misstates the

6    testimony.

7                THE WITNESS:  So --

8                MR. KIRMAN:  Calls for speculation, lack of

9    foundation, vague.

10                THE WITNESS:  So, Mr. Pfefferbaum, I don't

11    think you read what I wrote, again.  I said TU's

12    intent in developing its advertising.  I didn't say

13    the advertising itself.

14    BY MR. PFEFFERBAUM:

15        **Q.   Do you have any evidence that this intent**

16    **was followed through in its advertising?**

17                MR. KIRMAN:  Objection; lack of foundation,

18    calls for speculation, vague.

19                THE WITNESS:  I did not do a content

20    analysis or any -- what was it? -- principled

21    investigation that should have been recorded and

22    produced of any content analysis of the advertising.

23    So, no, I only take -- the best I can say is I would

24    take Mr. Sexton as -- at his word.

25    ///

1          MR. KIRMAN:  Objection; calls for

2   speculation, lack of foundation, vague, calls for a

3   legal conclusion.

4          THE WITNESS:  I don't know.

5   BY MR. PFEFFERBAUM:

6      Q.   Would you still rely on it -- on this

7   exhibit if you knew that the Wealth Builder's and the

8   Real Estate Goldmine products were not part of the

9   litigation?

10         MR. KIRMAN:  Objection; incomplete

11  hypothetical, calls for speculation, lack of

12  foundation.

13         THE WITNESS:  Yes.

14  BY MR. PFEFFERBAUM:

15     Q.   Can you turn back to your report, to

16  page 23?

17     A.   Yes.

18     Q.   You see the bolded text at the top that --

19  of the -- of the email?

20     A.   On page 23?

21     Q.   Yes.

22     A.   Yes.

23     Q.   Do you intend to offer the opinion that

24  people don't expect DJT to be teaching them anything,

25  and they don't care as long as the professors are

Exhibit 1
page 27

1    **expert in the fields?**

2        A.    No, that's not part of what I expect to

3    offer.

4        **Q.    Okay.    Turning to the next section of your**

5    **report, page 24 of your report.**

6            MR. KIRMAN:    Counsel, the next section on my

7    copy starts at page 23.

8            MR. PFEFFERBAUM:    Oh, I understand.    We're

9    just moving to the next section of the report,

10   specifically page 24.

11   BY MR. PFEFFERBAUM:

12       **Q.    Dr. Steckel, are you offering the opinion**

13   **that students had ample deliberation time to**

14   **reconsider a Trump University purchase?**

15           MR. KIRMAN:    Dr. Steckel, take -- take the

16   time you need to review the relevant section here to

17   answer counsel's question.

18           (Document reviewed by witness.)

19           THE WITNESS:    Well, it isn't one of the main

20   opinions that I was expecting to offer at trial, but

21   I -- I do have that opinion.

22   BY MR. PFEFFERBAUM:

23       **Q.    And that's from page 24 to 26?**

24       A.    No.    That --

25       **Q.    What -- go ahead.**

1    motivations by looking at actual behavior and

2    inferring motivations from those behaviors.

3              People don't always know why they do what

4    they do.  If they did, my sister-in-law would have

5    saved tens of thousands of dollars on therapy about

6    trying to figure out why she always chose the wrong

7    men.

8    BY MR. PFEFFERBAUM:

9         Q.   Let's turn to paragraph 79 of your report.

10             Are you offering the opinion that

11   Trump University's 98 percent approval rating is the

12   product of a reliable methodology?

13        A.   No.

14        Q.   Okay.  How many surveys did you review in

15   forming your opinions in Section 7 of your report?

16        A.   Maybe half a dozen.

17        Q.   You only cite two in Exhibit 3.  Where did

18   you look at them?

19             MR. KIRMAN:  Objection; lack of foundation.

20             THE WITNESS:  I don't know.  I looked at --

21   I -- I don't know.  I don't know why that's an

22   inconsistency.

23   BY MR. PFEFFERBAUM:

24        Q.   But it's your testimony that you looked at

25   more than two surveys?

**Joel Steckel, Ph.D.**                          **Art Cohen, et al. vs. Donald J. Trump**

1      A.    It's my testimony that I believe I did.  If

2   only two are cited, I did a cataloging yesterday of

3   all the items that were sent to me.  So either -- if

4   there are only two items and then -- and none of

5   those items contained multiple surveys, then my

6   testimony -- I'll revise my recent testimony and

7   apologize for the potential error.

8      **Q.    You offer the opinion that a 98 percent**

9   **satisfaction rate is compatible with a 25 percent**

10  **refund rate; is that correct?**

11     A.    No.

12     **Q.    Okay.**

13     A.    You, again, are misreading what I write.

14     **Q.    You write (reading):**

15          **"Not only is a 98 percent**

16          **approval rating compatible with a**

17          **25 percent refund rate, it is**

18          **entirely expected given that refunds**

19          **can be issued as late as after the**

20          **first day of a Live Event."**

21          **Did I read that correctly?**

22     A.    You did read that correctly, but the word

23  "satisfaction" is not in that sentence.

24     **Q.    Is it your opinion -- okay.  What is the**

25  **98 percent approval rating -- is the 98 percent**

Joel Steckel, Ph.D.                    Art Cohen, et al. vs. Donald J. Trump

1    **approval rating representative of customer**

2    **satisfaction to you?**

3              MR. KIRMAN:  Objection; vague.

4              THE WITNESS:  I don't know.

5    BY MR. PFEFFERBAUM:

6        **Q.   In the course of offering the opinion in**

7    **Section 4 -- in Section 7, did you assume the**

8    **98 percent approval rating represented 98 percent**

9    **customer satisfaction rating?**

10             MR. KIRMAN:  Objection; vague, calls for

11   speculation, lacks foundation.

12             THE WITNESS:  No.  These are just logical

13   statements that are independent of what the data --

14   of what the data actually represents.

15   BY MR. PFEFFERBAUM:

16       **Q.   Well, let me come back to my question then.**

17             **Is a 98 percent satisfaction rate compatible**

18   **with a 25 percent refund rate?**

19             MR. KIRMAN:  Objection; vague, lacks

20   foundation, calls for speculation.

21             THE WITNESS:  So let me -- let me answer the

22   question this way:  It depends on what you define as

23   "compatible."

24             I am saying that 98 percent approval rating

25   or satisfaction rating on some questionnaire can

```
 1   certainly happen simultaneously with a 25 percent
 2   refund rate.  And that simple numerical example in --
 3   in paragraph 81 demonstrates how, and, you know,
 4   Dr. Kamins and Mr. Kirman went through a -- what
 5   appeared to be a painful back and forth about that --
 6   about -- with a similar example.
 7            I'm just saying that those two numbers can
 8   exist at the same time.  It's an arithmetic
 9   statement, not a conceptual one.
10   BY MR. PFEFFERBAUM:
11       Q.  In assessing customer satisfaction in this
12   example, in paragraph 80 and 81, you're simply not
13   counting those individuals who received a refund,
14   right?
15            MR. KIRMAN:  Objection; misstates the
16   testimony, vague and ambiguous, lacks foundation.
17            THE WITNESS:  And misquotes my report.
18            I'm not opining on what is or is not a
19   proper way to measure customer satisfaction.  I'm
20   only opining that you can have data that appear the
21   way those data in paragraph 81 appear.
22   BY MR. PFEFFERBAUM:
23       Q.  Are you aware -- aware of any products that
24   have a 25 percent refund rate?
25            MR. KIRMAN:  Objection; vague.
```

Exhibit 1
page 32

Joel Steckel, Ph.D.                    Art Cohen, et al. vs. Donald J. Trump

1          Q.    What percentage of the surveys that you

2    conduct are nonanonymous versus anonymous?

3          A.    The majority of my surveys are -- give the

4    respondent the option of being -- of providing their

5    name or not.

6          Q.    So you would consider those anonymous?

7                MR. KIRMAN:   Objection; misstates the

8    testimony.

9                THE WITNESS:   No, if you want me -- for the

10   purposes of this dialogue, you want me to consider

11   those anonymous, I'm happy to, but I never said what

12   I would consider them.

13   BY MR. PFEFFERBAUM:

14         Q.    So, Dr. Steckel, your testimony is that

15   giving stu -- respondents an option to fill out their

16   name is a nonanonymous survey?

17               MR. KIRMAN:   Objection; misstates the

18   testimony.

19               THE WITNESS:   No, my testimony is that

20   giving respondents the option is an optional survey.

21   I would call it an optional name-providing survey.

22   BY MR. PFEFFERBAUM:

23         Q.    Your -- in paragraph 82 you write that

24   (reading):

25                    "The contention that the

www.aptusCR.com

Exhibit 1
page 33

1              questionnaires were not anonymous is

2              contradicted by the testimony of a

3              student Tarla Makaeff, who said she

4              gave an anonymous evaluation."

5          Do you see that?

6      A.   Yes.

7      Q.   How many students sur -- filled out surveys

8  anonymously at TU?

9          MR. KIRMAN:   Objection; foundation, calls

10  for speculation, vague.

11          THE WITNESS:   I don't know.

12  BY MR. PFEFFERBAUM:

13      Q.   Did you look at any surveys in which it was

14  not indicated that filling out student's name was

15  optional?

16      A.   Yes.

17      Q.   Where did you see those surveys?

18      A.   That's my impression and my recollection

19  that the surveys I looked at the word "optional" was

20  next to the name line on some but not on others.

21      Q.   And why didn't you reference those surveys

22  in paragraph 82?

23      A.   Oh, well, that's an easy answer.  Because

24  the purpose of my report was to address Dr. Kamins'

25  report, not to address the truth of the matter.  And

```
 1  BY MR. PFEFFERBAUM:

 2       Q.   Is it -- did you make --

 3       A.   Or Minnesota.

 4       Q.   Did you make any --

 5       A.   Metropolitan Stadium.

 6       Q.   Did you make any attempt to determine who

 7  JBO is?

 8       A.   No.

 9            MR. KIRMAN:  Objection; vague.

10  BY MR. PFEFFERBAUM:

11       Q.   Did you make any attempt to determine the

12  reliability of the testimonial that appears on the

13  first page of Exhibit 8?

14            MR. KIRMAN:  Objection; vague, lack of

15  foundation.

16            THE WITNESS:  By reliability do you mean

17  veracity?

18  BY MR. PFEFFERBAUM:

19       Q.   Yes.

20       A.   No, I did not.

21       Q.   And would that be the same for all of the

22  testimonials that you rely on in Exhibit 8?

23            MR. KIRMAN:  Same objections; vague, lack

24  foundation.

25            THE WITNESS:  Yes.
```

```
 1              MR. KIRMAN:  Objection; vague, incomplete
 2    hypothetical, lacks foundation, calls for
 3    speculation.
 4              THE WITNESS:  There are a sequence of TU
 5    products that can be purchased, but I don't know that
 6    cognitive dissonance exists in any one of them.
 7    BY MR. PFEFFERBAUM:
 8         Q.   Did you make -- undertake any investigation
 9    to determine whether the TU surveys exhibit
10    confirmatory bias?
11              MR. KIRMAN:  Objection; vague, lacks
12    foundation.
13              THE WITNESS:  Only the personal reflection
14    that I have in paragraph 87, but the more important
15    point is that Dr. Kamins did not undertake any
16    investigation to -- to demonstrate that they did.
17    BY MR. PFEFFERBAUM:
18         Q.   Do you have an opinion whether the TU's
19    surveys exhibit confirmatory bias or not?
20              MR. KIRMAN:  Objection; vague.
21              THE WITNESS:  I -- I -- yeah, I do.
22    BY MR. PFEFFERBAUM:
23         Q.   And that opinion is based on your review of
24    two to six surveys that you previously mentioned?
25              MR. KIRMAN:  Objection --
```

```
 1              THE WITNESS:  No.

 2              MR. KIRMAN:  -- mischaracterizes the

 3    evidence.

 4              THE WITNESS:  No, that opinion is based on

 5    my own teaching ratings and in the situation that if

 6    the students believed Trump University was a real

 7    university would be analogous to my particular

 8    personal situation and I don't have 98 percent

 9    approval ratings that were generated by any

10    confirmatory bias.  And if Dr. Kamins does, all power

11    to him.

12    BY MR. PFEFFERBAUM:

13        Q.  Do you have any citation to any academic

14    literature supporting your opinion that your

15    experience as an NYU professor is evidence that there

16    is no confirmatory bias in the Trump University

17    survey?

18              MR. KIRMAN:  Objection; compound, vague,

19    misleading, lacks foundation.

20              THE WITNESS:  I don't know of any academic

21    literature that is published on my personal teaching

22    experience.

23    BY MR. PFEFFERBAUM:

24        Q.  So that's a "no"?

25              MR. KIRMAN:  Objection; mischaracterizes the
```

Joel Steckel, Ph.D.                          Art Cohen, et al. vs. Donald J. Trump

1      Q.    Was that -- is it your understanding that

2    that document was provided for you in the context of

3    your opinion in paragraph 89 and 90?

4              MR. KIRMAN:   Objection; vague, lacks

5    foundation, calls for speculation.

6              THE WITNESS:   I don't remember exactly when

7    and how that document was provided.

8    BY MR. PFEFFERBAUM:

9      Q.    Why didn't you cite the testimony of

10   John Brown who said he was repeatedly pressured into

11   raising his evaluation of his mentor in paragraph 89

12   or 90 of your report?

13             MR. KIRMAN:   Objection; vague, lacks

14   foundation, calls for speculation, misstates the

15   testimony.

16             THE WITNESS:   But it's an easy question to

17   answer, fortunately.

18             I didn't cite it because, again, my opinions

19   are what Dr. Kamins did and didn't do.

20             Yes, Dr. John Brown's deposition supports

21   Dr. Kamins' view, and I have no problem acknowledging

22   that, but I do have a problem that Dr. Kamins ignores

23   things that refute his view and making statements

24   that are not qualified to the extent that maybe some

25   students weren't prompted to give higher scores.

www.aptusCR.com

Exhibit 1
page 38

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

```
 1            THE WITNESS:  I don't, but I suspect that
 2    that understanding would be provided by the brief
 3    that is attached to the email, although I don't see a
 4    reference to an attachment, you know, an icon that
 5    one would click on to download the attachment.
 6    BY MR. PFEFFERBAUM:
 7        Q.    Okay.  Can you turn to page 28 of your
 8    report, please.
 9        A.    Certainly.  Uh-huh.
10        Q.    Let me ask you a question actually not --
11    not connected to page 28, just quickly.
12            Trump University didn't use a control group
13    in their 98 percent survey, did they?
14            MR. KIRMAN:  Objection; lacks foundation,
15    calls for speculation, vague.
16            THE WITNESS:  Those -- I don't know how --
17    besides the structure of those questionnaires I don't
18    know how Trump University conducted their study to
19    come up with that number.
20    BY MR. PFEFFERBAUM:
21        Q.    Okay.  Looking at page 28 of your report,
22    the bullet point below the crest.
23        A.    "Marketers frequently encourage"?
24        Q.    Yes.  Would the -- would you be describing
25    here in this bullet point on 28 and in the
```

**Joel Steckel, Ph.D.**                                    **Art Cohen, et al. vs. Donald J. Trump**

1   STATE OF CALIFORNIA        )
                               ) ss.
2   COUNTY OF LOS ANGELES      )

3

4       I, NIKKI ROY, Certified Shorthand Reporter,

5   certificate number 3052, for the State of

6   California, hereby certify:

7       The foregoing proceedings were taken before me

8   at the time and place therein set forth, at which

9   time the deponent was placed under oath by me;

10      The testimony of the deponent and all

11  objections at the time of the examination were

12  recorded stenographically by me and were thereafter

13  transcribed;

14      The foregoing transcript is a true and correct

15  transcript of my shorthand notes so taken;

16      I further certify that I am neither counsel for

17  nor related to any party to said action nor in any

18  way interested in the outcome thereof.

19      In witness whereof I have hereunto subscribed

20  my name this 18th day of April, 2016.

21

22  _____

23      NIKKI ROY, CSR No. 3052

24

25

**Joel Steckel, Ph.D.**                    **Art Cohen, et al. vs. Donald J. Trump**

```
 1              DECLARATION UNDER PENALTY OF PERJURY

 2    Case Name: Art Cohen, et al. vs. Donald J. Trump

 3    Date of Deposition: 04/18/2016

 4    Job No.: 10022816

 5

 6              I, JOEL STECKEL, PH.D., hereby certify

 7    under penalty of perjury under the laws of the State of

 8    _____ that the foregoing is true and correct.

 9              Executed this _____ day of

10    _____, 2016, at _____.

11

12

13                    _____

14                    JOEL STECKEL, PH.D.

15

16    NOTARIZATION (If Required)

17    State of _____

18    County of _____

19    Subscribed and sworn to (or affirmed) before me on

20    this _____ day of _____, 20__,

21    by_____,    proved to me on the

22    basis of satisfactory evidence to be the person

23    who appeared before me.

24    Signature: _____ (Seal)

25
```

# EXHIBIT 2

Exhibit 2
page 42

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


ART COHEN, INDIVIDUALLY AND ON      )
BEHALF OF ALL OTHERS SIMILARLY      )
SITUATED,                           )
                                    )
            PLAINTIFFS,             )
                                    )
    vs.                             )   Case No. 13CV2519
                                    )            DMS RBB
DONALD J. TRUMP,                    )
                                    )
            DEFENDANTS.             )
_____)



VIDEOTAPED DEPOSITION OF MICHAEL A. KAMINS, Ph.D

FRIDAY, APRIL 1, 2016




FILE NO. 11009
REPORTED BY LEESA DURRANT, C.S.R. NO. 11899, RPR

Exhibit 2
page 43

MICHAEL A. KAMINS

April 01, 2016

1      Q    Did any of those stories which you saw either

2   about Mr. Trump or the Trump University litigation have

3   an affect on the opinions that you offered in your

4   report?

5      **A    No.**

6           MR. KIRMAN:  Objection.  Leading.  Lacks

7   foundation.

8           **THE WITNESS:  Not at all.**

9           MR. KIRMAN:  Calls for speculation.  Sir, can

10  you give me a chance to object?

11          **THE WITNESS:  I'm sorry.  I'm sorry.  I'm still**

12  **under oath.**

13  BY MR. PFEFFERBAUM:

14     Q    Dr. Kamins, if you look at your report, you

15  recall that we discussed at length today a statement

16  that on page 5 in paragraph 20 that says, "In addition,

17  I have assumed that the allegations alleged in the claim

18  are true and will be proven by plaintiff at trial."

19          What allegations in the complaint did you rely

20  upon in forming your opinions in this matter?

21     **A    Mainly three:  That Trump handpicked his**

22  **instructors, that people would learn Mr. Trump's**

23  **strategies and techniques, and finally, that Trump**

24  **University was operating legally.**

25     Q    And you are not offering any expert opinion as

MICHAEL A. KAMINS

April 01, 2016

```
 1   to the truth or falsity of any of those three

 2   statements, are you?

 3        A    No, not at all.

 4             MR. KIRMAN:  Objection.  Leading.  Calls for

 5   speculation.  Lacks foundation.

 6   BY MR. PFEFFERBAUM:

 7        Q    You can answer.

 8        A    No.

 9        Q    Thank you.  Dr. Kamins, you testified that you

10   looked at materials on defendant's website,

11   98PercentApproval.com; correct?

12        A    Correct.

13             MR. KIRMAN:  Objection.  Lacks foundation.

14   BY MR. PFEFFERBAUM:

15        Q    And one of the things that you said that you

16   looked at on that website were redacted student

17   surveys -- I'm sorry.

18             One of the things you said you looked at on the

19   website were student surveys; correct?

20        A    Correct.

21        Q    Were those surveys redacted?

22        A    Many, many were, yes.

23        Q    And in reviewing the reports of defendant's

24   experts, did you see the same surveys referenced in one

25   of those reports?
```

# EXHIBIT 3

Exhibit 3
page 46

| From: | Kirman, David L. <dkirman@omm.com> |
|---|---|
| Sent: | Sunday, April 17, 2016 6:13 PM |
| To: | Dan Pfefferbaum; Brian Cochran; Rachel Jensen; Jason Forge |
| Cc: | Wyman, Alexander; Petrocelli, Daniel |
| Subject: | Steckel Documents |

Counsel,

While preparing for his deposition today, Joel Steckel informed us that were several documents that were inadvertently omitted from Exhibit 3 to his report. None of these documents are cited as evidence in his report. These documents include the following:

Deposition of John Brown
Deposition of Gary Eldred
Deposition of Joann Everett
Deposition of Steven Miller
Deposition of Ronald Schnackenberg
DT0026891
DT0054261
TU 62079
TU 130484
TU 281692
TU 99111
TU 59831
TU-PLTF-04005

We brought this issue to your attention as soon as we learned of it. Please let me know if you want me to have copies of any of the above for your review in the morning. See you in the morning.

Best,

**David L. Kirman**
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Phone: (310) 246-6825
dkirman@omm.com



*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

1

Exhibit 3
page 47