# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br>v.<br><br>DONALD J. TRUMP,<br><br>                         Defendant. | CASE NO. 13-cv-2519-GPC-WVG<br>Related Case: 10-cv-0940-GPC-WVG<br><br>**ORDER GRANTING MOTION OF NON-PARTY PRESS ORGANIZATION FOR LIMITED PURPOSE INTERVENTION AND ORDER UNSEALING COURT RECORDS**<br><br>[ECF No. 176] |

Before the Court is non-party press organization WP Company LLC d/b/a The Washington Post's ("WP" or "the Post") motion to intervene for the limited purpose of requesting the immediate unsealing of exhibits filed with the Court under seal in connection with Plaintiff Art Cohen's Class Certification Motion, *see* ECF Nos. 39-2, 45-1. WP Mot., ECF No. 176. The motion has been fully briefed. *See* Def. Opp., ECF No. 199; WP Reply, ECF No. 202. A hearing on the motion was held on May 27, 2016. ECF No. 210.

Upon consideration of parties' briefs, oral argument, and the applicable law, and for the following reasons, the Court **GRANTS** the Post's motion to intervene.

## BACKGROUND

The Post seeks to unseal a number of exhibits attached by Plaintiff Art Cohen

("Plaintiff") to his motion for class certification, ECF No. 39, and by Defendant Donald J. Trump ("Defendant") in his response to the motion for class certification, ECF No. 45. Specifically, the Post seeks to unseal ECF No. 39-2, Forge Decl., Exs. 6, 12, 14-21, 27-34A, 36-38, 40, and 44, and ECF No. 45-1, Stagg Decl., Exs. 1-3, 7-22, 24-28, 33-34, and 36. WP Mot. 25.[1]

Plaintiff does not oppose the motion. Both Plaintiff and Defendant have agreed to the unsealing of 48 of the 52 documents at issue. Def. Opp. 1. Thus, currently at issue are 153 pages from the remaining four documents: Trump University's ("TU") 2010 Playbook, 2009 Playbook, Field Team Playbook, and Sales Playbook (the "Playbooks"), attached by Plaintiff to the Forge Declaration as Exhibits 6, 21, 27, and 28 respectively. *Id.*; *see* ECF No. 39-2.

Magistrate Judge Gallo previously addressed whether to de-designate the Playbooks as confidential in his August 28, 2014 Order ("Gallo Order") in the related case *Low v. Trump University, LLC.*, No. 3:10-cv-00940-GPC-WVG, ECF No. 343. There, he evaluated Plaintiffs' de-designation motion under a "good cause" standard and found regarding the disputed portions of the Playbooks that:

> In isolation, nothing appears to be unique, proprietary, or revolutionary. The information is very routine and commonplace information. However, when considered as a whole or compilation, the information is arguably trade secret, deserving of a "confidential" designation pursuant to the terms of the protective order.

Gallo Order 14. Judge Gallo then performed a line-by-line analysis of the Playbooks and found that the vast majority of the information was either "[n]ot confidential" or only "[a]rguably trade secret." *See* Gallo Order, Ex. A. Only in four instances in the Sales Playbook did Judge Gallo determine that there was "trade secret information." *See id.* at 23.

The information Judge Gallo found to be "arguably trade secret" in the Playbooks falls into four categories: (1) timelines, rules, and procedures for running

---

[1] The Post does not seek "sensitive personal information," such as "any social security numbers, home address or phone numbers, or sensitive personal financial information of any individual TU customers." WP Mot. 19.

TU events; (2) guidelines and scripts for engaging with TU customers; (3) student policies and procedures, such as for auditors, disruptive students, and methods of payment; and (4) employee policies and procedures, such as dress and behavior codes, expenses, and media guidelines. The Playbooks do not contain sensitive personal information of any individual TU customers, but they do contain the names, numbers, and e-mail addresses of a number of TU employees.

The 2009 and 2010 Playbooks contain general overviews of all aspects of TU, while the Field Team Playbook focuses on protocols for running TU events, and the Sales Playbook focuses on how to sell TU programs to customers.

The "arguably trade secret" information in the 2009 and Field Team Playbooks is largely duplicative of that in the 2010 Playbook. Only the Sales Team Playbook offers relatively original information as to the sales and marketing techniques recommended for selling TU programs.

The entire 2010 Playbook has been posted online by Politico.[2]

**DISCUSSION**

The Post makes several arguments as to why the documents should be unsealed. First, the Post argues that because the class certification motion was more than tangentially related to the merits of the case, the public has a presumptive right of access and the "compelling reasons" standard applies. WP Mot. 6–11. The Post argues that Defendant cannot meet this standard, because Defendant's asserted commercial interests are insufficient to overcome the presumptive right of access, *id.* at 16, and the public interest is unusually strong in this case, *id.* at 19–23. Second, the Post argues that the First Amendment right of access also applies. *Id.* at 11.

Defendant responds that because the class certification motion was non-dispositive, the "good cause" standard applies. Def. Opp. 5–8. Defendant argues that

---

[2] *See* Maggie Severns, *Tales from the Trump University Legal Vault*, Politico (March 3, 2016, 12:54 PM), http://www.politico.com/story/2016/03/trump-university-lawsuit-documents-220181; http://static.politico.com/25/88/783a0dca43a0a898f3973da0086f/trump-university-playbook.pdf.

the contested portions of the Playbooks must remain sealed because they contain trade secrets. *Id.* at 9–14.

## I. Legal Standard

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n. 7 (1978)). "This right is justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies.'" *Id.* (quoting *Nixon*, 435 U.S. at 598). "Such vigilance is aided by the efforts of newspapers to 'publish information concerning the operation of government.'" *Id.* (quoting *Nixon*, 435 U.S. at 598).

Traditionally, the Ninth Circuit drew a distinction between "dispositive" pleadings, such as motions for summary judgment and related attachments, where the strong presumption of access was applied fully, and a party must articulate "compelling reasons" to seal a document, and "non-dispositive" motions, where a "good cause" standard applied. *Id.* at 1180. In *Kamakana*, the Ninth Circuit explained that it did so because "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events," whereas "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179 (citations omitted) (internal quotation marks omitted).

However, in *Center for Auto Safety*, the Ninth Circuit recently disapproved of such a "binary" approach based on "mechanical classifications," reasoning that "[m]ost litigation in a case is not literally 'dispositive,' but nevertheless involves important issues and information to which our case law demands the public should have access." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016). Reviewing the Ninth Circuit's previous decisions, the court observed that "[t]he focus

in all of our cases is on whether the motion at issue is more than tangentially related to the underlying cause of action . . . . It is true that nondispositive motions are sometimes not related, or only tangentially related, to the merits of a case . . . . But plenty of technically nondispositive motions . . . are strongly correlative to the merits of a case." *Id.* at 1099. The Ninth Circuit then "ma[d]e clear that public access to filed motions and their attachments does not merely depend on whether the motion is technically 'dispositive.' Rather, public access will turn on whether the motion is more than tangentially related to the merits of a case." *Id.* at 1101. Under this standard, the court found that the motion for preliminary injunction at issue was more than tangentially related to the merits of the case. *Id.* at 1102.

The Post argues that under *Center for Auto Safety*, the "compelling reasons" standard should apply because a class certification motion is "more than tangentially related to the merits of a case," WP Mot. 8–11, while Defendant contends that the "good cause" standard should apply. Def. Opp. 5–8.

Recently, two district courts in this Circuit cited *Center for Auto Safety* in applying the "compelling reasons" standard to class certification motions. *See Opperman v. Path, Inc.*, 2016 U.S. Dist. LEXIS 17222 (N.D. Cal. Feb. 11, 2016) (finding that a class certification motion involves issues that are "more than tangentially related to the merits of the case"); *Corvello v. Wells Fargo Bank N.A.*, 2016 U.S. Dist. LEXIS 11647 (N.D. Cal. Jan. 29, 2016). The Court agrees. As the Supreme Court observed in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the "rigorous analysis" a district court is tasked with to ensure that the prerequisites of Federal Rule of Civil Procedure Rule 23(a) have been satisfied at the class certification stage "frequently . . . will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351 (citations omitted) (internal quotation marks omitted) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 160 (1982)) (internal quotation marks omitted)). A class

certification motion is thus more than tangentially related to the merits of a case.

## II.     Whether the "Compelling Reasons" Standard is Met

Under the "compelling reasons" test, "a strong presumption in favor of access is the starting point" of the analysis. *Kamakana*, 447 F.3d at 1178 (quoting *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)) (internal quotation marks omitted). "A party seeking to seal a judicial record then bears the burden of overcoming this presumption by . . . articulat[ing] compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178–79 (citations omitted) (internal quotation marks omitted).

"In turn, the court must 'conscientiously balance[ ] the competing interests' of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (quoting *Foltz*, 331 F.3d at 1135). "What constitutes a 'compelling reason' is 'best left to the sound discretion of the trial court.'" *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon*, 435 U.S. at 599). "Examples include when a court record might be used to 'gratify private spite or promote public scandal,' to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing.'" *Id.* (quoting *Nixon*, 435 U.S. at 598–99). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citing *Foltz*, 331 F.3d at 1136).

Defendant argues that the disputed material in the Playbooks contain trade secrets that must remain sealed. Def. Opp. 9. Information is a protectable trade secret if it "(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d); *SkinMedica, Inc.*

*v. Histogen, Inc.*, 869 F. Supp. 2d 1176, 1192 (S.D. Cal. 2012); *Religious Tech Ctr. v. Netcom On-Line Commc'n Serv., Inc.*, 923 F. Supp. 1231, 1250–51 (N.D. Cal. 1995). A trade secret requires proof of independent economic value derived from not being generally known. *SkinMedica*, 869 F. Supp. 2d at 1192 (citing Cal. Civ. Code § 3426.1(d)(1)). Additionally, a trade secret must be a secret to merit legal protection. *Id.* Generally, information is secret where it is not generally known, and where the owner has taken "efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d); *see also Courtesy Temp. Serv., Inc. v. Leonel Camacho*, 222 Cal. App. 3d 1278, 1288 (1990).

Information which is too generally known to derive value from secrecy cannot obtain trade secret protection even without disclosure. *See, e.g.*, *Designs Art v. NFL Props., Inc.*, 2000 WL 1919787 at *3 (S.D. Cal. Nov. 27, 2000) (finding that the idea of a tiger for a logo for the Cincinnati Bengals does not merit trade secret protection because the idea of using the subject of a corporate name as a logo for that entity is generally known). In California, "information can be a trade secret even though it is readily ascertainable, so long as it has not yet been ascertained by others in the industry." *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 (1991). Thus, whether information is secret is "a relative concept and requires a fact-intensive analysis." *Premier Displays & Exhibits v. Cogswell*, 2009 WL 8623588 at *3 (C.D. Cal. Dec. 23, 2009) (citing *DVD Copy Control Ass'n Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004)).

Material, otherwise individually not protectable, may be a protectable trade secret if combined in a compilation. *See SkinMedica*, 869 F. Supp. 2d at 1194. A trade secret may consist of several elements, each of which is generally known, put together in a novel and previously unknown combination. *Id.* (citing *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089–90 (N.D. Cal. 2006) ("Combinations of public information from a variety of different sources when combined in a novel way can be a trade secret. It does not matter if a portion of the

trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known.")). Thus, establishing that most, or even all, of the elements are generally known does not foreclose the possibility that the information, taken together, constitutes a protectable trade secret. *Id.* at 1196.

From the general rule governing secrecy, it follows that an unprotected disclosure of the holder's secret terminates the existence of the trade secret. *Id.* at 1194 (citing *Stutz Motor Car v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995)). Even a single public disclosure of information may defeat trade secret protection. *See e.g.*, *HiRel Connectors, Inc. v. United States*, No. CV01-11069-DSF-BKX, 2006 WL 3618011 at *8–10 (C.D. Cal. Jan. 25, 2006) (finding information was not a protectable trade secret where plaintiff had sent a drawing that disclosed claimed trade secret information to another entity without a non-disclosure agreement).

Here, the complete 2010 Playbook has been posted online by Politico. *See* Maggie Severns, *Tales from the Trump University Legal Vault*, Politico (March 3, 2016, 12:54 PM), http://www.politico.com/story/2016/03/trump-university-lawsuit-documents-220181; http://static.politico.com/25/88/783a0dca43a0a898f3973da0086f/trump-university-playbook.pdf. Thus, Defendant's claim that the Playbooks' "[c]ompilations of internal operation procedures and employee scripts" constitute trade secrets has been vitiated by the public disclosure of the 2010 Playbook. In his August 28, 2014 Order, Judge Gallo analyzed the Playbooks and found that "[i]n isolation, nothing appears to be unique, proprietary, or revolutionary. The information is very routine and commonplace information. However, when considered as a whole or compilation, the information is arguably trade secret . . . ." Gallo Order 14.

Moreover, the Court has evaluated the 2009 and Field Team Playbooks and determined that the content in those Playbooks identified as "arguably trade secret" by Judge Gallo is largely duplicative of that found in the 2010 Playbook. *Compare* Forge

Decl., Ex. 6, *with* Forge Decl., Exs. 21, 27. Only the Sales Team Playbook contains any material that is relatively distinctive. *See* Forge Decl., Ex. 28. Even there, however, Judge Gallo only designated four sections of the Sales Team Playbook as "[t]rade secret information," with the majority of passages identified as "[n]ot confidential" or only "arguably trade secret." Gallo Order, Ex. A.[3]

In addition, Defendant has only made a blanket assertion as to why the disputed materials constitute trade secrets. *See* Def. Opp. 11. Where parties have been able to point to concrete factual information or expert testimony that the material sought to be sealed contained confidential business material, such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data, courts have been willing to find that information confidential. *See In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008); *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1224–25 (Fed. Cir. 2013); *Algarin v. Maybelline, LLC*, No. 12-cv-3000-AJB-DHB, 2014 WL 690410, at *3–4 (S.D. Cal. Feb. 21, 2014). The disputed material contains a number of different types of information, including: (1) timelines, rules, and procedures for running TU events; (2) guidelines and scripts for engaging with TU customers; (3) student policies and procedures; and (4) employee policies and procedures. Defendant has not identified any particular portion of the disputed materials to explain why that portion should remain confidential. *See* Def. Opp. 11 (claiming only that "the portions of the Playbook [sic] at issue contain non-public information that is fundamental to Trump University's business marketing, and sales strategy. The information is the result of TU's research, experience in the market, and unique strategy."). Courts regularly decline to protect asserted trade secrets based on such conclusory assertions. *See, e.g.*, *Sherwin Williams Co. v. Courtesy*

---

[3] The Court has also reviewed the four sections of the Sales Team Playbook designated by Judge Gallo as "[t]rade secret information," and finds that the information contained therein is either largely duplicative of information found in the 2010 Playbook, or time-sensitive information from 2007 regarding housing market conditions that is no longer relevant nearly a decade later. *See* Gallo Order, Ex. A, at 23; Forge Decl., Ex. 28, TU 130301–12, 130315, 130319-21, 130328-39.

*Oldsmobile-Cadillac*, 2015 U.S. Dist. LEXIS 167713, at *3 (E.D. Cal. Dec. 14, 2015) ("'Conclusory arguments' and 'blanket' assertions that documents are 'confidential and proprietary' are insufficient to overcome the presumption against sealing."); *Whitecryption Corp. v. Arxan Techs., Inc.*, 2016 U.S. Dist. LEXIS 31108, at *4 (N.D. Cal. Mar. 9, 2016) (denying sealing request where firm's declaration "offers generalized, unsupported assertions of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage"); *Ingram v. Pac. Gas & Elec. Co.*, 2013 U.S. Dist. LEXIS 136887, at *9 (N.D. Cal. Sept. 24, 2013) (rejecting sealing based on "trade secret" claim).

      Finally, Defendant argues that the information retains commercial value because "[a]lthough TU stopped enrolling new students in 2010," TU "may do" so again. Def. Opp. 11. That assertion, however, appears to be wholly speculative. *See Hagestad*, 49 F.3d at 1434 (rejecting sealing on the basis of "hypothesis or conjecture").

      At the same time, the Post makes a strong argument that the public interest in understanding the judicial process is heightened in this case. As an initial matter, the court must strongly presume the public interest in access. *Kamakana*, 447 F.3d at 1178. (citation omitted). But "the interest in access to court proceedings in general may be asserted more forcefully when the litigation involves matters of significant public concern." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 101 F.R.D. 34, 38 (C.D. Cal. 1984). As the Post points out, the Ninth Circuit found that TU was a public figure for purposes of defamation law in the related *Makaeff* case, explaining that:

> [A]ny general interest in Trump University stemming from its celebrity founder soon ripened into an actual dispute over Trump University's business and educational practices . . . [B]y Fall 2009, the 'specific question' of Trump University's legitimacy had become a public controversy.
>
> . . .
> Trump University's business model involved offering seminars that encouraged members of the public to participate in the market for foreclosed properties, which had grown substantially in the wake of the 2007 financial and mortgage crisis. These activities, carried out by Trump University and other purveyors of real estate investment advice, had the potential to affect local housing markets by increasing or decreasing real

> estate speculation in the market for foreclosed homes. The debate over Trump University's business practices thus held ramifications not just for Trump University and its customers, but for all participants in the local housing markets.

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 267 (9th Cir. 2013).

Subsequently, Defendant became the front-runner for the Republican nomination in the 2016 presidential race, and has placed the integrity of these court proceedings at issue. *See* WP Mot., Exs. A–D. The Ninth Circuit has directed courts considering the public disclosure of litigation materials to take into account "whether a party benefitting from the order of confidentiality is a public entity or official; and . . . whether the case involves issues important to the public." *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 n.5 (9th Cir. 2011) (citation omitted).

Upon review of the briefing, Judge Gallo's Order, and the applicable law, the Court finds that the Post's motion to unseal shall be **GRANTED**.

First, even under a lower "good cause" standard, Judge Gallo found that the majority of the information was either not confidential or only "arguably trade secret" when taken together as a compilation. The contents of the 2010 Playbook have since been publicly disclosed on the Internet, and the disputed material in the 2009 Playbook and the Field Team Playbook is largely duplicative of that in the 2010 Playbook. Thus, to the extent that the disputed material's trade secret status rested on how it was compiled, the release of the entire compilation vitiates the argument that the compilation constituted a trade secret. Second, Defendant makes only conclusory assertions as to why the disputed material should be considered a trade secret, and upon review of the material, the Court agrees with Judge Gallo that it is largely "very routine and commonplace information." Third, Defendant's assertion that the information retains any commercial value is speculative given the lack of any support for the statement that TU "may" resume operations after six years, and the public disclosure of the 2010 Playbook on the Internet. Defendant has thus failed to articulate

"compelling reasons" for the material to remain sealed.[4] At the same time, the Post makes a strong argument that the public interest is heightened in this case.

Accordingly, the Court **ORDERS** that:

1. The documents requested by the Washington Post with the exception of the Playbooks, ECF No. 39-2, Forge Decl., Exs. 12, 14-20, 29-34A, 36-38, 40, and 44, and ECF No. 45-1, Stagg Decl., Exs. 1-3, 7-22, 24-28, 33-34, and 36, be immediately unsealed.

2. Plaintiff shall file unsealed versions of the Playbooks, ECF No. 39-2, Forge Decl., Exs. 6, 21, 27, 28, with only phone numbers and non-corporate e-mail addresses (i.e., those not ending in "trumpuniversity.com") redacted, on or before June 2, 2016.

**IT IS SO ORDERED.**

DATED: May 27, 2016

HON. GONZALO P. CURIEL
United States District Judge

---

[4] Because the Court finds that the "compelling reasons" standard is not met, the Court need not address the Post's second argument that the First Amendment right of access also applies. WP Mot. 11–12.