DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ALONZO WICKERS IV (State Bar No. 169454)
  alonzowickers@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com

Attorneys for Media Intervenors
CABLE NEWS NETWORK, INC. ("CNN");
CBS BROADCASTING INC.; CBS
INTERACTIVE INC.; TRIBUNE PUBLISHING
COMPANY; NBCUNIVERSAL MEDIA, LLC;
ABC, INC.; THE NEW YORK TIMES
COMPANY; and WP COMPANY LLC D/B/A
THE WASHINGTON POST

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>        vs.<br><br>DONALD J. TRUMP,<br><br>                Defendant. | Case No. **3:13-cv-02519-GPC-WVG**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MEDIA INTERVENORS' MOTION TO INTERVENE AND FOR AN ORDER MODIFYING STIPULATED PROTECTIVE ORDER**<br><br>Judge:        Hon. Gonzalo P. Curiel<br>Date:          June 30, 2016<br>Courtroom: 2D<br>Time:         1:30 p.m.<br><br>[Notice Of Motion and Declaration Of Diana Palacios With Exhibits A-E Filed Concurrently] |

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ...................................................... 1

II.   THE MEDIA INTERVENORS SHOULD BE PERMITTED TO
      INTERVENE FOR THE PURPOSE OF MODIFYING THE
      PROTECTIVE ORDER. .......................................................... 3

III.  DEFENDANT MUST SHOW GOOD CAUSE TO MAINTAIN THE
      CONFIDENTIAL DESIGNATION OF PORTIONS OF HIS
      DEPOSITIONS. ................................................................... 5

IV.   DEFENDANT HAS NOT MET HIS BURDEN OF ESTABLISHING
      GOOD CAUSE TO KEEP PORTIONS OF HIS DEPOSITION
      TESTIMONY CONFIDENTIAL. ................................................. 7

      A.   Defendant Cannot Show Any Specific Prejudice Or Harm That
           Justifies The "Confidentiality" Designations For His Depositions. .... 8

      B.   The Parties' Stipulated Protective Order Does Not Provide Good
           Cause For Keeping Portions Of The Trump Depositions
           Confidential. ............................................................. 13

      C.   The Public Interest In This Case Outweighs Any Harm From
           Disclosure. ............................................................... 15

V.    CONCLUSION .................................................................... 22

i

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Avirgan v. Hull,
118 F.R.D. 252 (D.D.C. 1987) .............................................................................. 17

Beckman Industries, Inc. v. Int'l Ins. Co.,
966 F.2d 470 (9th Cir. 1992) ......................................................................... 3, 13

Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,
712 F.3d 1349 (9th Cir. 2013) ....................................................................... 3, 15

Condit v. Dunne,
225 F.R.D. 113 (S.D.N.Y. 2004) ........................................................................ 17

Constand v. Cosby,
112 F. Supp. 3d 308 (E.D. Pa. 2015) ................................................................. 17

Dugan v. Lloyds TSB Bank, PLC,
2013 U.S. Dist. LEXIS 51162 (N.D. Cal. Apr. 9, 2013) ..................................... 11

EEOC v. National Children's Center, Inc.,
146 F.3d 1042 (D.C. Cir. 1998) ............................................................................ 3

Estate of Rosenbaum v. New York City,
21 Med. L. Rptr. 1987; 1993 U.S. Dist. LEXIS 15908 (E.D.N.Y.
1993) ....................................................................................................... 16, 17, 19

Felling v. Knight,
211 F.R.D. 552 (S.D. Ind. 2003) ......................................................................... 21

Flaherty v. Seroussi,
209 F.R.D. 295 (N.D.N.Y. 2001) ........................................................................ 17

Foltz v. State Farm Mut. Auto. Ins. Co.,
331 F.3d 1122 (9th Cir. 2003) ...................................................................... *passim*

Globe Newspaper Co. v. Superior Court,
457 U.S. 596 (1982) .............................................................................................. 3

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Hawley v. Hall,
    131 F.R.D. 578 (D. Nev. 1990)..................................................................17

Humboldt Baykeeper v. Union Pac. R.R.,
    244 F.R.D. 560 (N.D. Cal. 2007)...........................................................5, 16

In re Agent Orange Prod. Liab. Litig.,
    821 F.2d 139 (2d Cir. 1987).......................................................................7

In re Associated Press,
    162 F.3d 503 (7th Cir. 1998) .....................................................................3

In re CBS,
    828 F2d 958 (2d Cir. 1987)......................................................................21

In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust
    Litig.,
    101 F.R.D. 34 (C.D. Cal. 1984) .....................................................9, 18, 19

In re Roman Catholic Archbishop of Portland in Oregon,
    661 F.3d 417 (9th Cir. 2011) ..........................................................2, 7, 16, 19

Kamakana v. City & County of Honolulu,
    447 F.3d 1172 (9th Cir. 2006) ............................................................13, 14

Karoun Dairies, Inc. v. Karoun Dairies, Inc.,
    2014 U.S. Dist. LEXIS 146431 (S.D. Cal. Oct. 14, 2014) .............................10, 11

Kelley v. Euromarket Designs
    dba Crate & Barrel, Inc., 2008 U.S. Dist. LEXIS 6017 (E.D. Cal. Jan.
    28, 2008) ...............................................................................................14

Makaeff v. Trump Univ., LLC,
    715 F.3d 254 (9th Cir. 2013) ...............................................................4, 20

Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.,
    2007 U.S. Dist. LEXIS 89273 (N.D. Cal. Nov. 20, 2007) ...........................14, 15

Morrow v. City of Tenaha Deputy City Marshal Barry Washington, et
    al.,
    2010 U.S. Dist. LEXIS 106541 (E.D. Tex. Oct. 5, 2010) ...................................17

New York v. Microsoft Corp.,
    206 F.R.D. 19 (D.D.C. 2002).....................................................................12

iii

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Pansy v. Borough of Stroudsburg,
23 F.3d 772 (3d Cir. 1994)...................................................................4

Phillips v. General Motors Corp.,
307 F.3d 1206 (9th Cir. 2002) ...................................................5, 7, 13

Pia v. Supernova Media, Inc.,
275 F.R.D. 559 (D. Utah 2011) ...........................................................17

Public Citizen v. Liggett Group,
858 F.2d 775 (1st Cir. 1988)..................................................................5

San Jose Mercury News, Inc. v. United States District Court,
187 F.3d 1096 (9th Cir. 1999) .....................................................*passim*

Todd v. Tempur-Sealy Int'l, Inc.,
2015 U.S. Dist. LEXIS 27803 (N.D. Cal. Mar. 6, 2015)......................10

U.S. ex rel. Franklin v. Parke-Davis,
210 F.R.D. 257 (D. Mass. 2002)............................................................4

Welsh v. City & County of San Francisco,
887 F. Supp. 1293 (N.D. Cal. 1995) ...............................................2, 18

Yonemoto v. Dep't of Veterans Affairs,
686 F.3d 681 (9th Cir. 2012) .................................................................5

**Rules**

Federal Rule of Civil Procedure 26(c) .............................................*passim*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# I.     SUMMARY OF ARGUMENT

For many years, Defendant Donald J. Trump has been at the center of an ongoing controversy over his namesake, Trump University ("TU"). This lawsuit – one of several actions alleging that TU defrauded its customers and encouraged their participation in the volatile late-2000s real estate market – drew significant public attention even before this year's Presidential election. Exs. B-C

Now, Defendant is the presumptive Republican presidential nominee, and has made his business acumen an important element of his campaign. Ex. A. Thus, this lawsuit not only raises important questions about Defendant and his organization, it has become a prominent electoral issue. Exs. A-B. Opposing candidates have pointed to the allegations in this case in criticizing Defendant's qualifications for the presidency; Defendant has cited TU as an example of his business success, and made this litigation itself a campaign issue. Id. Given the undeniable and substantial public interest in these proceedings, the need for transparency could not be greater.

This Court's May 27 Order unsealing the class certification records shed important light on the underlying lawsuit. See Dkt. # 211. Certain excerpts from Defendant's depositions on December 10, 2015, and January 21, 2016 (the "Trump Depositions") are now in the public record as well, although hundreds of pages of those deposition transcripts and the corresponding videos remain out of public view. See Dkt. # 220-2, 225. Portions of these depositions apparently remain designated as "confidential" under the parties' broad stipulated protective order. Consequently, the Media Intervenors request leave to intervene in this matter for the limited purpose of seeking modification of the parties' protective order to remove the designations of confidentiality made by Defendant to permit the public filing and dissemination of the complete transcripts and videotapes of the Trump Depositions. See Section II, infra.

First, under Federal Rule of Civil Procedure 26(c), discovery materials exchanged between the parties, including depositions, are presumptively public; a

1

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

party opposing any public disclosure is required to show "good cause" by presenting specific facts that justify keeping particular materials confidential.  See San Jose Mercury News, Inc. v. United States District Court, 187 F.3d 1096, 1103 (9th Cir. 1999); see also Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1133-34 (9th Cir. 2003).  Defendant has failed to carry his burden of showing the required "good cause" to restrict the disclosure of the complete Trump Depositions by designating portions of them as "confidential."  See Section III and IV.A, infra.

Thus far, Defendant has invoked the prospect of competitive disadvantage in an attempt to justify keeping broad categories of records confidential, but he has not identified any concrete, particularized harm as the law requires.  E.g., Foltz, 331 F.3d at 1133.  Moreover, as this litigation has proceeded, many details about TU's strategic operations have been disclosed in the parties' public court filings, including the recent unsealing of nearly 1,000 pages of TU's business records.  With so much information about TU already in the public domain, Defendant cannot meet his burden of demonstrating good cause by speculating about vague commercial harm if his sworn testimony about these same subjects is disclosed.

Second, the strong public interest in this case, which involves serious allegations of fraud that have become a prominent issue in the 2016 presidential campaign, weighs in favor of public disclosure of materials produced in the course of the litigation.  See, e.g., In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 425 n.5 (9th Cir. 2011); Welsh v. City & County of San Francisco, 887 F. Supp. 1293, 1299-1302 (N.D. Cal. 1995).  No countervailing interest justifies Defendant's designations of confidentiality.[1]  See Section IV.B, infra.

//

---

[1] If the depositions contain any information for which confidentiality is appropriate – such as social security numbers, home addresses, personal telephone numbers, personal email addresses, or sensitive personal financial information of individual Trump University customers – that information can be redacted from the deposition transcripts or edited from the videos.  See Foltz, 331 F.3d at 1137.

2

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

For all of these reasons, the Media Intervenors respectfully request that this Court grant their request to intervene and modify the protective order to remove the confidentiality designations from the Trump Depositions.

## II.     THE MEDIA INTERVENORS SHOULD BE PERMITTED TO INTERVENE FOR THE PURPOSE OF MODIFYING THE PROTECTIVE ORDER.

It is well established that the press has standing to assert the public's – and its own – right of access to court records and proceedings.  See, e.g., Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n.25 (1982) ("representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from court proceedings) (quotation omitted).  To that end, the Ninth Circuit has held that nonparties, like the Media Intervenors, should be permitted to intervene for the purpose of challenging limitations on the right of access.  See Beckman Industries, Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (allowing non-party to intervene to challenge protective order); see also In re Associated Press, 162 F.3d 503, 508 (7th Cir. 1998) ("Press ought to have been able to intervene ... to present arguments against limitations on the ... right of access").

As the Court of Appeals for the D.C. Circuit has explained, the federal rules permit third parties to intervene "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order."  EEOC v. National Children's Center, Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998) (emphasis added).  Consequently, courts regularly allow non-parties, including news organizations, to intervene in civil actions to seek modifications to protective orders that otherwise would limit the dissemination of litigation materials.  E.g., Blum v. Merrill Lynch Pierce Fenner & Smith Inc., 712 F.3d 1349, 1353-54 (9th Cir. 2013) (affirming order granting third party's motion to intervene and modify protective order); Foltz, 331 F.3d at 1133-34 (third-party interveners permitted to move to modify parties' stipulated protective order); San Jose Mercury News, 187

3

F.3d at 1103 (district court should have allowed newspaper to intervene in order to modify parties' stipulated blanket protective order); see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777-80 (3d Cir. 1994) (newspapers allowed to intervene to modify protective order to allow public disclosure of records even if court could not directly grant access to them); U.S. ex rel. Franklin v. Parke-Davis, 210 F.R.D. 257, 258 (D. Mass. 2002) (permitting media entities to intervene to "modify the protective order to allow parties to disseminate non-confidential discovery material").

This Court similarly should permit the Media Intervenors to intervene in this case for the limited purpose of seeking modification of the protective order. The Media Intervenors have been reporting for years on Trump University, this lawsuit, and a related lawsuit, Low v. Trump Univ., LLC, Case No 10-cv-00940 (S.D. Cal.) (formerly the "Makaeff" case). See Exs. B-E. The Trump Depositions themselves have been discussed in several news reports. See Ex. B. But Defendant's "confidentiality" designations under the protective order unduly restrict the Media Intervenors' ability to inform the public about facts relevant to the qualifications of a presidential candidate, as well as about the important issues in this case. In addition, permitting Defendant to broadly designate information as "confidential" not only prevents the public and press from scrutinizing claims that Defendant has made during his presidential campaign, it also will result in unnecessary burdens being imposed on the Court: the parties' protective order requires any information designated as "confidential" to be submitted to the Court under seal, and the sealing of court records will result in additional challenges by the Media Intervenors and other members of the public and press.

To avoid multiple, repetitive motions to unseal records or to challenge confidentiality designations, and to permit the public and press to effectively scrutinize claims made by a presidential candidate, the Media Intervenors respectfully request that this Court grant their request to intervene in this action for

4

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the limited purpose of modifying the protective order to permit disclosure of the complete Trump Depositions.

## III.   DEFENDANT MUST SHOW GOOD CAUSE TO MAINTAIN THE CONFIDENTIAL DESIGNATION OF PORTIONS OF HIS DEPOSITIONS.

As the Ninth Circuit has recognized, "[i]t is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, <u>presumptively public</u>." <u>San Jose Mercury News</u>, 187 F.3d at 1103 (emphasis added). This "presumption in favor of freedom of dissemination" is recognized under Federal Rule of Civil Procedure 26. <u>Humboldt Baykeeper v. Union Pac. R.R.</u>, 244 F.R.D. 560, 563 (N.D. Cal. 2007). "Placed by the law on the scales before the trial court begins any 'balancing,' this presumption <u>pre-weights the scales against restricting</u> a party's lawful use or dissemination of discovered information." <u>Id.</u> (original emphasis). <u>See also</u> <u>Public Citizen v. Liggett Group</u>, 858 F.2d 775, 780 (1st Cir. 1988) ("the Supreme Court has noted that parties have general first amendment freedoms with regard to information gained through discovery and that, absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit").

Accordingly, "the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." <u>Phillips v. General Motors Corp.</u>, 307 F.3d 1206, 1209 (9th Cir. 2002) (citing <u>San Jose Mercury News, Inc.</u>, 187 F.3d at 1103); <u>Yonemoto v. Dep't of Veterans Affairs</u>, 686 F.3d 681, 691 (9th Cir. 2012) (noting "the default rule concerning discovery, which is that 'the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public'") (citing <u>Phillips</u>, 307 F.3d at 1210).

The Ninth Circuit's decision in <u>Foltz</u> is instructive. In that case, as here, the parties entered into a stipulated protective order that broadly allowed the parties to unilaterally designate documents as confidential, and which required that the designated documents be filed with the court under seal. <u>Id.</u> at 1130, 1131. Public

5

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

interest groups and private litigants who were engaged in collateral litigation intervened and sought to modify the protective order, which the district court denied. Id.  The Ninth Circuit reversed, holding that the Rule 26(c) standard applied to unfiled discovery documents, and that State Farm, once challenged, could not rely on a stipulated protective order to seal all of the documents without making the required "good cause" showing.  Id.

Notably, the Ninth Circuit made clear that "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."  Id. (emphasis added).  The appeals court also held that to satisfy the "good cause" showing under Rule 26(c) for sealing of a particular record, the party must make "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm."  Id.  The Ninth Circuit concluded by holding that because intervenors "have challenged the contention that the unfiled discovery documents belong under seal, the district court must require State Farm to make an actual showing of good cause for their continuing protection under Federal Rule of Civil Procedure 26(c)."  Id. (emphasis added).

Rule 26(c) applies to the Trump Depositions, portions of which Defendant designated as "confidential" pursuant to the blanket First Amended Protective Order entered in the related Low case.  See Low, Dkt. ## 316, 462-2.[2]  Thus, Rule 26(c) imposes on Defendant the burden of showing good cause for maintaining the confidentiality of portions of the transcripts and videos.  Defendant has not, and cannot, meet that burden under the circumstances here.

_____

[2] The excerpts of the Trump Depositions that have been filed indicate that portions were designated as "confidential" under the parties' protective order merely by placing the word "Confidential" at the top of each page.  See Dkt. # 220-2; Low Dkt. # 462-2; see also id. Dkt. # 316 ¶ 6(c) ("the originals of the deposition transcripts and all copies of the deposition must bear the legend "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY," as appropriate.").

6

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## IV.   DEFENDANT HAS NOT MET HIS BURDEN OF ESTABLISHING GOOD CAUSE TO KEEP PORTIONS OF HIS DEPOSITION TESTIMONY CONFIDENTIAL.

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips, 307 F.3d at 1210-11; see also In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145-46 (2d Cir. 1987) (same). "Any other conclusion would negate the good cause requirement of Rule 26(c)." Agent Orange, 821 F.2d at 146. As discussed above, "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." Foltz, 331 F.3d at 1131 (emphasis added). This showing must be made through "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." Id.

"If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." Phillips, 307 F.3d at 1211. See also In re Roman Catholic Archbishop, 661 F.3d at 425 n.5 (in evaluating whether a party has shown good cause for a protective order, courts consider "whether a party benefitting from the order of confidentiality is a public entity or official," and "whether the case involves issues important to the public"). In this case, Defendant has not identified any particularized harm, supported by facts and evidence, that would result from the disclosure of the full Trump Depositions; moreover, even if Defendant could identify some non-speculative, particularized harm (which he has not done to date), it would be outweighed by the substantial public interest in this case.

//

//

//

7

## A.   Defendant Cannot Show Any Specific Prejudice Or Harm That Justifies The "Confidentiality" Designations For His Depositions.

In Foltz, the district court issued a blanket protective order forbidding parties from disclosing any information produced in discovery, but did not require State Farm to show "that specific discovery documents, whether eventually filed with the court or not, contained [confidential] information." Foltz, 331 F.3d at 1131.  On review, the Ninth Circuit noted that State Farm had "not asserted, much less shown, specific harm or prejudice that it expects will arise from disclosure of any particular documents produced in discovery." Id. at 1131.  In reversing the district court's decision to keep the materials confidential, the Ninth Circuit explained that "[n]ow that the Private Intervenors have challenged the contention that the unfiled discovery documents belong under seal, the district court must require State Farm to make an actual showing of good cause for their continuing protection under Federal Rule of Civil Procedure 26(c)." Id.

Here, as in Foltz, Defendant has not met his burden of showing the "good cause" necessary to keep portions of the Trump Depositions confidential.  As mentioned above, the parties amended the protective order in Low to apply to this case. See Low, Dkt. # 315.  It did not include any particularized showing of good cause.  Id.  Instead, a  broad general assertion of Defendant's purported interests was set forth in the joint motion for entry of a protective order that was filed in Low, long before this case was even filed.  Low, Dkt. # 90.  That joint motion stated as follows:

> All parties agree that good cause exists under Rule 26(c) of the Federal Rules of Civil Procedure for entry of a protective order because, among other reasons, defendants contend that public disclosure or improper use of defendants' internal, confidential, or commercially sensitive information may potentially place them at a competitive disadvantage or otherwise negatively impact their business, operations, reputation, or cause harm to them or their customers.

8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Id. (emphasis added).  Even if this Court considered this statement as a showing of "good cause," even though it does not relate to this case, it is insufficient.  It is not particularized; to the contrary, it could hardly be more general.  See San Jose Mercury News, 187 F.3d at 1103 (good cause requires a "particularized showing"); In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig., 101 F.R.D. 34, 40 n.7 (C.D. Cal. 1984) (proponent of secrecy must show disclosure will cause "clearly defined, specific and serious injury").

Defendant previously sought to keep information confidential in this action by asserting that disclosure would reveal TU's purported trade secrets, or cause him some other competitive disadvantage.  E.g., Dkt. ## 172, 199.  But as this Court found in its May 27 Order, which unsealed class certification documents that included a wide array of TU business records, "Defendant has only made a blanket assertion as to why the disputed materials constitute trade secrets."  Dkt. # 211 (Order at 9).  His "conclusory assertions" did not include the sort of "concrete factual information" required to keep such information confidential.  Id.  And regardless of any validity that Defendant's claims of commercial harm may or may not have had earlier in this litigation, a great deal of information about TU's business subsequently has been made public:  both sides have disclosed considerable details of TU's operations in their moving papers and in attached declarations and exhibits in connection with the class certification and summary judgment proceedings in this case and the Low action.  E.g., Dkt. ## 39, 41, 46, 48-49, 180, 192; Low, Dkt. ## 122, 138-143, 195, 375, 386-88.

In addition, this Court's May 27 Order unsealed approximately 1,000 pages of materials focused on TU's marketing strategy and other internal operating procedures.  Dkt. # 211.[3]  The records that are now in the public domain include the

_____

[3] Defendant agreed that the vast majority of the records should not remain sealed.  Dkt. # 211 at 2.  This Court found that many other documents did not meet the requisite standard for sealing.  Id. at 6-12.

9

complete TU Playbooks (Dkt. # 212); TU marketing and course materials (Dkt. ## 48-6-48-9, 48-12, 48-14); declarations and deposition excerpts from former TU employees about its business practices (Dkt. # 48-9, 49-1); the TU Business Plan (Dkt. # 49-1); deposition testimony from TU's president, Michael Sexton, about topics including the company's structure, finances, and management (Dkt. # 214-1; 215-1); and agreements between TU and third-party contractors (Dkt. # 214-2-214-3). The news media also have reported extensively on TU, independently reporting many details about its strategy, business operations, and finances. <u>See</u> Exs. B-D; Dkt. # 211 at 8. And substantial portions of the Trump Depositions themselves are now in the public record, including more than 100 pages of the transcripts and the corresponding videos in which Defendant testifies about his own personal involvement in TU's business operations. <u>See</u> Dkt. ## 220-2, 225.

Courts applying the "good cause" standard for keeping discovery materials confidential consistently have held that where, as here, such information already has been made public, there is no longer a specific risk of commercial harm that supports secrecy. For example, in <u>Karoun Dairies, Inc. v. Karoun Dairies, Inc.</u>, 2014 U.S. Dist. LEXIS 146431 (S.D. Cal. Oct. 14, 2014), the court ordered the removal of "confidential" designations from discovery materials because much of the information already had been made public, and "[o]nce trade secrets have been exposed to the public, they cannot later be recalled." <u>Id.</u> at 18-19. <u>See also</u> <u>Todd v. Tempur-Sealy Int'l, Inc.</u>, 2015 U.S. Dist. LEXIS 27803, at *11-12 (N.D. Cal. Mar. 6, 2015) ("[d]efendant has failed to show that specific harm would result from de-designating a document that contains information already available to the public").

Moreover, as the Court also noted in its May 27 Order, Defendant conceded that TU stopped enrolling new students or holding live events in 2010, and his claim that it "may" resume operations "appears to be wholly speculative." Dkt. # 211, at 10. Even if Defendant were to revive TU in some form in the future – which is implausible in light of the pending presidential election, this lawsuit, and the New

10

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

York Attorney General's pending action against TU – he could not show that the disclosure of the remaining portions of his deposition testimony in this case would cause any concrete competitive harm to such a hypothetical endeavor. See Karoun Dairies, 2014 U.S. Dist. LEXIS 146431, at *19 ("the information that Plaintiff seeks to be de-designated would not in any way be prejudicial to Karoun Canada, a business that has not had any sales since 2008" and "de-designation of these portions of documents would not reveal trade secret information that would harm Karoun Canada should it ever resume operations").[4]

On the only occasion when the Magistrate Judge applied the "good cause" standard to certain portions of one of the Trump Depositions, the Court found that Defendant's confidentiality designations were excessive. See Dkt. # 172, Order of March 14, 2016 ("3/14/16 Order"). On that occasion, Plaintiffs challenged Defendant's designations of several portions of the January 21, 2016 deposition as "confidential" under the protective order. Id. The Magistrate Judge resolved the parties' discovery dispute by ordering the de-designation of approximately 29 pages of the deposition transcript, which included testimony in which Defendant made statements about other public figures, and his testimony discussing his personal profit-sharing arrangement with Trump University. Id., 3/14/16 Order at 5, 8-9.

The Magistrate Judge did permit Defendant to maintain the confidentiality designation for approximately three pages of the January 21, 2016 deposition that addressed the specific terms of a licensing agreement between Trump University and a third party, and approximately four lines of another section of deposition testimony discussing profit sharing. Id. at 6-9. The rationale offered by the Magistrate Judge was that the "challenged testimony meets the parties' own definition for 'confidential

---

[4] See also Dugan v. Lloyds TSB Bank, PLC, 2013 U.S. Dist. LEXIS 51162, at *13 (N.D. Cal. Apr. 9, 2013) (rejecting request to seal numerous documents under Rule 26(c) "good cause" standard where the "exhibits mostly contain information regarding pricing considerations in 2011, and [defendant] articulates only in the broadest and most generalized terms how such historical information could cause competitive harm today").

11

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

information' in the Protective Order," which permits the parties to choose to designate as confidential any information that they believe "could be potentially prejudicial" to their business operations if disclosed. Id. at 7. The Magistrate Judge further noted that the Plaintiffs relied "principally, if not exclusively, on the 'moribund' status of Trump University, LLC," but found that the "information may likely impact Defendant's future business dealings as the licensing agreement invariably reflects Defendant's business strategy and acumen." Id.

The Media Intervenors respectfully request that this Court reconsider this portion of the 3/14/16 Order. Even if some of the challenged testimony falls within the parties' own stipulated protective order – which allows them to designate as "confidential" virtually anything they claim "could be potentially prejudicial" to a business interest if disclosed – that does not satisfy the "good cause" requirement of Rule 26(c). See Foltz, 331 F.3d at 1131. Furthermore, to the extent that the prior ruling allowed some information to remain confidential because of Defendant's unidentified potential future business dealings, that determination has been superseded by this Court's May 27 Order, which found such concerns to be "wholly speculative," and thus insufficient to establish commercial harm for the reasons discussed above. Dkt. # 211, 5/27/16 Order at 10. In light of the public release of related information, and this Court's rejection of Defendant's ambiguous assertions of "trade secrets" and speculative commercial harm, Defendant cannot meet his burden under Rule 26 to maintain any part of the Trump Depositions as confidential. See also New York v. Microsoft Corp., 206 F.R.D. 19, 23 (D.D.C. 2002) (granting access to the transcript and videos of four depositions in part because Microsoft did "not offer any affirmative evidence or argument to indicate that the release of redacted transcripts and video tapes would in any way burden, oppress, or embarrass the parties to the litigation or the third-parties who were deposed").

//

//

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.     The Parties' Stipulated Protective Order Does Not Provide Good Cause For Keeping Portions Of The Trump Depositions Confidential.**

The Media Intervenors expect Defendant to argue that portions of the depositions must be maintained as confidential because he relied on the parties' First Amended Protective Order.  See Low, Dkt. # 316.  But the Ninth Circuit has made clear that stipulated protective orders do not absolve the parties of their responsibility to make the necessary "good cause" showing to justify ongoing confidentiality in these records.  As the court held in San Jose Mercury News, 187 F.3d at 1102, 1103, stipulated protective orders are "subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document…."

In Phillips, the Ninth Circuit reaffirmed that when the protective order is a stipulated order and no party has made a "good cause" showing as to each particular document, the party seeking to withhold documents produced pursuant to the protective order bears the burden of showing that specific prejudice or harm will result.  307 F.3d at 1211 & n.1.  As the court noted, "[i]n Beckman Indus. Inc. v. International Ins. Co., 966 F.2d 470, 472 (9th Cir. 1992), we rejected the argument that intervenors need to show 'extraordinary circumstances' before modifying a protective order.  We explained how the burden of proof will remain with the party seeking protection when the protective order was a stipulated order and no party had made a 'good cause' showing." Id.  Because the district court had not conducted the "good cause" analysis before entering the closure orders, the Phillips court remanded the case. Id.

In Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1182-1183 (9th Cir. 2006), the Ninth Circuit reiterated its position concerning "the hazard of stipulated protective orders," noting that such stipulated agreements "contain provisions that purport to put the entire litigation under lock and key" without conducting the document-by-document analysis that is necessary under the prevailing

13

case law.  As the appellate court explained, "[s]imply invoking a blanket claim, such as privacy or law enforcement [or safety or security], will not, without more, suffice to exempt a document from the public's right of access."  Id.  See also Foltz, 331 F.3d at 1131 ("reliance on a blanket protective order in granting discovery and settling a case, without more, will not justify a refusal to modify").

Subsequent cases have applied and elaborated on Foltz's holding that to meet the "good cause" standard, parties must show something "more" than a claim that they relied on a blanket protective order.  For example, in Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc., 2007 U.S. Dist. LEXIS 89273 (N.D. Cal. Nov. 20, 2007), the parties stipulated to a broad protective order, but the defendants later moved to de-designate several documents that the plaintiff produced as "highly confidential."  Id. at *4.  The plaintiff claimed that the defendants had "agreed to the terms of the protective order and now are trying to back out of the agreement," but the court rejected this line of argument, explaining that mere reliance on the existing protective order was insufficient; the plaintiff also had to "demonstrate that specific prejudice or harm will result if the … documents (or related testimony) are disclosed."  Id. at *6-7.  The court held that the plaintiff could not meet this standard with a "general assertion that disclosure of business communications would chill business relations," as this "would apply to all non-public communications."  Id. at *8.  Consequently, the court ordered the documents and related testimony de-designated.  Id.

Similarly, in Kelley v. Euromarket Designs dba Crate & Barrel, Inc., 2008 U.S. Dist. LEXIS 6017 (E.D. Cal. Jan. 28, 2008), the district court rejected an argument made by defendant Crate & Barrel that the identities of its suppliers could be kept confidential pursuant to a stipulated protective order, reasoning that the firm "did not articulate a significant identifiable harm that would result if this information is disclosed," but "broadly asserts that disclosure of this information would enable competitors to take advantage of its experience and relationship with its suppliers."

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   Id. at *8-9.  The court concluded that, "because broad allegations of harm,

2   unsubstantiated by specific examples of articulated reasoning, does not satisfy Rule

3   26(c)'s good cause test, the identity of Crate & Barrel's suppliers is not properly

4   designated as confidential under the protective order."  Id. at *9.

5        Here, no protective order even was entered specifically for this case.  Instead,

6   the parties amended the protective order in Low to apply to this case.  See Low, Dkt.

7   # 315.  Under this stipulated First Amended Protective Order, the parties are allowed

8   to unilaterally designate as confidential a "deposition or portions of the deposition"

9   without court intervention, and without any particularized showing of good cause.

10  See Low, Dkt. #316, ¶6(a).  It also prohibits parties from filing a deposition with the

11  court that was designated as "confidential" "unless it can be accomplished under seal,

12  identified as being subject to this Order, and protected from being opened except by

13  order of this Court."  Id. ¶ 6(c).  Moreover, it restricts parties receiving "confidential"

14  information from disclosing it "to anyone other than those persons designated within

15  this order[.]"  Id. ¶ 7.  As the above cases make clear, this blanket protective order is

16  inherently subject to challenge and modification, because it does not require a

17  particularized showing of good cause.  See Blum v. Merrill Lynch Pierce Fenner &

18  Smith Inc., 712 F.3d 1349, 1352 (9th Cir. 2013) ("[i]t is a 'blanket' protective order

19  because [the plaintiff] obtained the protective order 'without making a particularized

20  showing of good cause with respect to any individual document'").

21  **C.    The Public Interest In This Case Outweighs Any Harm From Disclosure.**

22       Even if Defendant could assert some particularized harm from disclosure of

23  his complete deposition transcripts and videos – which he has not done – under the

24  circumstances here, it would be outweighed by the strong public interest in

25  transparency.  As the Ninth Circuit has held, when a party or intervenor challenges

26  the confidentiality of information under a protective order, "if the court concludes

27  that … harm will result from disclosure of the discovery documents, then it must

28  proceed to balance the public and private interests to decide whether [maintaining] a

15

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

protective order is necessary." In re Roman Catholic Archbishop, 661 F.3d at 424 (quotation omitted).  There, the Ninth Circuit applied this balancing test and concluded that there was not good cause to conceal personnel records produced in litigation that linked an active priest to sexual misconduct allegations.  The appellate court acknowledged that the priest had satisfied his initial burden of showing particularized harm from disclosure, "including public humiliation [and the] loss of [his] career." Id. at 427.  But the Ninth Circuit nonetheless held that the harms were outweighed by the public's "weighty interest in public safety and in knowing who might sexually abuse children." Id. at 428.[5]

The Northern District's decision in Humboldt Baykeeper also is instructive. There, the defendant in an environmental action sought a protective order to prevent the plaintiffs from publicly disclosing information acquired during a site-inspection conducted as part of the civil discovery process.  244 F.R.D. at 561.  The court acknowledged that the defendant might suffer some harm to its privacy interests from disclosures about its private property, but it balanced such damage against "the competing interests that the proposed protective order would affect – interests of the parties as well as interests of others, including the public." Id. at 566.  Given the "important societal interests" involved, including advancing the public's understanding of environmental issues raised in the litigation, the court found that the scales tipped in favor of allowing disclosure. Id. at 567.

Courts applying the balancing of public and private interests under Rule 26 often have found in favor of disclosure in exceptional cases like this one, in which the deponents are politicians or other prominent individuals who placed themselves at the forefront of public controversies, and there are no substantial countervailing privacy interests.  For example, in Estate of Rosenbaum v. New York City, 21 Med.

---

[5] The court found that the name of a different priest (who was retired and no longer working in the community) should have been redacted, while permitting disclosure of the rest of his personnel file. Id. at 428.

16

L. Rptr. 1987; 1993 U.S. Dist. LEXIS 15908 (E.D.N.Y. 1993), the court refused New York City's request to exclude the news media from depositions of the mayor and the former police commissioner in a civil lawsuit concerning the city's response to a riot. Id. at *7.  The court held the case was "of high public interest"; the depositions were "of parties, not of third persons"; the depositions were of public officials "experienced in dealing with the media"; and "these parties have themselves already spoken out … on a number of occasions to members of the press."  Id.  See also Constand v. Cosby, 112 F. Supp. 3d 308, 315-16 (E.D. Pa. 2015) (unsealing documents under the good cause standard in part because Bill Cosby "has freely entered the public square and 'thrust himself into the vortex of th[ese] public issue[s],' … he has voluntarily narrowed the zone of privacy that he is entitled to claim"); Condit v. Dunne, 225 F.R.D. 113, 119 (S.D.N.Y. 2004) (denying a protective order barring public dissemination of the videotaped deposition of the defendant in part because "the substantive issues in this litigation are also of public concern"); Hawley v. Hall, 131 F.R.D. 578, 585 (D. Nev. 1990) (denying motion to seal deposition in part because "[t]he public interest in the conduct of public officials, elected and appointed, outweighs the minimal harms tendered by the defendants as good cause in this case"); Flaherty v. Seroussi, 209 F.R.D. 295, 300 (N.D.N.Y. 2001) (declining to enter a protective order prohibiting dissemination of a mayor's videotaped deposition given "strong, legitimate public interest" in documents pertaining to "elected officials and the performance of their governmental responsibilities").[6]

---

[6] See also Morrow v. City of Tenaha Deputy City Marshal Barry Washington, et al., 2010 U.S. Dist. LEXIS 106541, at *10-*11 (E.D. Tex. Oct. 5, 2010) (court refused to seal unfiled deposition transcripts and video of law enforcement officers: "[c]ourts are especially unwilling to issue a protective order merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern"); Avirgan v. Hull, 118 F.R.D. 252, 256 (D.D.C. 1987) (denying protective order to exclude press from deposition given "significant public interest"); Pia v. Supernova Media, Inc., 275 F.R.D. 559, 561-562 (D. Utah 2011) (stating that "while the dissemination of Pia's videotaped deposition

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In <u>Welsh</u>, 887 F. Supp. 1293, the defendants sought a protective order to prevent public disclosure of tapes and transcripts of witness interviews from a prior Police Commission investigation that were sought in discovery.  <u>Id.</u>  The plaintiff and news media amici opposed the protective order, contending, among other things, that "there is a substantial public interest in reviewing charges of sexual harassment made in public lawsuits and in reviewing whether or not the Police Commission properly conducted its investigation into those allegations." <u>Id.</u> at 1299.  The court held that transcripts of the interviews could not be kept confidential, reasoning that "[t]he public has a strong interest in assessing the truthfulness of allegations of official misconduct, and whether agencies that are responsible for investigating and adjudicating complaints of misconduct have acted properly and wisely." <u>Id.</u> at 1302.  Similar reasoning applies here, as the public has a strong interest in assessing the truthfulness of allegations made against Defendant.  Ex. C.

In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig., 101 F.R.D. 34 (C.D. Cal. 1984), also is instructive.  In that case, which also involved challenges to "umbrella protective orders … entered to facilitate discovery," the court recognized that the "interest in access to court proceedings in general may be asserted more forcefully when the litigation involves matters of significant public concern." <u>Id.</u> at 36, 38.  The litigation there involved allegations by the State of California and City of Long Beach about a conspiracy to depress oil prices. <u>Id.</u> at 36. The district court found a significant public interest weighing in favor of disclosure, regardless of the outcome: "If the charges prove true, state and local governments have been cheated out of many millions of dollars of revenue owed for the exploitation of public resources.  If the defendants' counterclaims succeed, public officials will have been shown to have abused their discretion in the management of

---

[on the Internet] may cause him some level of discomfort, the court concludes that is not sufficient to support the entry of [a] protective order").

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

public resources to the detriment of the taxpayers as well as the defendants." Id. at
38. The same principle applies here, where, regardless of the outcome of the case,
the litigation bears on the conduct of a candidate running for the most powerful
public office in the country.

Indeed, this Court already has found that the public interest in understanding
the judicial process is unusually strong in this case, noting that Defendant is the
front-runner for the Republican nomination in the 2016 presidential race, and has
made the litigation itself a campaign issue. Order Unsealing Court Records, Dkt. #
211, at 10. In addition, Defendant has emphasized his business record and
negotiating skills as his main qualifications to serve as President of the United States.
Ex. A. His rivals have questioned those claims, citing in part Plaintiffs' allegations
in this lawsuit about the operation of Defendant's namesake business, TU. Ex. A at
1, 12. In response, Defendant has publicly defended TU, invoking it as a positive
example of his track record. Ex. D at 2. Consequently, this litigation is not simply
about a private-sector business dispute; it now directly involves a central issue in a
presidential election campaign. The portions of the deposition transcripts and videos
that Defendant has designated as "confidential" would help the public assess his
qualifications for the nation's highest office, which weighs strongly in favor of
removing any confidentiality designations so that these records may be disclosed in
full. See In re Roman Catholic Archbishop, 661 F.3d at 424 n.5 (courts must
consider "whether a party benefitting from the order of confidentiality is a public
entity or official," and "whether the case involves issues important to the public); see
also Rosenbaum, 1993 U.S. Dist. LEXIS 15908, at *7.

Moreover, the Ninth Circuit already has recognized that the subject of this
litigation and the matters discussed in the Trump Depositions are of public concern,
even apart from their relevance to the 2016 presidential election. As the Ninth
Circuit explained:

19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> [A]ny general interest in Trump University stemming from its celebrity founder soon ripened into an actual dispute over Trump University's business and educational practices … [B]y Fall 2009, the 'specific question' of Trump University's legitimacy had become a public controversy.
>
> …
>
> Trump University's business model involved offering seminars that encouraged members of the public to participate in the market for foreclosed properties, which had grown substantially in the wake of the 2007 financial and mortgage crisis.  These activities, carried out by Trump University and other purveyors of real estate investment advice, had the potential to affect local housing markets by increasing or decreasing real estate speculation in the market for foreclosed homes.  The debate over Trump University's business practices thus held ramifications not just for Trump University and its customers, but for all participants in the local housing markets.

Makaeff v. Trump Univ., LLC, 715 F.3d 254, 267 (9th Cir. 2013); see also Order Unsealing Court Records, Dkt. # 211, at 10-11 ("the Ninth Circuit found that TU was a public figure for purposes of defamation law in the related Makaeff case").  Thus, not only has the Ninth Circuit recognized that public interest in Trump University stems from its "celebrity founder," and that Trump University's legitimacy was a matter of "public concern," but the appellate court also acknowledged that the conduct at issue in the Low action and in this case had widespread ramifications that are of great public concern.  Id.

Indeed, Trump University has been the subject of controversy for many years. Exs. C and E.  For instance, as early as 2009 – long before Donald Trump's current presidential bid – The Washington Post reported on allegations concerning Trump University.  Ex. C at 1-2.  In 2011, The New York Times reported that the New York State attorney general's office was investigating Trump University.  Id. at 3-7.  And just last year, CBS News conducted a three-month investigation of Trump University, interviewing former students and analyzing evidence that has been presented thus far in this action.  Id. at 8-10.  CNN also has conducted its own

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

investigation about TU, as well as reporting on this litigation and related court proceedings.  Ex. E at 4-5.

Finally, the public interest would be best served by removing any impediment to the disclosure of the complete videotapes of the Trump Depositions.  As the Second Circuit explained in granting CBS access to a videotaped deposition of a witness that had been shown during a criminal trial:

> Because the videotape may in fact be more accurate evidence than a transcript, moreover, its availability to the media may enhance the accurate reporting of trials.  Transcripts lack a tone of voice, frequently misreport words and often contain distorting ambiguities as to where sentences begin and end. Videotaped depositions thus convey the meaning of testimony more accurately and preserve demeanor evidence as well.

In re CBS, 828 F. 2d 958, 960 (2d Cir. 1987).  See also Felling v. Knight, 211 F.R.D. 552 (S.D. Ind. 2003) (granting TV station's motion to vacate protective order to allow disclosure of videotape of deposition of basketball coach in high-profile case; "any potential embarrassment the deponents may experience resulting from the release of the videotapes is outweighed by the public's right to know").

Although some courts have permitted deposition videos – as opposed to transcripts – to remain confidential under Rule 26 where it was shown that disclosure would cause specific serious harm, there is no such risk here.  Indeed, Plaintiffs have indicated that they are publicly lodging 32 video clips from the December 10, 2015 deposition, and 16 video clips from the January 21, 2016 deposition, which Defendant has not designated confidential.  See Dkt. ## 220-1; 227.  This undermines any potential argument that disclosure of the remaining segments of the deposition videos would cause any particular harm.  Moreover, the public interest in these videos also is far stronger because they would provide the electorate with valuable insight into the demeanor of the presumptive Republican presidential nominee, as he addresses issues that are at the center of the campaign.

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# V.    CONCLUSION

For all the reasons set forth above, the Media Intervenors respectfully request that they be granted leave to intervene in this matter for the limited purpose of modifying the protective order entered in this case to remove the confidentiality designations from the Trump Depositions to permit their full disclosure.

DATED: June 10, 2016

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ALONZO WICKERS IV
DAN LAIDMAN
DIANA PALACIOS


By:_____/s/ Kelli L. Sager_____
            Kelli L. Sager

Attorneys for Media Intervenors
CABLE NEWS NETWORK, INC.
("CNN"); CBS BROADCASTING INC.;
CBS INTERACTIVE INC.; TRIBUNE
PUBLISHING COMPANY; ABC, INC.;
NBCUNIVERSAL MEDIA, LLC; THE
NEW YORK TIMES COMPANY; and WP
COMPANY LLC D/B/A THE
WASHINGTON POST

MEMORANDUM ISO MOTION TO INTERVENE
& TO MODIFY STIPULATED PROTECTIVE ORDER
DWT 29767919v1 0026517-000166

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899