ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (111070)
patc@rgrdlaw.com
X. JAY ALVAREZ (134781)
jaya@rgrdlaw.com
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
DANIEL J. PFEFFERBAUM (248631)
dpfefferbaum@rgrdlaw.com
BRIAN E. COCHRAN (286202)
bcochran@rgrdlaw.com
JEFFREY J. STEIN (265268)
jstein@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>     vs.<br><br>DONALD J. TRUMP,<br><br>              Defendant. | No. 3:13-cv-02519-GPC-WVG<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S REBUTTAL EXPERT DeFOREST McDUFF, Ph.D.<br><br>DATE:   July 22, 2016<br>TIME:    1:30 p.m.<br>CTRM:   2D<br>JUDGE:  Hon. Gonzalo P. Curiel |

1155640_1

## I. INTRODUCTION

Defendant Donald Trump contends that if "Dr. [DeForest] McDuff was testifying outside the scope of his expertise, that is not a reason to exclude Dr. McDuff as an expert." Dkt. 217 ("Opp.") at 9. Plaintiff disagrees. McDuff is strictly a rebuttal expert, and Trump concedes that McDuff has no experience, let alone expertise, in the subject areas of Plaintiff's expert's testimony. This is where the Court's analysis, and McDuff's participation in the case, should end.

McDuff's "economic" opinions, contained in Section 5 of his report, should be excluded because they are not rebuttal opinions. Rather, McDuff himself states these are "affirmative opinions" being offered in "addition" to his rebuttal testimony. Now Trump attempts to recast these opinions – which involve new economic quantifications and analyses – as "rebuttal" because they relate to "value" and Plaintiff's expert, Paul Habibi ("Habibi"), also opined on topics related to "value." However, Trump's expansive definition of "rebuttal" would render the term all but meaningless, reward gamesmanship, and rewrite the law. Neither of Plaintiff's experts is an economist and neither proffers any testimony remotely comparable to McDuff's affirmative economic analysis. Demonstrating the tactical maneuvering behind Trump's ploy, Trump has submitted the testimony of two other actual rebuttal experts, Alan D. Wallace, Esq. ("Wallace") and Joel Steckel ("Steckel"), covering every topic of testimony offered by Plaintiff's experts.

Allowing Trump to sneak in an affirmative damages opinion long past the deadline would deprive Plaintiff of his right to rebuttal and expose the jury to unreliable expert testimony. McDuff's affirmative opinions on economic "value" boil down to cherry-picking random pieces of information out of unreliable TU-generated documents and simply equating them with a mathematical calculation of Class Members' damages. Plaintiff's criticisms of McDuff's testimony is not just that he looked at the wrong documents or drew the wrong conclusions, but that his opinions are fundamentally flawed in that McDuff misrepresents what the documents are and

what they can show. The risk of prejudice is particularly acute because McDuff goes to great lengths to dress up his analysis in pseudo-scientific statistics and economic terminology that will be highly misleading to the jury.

## II. ARGUMENT

### A. McDuff Is Not Qualified to Opine on the Educational Value of TU Materials or Marketing/Consumer Psychology Topics

McDuff is just a *rebuttal* expert. Yet, it is indisputable that Trump failed to designate McDuff on the real estate investment and education topics that are the subject of the Habibi report or on any topic that is the subject of the Dr. Michael A. Kamins' ("Kamins") report. *See* Ex. 13.[1] This alone provides reason to exclude McDuff's testimony on these topics. *See* Dkt. 58, ¶4; *Wright v. Blythe-Nelson*, No. 3:99-CV-2522-D, 2001 U.S. Dist. LEXIS 9606, at *12 (N.D. Tex. July 11, 2001) ("[R]etaining an expert is feckless without also designating her . . . .").

Further, Trump essentially concedes that McDuff has no specialized training, qualifications or experience in these areas. Instead, Trump argues that since McDuff is trained as an economist he should be allowed to testify as to "real estate economics." *See* Opp. at 6-11. The problem with Trump's argument is that it ignores: (1) the opinions McDuff is limited to rebutting do not concern "real estate economics"; and (2) McDuff's own report, which ventures far beyond his areas of expertise. For example, McDuff responds to Habibi:

- "[T]he Habibi Report . . . ignores the many standard real estate investment techniques that TU taught its students, such as researching comparable properties, performing due diligence on transactions, using benchmarks to assess value (*e.g.*, replacement cost, gross rent multiplier), considering multiple financing options, and starting with small income properties." Ex. 1, McDuff Rpt. at 20.

- "TU maintained mentor certification and credential policies . . . . As a result, the Habibi Report's conclusion that TU mentors were

---

[1] Here, and throughout, unless otherwise noted, references to "Ex." are to the Exhibits filed with the Declaration of Brian E. Cochran, on April 22, 2016 (Dkt. 184-2 to 184-5).

> inexperienced or unqualified is contrary to the evidence demonstrating both that many had significant practical experience in real estate investing . . . ." *Id.* at 21-22.

- "TU taught Donald Trump's core real estate strategies and associated tactics that can be applied across differing types of real estate investing." *Id.* at 24.

These opinions are not about the "economics" of real estate markets, as Trump claims, but rather whether TU provided legitimate real estate investing education, taught by qualified and properly credentialed instructors, that would provide TU customers with the tools and analytical framework necessary for sustained investing success. But McDuff has no specialized knowledge or training in "standard real estate investment techniques," adequate instructor "certification and credential policies" or what "real estate strategies and associated tactics" could "be applied across differing types of real estate investing." *See id.* at 20-24. Thus, he is unqualified to render these opinions.

McDuff's response to Kamins wanders even further outside his wheelhouse. Kamins has offered no opinion on the value of TU courses, economic damages or anything else remotely related to McDuff's area of expertise. As McDuff states, he considers many of Kamins' opinions (such as those regarding System 1 thinking) to be "irrelevant" to his analysis. *E.g.*, Ex. 1, McDuff Rpt. at 38. Nonetheless, McDuff spends eight pages of his report musing on these purportedly economically "irrelevant" aspects of marketing and consumer psychology, for example:

- "[E]vidence indicates that TU offered students opportunities to avoid making decisions using a 'System 1' thinking response." *Id.*

- "[D]ocuments . . . '[u]sing celebrity endorsements and testimonials to emphasize image and style is a sure eye-catcher'" and are "a direct example of the use of brand value and name recognition in a manner that signals product quality and creates consumer interest." *Id.* at 37-38.

- "The critiques raised by the Kamins Report on the alleged unreliability of the [98%] survey information are unpersuasive and frequently irrelevant: . . . factors include potential for positive bias in the survey

responses, such as not being anonymous, biased questions, confirmation bias, and instructors encouraging high scores." *Id.* at 39-41.

McDuff has no training in the academic theories and literature that form the bases for Kamins' testimony (*see, e.g.*, Ex. 8, Kamins Rpt. at 7-8, 14, 16-18, 27-28), yet nevertheless purports to offer an "expert" opinion on whether Kamins correctly applied this specialized analytical framework to the facts of the case. These opinions will in no way help the jury and should be excluded.

"A person qualified to give an opinion on one subject is not necessarily qualified to opine on others." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991). Thus, Trump is wrong that an economist has license to opine on anything and everything simply by reciting the word "economic" in his testimony. For example, the court in *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal. 2012), an antitrust class action, found that an economist was unqualified to offer an opinion on whether various musicians qualified as "rock" artists even though the opinion related to his analysis of the relevant product market. *Id.* at 994-97; *see also, e.g.*, *Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*, No. 09-CV-140-GPC-KSC, 2014 U.S. Dist. LEXIS 47041, at *13-*14 (S.D. Cal. Mar. 28, 2014) (insurance broker could not opine on escrow transactions and banking laws outside expertise); *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928-MIDDLEBROOKS/JOHNSON, 2010 U.S. Dist. LEXIS 142228, at *175 (S.D. Fla. Feb. 24, 2010) (epidemiologist could not opine on marketing issues outside expertise). McDuff's proffered testimony is even further removed than the expert in *Live Concert* from any proper economic analysis because it is not related to any analysis of "real estate economics" (the only area of McDuff's expertise Trump points to), Trump never designated McDuff as an expert on these topics, and McDuff himself states they are largely "irrelevant" to his economic analysis and concedes he holds almost no relevant qualifications. *See* Dkt. 184-1 at 5-8; *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1203-04 (D. Nev. 2008) (excluding expert who did not hold himself out as qualified to

1  opine on the topics of his report), *aff'd*, 371 F. App'x 752 (9th Cir. 2010).

2  The cases Trump cites do not stand for the proposition he asserts as they involved economists testifying on economic issues in various industries and markets, not economists testifying on subjects outside their expertise. For example, the economist at issue in *Cal. v. Kinder Morgan Energy Partners, L.P.*, No. 07-cv-1883, 2016 U.S. Dist. LEXIS 15174 (S.D. Cal. Feb. 2, 2016), *aff'd*, 2016 U.S. Dist. LEXIS 40551 (Mar. 24, 2016), provided an economic "market analyses" without indication he strayed from this mandate. *Id*. at *6-*7.[2] What Trump fails to mention is that Judge Anello in *Kinder Morgan* also **excluded** a purported "rebuttal" expert that a party attempted to use – like Trump here – to provide affirmative damages opinions after the initial disclosure deadline had passed. Judge Anello found the maneuver "indefensible" and rejected attempts to recast the opinion as falling within the same "subject matter" as the opposing party's experts' testimony, calling the argument "disingenuous, at best." *Id*. at *11, *14. The lesson of *Kinder Morgan* – that a party cannot transform improper rebuttal testimony into the same subject matter of an opposing expert's testimony by simply labeling it so – applies with equal force here. McDuff's response to Habibi and Kamins requires expertise outside the field of economics and should be excluded.

Realizing McDuff has no expertise on these topics, Trump offers the testimony of two **other** experts with relevant qualifications (Wallace and Steckel) who offer duplicative testimony. Tellingly, the "rebuttal" portions of McDuff's report largely parrot the content and conclusions of the Wallace and Steckel reports, albeit detached from any relevant expertise. *Compare* Ex. 1, McDuff Rpt. at 9-36 *with* Ex. 5, Wallace Rpt.; *compare* Ex. 1, McDuff Rpt. at 37-44 *with* Ex. 6, Steckel Rpt. Trump fails to point to any aspect of McDuff's response to Habibi or Kamins that is not already

---

[2] *See also, e.g.*, *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (economist testifying on calculation of economic losses); *Pac. Gas & Elec. Co. v. Howard P. Foley Co.*, No. 85-2922 SW, 1993 U.S. Dist. LEXIS 21414, at *22-*23 (N.D. Cal. July 27, 1993) (economist testifying on market for electrical construction bidding).

covered in detail by the proffered testimony of either Wallace or Steckel.  Thus, in addition to being highly prejudicial because it is not the product of specialized knowledge, McDuff's testimony adds no probative value.  *See Rogers*, 922 F.2d at 1430 (upholding exclusion of expert testimony duplicative of other experts under Rule 403).

### B. McDuff's Affirmative Economic Opinions Are Untimely

Trump concedes that rebuttal testimony that exceeds the scope of affirmative expert reports or offers new arguments is properly excluded.  *See* Opp. at 11-12.  Nevertheless, Trump argues that McDuff's affirmative economic opinions contained in Section 5 of his report – which do not directly correspond to the Habibi or Kamins reports and which McDuff himself characterized as "affirmative" opinions separate from his rebuttal – should be admitted.  *See id*. at 11-14.  He is wrong.

First, the Court's Case Management Conference Order is not "irrelevant" as Trump contends (*see* Opp. at 11), but set the time by which the parties were required to make their initial expert disclosures.  *See* Fed. R. Civ. P. 26(a)(2)(D); Dkt. 149, ¶¶4, 6.  This Trump failed to do, even though he now claims McDuff's testimony concerns "a crucial element of this case" and "is of paramount importance to Defendant's defense."  Opp. at 10 n.7.

Second, Trump's expansive interpretation of the "same subject" requirement for rebuttal testimony would render the limitation a nullity.  Yes, Habibi opined on "value," but specifically the ***instructional and educational value*** of TU Live Event materials – a topic on which McDuff is unqualified to testify (*see* §II.A, *supra*), and on which Trump offers the testimony of Wallace, who dedicates an entire section of his report to the purported "objective evidence of value" of TU instructional materials.  *See* Ex. 5, Wallace Rpt. at 26-27.  Yes, Kamins opined on the importance of Defendant's representations to consumers' purchasing decisions, but specifically from a ***marketing and consumer psychology vantage point*** – again, a topic on which McDuff is unqualified to testify (*see* §II.A, *supra*), and on which Trump offers the

1  opinion of another expert, Steckel, who opines on the materiality of Defendant's
2  misrepresentations.[3] *See* Ex. 6, Steckel Rpt. at 46. Neither of Plaintiff's experts
3  purported to offer an economic opinion of the type McDuff provides, and Trump's
4  attempt to offer entirely new opinions outside the scope of either expert's initial report
5  is transparent gamesmanship. Certainly, these opinions do not "***solely***" contradict or
6  rebut the testimony of Plaintiff's experts. *See* Dkt. 149, ¶6.

7  Trump's broad reading of the "same subject matter" requirement would render
8  the "scope of the subject matter limitless" and "lead to unjust results." *Vu v. McNeil-*
9  *PPC, Inc.*, No. CV 09-1656 ODW (RZx), 2010 U.S. Dist. LEXIS 53639, at *7-*8
10 (C.D. Cal. May 7, 2010). As Judge Anello recently held in an almost identical
11 situation, a party should be barred from offering new, affirmative opinions on
12 damages and valuation on rebuttal that they belatedly claim are critical to their case.[4]
13 Allowing a party "to secretly prepare an army of 'rebuttal' experts" would provide
14 "immunity" from a direct response by an opposing expert and "is simply unfair."
15 *Kinder Morgan*, 2016 U.S. Dist. LEXIS 15174, at *14;[5] *see also Oracle Am., Inc. v.*
16 *Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 131706, at *14 (N.D.
17 Cal. Nov. 15, 2011) (excluding "rebuttal-only expert on the issue of damages"). As
18 Judge Anello observed, failing "to identify an expert witness and provide the
19 disclosures required by Rule 26(a)(2) in accordance with the court's scheduling
20 order'. . . is not harmless" because it robs the opposing party of a chance at rebuttal.
21 *Kinder Morgan*, 2016 U.S. Dist. LEXIS 15174, at *16. Trump's claim that "Plaintiff
22 could not render a separate damages analysis other than Habibi's opinion that TU was

---

[3] Trump never designated McDuff on any topic of the Kamins report. *See* Ex. 13.
[4] While Judge Anello's decision in *Kinder Morgan* mentions the party relying on the expert for their "case-in-chief," the same logic applies to an expert critical to a party's defense. McDuff's testimony relates to numerous of Defendant's claimed affirmative defenses which rely on the purported value of TU Live Events. *See, e.g.*, Dkt. 22 at 14-16 (11th Affirmative Defense: Unclean Hands; 14th Affirmative Defense: Unjust Enrichment; 16th Affirmative Defense: Fraud/Misrepresentation).
[5] Here and throughout, unless otherwise noted, citations and internal quotations marks are omitted and emphasis is added.

1  valueless" (Opp. at 11) ignores the fact that Plaintiff could have hired an economist to
2  demonstrate the numerous flaws in McDuff's methods, analyses and conclusions.

3        Trump fails to distinguish the numerous similar cases in which courts have held
4  a party cannot sandbag an opponent by offering rebuttal testimony outside the scope
5  of initial disclosures. *See, e.g.*, *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744-
6  BLF, 2015 U.S. Dist. LEXIS 72601, at *8-*9 (N.D. Cal. June 3, 2015) (excluding
7  improper rebuttal because it went outside initial expert disclosures and related to
8  party's affirmative defenses); *Jorgenson Forge Corp. v. Consarc Corp.*, No. C00-
9  1879Z, 2002 U.S. Dist. LEXIS 28302, at *2 (W.D. Wash. Jan. 9, 2002) (excluding
10 improper rebuttal).  Trump's own cases recognize that "it is true that defendants
11 would not be permitted to designate rebuttal expert witnesses to introduce new
12 testimony and opinions." *LaFlamme v. Safeway, Inc.*, No. 3:09-cv-00514-ECR-VPC,
13 2010 U.S. Dist. LEXIS 98815, at *7-*8 (D. Nev. Sept. 2, 2010).  Thus, the cases are
14 in agreement that McDuff's new affirmative opinions should be excluded.

15       **C.**    **McDuff's Affirmative Economic Opinions Are Unreliable**

16       McDuff's affirmative economic opinions should also be excluded because
17 Trump has failed to meet his burden to establish their reliability. *See* Opp. at 14-21.

18       Trump cannot point to a single reliable source employing the type of random
19 'pick-a-number-and-call-it-damages' approach employed by McDuff.  But one does
20 not need to be an economist to know McDuff's methodology makes no sense and will
21 only mislead and confuse the jury.  Stripped of charts, graphs, misleading statistics
22 and pseudo-scientific terminology, McDuff's economic opinions boil down to simply
23 cherry-picking random pieces of information from irrelevant and unreliable sources
24 and equating them with materiality and damages. *See* Dkt. 184-1 at 13-19.  Take the
25 "1.2 percent, the 2.2 percent and the 5.4 percent" McDuff claims are "most relevant"
26 to damages. *See* Opp. at 17.  Trump does not deny that McDuff simply took an
27 internal TU marketing document that McDuff does not know the provenance of,
28 randomly picked a bar graph, eyeballed the "relative value" of a single question and

1 determined the answers equaled "5.4%," which he inexplicably equated to a 5% upper
2 bound of Class Members' damages. For McDuff's other two "most relevant" metrics,
3 he reviewed TU-generated customer responses, disregarded significant evidence
4 undermining their reliability, and determined that 2.2% referenced "Trump
5 involvement" and 1.2% referenced "university status."[6] He then equated this response
6 rate with the lower bound of Class Members' damages, *even though these responses*
7 *were not prompted by the questions*.[7] Trump claims other random calculations
8 McDuff pulled from a hodgepodge of documents (including non-expert, subjective
9 customer evaluations), "[a]ll" contributed to "McDuff's quantitative measurement
10 regarding the impact of the alleged conduct," but is just as silent as McDuff as to how
11 these figures in any way relate to damages or materiality under accepted economic
12 theory. *See* Opp. at 15-16. Trump's silence speaks to the fact that no economist
13 applying reliable and accepted principles would follow McDuff's approach.

14      Trump also claims that the consideration by Plaintiff's expert, Kamins, of two
15 sources considered by McDuff somehow renders McDuff's testimony reliable. Yet
16 the problem is not these documents in the abstract, but *how* McDuff purports to use
17 them. The first, a 2006 TU Customer Insight Survey, was an internal TU-marketing
18 survey and properly considered by Kamins – a marketing expert – among many pieces
19 of evidence regarding the importance of representations in TU marketing materials.
20 *See* Ex. 8, Kamins Rpt. at 15. McDuff, by contrast, equated answers to a random
21 question in the document as a mathematical measure of economic damages, thereby
22 mischaracterizing the significance of the data and attempting to turn it into something
23 it is not. *See McMahon v. Altec Indus.*, No. 3:10-cv-01305-PK, 2012 U.S. Dist.
24 LEXIS 63906, at *38 (D. Or. Mar. 26, 2012) (finding statistician's testimony had no
25 evidentiary value where he "badly and inexplicably mischaracterized the data

---

[6] The discrepancy between 5.4% and 5% has never been explained. McDuff also never explains the discrepancy between 1.2% and 2.2% and the 0% he uses as the lower bound for damages, nor did he define what he considered referential responses.

[7] Trump cannot, and therefore does not, respond to this fatal flaw.

1  provided to him"). As to the second set of documents, TU customer surveys, Kamins
2  considered them in order to evaluate Trump's claim that the surveys reflected 98%
3  satisfaction among TU customers. *See* Ex. 8, Kamins Rpt. at 39-41. Applying
4  accepted theories and principles of marketing and consumer psychology, Kamins
5  ultimately concluded the surveys were unreliable for myriad reasons. *See id.* Thus,
6  Kamins' consideration of these documents – and rejection of their reliability – only
7  further undermines McDuff's reliance on them as a mathematical quantification of
8  Class Members' damages. McDuff's use of the documents is doubly problematic
9  because he inexplicably used them to tally responses to questions never asked, which
10 arbitrarily and improperly skewed his calculation of Class Members' damages
11 downward.

12  Trump's claim that Plaintiff's arguments go to the "weight" of McDuff's
13 testimony misses the mark. Plaintiff was never afforded an opportunity to rebut
14 McDuff's new affirmative opinions. They are wholly unreliable on their face and
15 McDuff's attempt to obfuscate how he arrived at his conclusions by burying his
16 methodology in misleading "quantifications," pseudo-scientific terminology and
17 mischaracterizations of the evidence will only compound the prejudice if presented at
18 trial. McDuff's testimony is a quintessential example of how "'[e]xpert evidence can
19 be both powerful and quite misleading because of the difficulty in evaluating it."
20 *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993). It is Trump's burden to
21 demonstrate that McDuff's testimony is reliable, a hurdle he has failed to clear.

**III. CONCLUSION**

23  Plaintiff's motion to exclude the testimony of McDuff should be granted.

24 DATED: June 17, 2016                Respectfully submitted,

25                                    ROBBINS GELLER RUDMAN
                                      & DOWD LLP

27                                         s/ X. Jay Alvarez
                                      ───────────────────────
                                          X. JAY ALVAREZ

|   |   |
|---|---|
| 1 | |
| 2 | ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>PATRICK J. COUGHLIN |
| 3 | X. JAY ALVAREZ<br>JASON A. FORGE |
| 4 | RACHEL L. JENSEN<br>DANIEL J. PFEFFERBAUM |
| 5 | BRIAN E. COCHRAN<br>JEFFREY J. STEIN |
| 6 | 655 West Broadway, Suite 1900<br>San Diego, CA  92101 |
| 7 | Telephone:  619/231-1058<br>619/231-7423 (fax) |
| 8 | |
| 9 | ZELDES HAEGGQUIST & ECK, LLP<br>AMBER L. ECK |
| 10 | AARON M. OLSEN<br>225 Broadway, Suite 2050 |
| 11 | San Diego, CA  92101<br>Telephone:  619/342-8000 |
| 12 | 619/342-7878 (fax) |
| 13 | Class Counsel |

1155640_1

- 11 -         3:13-cv-02519-GPC-WVG

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 17, 2016.

        s/ X. Jay Alvarez
        X. JAY ALVAREZ

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:    jaya@rgrdlaw.com

# Mailing Information for a Case 3:13-cv-02519-GPC-WVG Cohen v. Trump

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,llendzion@rgrdlaw.com,tholindrake@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,hbrown@rgrdlaw.com,e_file_sd@rgrdlaw.com,JayA@rgrdlaw.com,KLavelle@rgrdlaw.com

- **David Lee Kirman**
  dkirman@omm.com,iyanniello@omm.com,sbrown@omm.com

- **Matthew R. Maron**
  mmaron@trumporg.com,carce@trumporg.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel M. Petrocelli**
  dpetrocelli@omm.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Kelli L. Sager**
  kellisager@dwt.com,VickyIsensee@dwt.com

- **Jeffrey J. Stein**
  JStein@rgrdlaw.com

- **WP Company LLC d/b/a The Washington Post**
  danlaidman@dwt.com

- **Alonzo Wickers , IV**
  alonzowickers@dwt.com,carolinasolano@dwt.com,ellenduncan@dwt.com,danlaidman@dwt.com

- **Helen Irene Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`