ROBBINS GELLER RUDMAN
& DOWD LLP
PATRICK J. COUGHLIN (111070)
patc@rgrdlaw.com
X. JAY ALVAREZ (134781)
jaya@rgrdlaw.com
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
DANIEL J. PFEFFERBAUM (248631)
dpfefferbaum@rgrdlaw.com
BRIAN E. COCHRAN (286202)
bcochran@rgrdlaw.com
JEFFREY J. STEIN (265268)
jstein@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Class Counsel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD J. TRUMP,<br><br>Defendant. | No. 3:13-cv-02519-GPC-WVG<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S REBUTTAL EXPERT ALAN D. WALLACE, ESQ.<br><br>DATE: July 22, 2016<br>TIME: 1:30 p.m.<br>CTRM: 2D<br>JUDGE: Hon. Gonzalo P. Curiel |

# I. INTRODUCTION

Defendant's rebuttal expert, Alan D. Wallace, Esq. ("Wallace"), serves no purpose that will be of assistance to a jury in this case. It is the job of the jury to assess witnesses' credibility, and it is the job of defense lawyers to introduce lay evidence that undermines plaintiff's case-in-chief. It is not the job of an expert.

Instead of addressing these issues, Trump spends the bulk of his opposition theorizing about the proper scope of rebuttal experts, which is not at issue. Trump seems to think that rebuttal expert testimony need not meet the standards of reliability for primary affirmative experts so long as it is strictly for rebuttal. This is not the law.

Defendant does not rebut the following key facts, which alone establish the inadmissibility of Wallace's opinions. For example:

- Wallace questions the credibility of Dr. Eldred, but an expert may not assess the credibility of another witness. Cochran Ex. 5, Wallace Rpt. at 9-12[1]; Dkt. 219 ("Opp.") at 16-17.
- Wallace says customer "testimonials" are "objective evidence" of value, but they are: (i) inherently subjective; (ii) unverified TU (or non-TU) advertisements; (iii) inadmissible hearsay; and (iv) parroted by Wallace without applying any specialized knowledge. Cochran Ex. 5, Wallace Rpt. at 26-27; Opp. at 13-15.
- Wallace concluded other seminar companies' course materials were similar to TU's, but he has no basis of knowledge because he never reviewed any other courses' materials. Cochran Ex. 5, Wallace Rpt. at 3-6, 26-27; Opp. at 9-12.
- Wallace got the meaning of Trump's "secrets" from public documents without specialized knowledge. Cochran Ex. 5, Wallace Rpt. at 25-26; Opp. at 12-13.
- Wallace relied on non-TU materials to opine about the overall value and legitimacy of TU courses. Cochran Ex. 5, Wallace Rpt. at 15-23.

---

1 Here, and throughout, unless otherwise noted, references to "Cochran Ex." are to the exhibits attached to the Declaration of Brian E. Cochran (Dkt. 184-2), filed April 22, 2016; and references to Exs. 1-15 are to the exhibits attached to the Declaration of X. Jay Alvarez (Dkt. 187-2), filed April 22, 2016.

Wallace's opinions are unreliable, without evidentiary basis and will not help the jury decide this case. The Court should exclude or at least limit his testimony.

## II. ARGUMENT

### A. Rebuttal Experts Must Also Meet the Standards for Admissibility

Defendant wrongly suggests that Wallace, as a rebuttal witness, need not satisfy the admissibility standards for expert testimony. Not so. Rebuttal experts share the "same Rule 702 and *Daubert* standards" as all experts. *See In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2013 U.S. Dist. LEXIS 154599, at *44-*45 (S.D. Cal. Oct. 25, 2013). Therefore, rebuttal expert testimony must be both relevant and reliable. *See Daubert v. Merrell Dow Pharms*, 509 U.S. 579, 589 (1993); *Rondor Music Int'l, Inc. v. TVT Records LLC*, No. CV 05-2909-JTL, 2006 U.S. Dist. LEXIS 97118, at *5-*7 (C.D. Cal. Aug. 21, 2006) (applying criteria to rebuttal expert). As with affirmative expert testimony, "an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion." *See* Fed. R. Evid. 702 advisory committee notes to 2000 amendments.

Unable to meet these standards, Trump misleadingly cites legal authority about the ***scope*** of rebuttal opinions to argue that Wallace's opinions are "proper" so long as they "contradict or rebut the subject matter of the affirmative expert report." Opp. at 5-8, 10-11, 16-17. But Plaintiff's motion is not directed at Wallace's opinions because they exceed the proper scope of rebuttal testimony. Alternatively, Trump suggests – without support – that affirmative experts bear "a higher standard of reliability" than rebuttal experts. *Id.* at 8. Again, he is wrong – Wallace's status as a rebuttal expert does not diminish admissibility standards or the gatekeeping duties of the Court. *See Novatel Wireless*, 2013 U.S. Dist. LEXIS 154599, at *44-*45.[2]

---

[2] Defendants' cases also show that rebuttal experts cannot circumvent admissibility standards, as the courts in those cases either assessed the expert's reliability (*see, e.g.*, *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 178-79 (N.D.N.Y. 2002); *Novadaq Techs. v. Karl Storz GMBH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 U.S. Dist. LEXIS 170423, at *5-*6 (N.D. Cal. Dec. 18, 2015)), or it was not at issue. *See, e.g.*, *Century Indem. Co. v. Marine Grp., LLC*, No. 3:08-cv-1375-AC, 2015 WL

Trump further misrepresents legal precedent – and unabashedly contradicts his own motions for exclusion – when he touts as "black-letter law" the rule that "the evidentiary foundation of Wallace's opinions . . . concern only the ***weight*** of Wallace's testimony and not its ***admissibility***."[3] *Compare* Opp. at 8, 11 (emphasis in original) *with* Dkt. 188-1 at 18 (citing *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1181, 1184 (N.D. Cal. 2007) ("[w]hen an expert ignores keys facts or data contradicting his conclusions, the resulting opinion is inadmissible because it is unreliable.")). An expert's failure to ground his opinions in the facts of the case render them inadmissible. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Bextra*, 524 F. Supp. 2d at 1176, 1181 (Experts cannot "ignor[e] the great weight" of evidence "that contradict[s] their conclusion and instead rely on the handful that appear to support their litigation-created opinion."). Trump cites no authority (because none exists) that a rebuttal expert can offer unreliable testimony detached from the facts – as Wallace did – and avoid exclusion. In cases he cites, the experts were either excluded (*see, e.g.*, *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 (9th Cir. 1987)), or offered reliable testimony under the same standards applied to affirmative experts. *See, e.g.*, *Romar v. Fresno Cmty. Hosp. & Med. Ctr.*, No. CIV F 03-6668 AWI SMS, 2007 U.S. Dist. LEXIS 25927, at *38-*41 (E.D. Cal. Mar. 23, 2007) (medical expert testimony based on sufficient medical records); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 609 (E.D. Cal. 2009) (biologist testimony based on experience and sufficient facts).

**B. Wallace's Credibility Determinations Are Improper**

The Court should exclude Wallace's assessment of Dr. Eldred's credibility both because it is improper and because he is not qualified to give it. Cochran Ex. 5, Wallace Rpt. at 9-12. Credibility determinations are strictly within the province of the

---

5521986, at *3 (D. Or. Sept. 16, 2015); *LaFlamme v. Safeway, Inc.*, No. 3:09-cv-00514-ECR-VPC, 2010 U.S. Dist. LEXIS 98815, at *8 (D. Nev. Sept. 2, 2010).

[3] Here, and throughout, unless otherwise noted, citations and internal quotations marks are omitted and emphasis is added.

jury and "expert" opinions assessing credibility are *per se* improper. *See United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999).

Unable to avoid the rule Trump attempts to bend the record around it, arguing that Wallace is "not assessing the credibility of another witness." Opp. at 16. This claim is patently false. In no uncertain terms, Wallace opines "[f]or the following reasons, . . . I find Dr. Eldred's testimony neither credible nor persuasive" and then spends several pages disparaging his honesty. Cochran Ex. 5, Wallace Rpt. at 9-12.

Trump also points to his wrongheaded argument that "rebuttal" experts can say whatever they want. In addition to misstating the law (*see* §II.A., *supra*), Trump mischaracterizes the nature of Wallace's "credibility" testimony. It is not rebuttal as it does not respond to any comparable credibility determinations by Plaintiff's expert. Further, Wallace admits he is unqualified to assess credibility. Ex. 4, Wallace Tr. at 201:16-202:4. Wallace's credibility opinions should be excluded.

**C. Wallace's Parroting of TU Advertisements Should Be Excluded**

Wallace's opinion that customer "testimonials" constitute "objective evidence of value" should be excluded because the unverified advertisements are by definition not "objective," hopelessly unreliable and testimony based upon them is far more prejudicial than probative. Cochran Ex. 5, Wallace Rpt. at 26-27. Trump has failed to demonstrate their reliability or even respond to Plaintiff's arguments, including:

- Testimonials are by definition subjective not objective. Dkt. 187-1 at 11; Opp. at 15.
- Wallace knows nothing about the anonymous statements, including whether the purported customers actually attended TU, what classes they took, what instructors they used and whether they made the statements or achieved the success attributed to them. Dkt. 187-1 at 8-10.
- On their face, the documents include several non-class members, including many who lived outside the United States, took online classes, or took other courses not at issue in this litigation. *Id.* at 8.

- TU generated the "testimonials" for marketing purposes, and thus they are heavily one-sided and contain only effusive praise for TU. *Id.* at 7-8.
- Most of the advertisements refer to TEI, not TU.[4] *Id.*; Opp. at 14.
- Wallace could not say whether TU fabricated all or part of the promotional statements to meet its marketing goals.[5] Dkt. 187-1 at 8.
- Wallace simply repeated the statements as if they accurately reflected TU without applying any specialized knowledge or expertise. *Id.* at 9.

Trump also abandons claims that the advertisements are "objective," and instead argues that subjective evidence can still support Wallace's opinions. Opp. at 15. However, reliance on subjective evidence of value runs contrary to the Court's prior orders and controlling law regarding the appropriate measure of RICO damages. Dkt. 53 at 21 (citing *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS (MANx), 2013 U.S. Dist. LEXIS 176313, at *10-*11 (C.D. Cal. Dec. 9, 2013)). Moreover, Wallace cannot now testify that the TU advertisements constitute subjective evidence, because doing so would directly conflict with his written conclusion that they constitute objective evidence. Cochran Ex. 5, Wallace Rpt. at 26; *see Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (preventing expert testimony when it is "in irreconcilable conflict with his written report").[6] Wallace's testimony should be excluded, not changed to fit Trump's arguments.

---

4 Trump claims this inconsistency is "of no consequence." Opp. at 14. But TEI was formed ***after the Class Period*** in response to mounting legal pressure, and customers who purchase TEI products are not Class Members. Consequently, TEI materials cannot reliably form the basis for assessing the value of the TU courses attended by Class Members.

5 The promotional statements attributed to Risa and Todd M. – which Trump curiously points to – indicates TU ***did*** alter the "testimonials." The advertisement quoting Risa and Todd touts lessons taught at "TEI" which did not exist when they attended in 2008. Opp. at 14. It appears TEI unilaterally modified Risa and Todd's statement to coincide with the marketing materials under its new name. Trump has not disclosed who altered the testimonials or what other manipulations were made.

6 Trump fails to distinguish authority excluding similar testimony. For instance, the decision to exclude unreliable testimony in *State Farm Fire & Cas. Co. v. Electrolux Home Prods.*, 980 F. Supp. 2d 1031, 1038 (N.D. Ind. 2013), did not depend on its "statistical" nature, but that it was based on unverified facts, as Wallace's opinion is

Trump also concedes that the advertisements constitute inadmissible hearsay, but claims it is okay because Wallace is an expert. Opp. at 14. However, experts may only rely on inadmissible evidence if it is "***reasonably relied upon in the field***." *See In re ComUnity Lending, Inc.*, No. C 08-002001 JW, 2011 WL 7479165, at *3 (N.D. Cal. June 6, 2011). "If the underlying data is so lacking in probative force and reliability that no reasonable expert could base an opinion on it, an opinion which rests entirely upon it must be excluded." *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987). As always, "[t]he proponent of the expert testimony . . . has the burden of proving admissibility." *See Lust by & Through Lust v. Merrell Dow Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996). Trump makes no effort to show that educational experts typically rely on unverified marketing materials to assess the educational value of course instruction. Instead, he points only to university websites describing student evaluations as "useful tools for ***evaluating*** . . . ***teaching***." Opp. at 15 n.8. However, even these websites describe evaluations as unreliable because "students are not subject matter experts" and "students' ratings are sometimes influenced by their own motivations, attitudes and needs." *See* http://www.oid.ucla.edu/assessment/eip/measure (last visited June 15, 2016) (UCLA Office of Instructional Development, Measuring & Evaluating Teaching). Regardless, the purported customer testimonials here are much less reliable than typical student evaluations because they represent only unverified, anonymous and discredited marketing materials culled for the express purpose of portraying TU or TEI in a positive light to induce new customers to purchase the companies' products. No serious educational expert would rely on such materials, and Wallace's opinions based on these materials should be excluded.

---

here. *See id*. at 1038-39. Similarly, in *Fire-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870 (E.D. Wis. 2010), the court excluded an expert who never "independently verified" the information his client provided. *See id*. at 888.

### D. Wallace's Opinion Based on Comparisons to Other Business Seminars Should Be Excluded

The Court should exclude Wallace's opinion that TU was comparable to other business seminars and that this purported similarity demonstrates TU Live Events had value because he never reviewed the materials on which this opinion is based. Cochran Ex. 5, Wallace Rpt. at 3-6, 26-27. Speculative testimony or testimony without a factual basis should be excluded, even where it is designed to 'poke holes' in an opposing expert's testimony. *See Lukov v. Schindler Elevator Corp.*, No. 5:11-cv-00201 EJD, 2012 U.S. Dist. LEXIS 88415, at *9 n.4 (N.D. Cal. June 26, 2012); *Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 953 (9th Cir. 2011). Cases cited by Trump simply reinforce the point. For instance, in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, the rebuttal expert who sought to "point out flaws" in an opposing expert's opinion still had to demonstrate a "sufficient factual basis" for his opinion. *See* 978 F. Supp. 2d 1053, 1069, 1073 (C.D. Cal. 2013).

Wallace never looked at the course materials of the other seminars (many of which do not even teach real estate investing) he claims provided similar instruction to TU. Although Trump claims Wallace "conducted a review and analysis of business seminar programs" (Opp. at 10), the facts reveal a different story. Trump makes no attempt to respond to the following evidence cited in Plaintiff's motion:

- Trump claimed TU was comparable to top-tier business programs. *See* Dkt. 187-1 at 12-13 (citing Cochran Ex. 7, Habibi Rpt. at 5).
- Wallace concluded TU taught valuable real estate instruction by equating TU to seminars that did not teach real estate. *Id.* at 13 (citing Ex. 4, Wallace Tr. at 166:21-24).
- Wallace did not look at any course materials from business seminars he held up as a proper comparison to TU, other than a TU-generated list of program descriptions and a one-page summary of a single *Rich Dad Poor Dad* class. *Id.* (citing Ex. 4, Wallace Tr. at 152:24-153:7, 154:23-155:2, 171:3-175:7).

Wallace simply ignores Trump's efforts to portray TU as an actual, top-tier university at every turn. Further, without any specialized knowledge about competing seminars, Wallace has no basis to opine that "TU is more properly compared to [them]." Cochran Ex. 5, Wallace Rpt. at 5. This testimony should be excluded.

**E. Wallace's Opinion that TU Taught Trump's "Secrets" Is Pure Speculation**

The Court should exclude Wallace's opinion that TU taught Trump's investing "secrets" because it is based on his speculative interpretation of the word "secrets." Cochran Ex. 5, Wallace Rpt. at 23-26. "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all. Both analyses result in pure speculation." *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

Trump repeatedly promised his student-victims that they would learn "insider success secrets from Donald Trump." Dkt. 1 at 16. Both experts agree, however, that Trump had no secrets to offer. Cochran Ex. 7, Habibi Rpt. at 7; Cochran Ex. 5, Wallace Rpt. at 7. Despite this concession, Wallace contends that Trump really meant something other than "secrets" when he promised "secrets." Wallace opines:

> I view Mr. Trump's 'secret' to real estate investing as his impeccable execution of sound real estate investing techniques coupled with his personal attitude and approach to investing.

Cochran Ex. 5, Wallace Rpt. at 25. Wallace derived this interpretation without any specialized knowledge or expertise concerning Trump, Trump's techniques or what Trump meant by "secrets."

Even under his manufactured definition of "secrets," Wallace failed to explain how his opinion would be useful to the jury. Expert opinions are unnecessary when the subject is not "beyond the common knowledge of the average layman." *See United States v. Verduzco*, 373 F.3d 1022, 1035 (9th Cir. 2004). The "techniques" Wallace points to are well-known and commonsense propositions, not unique to Trump and not really techniques at all. For example, Wallace claimed TU instructors

taught students the "technique" of "identifying homes that were undervalued" when it told them a story about Trump buying a skyscraper for less than it was worth. Opp. at 13. Even if telling a story amounts to teaching a technique (it does not), the jury does not need an expert to opine that finding a good deal is a "sound real estate investing technique[]." Cochran Ex. 5, Wallace Rpt. at 25. Nor can Wallace's say-so transform commonsense propositions into valuable real estate investing strategies.

If Trump would like to explain his novel definition of "secrets" at trial, he and his lawyers are free to do so. However, he should not be allowed to "cloak" argument in the guise of "expert" opinion. *See Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004-06 (9th Cir. 2001). Moreover, Wallace's conflicting conclusions – that no secrets exist, but TU still taught secrets – would only confuse the jury. Cochran Ex. 5, Wallace Rpt. at 7, 25. These opinions should be excluded.

### F. Wallace's Opinion that TU Offered "Legitimate" and Valuable Real Estate Investing Education Is Irrelevant and Unreliable

Trump provides no justification for the fact that Wallace relied on non-TU Live Events materials in reaching his conclusion about the value and legitimacy of TU Live Events. *See* Cochran Ex. 5, Wallace Rpt. at 15-23. This fundamental flaw creates an unassailable "analytical gap between the data and the opinion." *In re Nexium (Esomeprazole) Prods. Liab. Litig.*, No. ML12-2404 DSF(SSx), 2014 U.S. Dist. LEXIS 151228, at *3 (C.D. Cal. Sept. 30, 2014).

Since Trump completely neglects to address this argument, the following facts remain undisputed:

- Wallace relied on materials from the Trump Institute, which the parties agree was "a separate entity from Trump University." Dkt. 187-1 at 16-17 (citing Ex. 15).
- Wallace relied on TEI materials, which did not exist during the Class Period. Dkt. 187-1 at 16-17.
- At his deposition, Wallace demonstrated an utter lack of understanding about what documents made up the TU course materials. *Id.* at 17.

Since Wallace's opinion as to the value of TU Live Events is largely based on materials from other courses, this opinion is unreliable. *See Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 923 F. Supp. 2d 1245, 1255 (S.D. Cal. 2013).

Trump also failed to justify Wallace's adoption of lay opinions from former TU students. An expert may not "merely 'parrot[]' some other person's opinion." *Flagstone Dev., LLC v. Joyner*, No. CV-08-100-BLG-RFC, 2011 U.S. Dist. LEXIS 122643, at *7-*8 (D. Mont. Oct. 24, 2011), *aff'd*, 545 F. App'x 602 (9th Cir. 2013). It is undisputed that Wallace adopted assessments of TU's legitimacy from student depositions and TU advertising materials without applying any analysis of his own. Dkt. 187-1 at 18; Cochran Ex. 5, Wallace Rpt. at 18 (adopting student opinion that TU instructors helped students "stay within the law"), 26 (adopting student opinion that "TU's techniques" helped students "build[] commercial real estate empires").

Since Wallace relied on non-TU Live Event materials and simply repeated unverified lay opinions, the Court should exclude his opinion that TU Live Events provided valuable and legitimate real estate investing instruction.

## III. CONCLUSION

The Court should exclude or limit Wallace's expert testimony at trial.

DATED: June 17, 2016

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
PATRICK J. COUGHLIN
X. JAY ALVAREZ
JASON A. FORGE
RACHEL L. JENSEN
DANIEL J. PFEFFERBAUM
BRIAN E. COCHRAN
JEFFREY J. STEIN

s/ X. Jay Alvarez
X. JAY ALVAREZ

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
AARON M. OLSEN
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Class Counsel

CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 17, 2016.

s/ X. Jay Alvarez
X. JAY ALVAREZ

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: jaya@rgrdlaw.com

# Mailing Information for a Case 3:13-cv-02519-GPC-WVG Cohen v. Trump

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com
- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com
- **Jason A Forge**
  jforge@rgrdlaw.com,llendzion@rgrdlaw.com,tholindrake@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Jeffrey L. Goldman**
  jgoldman@bbwg.com
- **Alreen Haeggquist**
  alreenh@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com
- **Rachel L Jensen**
  rjensen@rgrdlaw.com,hbrown@rgrdlaw.com,e_file_sd@rgrdlaw.com,JayA@rgrdlaw.com,KLavelle@rgrdlaw.com
- **David Lee Kirman**
  dkirman@omm.com,iyanniello@omm.com,sbrown@omm.com
- **Matthew R. Maron**
  mmaron@trumporg.com,carce@trumporg.com
- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com
- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com
- **Daniel M. Petrocelli**
  dpetrocelli@omm.com
- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com
- **Kelli L. Sager**
  kellisager@dwt.com,VickyIsensee@dwt.com
- **Jeffrey J. Stein**
  JStein@rgrdlaw.com
- **WP Company LLC d/b/a The Washington Post**
  danlaidman@dwt.com
- **Alonzo Wickers , IV**
  alonzowickers@dwt.com,carolinasolano@dwt.com,ellenduncan@dwt.com,danlaidman@dwt.com

- **Helen Irene Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)