ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (111070)
patc@rgrdlaw.com
X. JAY ALVAREZ (134781)
jaya@rgrdlaw.com
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
DANIEL J. PFEFFERBAUM (248631)
dpfefferbaum@rgrdlaw.com
BRIAN E. COCHRAN (286202)
bcochran@rgrdlaw.com
JEFFREY J. STEIN (265268)
jstein@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  vs.<br><br>DONALD J. TRUMP,<br><br>  Defendant. | No. 3:13-cv-02519-GPC-WVG<br><br>CLASS ACTION<br><br>PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S REBUTTAL EXPERT JOEL H. STECKEL, Ph.D.<br><br>DATE:   July 22, 2016<br>TIME:   1:30 p.m.<br>CTRM:   2D<br>JUDGE:  Hon. Gonzalo P. Curiel |

1155773_1

## I. INTRODUCTION

Plaintiff Art Cohen moved in a narrowly-tailored motion to exclude only portions of the opinions of defendant Donald J. Trump's rebuttal marketing expert, Joel H. Steckel, Ph.D. ("Steckel"). Dkt. 189-1 ("Motion" or "Mot."). Trump's opposition is a model of diversionary tactics. Trump offers only broad platitudes about the role of rebuttal experts and attempts to attack plaintiff's expert, Michael A. Kamins, Ph.D. ("Kamins"), without meaningfully addressing the issues. *See* Dkt. 218 ("Opp."). Trump seems to think rebuttal experts are not subject to the same touchstones of admissibility under *Daubert* – relevance and reliability – that apply to other experts. That is not the law. While Steckel confines his opinions to rebuttal, this alone does not render his opinions admissible, helpful to the jury, or not unduly prejudicial.

In fairness, Trump could do little to remedy Steckel's shortcomings. Steckel parrots bits of evidence devoid of expert analysis and wades into areas reserved for the fact finder. For example, Steckel seizes on a single out-of-context deposition excerpt to identify Trump University's ("TU") purported target market, without reviewing TU's marketing or its advertising. He offers sweeping criticism about Kamins' factual support, yet he considered less than 10 of the 175 documents Kamins reviewed. He falsely claims that Trump handpicked TU instructors and that TU taught Trump's strategies, yet Steckel lacks any expertise in TU's hiring practices, Trump's real estate secrets, or real estate education. These realities leave Trump with little to say when confronting Plaintiff's arguments – so he avoids them. For example, to defend Steckel's views on the "98% approval" rating, Trump merely repeats Steckel's report. That is it. No *Daubert*-related argument, no methodology, no cases, no attempt to support a finding of reliability.

While the Court's gatekeeping function does not entail deciding the correctness of expert testimony, it must ensure an expert's opinions are grounded in the facts of the case, employ the same rigor as others in the field and weigh the testimony's

probative value against its prejudicial risks. Plaintiff was targeted in his motion, acknowledging that certain opinions (though wrong) will be tested through cross-examination. On the other hand, some opinions are so untethered from the facts, or so far beyond Steckel's expertise, that they must be excluded as unreliable and prejudicial.[1] Plaintiff respectfully asks the Court to grant his motion.

## II. ARGUMENT

### A. Rebuttal Experts Are Held to the Same Standard as Affirmative Experts

Trump attempts to set a lower admissibility bar for rebuttal experts, contending anything goes so long as they "poke holes" in opposing opinions. Opp. at 7. He is wrong. Rebuttal experts share the "same Rule 702 and *Daubert* standards" as primary experts. *See In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2013 U.S. Dist. LEXIS 154599, at *44-*45 (S.D. Cal. Oct. 25, 2013). Thus, rebuttal expert testimony must be both reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Rondor Music Int'l, Inc. v. TVT Records LLC*, No. CV 05-2909-JTL, 2006 U.S. Dist. LEXIS 97118, at *5-*7 (C.D. Cal. Aug. 21, 2006) (applying general criteria to rebuttal expert). As with affirmative expert testimony, "an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion." Fed. R. Evid. 702 advisory committee notes to 2000 amendments.

The cases cited by Trump address the appropriate *scope* of rebuttal expert testimony, which is not even at issue for Steckel. Opp. at 6-7; *see, e.g.*, *Van Maanen v. Youth With a Mission-Bishop*, No. 1:10-cv-00493 AWI JLT, 2011 U.S. Dist. LEXIS 134333 (E.D. Cal. Nov. 21, 2011) (addressing proper scope of rebuttal testimony);

---

[1] Instead of defending Steckel, Trump spends two pages summarizing his motion to exclude Plaintiff's expert, Kamins. Opp., §II.B. Repeating the same faulty arguments (*e.g.*, that peer-reviewed academic research is not considered "support") and mischaracterizations of the record (*e.g.*, falsely alleging Kamins failed to disclose a review of TU's website) does nothing to show the admissibility of his own rebuttal expert. Plaintiff disputes each and every one of these attacks, as is fully set forth in his opposition brief to Defendant's motion to exclude Kamins. *See* Dkt. 223.

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (same); *TC Sys. Inc. v. Town of Colonie*, 213 F. Supp. 2d 171 (N.D.N.Y. 2002) (same); *Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, No. 08-CV-1083, 2010 U.S. Dist. LEXIS 104549 (N.D. Ill. Sept. 30, 2010) (same).[2]

Unable to satisfy his burden to show Steckel's testimony meets admissibility standards, Trump tries to change those standards. These efforts should be rejected.

### B. Steckel Cannot Opine on the Sufficiency of Kamins' Factual Support Because He Did Not Review this Support

Trump fails to respond to Plaintiff's argument that Steckel should not be allowed to testify as to the sufficiency of Kamins' review because Steckel reviewed only about 5% (less than 10 out of 175) of the documents Kamins considered. *See* Opp. at 9-13.

In none of the cases cited by Trump was an expert allowed to testify as to the evidentiary support for an opposing expert's opinion without reviewing that evidence. *See* Opp. at 12-13. To the contrary, courts hold "[a]n opinion that insufficient evidence exists cannot be supported when the evidence has not been reviewed." *In re LLS Am., LLC*, No. 09-06194-PCW11, 2013 Bankr. LEXIS 2418, at *14 (Bankr. E.D. Wash. June 12, 2013); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (expert opinions must be grounded in facts).

Here, for example, Steckel opines that Kamins "does not cite any support for [the] proposition" that "TU advertisements offer[ed] 'access' to both Mr. Trump and his real estate strategies." ¶51 (citing Cochran Decl., Ex. 8, Kamins Rpt., ¶¶31-32).[3] Had Steckel bothered to actually review the evidence cited in the Kamins Report, ¶¶31-32, he would have found ample support. For example, an October 9, 2009 email

---

[2] The citations to *IBM v. Fasco Indus.*, No. C-93-20326 RPA, 1995 U.S. Dist. LEXIS 22533 (N.D. Cal. Mar. 15, 1995), and *Estate of Viera v. City of El Monte*, No. CV 04-06082-MMM, 2006 U.S. Dist. LEXIS 98739 (C.D. Cal. May 2, 2006) appear to be inadvertent errors as they do not relate to Trump's arguments. Opp. at 7.

[3] Unless otherwise noted, all references to "¶__" are to the Rebuttal Report of Joel Steckel, filed as Exhibit 6 to the Declaration of Brian E. Cochran ("Cochran Decl."), filed April 22, 2016 (Dkt. 184-2).

1 from TU's former Chief Marketing Officer Michael Bloom ("Bloom"), with the
2 "Subject: Unique Selling Proposition – Our Marketing Story," described TU's
3 marketing pitch that "enables us to start winning with urgency across ALL consumer
4 segments":

> Donald Trump is the most successful real estate investor of our time. ***Trump University has the secret DJT Blueprint*** for consistent success in ALL AREAS of real estate investing to serve ANY objective – for investors seeking to buy and hold for positive cash flow and sizable long-term gains to investors wanting to buy and flip for short term profits.

Ex. 4 at TRUMP 00161597[4] (emphasis in original). Similarly, an October 20, 2009 email from Bloom described TU's advertising efforts "to target BOTH Mass Affluent AND Get Rich Quick audiences in the same piece." Ex. 5 at TRUMP 00161906 (emphasis in original). The attached "Marketing brief" instructed TU personnel: "***HIGHLIGHT DONALD TRUMP'S PERSONAL INVOLVEMENT IN TRUMP UNIVERSITY (HE IS NOT JUST LENDING HIS NAME)***." *Id.* at TRUMP 00161909 (emphasis in original). As these and other documents cited in the Kamins report demonstrate, Kamins' opinions are firmly grounded in the evidence of the case. Cochran Decl., Ex. 8, Kamins Rpt., ¶¶31-32 (*see* Ex. 6; Ex. 7, Sexton (Low) Tr. at 114:23-115:21). But Steckel chose a "head-in-the-sand" approach on rebuttal, so he is ignorant of these facts.

Trump can only offer that Steckel reviewed "*some* of the key documents reviewed by Kamins" or "considered" them via "the descriptions in Kamins's report," but this explanation only makes Steckel's failings all the more apparent. Opp. at 10. Trump also claims that Steckel performed an "independent review of the support for Kamins's conclusion." *Id.* at 11. Trump cannot mean Steckel actually reviewed the documents cited by Kamins, because that would be false. *See* Mot. at 5 & n.4. Even

---

[4] Here, and throughout, unless otherwise noted, references to "Ex." are to the Exhibits attached to the Declaration of Daniel J. Pfefferbaum, filed concurrently herewith. In addition, unless otherwise noted, all emphasis is added and citations and internal quotations marks are omitted.

Trump's assertion that Steckel reviewed "key documents" such as "the Goff and Sexton Depositions" is misleading. Opp. at 10. Steckel lists only the 2015 Sexton Deposition among his documents reviewed, but Steckel failed to consider Sexton's *2012* deposition relied upon by Kamins in which Sexton admitted that Trump did not handpick TU Live Event speakers. Cochran Decl., Ex. 8, Kamins Rpt., ¶48; Dkt. 39-2, Ex. 26 at 157:13-15. Indeed, when Steckel came across evidence that supported Kamins, he deliberately disregarded it. Dkt. 223 at 10-11 & n.7.[5]

Steckel's failure to review practically all of the documents considered by Kamins disqualifies him from opining on the sufficiency of factual support for Kamins' opinions. This testimony should be excluded.

### C. Steckel Should Be Precluded from Offering Opinions that He Disavowed and on Matters for Which He Has No Expertise

Trump fails to address §III.B of plaintiff's motion regarding the opinions that Steckel testified he does not hold and will not offer at trial, stating only that "Dr. Steckel disclaimed nothing." *Compare* Mot. at 7-9 *with* Opp. at 13. As a result, plaintiff's motion should be granted with respect to these opinions.

Steckel's written report indicates that he will opine that Defendant's representations were true and that students were not mislead about: (i) whether Trump handpicked TU instructors; (ii) whether student-victims learned Trump's techniques; or (iii) whether TU was a legitimate academic institution. Mot. at 8. These opinions are offered despite Steckel's own disclaimer: "I personally have no knowledge as to the literal truth or falsity of the particular claims [Kamins] points to" (¶66) and his acknowledgment that he is not an expert in real estate, real estate education, Donald Trump, real estate techniques unique to Trump or TU's hiring process. Mot. at 7; Ex.

---

[5] Had Steckel bothered to review the evidence cited in Kamins Opinion No. 2 (Cochran Decl., Ex. 8, Kamins Rpt., ¶¶49-109), he would have found damning evidence of TU's efforts to coerce potential student-victims into a System 1 thinking state. For example, TU's Marketing Guidelines told employees to "Think of Trump University has a real university with a real Admissions process – *i.e.*, not everyone who applies, is accepted." Ex. 8 at TU-DONNELLY0000017; *see also* Exs. 9-31, 34-42 (additional documents cited in Opinion No. 2 that Steckel failed to review).

32, Steckel Tr. at 27:4-29:23, 83:3-7.  The following illustrates the differences between Steckel's written report and what he testified are his actual opinions and expertise:

- Steckel report: "[A]mple evidence exists that shows that . . . students largely understood that TU was not a real 'university.'" ¶42. Steckel deposition testimony: "Q. Are you offering the opinion in this case that students largely understood that TU was not a real university? A. That is not part of my expert opinion, no, it is not." Ex. 32, Steckel Tr. at 85:25-86:4.

- Steckel report: "Dr. Kamins states that TU sold its products misleadingly 'without delivering either Trump or a university.' Yet TU included material on Mr. Trump in its courses, including books, case studies, magazine articles, and quotes." ¶51 (first bullet point).  Steckel deposition testimony: "Q. Do you consider yourself an expert on Donald Trump's real estate techniques? [A:]: No." Ex. 32, Steckel Tr. at 29:6-10.

- Steckel report: "Mr. Trump played a role in selecting the instructors." ¶78 (second bullet point). Steckel deposition testimony: "Q. Are you an expert in Trump University's hiring process? [A:] No." Ex. 32, Steckel Tr. at 83:3-7.

Trump also attempts to use Steckel as a vehicle for presenting cherry-picked evidence to the jury without any expert analysis, or worse yet, on topics for which he is not an expert. Mot. at 8 n.6. For example, Steckel cites to a Trump Institute (not Trump University) PowerPoint as evidence that TU taught Trump's secrets, but Steckel has no expertise in Donald Trump or real estate investing. The only apparent reason Steckel even discusses this document – devoid of any analysis – is to simply allow Trump to present it to the jury cloaked in the mantle of expert testimony *See In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 U.S. Dist. LEXIS 146067 at *197-*200 (N.D. Ohio June 4, 2010) (excluding expert who "had no opinion" on any issue in dispute as unhelpful to the trier of fact and prejudicial). Steckel should be excluded from testifying on topics that he has no expertise in or providing opinions that he has testified he does not hold.

### D. Steckel's Opinion on TU's Target Market Should Be Excluded

Steckel should be excluded from testifying as to TU's "target market" because his opinion is based entirely on a single, out-of-context deposition excerpt. Steckel's report contains the following opinion:

> In his first opinion, Dr. Kamins condemns TU's advertising and marketing campaign for focusing "almost exclusively on Trump" and for targeting Mr. Trump's fan base. The evidence I have reviewed, however, demonstrates that TU marketed itself specifically to prospective students who had already shown an interest in real estate seminar programs, rather than simply fans of Mr. Trump.

¶44 (citing Kamins report and Bloom deposition). Like so many of his "opinions" Steckel is simply testifying to the contents of a single document – this time the Bloom deposition – without applying any expert analysis. *See* Mot. at 15. He does not dispute that TU's marketing focused exclusively on Trump. Ex. 32, Steckel Tr. at 92:15-18. And he studiously avoided undertaking any analysis of TU's advertising or advertising plans. *Id.* at 98:5-21, 166:9-16.

Steckel's "opinion" on TU's target market should be excluded as it has almost no factual basis, in addition to being unhelpful because it merely repeats lay witness testimony. *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176, 1181 (N.D. Cal. 2007) (An expert cannot "ignor[e] the great weight" of the evidence "that contradict[s] their conclusion and instead rely on the handful that appear to support their litigation-created opinion"); *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1363 (S.D. Fla. 2015) (excluding expert who merely "parrot[s] lay witness testimony"); *cf. Thorndike v. DaimlerChrysler Corp.*, 266 F. Supp. 2d 172, 185 (D. Me. 2003) (excluding expert opinion that is "simply the parroting of other experts' conclusions" and "is virtually silent with respect to how it is that any of these particular opinions are derived from an independent application of his strain of expertise"), *aff'd*, 288 F. Supp. 2d 50 (D. Me. 2003); *Goldberg v. 401 North Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014) ("An expert witness is not permitted to parrot what some lay person has told him and testify that he believes

1 the person was being truthful.").

2 Trump contends that Steckel did more than simply adopt Bloom's testimony, but his argument falls flat. *See* Opp. at 14-15. First, Trump continues to defend the accuracy of Steckel's opinion in the face of overwhelming contrary evidence, in particular his own undisputed assertion that TU had "no target market."[6] *Low* Dkt. 375-5 at 3; Opp. at 14. Second, Trump's suggestion that Steckel relied on more than just the Bloom deposition is misleading and contradicts Steckel's own testimony. *See* Ex. 32, Steckel Tr. at 94:3-23 (only other evidence considered was Kamins' academic work in the area of celebrity endorsement). Third, Trump suggests that Steckel actually looked at TU's advertising, but points only to his vague deposition testimony and fails to identify any advertisements in the record. Opp. at 14-15. Finally, Trump makes the bizarre claim that Steckel "did not have to review that evidence" because Kamins' "assumed the truth of the complaint." *Id.* In addition to being nonsensical, Kamins properly assumed (because it was not his task) only that plaintiff would prove the falsity of the alleged misrepresentations, and therefore formed no opinions on the topic. By contrast, Kamins' opinions as to TU's target market were based on an extensive review of the advertisements sent to class members. Dkt. 223 at 11-12; Ex. 33, Kamins Tr. at 31:17-32:2. Trump's arguments fail and Steckel's target market opinion should be excluded.

### E. Steckel's Opinion on TU's Purported 98% Approval Rating Is Unreliable and Unhelpful

Kamins' report provides eight well-analyzed reasons why Trump's so-called "98% Approval Rating" is unreliable. Cochran Decl., Ex. 8, Kamins Rpt., ¶¶110-118. Steckel responded, and plaintiff moved to exclude Steckel's rebuttal opinion

---

[6] Defendant's citation to *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 616 (E.D. Cal. 2009), does not help him. Instead, the decision recognizes that where information not considered "would have raised serious issues" an opinion may be excluded. Here, Steckel failed to consider TU's advertisements, TU's advertising strategy, or Trump's own statements on the matter – each of which raise serious issues with his opinion.

testimony because it was not based on sufficient facts and was not the product of reliable principles or methods applied to the facts of the case. Fed. R. Evid. 702; Mot. at 12-15. In his opposition, Trump simply repeats each of Steckel's rebuttal opinions in chart form, but never addresses plaintiff's arguments. *Compare* Opp. at 16-17 *with* ¶¶79-92. Thus, plaintiff's arguments remain unrebutted.

First, Steckel should be precluded from testifying at trial that the 98% approval rating is reliable. He considered only 2 of 11,000 evaluation forms, did not know how the percentage was calculated and disclaimed any opinion as to its validity as a representation of TU customer satisfaction. Mot. at 12-13.

Second, Steckel should be prohibited from playing unhelpful semantic word-games likely to confuse the jury. *See* Fed. R. Evid. 403; Mot. at 13-14. In his report, Steckel opines that: "a 98% approval rating [is] compatible with a 25% refund rate." ¶80. But at his deposition, Steckel testified that he was not "offer[ing] the opinion that a 98 percent satisfaction rate is compatible with a 25 percent refund rate" Ex. 32, Steckel Tr. at 216:8-218:9. He described his opinion as a "simple numerical example" and "an arithmetic statement, not a conceptual one." *Id.*

Third, Steckel should be precluded from offering any opinions that do not involve the application of any relevant expertise, including opinions about the 98% approval rating based upon his own personal anecdotal experience. *See* ¶¶84, 87; Mot. at 14-15.

Fourth, Steckel should be precluded from parroting lay witness testimony without any expert analysis. ¶¶82, 89-90; *Cordoves*, 104 F. Supp. 3d at 1363; *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV-LENARD/GOODMAN, 2015 U.S. Dist. LEXIS 111790, at *27 (S.D. Fla. Aug. 23, 2015); *Wyeth v. Rowan Cos.*, No. 07- 2823, 2008 U.S. Dist. LEXIS 65160, at *6-*7 (E.D. La. Aug. 26, 2008) (excluding proffered expert testimony as "unhelpful and unnecessary" where it "repeat[ed] or explain[ed]" deposition testimony).

These arguments go unopposed. Steckel's opinion as to the reliability of the

purported 98% approval rating should be excluded.

### F. Steckel's Opinions About Kamins' Marketing Survey Are Unreliable to the Extent They Rely on His Opinion of TU's Target Market

Steckel criticizes Kamins' empirical study on the basis that TU's target market was purportedly only individuals who had previously "attended an event related to entrepreneurship or business or starting a business or growing a business or . . . an entrepreneurial activity." ¶¶97-101. This statement is wrong as a factual matter, and inadmissible as expert testimony. *See* Mot. at 15-16. Steckel once again impermissibly relies solely on a single deposition answer of lay witness, Bloom. *See* §II.D, *supra*. Steckel also failed to review TU's advertisements or internal advertising plans to assess its actual target market. Ex. 32, Steckel Tr. at 98:5-21, 166:9-16. Steckel even acknowledged at his deposition that TU's target market was not limited to "only" these individuals – yet he seeks to testify that only these individuals should have been surveyed by Kamins. Ex. 32, Steckel Tr. at 95:17-23. Steckel also confined his analysis to only direct mail, which was just one aspect of TU's six-million-dollar multifaceted ad campaign, which included print media, online advertisements and radio. Dkt. 223 at 15-16. TU advertised to the general population through "mainstream" newspapers where it sought "the widest distribution in particular markets," and on the internet where it could target the world by "geographical location." *Id*. Trump himself proclaimed, "There was no target market for TU seminars . . . ." *Low* Dkt. 375-5 at 3. Indeed, Trump now argues Steckel did not even bother to "determine the proper target universe" of TU's customers. Opp. at 19. To the extent that Steckel's criticism of Kamins' survey is based on his inadmissible "target market" opinion, it must be excluded.

### III. CONCLUSION

Plaintiff respectfully requests that the Court limit Steckel's expert testimony at trial.

DATED: June 17, 2016      Respectfully submitted,

s/ X. Jay Alvarez
X. JAY ALVAREZ

| | |
|---|---|
| 1 | |
| 2 | ROBBINS GELLER RUDMAN |
| |   & DOWD LLP |
| 3 | PATRICK J. COUGHLIN |
| | X. JAY ALVAREZ |
| 4 | JASON A. FORGE |
| | RACHEL L. JENSEN |
| 5 | DANIEL J. PFEFFERBAUM |
| | BRIAN E. COCHRAN |
| 6 | JEFFREY J. STEIN |
| | 655 West Broadway, Suite 1900 |
| 7 | San Diego, CA  92101 |
| | Telephone:  619/231-1058 |
| 8 | 619/231-7423 (fax) |
| 9 | ZELDES HAEGGQUIST & ECK, LLP |
| | AMBER L. ECK |
| 10 | AARON M. OLSEN |
| | 225 Broadway, Suite 2050 |
| 11 | San Diego, CA  92101 |
| | Telephone:  619/342-8000 |
| 12 | 619/342-7878 (fax) |
| 13 | Class Counsel |

# CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 17, 2016.

    s/ X. Jay Alvarez
    X. JAY ALVAREZ

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:    jaya@rgrdlaw.com

# Mailing Information for a Case 3:13-cv-02519-GPC-WVG Cohen v. Trump

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,llendzion@rgrdlaw.com,tholindrake@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,hbrown@rgrdlaw.com,e_file_sd@rgrdlaw.com,JayA@rgrdlaw.com,KLavelle@rgrdlaw.com

- **David Lee Kirman**
  dkirman@omm.com,iyanniello@omm.com,sbrown@omm.com

- **Matthew R. Maron**
  mmaron@trumporg.com,carce@trumporg.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel M. Petrocelli**
  dpetrocelli@omm.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Kelli L. Sager**
  kellisager@dwt.com,VickyIsensee@dwt.com

- **Jeffrey J. Stein**
  JStein@rgrdlaw.com

- **WP Company LLC d/b/a The Washington Post**
  danlaidman@dwt.com

- **Alonzo Wickers , IV**
  alonzowickers@dwt.com,carolinasolano@dwt.com,ellenduncan@dwt.com,danlaidman@dwt.com

- **Helen Irene Zeldes**
    helenz@zhlaw.com,winkyc@zhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`