DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ALONZO WICKERS IV (State Bar No. 169454)
  alonzowickers@dwt.com
DAN LAIDMAN (State Bar No. 274482)
  danlaidman@dwt.com
DIANA PALACIOS (State Bar No. 290923)
  dianapalacios@dwt.com

Attorneys for Media Intervenors
CABLE NEWS NETWORK, INC.; CBS
BROADCASTING INC.; CBS INTERACTIVE
INC.; TRIBUNE PUBLISHING COMPANY;
NBCUNIVERSAL MEDIA, LLC; ABC, INC.;
THE NEW YORK TIMES COMPANY; WP
COMPANY LLC D/B/A THE WASHINGTON
POST; and FOX NEWS NETWORK, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART COHEN, Individually and on Behalf of All Others Similarly Situated, | Case No. **3:13-cv-02519-GPC-WVG** |
| Plaintiff, | **MEDIA INTERVENORS' CONSOLIDATED REPLY IN SUPPORT OF MOTION TO INTERVENE AND FOR ORDER MODIFYING STIPULATED PROTECTIVE ORDER AND OPPOSITION TO DEFENDANTS' MOTION TO AMEND PROTECTIVE ORDER** |
| vs. | |
| DONALD J. TRUMP, | |
| Defendant. | Judge:      Hon. Gonzalo P. Curiel |
| | Date:       July 13, 2016 |
| | Courtroom: 2D |
| | Time:       1:30 p.m. |

# TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ...................................................... 1

II. THE MEDIA INTERVENORS SHOULD BE PERMITTED TO INTERVENE TO OPPOSE THE MOTION. .................................................. 4

III. THE PRESUMPTIVE RIGHT OF ACCESS APPLIES TO VIDEO EXHIBITS FILED WITH THE COURT. ....................................... 5

IV. DEFENDANTS MUST SHOW GOOD CAUSE TO PROHIBIT THE DISSEMINATION OF UN-FILED PORTIONS OF THE DEPOSITIONS. ....................................................................... 7

V. DEFENDANTS HAVE NOT MET THEIR BURDEN OF JUSTIFYING RESTRICTIONS ON THE PUBLIC FILING OR DISSEMINATION OF THE TRUMP DEPOSITION VIDEOS. .................. 8

    A. Defendants Have Not Provided Any Legitimate Basis For Asserting That Disclosure Of Defendant Trump's Video Depositions Would Impact Their Fair Trial Rights. ......................... 8

    B. Vague Concerns About "Sensational" Media Coverage Do Not Justify Limiting Public Access Here. ................................................ 12

    C. Defendants Have Not Made Any Particularized Showing That Supports Their Claim of Possible "Harassment." ............................ 14

VI. A UNIQUE AND OVERRIDING PUBLIC INTEREST SUPPORTS ALLOWING DISCLOSURE OF THE TRUMP DEPOSITION VIDEOS. ....................................................................................... 18

VII. CONCLUSION ............................................................................ 20

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Associated Press v. District Court,
  705 F. 2d 1143 (9th Cir. 1983) ................................................................ 8

Beckman Industries, Inc. v. Int'l Ins. Co.,
  966 F.2d 470 (9th Cir. 1992) .................................................................. 4

Burlington City Bd. of Educ. v. U.S. Mineral Products Co.,
  115 F.R.D. 188 (M.D.N.C. 1987) .......................................................... 13

CBS v. District Court,
  729 F.2d 1174 (9th Cir. 1983) ........................................................ 3, 9, 10

Centeno-Bernuy v. Becker Farms,
  219 F.R.D. 59 (W.D.N.Y. 2003) ............................................................ 18

Center for Auto Safety v. Chrysler Group, LLC,
  809 F.3d 1092 (9th Cir. 2016) ............................................................. 2, 5

Condit v. Dunne,
  225 F.R.D. 113 (S.D.N.Y. 2004) ................................................. 11, 12, 14

Constand v. Cosby,
  112 F. Supp. 3d 308 (E.D. Pa. 2015) .................................................... 16

Courthouse News Service v. Planet,
  750 F.3d 776 (9th Cir. 2014) ................................................................. 6

EEOC v. National Children's Center, Inc.,
  146 F.3d 1042 (D.C. Cir. 1998) .............................................................. 4

Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.,
  936 F.2d 889 (6th Cir. 1991) ................................................................ 18

Felling v. Knight,
  2001 WL 1782360 (S.D. Ind. Dec. 21, 2001) ........................................ 13

Felling v. Knight,
  211 F.R.D. 552 (S.D. Ind. 2003) ........................................................... 13

ii

Flaherty v. Seroussi,
   209 F.R.D. 295 (N.D.N.Y. 2001)....................................................................15, 18

Foltz v. State Farm Mut. Auto. Ins. Co.,
   331 F.3d 1122 (9th Cir. 2003) ............................................................................3, 5, 7

Hagestad v. Tragesser,
   49 F.3d 1430 (9th Cir. 1995) ...............................................................................6, 15

Hawley v. Hall,
   131 F.R.D. 578 (D. Nev. 1990).........................................................................10, 15

Humboldt Baykeeper v. Union Pac. R.R.,
   244 F.R.D. 560 (N.D. Cal. 2007).............................................................................19

In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.,
   101 F.R.D. 34 (C.D. Cal. 1984)...............................................................................18

In re NBC, Inc.,
   635 F.2d 945 (2d Cir.1980)........................................................................................9

In re Roman Catholic Archbishop of Portland in Oregon,
   661 F.3d 417 (9th Cir. 2011) ........................................................................4, 17, 19

Jones v. Clinton,
   12 F. Supp. 2d 931 (E.D. Ark. 1998)................................................................16, 17

Kamakana v. City & County of Honolulu,
   447 F.3d 1172 (9th Cir. 2006) ............................................................................passim

Leigh v. Salazar,
   677 F.3d 892 (9th Cir. 2012) ....................................................................................6

Lopez v. CSX Transp., Inc.,
   2015 WL 3756343 (W.D. Pa. June 16, 2015)........................................................18

Los Angeles Memorial Coliseum Comm'n v. National Football League,
   89 F.R.D. 497 (C.D. Cal. 1981) ................................................................................9

McClatchy Newspapers v. District Court,
   288 F.3d 369 (9th Cir. 2001) .............................................................................3, 12

Morrow v. City of Tenaha Deputy City Marshal Barry Washington, et al.,
   2010 U.S. Dist. LEXIS 106541 (E.D. Tex. Oct. 5, 2010) .....................................15

iii

Oregonian Publishing Co. v. District Court,
    920 F.2d 1462 (9th Cir. 1990) .......................................................... 6, 14

Paisley Park Enterprises, Inc. v. Uptown Prods.,
    54 F. Supp. 2d 347 (S.D.N.Y. 1999) ............................................ 17, 18

People v. Manson,
    61 Cal. App. 3d 102 (1976) .............................................................. 10

Phoenix Newspapers v. District Court,
    156 F.3d 940 (9th Cir. 1998) .............................................................. 4

Pia v. Supernova Media, Inc.,
    275 F.R.D. 559 (D. Utah 2011) ........................................................ 15

Pintos v. Pacific Creditors Ass'n,
    605 F.3d 665 (9th Cir. 2010) .............................................................. 7

Press-Enterprise Co. v. Superior Court,
    478 U.S. 1 (1986) ............................................................................... 8

Press-Enterprise v. Superior Court,
    22 Cal. App. 4th 498 (1994) ............................................................ 10

Richmond Newspapers v. Virginia,
    448 U.S. 555 (1980) ......................................................................... 13

Rushford v. The New Yorker Magazine,
    846 F.2d 249 (4th Cir. 1988) .............................................................. 5

San Jose Mercury News, Inc. v. United States District Court,
    187 F.3d 1096 (9th Cir. 1999) ...................................................... 4, 5, 7

Seattle Times Co. v. District Court,
    845 F.2d 1513 (9th Cir. 1988) ..................................................... 8, 10

Stern v. Cosby,
    246 F.R.D. 453 (S.D.N.Y. 2007) ..................................................... 11

Stern v. Cosby,
    529 F. Supp. 2d 417 (S.D.N.Y. 2007) .............................................. 11

United States v. Dimora,
    862 F. Supp. 2d 697 (N.D. Ohio 2012).............................................. 11

iv

United States v. McDougal,
    103 F.3d 651 (8th Cir. 1996) ........................................................... 16, 17

United States v. Poindexter,
    732 F. Supp. 170 (D.D.C. 1990) ............................................... 11, 16, 17

United States v. Schlette,
    842 F.2d 1574 (9th Cir. 1988) ................................................. 2, 12, 19

Valley Broadcasting Co. v. District Court,
    798 F.2d 1289 (9th Cir. 1986) ........................................................... 6, 9

Yonemoto v. Dep't of Veteran Affairs,
    686 F.3d 681 (9th Cir. 2012) .................................................................. 7

**Rules**

Federal Rule of Civil Procedure 26(c) ...............................................*passim*

**Constitutional Provisions**

First Amendment.......................................................................................... 8

CONSOLIDATED REPLY & OPPOSITION RE:
MOTIONS TO AMEND PROTECTIVE ORDER
DWT 29890447v1 0026517-000166

Non-party press organizations Cable News Network, Inc. ("CNN"); CBS Broadcasting Inc. and CBS Interactive Inc.; Tribune Publishing Company; NBCUniversal Media, LLC; ABC, Inc.; The New York Times Company; WP Company LLC d/b/a The Washington Post; and Fox News Network, LLC (collectively, the "Media Intervenors") respectfully submit this consolidated Reply in support of their Motion to intervene and modify protective order ("Media Mot."), filed on June 10, 2016, and Opposition to the Motion of Defendants Trump University, LLC and Donald J. Trump ("Defendants") to amend the parties' protective order to prohibit the public filing or dissemination of his videotaped depositions in this action ("Trump Mot."), filed on June 15, 2016.[1]

## I.    SUMMARY OF ARGUMENT

Defendants have not presented any concrete facts or evidence justifying their request to keep all of the videos of the Trump Depositions secret.  Instead, they make assertions about generalized harm "if releases of video depositions routinely occurred," and speculate that other witnesses in hypothetical future cases may be dissuaded from testifying if these videos are disclosed.  E.g., Trump Mot. at 6.[2]  But the Ninth Circuit has rejected this slippery-slope approach to evaluating public access

---

[1] The Court has set both motions for hearing together on July 13, 2016.  See Dkt. # 252.  The Media Motion seeks to modify the parties' protective order to remove confidentiality designations from portions of Defendant's depositions of December 10, 2015, and January 21, 2016 (the "Trump Depositions"), so that the complete transcripts and videos could be publicly filed or disseminated.  See Dkt. # 233.  Defendant has agreed to withdraw the remaining confidentiality designations from the transcripts of these depositions.  See Dkt. # 251, Response at 1.  The only issue that remains in dispute is the status of the videos of the Trump Depositions.  Id.  Because both motions raise the same issues with respect to these videos, and to avoid burdening the Court with duplicative briefs or argument, Media Intervenors submit this consolidated Reply and Opposition, and incorporate the arguments made in the pending Media Motion and supporting Memorandum, Declaration and exhibits.  See Dkt. # 233.  As set forth there, Media Intervenors request leave to intervene for the limited purpose of opposing limits on the public's right of access, including by opposing Defendants' Motion.  See Section II, infra.

[2] Given that witnesses typically are compelled to testify, the assumption that a witness could simply refuse to participate in a videotaped deposition is implausible.

to court records and proceedings, holding that such decisions "must be assessed on a case-by-case basis."  United States v. Schlette, 842 F.2d 1574, 1583 (9th Cir. 1988).

This case presents a unique situation in which the public interest in transparency is extraordinarily strong; the allegations in this action and the litigation itself have become prominent campaign issues that relate to Defendant Trump's qualifications for becoming President of the United States.  Defendants' vague, unsubstantiated assertions of speculative harm if video of sworn testimony is publicly released cannot overcome the strong public interest in disclosure.

As a threshold matter, Defendants do not seek only to restrict the dissemination of raw discovery materials; instead, they request an order prohibiting any deposition videos from being filed with the Court "unless under seal."  Trump Mot. at 6.[3]  But as this Court previously recognized, court records filed with substantive motions – including summary judgment motions –cannot be sealed absent a showing of "compelling reasons" that overcome the strong presumption of public access, and any sealing order must be narrowly tailored to further the compelling interest.  Dkt. # 211.  See also Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006) (sealing request "must meet the high threshold of showing that 'compelling reasons' support secrecy"); Center for Auto Safety v. Chrysler Group, LLC, 809 F.3d 1092, 1096-97 (9th Cir. 2016) (noting that "stringent standard" for sealing documents reflects a "strong preference for public access").  Defendants do not mention this strict constitutional standard, let alone explain how it is satisfied here.  See Section III.

To the extent Defendants seek to prohibit the dissemination of **un**-filed deposition videos, they still must demonstrate "good cause" under Federal Rule of Civil Procedure 26(c).  See Section IV.  This rule requires a "showing that specific

---

[3] This backdoor attempt to limit public access to court records by barring the "filing" of documents unless they are filed under seal is no different than an order that maintains documents under seal:  both have the same impact on the public's and press' right of access to judicial records.

prejudice or harm will result if no protective order is granted," based on "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003) (emphasis added). Defendants have not met their burden under this test, either.

First, neither the facts nor evidence support Defendants' assertion that disclosure of video deposition testimony would interfere with their ability to get a fair trial. See Section V.A. Even in cases with widespread publicity (much more than in this case) courts have rejected claims that a "fair" jury cannot be found. E.g., CBS v. District Court, 729 F.2d 1174, 1179-1182 (9th Cir. 1983) ("highly publicized cases," including Charles Manson and Watergate trials "indicate that even when exposed to heavy and widespread publicity many, if not most, potential jurors are untainted by press coverage").

Second, Defendants have no basis for complaining about the potential for "excessive media coverage," because Defendant Trump made the decision to make the litigation an issue in his presidential campaign. See Section V.B. Defendants do not (and cannot) identify any specific risk of harm that would result from disclosing video of deposition testimony – to the contrary, video and audiotape will portray the deponent more accurately than a cold transcript, which cannot convey inflections, demeanor, or nuance. This lawsuit is likely to receive substantial media coverage whether or not deposition videos are publicly available, given Defendant Trump's presidential campaign. Id. No prejudice can be shown by allowing the public to have access to more accurate information, nor can public access be limited by speculation about how the news media might present court records. E.g., McClatchy Newspapers v. District Court, 288 F.3d 369, 373-74 (9th Cir. 2001).

Finally, Defendants ignore the unusually strong public interest in this action. Under either the compelling reasons or good cause tests, courts consider if the party requesting secrecy is a public official, and if the litigation is of public concern. See

In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424 n.5 (9th Cir. 2011).  Defendant Trump is the presumptive Republican presidential nominee, and the allegations in this case relate to his business record, which he has presented as his primary qualification for the nation's highest elected office.  See Section VI. Defendants also cannot dispute Trump's extensive experience in dealing with the media.  He chose to speak out about this case, which further reduces any purported interest in keeping these videos confidential.  See Section V.C.

For all of these reasons, and the reasons set forth in the Media Motion, Media Intervenors respectfully request that Defendants' Motion be denied, and that the Court permit the public filing and dissemination of the Trump Deposition videos.

## II.   THE MEDIA INTERVENORS SHOULD BE PERMITTED TO INTERVENE TO OPPOSE THE MOTION.

The federal rules permit third parties to intervene "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order."  EEOC v. National Children's Center, Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998).  Accordingly, the Ninth Circuit has held that nonparties, including news organizations, should be permitted to intervene for the limited purpose of challenging the sealing of court records and/or opposing protective orders that would place limitations on the right of access.  See Beckman Industries, Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (allowing non-party to intervene to challenge protective order); San Jose Mercury News, Inc. v. United States District Court, 187 F.3d 1096, 1103 (9th Cir. 1999) (court should have allowed newspaper to intervene to modify parties' stipulated blanket protective order); Phoenix Newspapers v. District Court, 156 F.3d 940, 944 (9th Cir. 1998) (newspaper challenged restrictions on access to court records and proceedings).  Consistent with these authorities, the Media Intervenors' request for limited purpose intervention should be granted.  See also Dkt. # 233-1, Media Mot., Memorandum at 3-5.

CONSOLIDATED REPLY & OPPOSITION RE:
MOTIONS TO AMEND PROTECTIVE ORDER
DWT 29890447v1 0026517-000166

### III.   THE PRESUMPTIVE RIGHT OF ACCESS APPLIES TO VIDEO EXHIBITS FILED WITH THE COURT.

Both the Constitution and common law provide the public and the press with a presumptive right of access to court records and proceedings.  The "presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice."  <u>Center for Auto Safety</u>, 809 F.3d at 1101.  Records are presumptively public when they are filed with the court in connection with a "motion [that] is more than tangentially related to the merits of a case."  <u>Id.</u> at 1101.

Plaintiffs have sought leave to file 32 video clips from the December 10, 2015 deposition, and 16 video clips from the January 21, 2016 deposition, with their Opposition to Defendant's Motion for Summary Judgment.  <u>See</u> Dkt. ## 220-1; 227; 230.  Defendants have opposed the filing, and now seek a broad order to "prohibit the filing of any videotaped deposition, <u>unless under seal</u>."  Trump Mot. at 6 (emphasis added).  But the sealing of court records on dispositive motions, like summary judgment motions, must meet strict constitutional and common law standards, including showing a "compelling" interest that requires the records to be sealed.  <u>Center for Auto Safety</u>, 809 F.3d at 1102.  <u>See also</u> <u>Kamakana</u>, 447 F.3d at 1179 (compelling reasons standard applies to sealing of records attached to summary judgment motion); <u>San Jose Mercury News</u>, 187 F.3d at 1102 (same).

As the Ninth Circuit explained in <u>Foltz</u>, once discovery materials are filed in connection with a summary judgment motion, "they lose their status of being raw fruits of discovery, and no longer enjoy protected status without some overriding interests in favor of keeping the discovery documents under seal."  <u>Id.</u> at 1136 (quoting <u>Rushford v. The New Yorker Magazine</u>, 846 F.2d 249, 252 (4th Cir. 1988)).

Instead, the party seeking to keep a record under seal "bears the burden of overcoming this strong presumption" in favor of access by articulating "compelling

5

reasons supported by specific factual findings, that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." <u>Kamakana</u>, 447 F.3d at 1178-79 (quotations omitted).  The "court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret," and "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." <u>Id.</u> at 1179 (quotations and alterations omitted).

As the Ninth Circuit has emphasized, "the party seeking access is entitled to a presumption of entitlement to disclosure.  It is the burden on the party seeking closure … to present facts supporting closure and to demonstrate that available alternatives will not protect his rights." <u>Oregonian Publishing Co. v. District Court</u>, 920 F.2d 1462, 1466-67 (9th Cir. 1990).  <u>See also</u> <u>Leigh v. Salazar</u>, 677 F.3d 892, 900 (9th Cir. 2012) (proponent of sealing must demonstrate "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest") (quotation omitted).  This is an onerous standard; any sealing order must be based on "evidentiary support," <u>id.</u> at 1467, not on "hypothesis or conjecture." <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1434 (9th Cir. 1995).

The presumptive right of access applies to video exhibits as well as to other types of court records.  <u>See</u> <u>Valley Broadcasting Co. v. District Court</u>, 798 F.2d 1289, 1295 (9th Cir. 1986) (right of access applied to video and audio tapes introduced into evidence at trial).  <u>See also</u> <u>Courthouse News Service v. Planet</u>, 750 F.3d 776, 786 (9th Cir. 2014) (First Amendment-based right of access "extends to civil proceedings and associated records and documents").

Although Defendants ask this Court to seal records filed in connection with a summary judgment motion, they do not mention the constitutional or common law rights of access, and make no effort to explain how they can satisfy these rigorous standards.  <u>See</u> Mot. at 1-6.  As discussed below, the speculative assertions

6

Defendants have offered about possible harm from disclosure do not come close to meeting their burden.  See Section V, infra.

## IV.   DEFENDANTS MUST SHOW GOOD CAUSE TO PROHIBIT THE DISSEMINATION OF UN-FILED PORTIONS OF THE DEPOSITIONS.

The "default rule concerning discovery … is that 'the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public.'" Yonemoto v. Dep't of Veteran Affairs, 686 F.3d 681, 691 (9th Cir. 2012).  Thus "[g]enerally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary."  Id.  See also Pintos v. Pacific Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010) ("Rule 26(c) of the Federal Rules of Civil Procedure governs" discovery materials, and "[t]he relevant standard … is whether 'good cause' exists to protect th[e] information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality"); San Jose Mercury News, 187 F.3d at 1103 ("the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public").

As a result, "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."  Foltz, 331 F.3d at 1133-34 (emphasis added).  This showing must be made through "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm."  Id.  See also Dkt. # 233-1, Media Mot., Memorandum at 5-7.  As discussed below, Defendants have not met their burden of justifying restrictions on disclosure of Defendant Trump's deposition videos.

//

//

//

7

# V.    DEFENDANTS HAVE NOT MET THEIR BURDEN OF JUSTIFYING RESTRICTIONS ON THE PUBLIC FILING OR DISSEMINATION OF THE TRUMP DEPOSITION VIDEOS.

Defendants' Motion does not provide any declarations or evidence that supports their assertions of possible harm from disclosure of the Trump Depositions; instead, Defendants offer only vague and conclusory allegations of harm in support of their request to keep Defendant Trump's video depositions secret.  See Trump Mot. at 1-6.  Defendants do not come close to meeting their burden necessary to restrict public access, regardless of which test is applied.

## A.    Defendants Have Not Provided Any Legitimate Basis For Asserting That Disclosure Of Defendant Trump's Video Depositions Would Impact Their Fair Trial Rights.

Defendants assert that dissemination of Trump's video depositions could "taint" the jury pool.  Mot. at 2-4.  They offer no specific facts, or any evidence, in support of this assertion – nor do they explain how the accurate depiction of Defendant Trump testifying, as the video would provide, could conceivably prejudice him.  Id.  Courts routinely have rejected similar arguments about "tainted" jury pools, finding that even extensive publicity does not prevent a party from getting a fair trial.  As the Supreme Court has explained, traditional protections such as voir dire allow a court to "identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict."  Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 15 (1986).  Thus, the "First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of" the right to a fair trial."  Id.  See also Seattle Times Co. v. District Court, 845 F.2d 1513, 1517 (9th Cir. 1988) ("pervasive publicity, without more, does not automatically result in an unfair trial"; rejecting sealing); Associated Press v. District Court, 705 F. 2d 1143, 1146 (9th Cir. 1983) ("[i]n a large metropolitan area … with its millions of potential jurors, it is unlikely that [voir dire and admonitions] will fail to produce an unbiased

jury" despite pretrial publicity); In re NBC, Inc., 635 F.2d 945, 953-54 (2d Cir.1980) ("[t]he opportunity for voir dire examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity that they cannot fairly decide issues of guilt or innocence … We do not believe the public at large must be sanitized as if they all would become jurors in the remaining Abscam trials").[4]

Even in criminal cases involving widespread publicity – including cases involving video evidence – courts have rejected speculation that the defendant's fair trial rights would be negatively affected. E.g., Valley Broadcasting, 798 F.2d at 1297 (rejecting argument that jurors might be prejudiced if the videos were publicly aired, noting that "without articulable facts, such speculation was conjecture" and therefore "the district court abused its discretion by weighing this conjectural factor in its analysis"). Likewise, in the closely-watched drug prosecution of famed car-maker John DeLorean, the Ninth Circuit held that "[w]idespread publicity … does not necessarily lead to an unfair trial." CBS v. District Court, 729 F.2d 1174, 1179 (9th Cir. 1983). Despite the "enormous, incessant, and continually increasing publicity" about that case, the court rejected the defendant's arguments that the dissemination of government videotapes purporting to show him engaging in drug trafficking would compromise his right to a fair trial. Id. As the court explained:

> Recent highly publicized cases indicate that even when exposed to heavy and widespread publicity many, if not most, potential jurors are untainted by press coverage. In one of the recent Abscam prosecutions, the court found that, despite concentrated media coverage, "only one-half of the prospective jurors indicated that they had ever heard of Abscam … and [of those] only eight or ten had 'anything more than a most generalized kind of recollection what it was all about." … Similarly, in one of the Watergate prosecutions, the District of Columbia

---

[4] See also Los Angeles Memorial Coliseum Comm'n v. National Football League, 89 F.R.D. 497, 502-03 (C.D. Cal. 1981) (rejecting argument that it would be "impossible for [the NFL and the Rams] to receive a fair trial in Los Angeles due to 'prolonged, extensive, and highly prejudicial' pretrial publicity" in high-profile civil action where "intense press coverage [would likely] continue" through trial).

Circuit stated that, despite perhaps the most pervasive publicity accorded any trial in American history, 'without undue effort, it would be possible to empanel a jury whose members had never even heard the [Watergate] tapes.'

Id. at 1179-1180 (citations omitted).[5]

The Trump Depositions address the structure and marketing of a commercial enterprise (e.g., Dkt. # 220-2), and do not involve "lurid subject matter, particularly violent crimes," which are likely to arouse "a pattern of deep and bitter prejudice ... throughout the community." Seattle Times, 845 F.2d at 1517-18 (quotation omitted). Moreover, this action is being tried in San Diego, a large city with an extensive jury pool. "[P]rejudicial publicity is less likely to endanger the defendant's right to a fair trial in a large metropolitan area." Id. at 1518. See also CBS, 729 F.2d at 1181 (noting that "[a]lmost all the cases in which the Supreme Court has found that press coverage deprived the defendant of a fair trial have been tried in small rural communities"). And in Seattle Times, the court noted, "any prejudice is minimized because the disclosure will occur almost two months before the jury is scheduled to be impaneled." 845 F.2d at 1518. Here, any trial remains at least several months away, making the potential impact of any media coverage even more speculative. See Trump Mot. at 3-4. Defendants' failure to show a "compelling interest" based on pretrial publicity means they cannot justify keeping the videos secret.

Courts have reached the same conclusion when applying the "good cause" test under Rule 26(c) to requests to restrict disclosure of deposition testimony under protective orders. E.g., Hawley v. Hall, 131 F.R.D. 578, 585 (D. Nev. 1990)

---

[5] See also People v. Manson, 61 Cal. App. 3d 102, 187-191 (1976) (rejecting the Manson Family defendants' arguments that widespread pretrial publicity prejudiced their right to a fair trial); Press-Enterprise v. Superior Court, 22 Cal. App. 4th 498, 503 (1994) (reversing sealing of part of grand-jury transcript in highly publicized murder case; "Even accepting the trial court's finding that prospective jurors reading newspaper accounts of the grand jury transcripts are likely to remember these reports and may even develop a preconception" concerning the defendant's "guilt or innocence," the court could not "conclude that release of this material would make it difficult to find 12 jurors capable of acting impartially").

(denying protective order to seal depositions, in part, because "[t]he defendants' right to a fair trial can be guaranteed by vigorous voir dire of potential jurors at the time of trial"). For example, in <u>Condit v. Dunne</u>, 225 F.R.D. 113 (S.D.N.Y. 2004), the court rejected defendant's request for a protective order to limit dissemination of videotapes of his deposition, dismissing his argument that "media misrepresentation of his videotaped deposition will taint the jury pool and deprive him of a fair trial." <u>Id.</u> at 118. The court found it "was unclear how the media would create such an erroneous and lasting impression of" defendant. <u>Id.</u> at 118. It distinguished a case cited by Defendants, <u>United States v. Poindexter</u>, 732 F. Supp. 170, 172-73 (D.D.C. 1990), explaining that the court in the <u>Poindexter</u> case did not grant access to the physical copies of the videotaped deposition at issue because of "temporal proximity to trial." The request in <u>Poindexter</u> was made eleven days before trial, while in <u>Condit</u>, as in this case, the issue regarding the videotaped depositions arose "well before the beginning of trial." <u>Condit</u>, 225 F.R.D. at 118. "Even assuming part or all of the video is disseminated to the public, memories fade and … any tainting of the jury pool can be remedied through voir dire." <u>Id.</u> The same is true here.[6]

//

---

[6] Defendants' reliance on <u>United States v. Dimora</u>, 862 F. Supp. 2d 697, 711 (N.D. Ohio 2012), and <u>Stern v. Cosby</u>, 529 F. Supp. 2d 417, 421 (S.D.N.Y. 2007), is misplaced. In <u>Dimora</u>, the court held that there was a possibility that disseminated videos would taint a jury pool because in those videos, it was "difficult to discern – barring reference to other evidence – exactly who is who or what is taking place." 862 F. Supp. 2d at 711. Videotaped depositions, in contrast, do not pose the same risk because they present straightforward testimony.

The <u>Stern</u> case is distinguishable because the litigation did not involve a topic of remotely comparable public concern: it was a libel action over an allegation about a sex tape brought against the author of "Blonde Ambition," a book about the late model Anna Nicole Smith. <u>See Stern v. Cosby</u>, 246 F.R.D. 453, 455 (S.D.N.Y. 2007). Moreover, the court recognized that "[o]nce a video deposition is shown in open court at trial, however, it becomes a matter of public record and is to be made accessible to the public, except in the most extraordinary circumstances." 529 F. Supp. 2d at 421 n. 4 (quotation omitted). As the Ninth Circuit has explained, the same right of access applies at the summary judgment stage, as the proceeding "serves as a substitute for trial." <u>Kamakana</u>, 447 F.3d at 1179 (quotation omitted).

**B.**     **Vague Concerns About "Sensational" Media Coverage Do Not Justify Limiting Public Access Here.**

Courts routinely have rejected vague claims about the need to restrict public access to prevent "sensationalism" in the media.  Trump Mot. at 3.  As the Ninth Circuit has made clear, where the presumptive right of access applies, a party's concerns about how the press might report on an issue, or how the public might perceive it, are not compelling reasons that can justify sealing.  See McClatchy Newspapers v. District Court, 288 F.3d 369, 373-74 (9th Cir. 2001) (argument that court records containing false accusation would be reported by the press without proper context did not support sealing); Schlette, 842 F.2d at 1583 (granting newspaper's request to unseal court record over objection that the press' interest was "nothing more than a vehicle for satisfying public curiosity").

In Condit, the court applied the Rule 26(c) "good cause" standard in rejecting an argument similar to the one made by Defendants here, explaining that "[w]hile sound bites are a recognized Achilles heel of videotaped depositions, the fact that the media may edit a tape that may or may not be released by the parties does not warrant a protective order barring all public dissemination of the videotape in this case."  225 F.R.D. at 118 (citations omitted).[7]  Indeed, to the extent that Defendants are concerned about evidence being altered or taken out of context (e.g., Trump Mot. at 2), disclosure of the complete videotapes of the Trump Depositions would help alleviate that concern.  E.g., Condit, 225 F.R.D. at 119 ("[t]he Court sees no better

---

[7] Defendants' attempt to distinguish Condit is unavailing.  See Trump Mot. at 2.  Although the court noted that the "media frenzy" in that case had "subsided considerably" by the time of the court's ruling, that statement was not the basis for its decision to permit dissemination of the defendant's deposition video.  225 F.R.D. at 118.  Instead, the court recognized that "the substantive issues in this litigation are … of public concern," and that the defendant had made a "public accusation" about the conduct of the proceedings, which created a further "public and judicial interest in full and free dissemination of information that would shed light on [the] allegations."  Id. at 119-120.  Thus, contrary to Defendants' assertion, the court not only contemplated that the case would continue to receive public attention, it found that such scrutiny would be beneficial.

12

way to assure that the reliability of Dunne's deposition testimony is properly represented than to allow public scrutiny"); see also Application of CBS, Inc., 828 F.2d 958, 960 (2d Cir. 1987) ("[b]ecause the videotape may in fact be more accurate evidence than a transcript . . . its availability to the media may enhance the accurate reporting of trials").[8]

The Southern District of Indiana's decision in Felling v. Knight, 2001 WL 1782360 (S.D. Ind. Dec. 21, 2001), cited by Defendants (Trump Mot. at 2), is instructive.  Although that court initially restricted the dissemination of deposition videos (while allowing transcripts to be disclosed), id. at *3, it later vacated the protective order and permitted the videos to be released.  Felling v. Knight, 211 F.R.D. 552 (S.D. Ind. 2003).  The court reasoned that "any potential embarrassment the deponents may experience resulting from the release of the videotapes is outweighed by the public's right to know," noting that "[s]eemingly few topics in the state of Indiana have generated more attention or public debate in recent times than the events surrounding [coach Robert] Knight's termination," which was the subject of the litigation.  Id. at 554-55.  Any interest that may have previously existed in attempting to limit public exposure was diminished because, "since that time, [the case had] been the subject of much public debate," and there already had been substantial coverage.  Id. at 554.

//

---

[8] As Justices Brennan and Marshall observed in Richmond Newspapers v. Virginia, 448 U.S. 555 (1980), "[i]n advancing the[] purposes [of open judicial proceedings], the availability of a trial transcript is no substitute for a public presence at the trial itself.  As any experienced appellate judge can attest, the 'cold' record is a very imperfect reproduction of events that transpire in the courtroom."  Id. at 597 n.22 (Marshall, J. and Brennan, J. concurring) (citations omitted).  Similarly, to provide the public with the most accurate and objective information, a second-hand report such as a deposition transcript "is no substitute" for enabling the public to see precisely what took place through video.  See Burlington City Bd. of Educ. v. U.S. Mineral Products Co., 115 F.R.D. 188, 189 (M.D.N.C. 1987) ("[i]n general, video depositions provide greater accuracy and trustworthiness than a stenographic deposition because the viewer can employ more of his senses in interpreting the information from the deposition").

CONSOLIDATED REPLY & OPPOSITION RE:
MOTIONS TO AMEND PROTECTIVE ORDER
DWT 29890447v1 0026517-000166

Likewise, this case has drawn a tremendous amount of public attention, and publicity is likely to continue whether or not deposition videos are released.  See Dkt. # 233-4-233-7, Media Mot., Exs. B-E.  As Defendants acknowledge, many media outlets have covered the Trump Depositions, and substantial portions of the deposition transcripts have been publicly filed.  See Trump Mot. at 2; Dkt. # 220-2.  No explanation is given for the assertion that disclosure of videos, as opposed to transcripts, would cause any cognizable harm.

Finally, Defendants' assertion that limiting public access is necessary because the videos "will be used by the media and others in connection with the presidential campaign" should be rejected.  Trump Mot. at 1.  Defendant Trump has made the litigation into a prominent election issue by repeatedly discussing it at campaign events and in media interviews.  See Dkt. # 233-4-233-7, Media Mot., Exs. B-E.  This both heightens the need for transparency (see Dkt. # 233-1, Media Mot., Memorandum at 19; Section VI, infra), and undermines the assertion that Defendants could be prejudiced by any additional media coverage related to release of the videos.  See Condit, 225 F.R.D. at 119 (disclosure of deposition video appropriate where the deponent had publicly questioned the propriety of the proceedings).

## C.     Defendants Have Not Made Any Particularized Showing That Supports Their Claim of Possible "Harassment."

Under the presumptive right of access, the Ninth Circuit has demanded a rigorous factual showing, even when a sealing proponent asserts that disclosure could jeopardize someone's safety.  E.g., Kamakana, 447 F.3d at 1182 (police agency failed to substantiate a sealing request with "conclusory" declarations claiming that disclosure would hinder police operations and "endanger informants' lives"); Oregonian Publ'g Co. v. District Court, 920 F.2d 1462, 1467 (9th Cir. 1990) (unsealing records where defendant's claim of danger to him and his family "was not supported by any factual finding" and had "no evidentiary support").

14

Defendants' request to seal videos filed in connection with a summary judgment motion requires them to meet this rigorous test with a strong evidentiary showing. <u>See</u> Section III, <u>supra</u>. But no evidence of any kind is offered. Instead, Defendants rely on vague, generalized assertions that disclosure of the videos would "harass" them – an implausible assertion, coming from a media-savvy candidate for the Presidency. <u>See</u> Trump Mot. at 4. This speculative claim is insufficient to support sealing deposition videos filed in connection with the summary judgment motion. <u>See</u> <u>Hagestad</u>, 49 F.3d at 1434 (court cannot seal records based on "hypothesis or conjecture").

Even with respect to the un-filed videos, although Rule 26(c) permits courts to issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" (Fed. R. Civ. P. 26(c)), "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [the deponent's] deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of protective order." <u>Flaherty v. Seroussi</u>, 209 F.R.D. 295, 299 (N.D.N.Y. 2001). For example, in <u>Flaherty</u>, the court refused to enter a protective order prohibiting dissemination of a mayor's videotaped deposition despite the plaintiffs' "manifest intent to publicly humiliate" the mayor. <u>Id.</u> at 297, 299; <u>see</u> <u>also</u> <u>Pia v. Supernova Media, Inc.</u>, 275 F.R.D. 559, 561–62 (D. Utah 2011) (party failed to establish "good cause" for issuance of protective order to restrict dissemination of transcripts and tapes of his deposition testimony with inadequate showing of harm); <u>Morrow v. City of Tenaha Deputy City Marshal Barry Washington, et al.</u>, 2010 U.S. Dist. LEXIS 106541, at *10-*11 (E.D. Tex. Oct. 5, 2010) (same; court refused to seal unfiled deposition transcripts and video of law enforcement officers where "the defendants are public officials and the issues in the case are matters of public concern"). Defendants have not met the Rule 26(c) standard because they have not presented any evidence or specific, concrete examples of harassment that would result if the videos are disclosed. <u>See</u> <u>Hawley</u>,

15

131 F.R.D. at 584 ("[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test").

Defendant Trump has been in the public eye for decades, and he was featured on reality television for 14 years before his most recent presidential campaign.  See Dkt. # 233-1, Media Mot., Ex. A at 1.  It can hardly be disputed that he is accustomed to appearing on television and responding to media coverage, and he has used his platform as a presidential candidate and prominent media figure to comment on this action.  Id. at Exs. B-E.  Under these circumstances, public disclosure of his deposition videos cannot cause him any legally cognizable harm.  See Estate of Rosenbaum v. New York City, 21 Med. L. Rptr. 1987; 1993 U.S. Dist. LEXIS 15908, at *7 (E.D.N.Y. 1993) (allowing news media access to depositions of city officials in high-profile case where the deponents were "experienced in dealing with the media" and "these parties have themselves already spoken out … on a number of occasions to members of the press"); Constand v. Cosby, 112 F. Supp. 3d 308, 315-16 (E.D. Pa. 2015) (allowing disclosure of deposition materials under Rule 26 where celebrity defendant's experience dealing with the media and responding to the allegations at issue in the case created a "diminished privacy interest").

Defendant Trump's discussion of the case in the ongoing presidential campaign reflects public debate and distinguishes this situation from cases such as Poindexter, United States v. McDougal, 103 F.3d 651 (8th Cir. 1996) and Jones v. Clinton, 12 F. Supp. 2d 931 (E.D. Ark. 1998).  See Trump Mot. at 3.  These particular access rulings did not arise in the context of an ongoing presidential campaign, let alone in an election campaign that has made the allegations in the litigation itself a campaign issue.  The earlier cases involved depositions of current and former presidents; consequently, the courts were motivated by their unique "obligations under the Constitution to keep intrusions on the presidency to a minimum."  Poindexter, 732 F. Supp. at 173.  See also McDougal, 103 F.3d at 659 (recognizing an interest in "proscribing public access to recordings of testimony

16

given by a <u>sitting president</u>") (emphasis added); <u>Clinton</u>, 12 F. Supp. 2d at 938 (same).[9]  The same cannot be said for a candidate running for the nation's highest office, particularly where he has made the litigation an issue in the campaign.

In addition, the decisions from the Eighth Circuit and the District Court for the District of Columbia did not apply the Ninth Circuit standard for restricting public access to court records and un-filed litigation materials, which requires consideration of "whether a party benefitting from the order of confidentiality is a public entity or official," and "whether the case involves issues important to the public," which weigh in favor of public access.  <u>In re Roman Catholic Archbishop of Portland in Oregon</u>, 661 F.3d 417, 424 n.5 (9th Cir. 2011).  <u>See</u> Section VI, <u>infra</u>.

The other cases cited by Defendants also are readily distinguishable on this basis.  For example, in <u>Paisley Park Enterprises, Inc. v. Uptown Prods.</u>, 54 F. Supp. 2d 347, 348 (S.D.N.Y. 1999), the court limited the dissemination of the deposition of the late musician Prince in an intellectual property action, determining that the defendants' potential dissemination of the video was motivated by their desire to "generate notoriety for themselves and their business ventures," and "would undermine plaintiffs' own commercial interests."  <u>Id.</u> at 348.[10]  In so ruling, the court distinguished cases like this one:

> Any number of civil cases involve characteristics that take them out of the category of purely private matters.  Certainly those in which the government itself is a party are a ready example.  Moreover, some cases involve matters affecting public health, safety or welfare which might make it inappropriate to

---

[9] The presidents in <u>Poindexter</u> and <u>McDougal</u> were testifying as third-party witnesses in criminal proceedings, which further diminished the public interest in accessing their deposition videos.  <u>See Poindexter</u>, 732 F. Supp. at 171; <u>McDougal</u>, 103 F.3d at 653.  And in <u>Clinton</u>, the court considered the "salacious nature of much of the discovery," a factor that is not present here.  <u>Clinton</u>, 12 F. Supp. 2d at 935-46.

[10] As discussed in detail in the Media Motion, no commercial basis justifies restraining the dissemination of the Trump Depositions because extensive, detailed information about Trump University's business already has been disclosed, and Defendants have not identified or substantiated any specific, cognizable harm from additional disclosures.  <u>See</u> Dkt. # 233-1, Media Mot., Memorandum at 9-12.

17

regard them as purely private even where the litigants are not 'public' in any sense.

Id. at 349 n. 4.  In such cases, "the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open inspection."  Flaherty, 209 F.R.D. at 299 (distinguishing Paisley, 54 F. Supp. 2d at 348).[11]

## VI.   A UNIQUE AND OVERRIDING PUBLIC INTEREST SUPPORTS ALLOWING DISCLOSURE OF THE TRUMP DEPOSITION VIDEOS.

The public's "interest in access to court proceedings in general may be asserted more forcefully when the litigation involves matters of significant public concern."  In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig., 101 F.R.D. 34, 38 (C.D. Cal. 1984).  In such instances, the proponents of secrecy must meet an even stricter burden to overcome the more substantial public interest. Id. at 39 (recognizing strong public interest in access to records of civil antitrust action alleging conspiracy to raise gasoline prices).  The public interest also must be

---

[11] The other authorities relied on by Defendants also are inapposite.  See Centeno-Bernuy v. Becker Farms, 219 F.R.D. 59, 61 (W.D.N.Y. 2003) (court issued protective order based on concrete evidence showing "a real threat of intimidation and harassment against plaintiffs, which would only be exacerbated should plaintiffs be required to disclose their residences and places of employment"); Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 894 (6th Cir. 1991) (court properly denied leave to conduct deposition of third party witness who had no knowledge of the action and whose deposition served no purpose); Lopez v. CSX Transp., Inc., 2015 WL 3756343, at *7 (W.D. Pa. June 16, 2015) (granting protective order in personal injury action that "does not implicate significant public policy concerns" and where "the Defendant in this case is a private corporation, and not a public entity or official"); Application of ABC, Inc., 537 F. Supp. 1168, 1172 (D.D.C. 1982) (denying access to video deposition of actress Jodie Foster where she was "not a defendant but a witness who was unwittingly ensnared in a third party's alleged attempt to assassinate an American President.  Under such circumstances, this Court is particularly concerned with her right to privacy and with her personal safety" in light of evidence of the criminal defendant's death threat against her).

In Apple Ipod Itunes Antitrust Litig., 75 F. Supp. 3d 1271 (N.D. Cal. 2014), the court held that the media could not directly access videos used at trial but not admitted into evidence.  Id. at 1276.  However, the court recognized that the "ruling on this motion might be different" under other circumstances, and it did not address the compelling reasons test for filed court records or the Rule 26(c) good cause standard for a protective order.  Id.  The case also involved privacy issues not present here, because the video depicted former Apple CEO Steve Jobs being deposed while he "was on medical leave … suffering from cancer."  Id. at 1273.

CONSOLIDATED REPLY & OPPOSITION RE:
MOTIONS TO AMEND PROTECTIVE ORDER
DWT 29890447v1 0026517-000166

considered under the Rule 26(c) "good cause" analysis:  when a party or intervenor challenges the confidentiality of information under a protective order, "if the court concludes that … harm will result from disclosure of the discovery documents, then it must proceed to balance the public and private interests to decide whether [maintaining] a protective order is necessary." Roman Catholic Archbishop, 661 F.3d at 424 (quotation omitted).  This includes consideration of "whether a party benefitting from the order of confidentiality is a public entity or official," and "whether the case involves issues important to the public." Id. at 424 n.5.

Here, as explained in the Media Motion, there is an overriding public interest in this action.  The allegations in the case (and subject matter of the Trump Depositions) concern the business practices of Trump University, its marketing to the public, and its potential effect on the real estate market; Defendant Trump's business record, including Trump University, has been a cornerstone of his presidential campaign; and this litigation itself has become a prominent election issue. See also Dkt. # 233-1, Media Mot., Memorandum at 15-21.  All of these facts weigh strongly in favor of permitting public access. Id. See also Humboldt Baykeeper v. Union Pac. R.R., 244 F.R.D. 560, 567 (N.D. Cal. 2007) (public interest in litigation favored allowing disclosure of un-filed discovery materials).

Defendants ignore the unique public interest here.  They portray it as one might a garden-variety contract case, involving purely private figures, arguing that allowing video depositions to be disclosed in this case "would undermine the function of discovery by deterring others from appearing for videotaped depositions." Trump Mot. at 6.  But the Ninth Circuit has made clear that access decisions "must be assessed on a case-by-case basis." Schlette, 842 F.2d at 1583.  The current situation is hardly analogous to other lawsuits:  it involves disclosure of video depositions of a presumptive major party nominee for the United States presidency, who has made the litigation a prominent electoral issue by repeatedly speaking out

CONSOLIDATED REPLY & OPPOSITION RE:
MOTIONS TO AMEND PROTECTIVE ORDER
DWT 29890447v1 0026517-000166

about it on the campaign trail and in the news media.  Defendants' conjectural

assertion that a ruling here would deter witnesses in other lawsuits is baseless.

## VII.  CONCLUSION

For all the reasons set forth above, the Media Intervenors respectfully request

that their request for limited purpose intervention be granted, Defendants' Motion be

denied, and that the Court permit the public filing and dissemination of the Trump

Deposition videos.

DATED: June 22, 2016                    DAVIS  WRIGHT  TREMAINE  LLP
                                        KELLI L. SAGER
                                        ALONZO WICKERS IV
                                        DAN LAIDMAN
                                        DIANA PALACIOS


                                        By:_____/s/ Kelli L. Sager_____
                                                    Kelli L. Sager

                                        Attorneys for Media Intervenors
                                        CABLE NEWS NETWORK, INC.; CBS
                                        BROADCASTING INC.; CBS
                                        INTERACTIVE INC.; TRIBUNE
                                        PUBLISHING COMPANY;
                                        NBCUNIVERSAL MEDIA, LLC; ABC,
                                        INC.; THE NEW YORK TIMES
                                        COMPANY; WP COMPANY LLC D/B/A
                                        THE WASHINGTON POST; and FOX
                                        NEWS NETWORK, LLC