

**FILED**

Mar 01 2018

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY      s/ AKR                    DEPUTY

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 01 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| SONNY LOW; et al., | No. 17-55635 |
| Plaintiffs - Appellees, | D.C. Nos. 3:10-cv-00940-GPC-WVG, 3:13-cv-02519-GPC-WVG |
| SHERRI B. SIMPSON, | U.S. District Court for Southern California, San Diego |
| Objector - Appellant, | **MANDATE** |
| v. | |
| TRUMP UNIVERSITY, LLC, a New York limited liability company, AKA Trump Entrepreneur Initiative and DONALD J. TRUMP, | |
| Defendants - Appellees. | |

The judgment of this Court, entered February 06, 2018, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Rhonda Roberts
Deputy Clerk
Ninth Circuit Rule 27-7

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SONNY LOW; J. R. EVERETT; JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated; ART COHEN, Individually and on Behalf of All Others Similarly Situated, <br>         *Plaintiffs-Appellees*, | No. 17-55635 <br><br> D.C. Nos. <br> 3:10-cv-00940- <br> GPC-WVG <br> 3:13-cv-02519- <br> GPC-WVG |
| SHERRI B. SIMPSON, <br>         *Objector-Appellant,* | OPINION |
| v. | |
| TRUMP UNIVERSITY, LLC, AKA Trump Entrepreneur Initiative, a New York limited liability company; DONALD J. TRUMP, <br>         *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted November 15, 2017
Pasadena, California

Filed February 6, 2018

2                 SIMPSON V. TRUMP UNIVERSITY

Before:  Jacqueline H. Nguyen and Andrew D. Hurwitz, Circuit Judges, and Steven Paul Logan,* District Judge.

Opinion by Judge Nguyen

## SUMMARY**

### Objector / Class Settlement

The panel affirmed the district court's order approving a class settlement between students and Trump University over Sherri Simpson's objections, and rejecting Simpson's request to opt out.

A lone objector, Sherri Simpson, sought to opt out of the class and bring her claims in a separate lawsuit, which would derail the settlement.

The panel held that Simpson had Article III standing because she claimed that the settlement's approval improperly denied her a second, settlement-stage opportunity to remove herself from the class, and therefore, Simpson had an interest in the settlement that created a case or controversy.

The panel rejected Simpson's argument that the class notice language provided a second opt-out right at the

---

* The Honorable Steven Paul Logan, United States District Judge for the District of Arizona, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

settlement stage, in addition to one at the class certification stage. The panel also rejected Simpson's argument that even if the class notice did not give her a second opt-out right at the settlement stage, due process required such an opportunity. The panel held that due process required only that class members be given a single opportunity to opt out of a Fed. R. Civ. P. 23(b)(3) class.

The panel held that the district court did not abuse its discretion in approving the settlement.

## COUNSEL

Deepak Gupta (argued) and Jonathan E. Taylor, Gupta Wessler PLLC, Washington, D.C.; Gary B. Friedman, New York, New York; Edward S. Zusman and Kevin K. Eng, Markun Zusman Freniere & Compton LLP, San Francisco, California; for Objector-Appellant.

Steven Francis Hubacheck (argued), Daniel J. Pfefferbaum, Rachel L. Jensen, Jason A. Forge, and Patrick J. Coughlin, Robbins Geller Rudman & Dowd LLP, San Diego, California; Amber L. Eck, Haeggquist & Eck LLP, San Diego, California; for Plaintiffs-Appellees.

Daniel M. Petrocelli and David L. Kirman, O'Melveny & Myers LLP, Los Angeles, California, for Defendants-Appellees.

Gregory A. Beck, Washington, D.C.; Christopher L. Peterson, S.J. Quinney College of Law, University of Utah, Salt Lake City, Utah; for Amici Curiae Plain-Language Notice Experts, The National Association of Consumer Advocates, and Professors of Consumer Law.

Elizabeth Rogers Brannen and Peter K. Stris, Stris & Maher LLP, Los Angeles, California; Jay Tidmarsh and Judge James J. Clynes Jr., Professor of Law, Notre Dame Law School, Notre Dame, Indiana; for Amici Curiae Civil Procedure Professors.

Eric T. Schneiderman, Attorney General; Steven C. Wu, Deputy Solicitor General of Counsel; Barbara D. Underwood, Solicitor General; Office of the Attorney General, New York, New York; for Amicus Curiae State of New York.

John T. Jasnoch, Scott & Scott LLP, San Diego, California; for Amici Curiae Claims Administrators.

## OPINION

NGUYEN, Circuit Judge:

Trump University, now defunct, was a for-profit entity that purported to teach Donald J. Trump's "secrets of success" in the real estate industry. During the 2016 presidential election, Trump University and Trump were defendants in three lawsuits alleging fraud and violations of various state and federal laws: two class actions in the Southern District of California, and a suit by the New York Attorney General in state court. Each suit alleged that Trump University used false advertising to lure prospective students to free investor workshops at which they were sold expensive three-day educational seminars. At these seminars, instead of receiving the promised training, attendees were aggressively encouraged to invest tens of thousands of dollars more in a so-called mentorship program

that included resources, real estate guidance, and a host of other benefits, none of which ever materialized.

In the California cases, the district court certified two classes of over eight thousand disappointed "students," and scheduled the cases for trial in late November 2016. On November 8, 2016, Trump was elected President of the United States. Within weeks, the parties reached a global settlement on terms highly favorable to class members. Plaintiffs would receive between 80 to 90 percent of what they paid for Trump University programs, totaling $21 million. The defendants agreed to pay an additional $4 million in the case brought by the Attorney General of New York.

This appeal involves a lone objector, Sherri Simpson, who seeks to opt out of the class and bring her claims in a separate lawsuit, which would derail the settlement. Simpson does not dispute that she received, at the class certification stage, a court-approved notice of her right to exclude herself from the class and chose not to do so by the deadline. She argues, however, that the class notice promised her a second opportunity to opt out at the settlement stage, or alternatively, that due process requires this second chance. Neither argument is correct. We affirm.

## I. Background

### A. The Lawsuits

Trump University was "a private, for-profit entity purporting to teach Trump's 'insider success secrets'" in the real estate industry. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 258 (9th Cir. 2013). In 2010, Sherri Simpson was wooed to a free "investor workshop" in Florida, which Trump University advertised as a chance to "[l]earn from

6    SIMPSON V. TRUMP UNIVERSITY

Donald Trump's hand-picked instructor a systematic method for investing in real estate that anyone can use effectively." At this event, attendees were encouraged to purchase a more comprehensive three-day seminar, called the Apprenticeship Program, at the cost of $1,495.

Simpson succumbed to the pitch and attended the seminar. Those attending were aggressively pressed to invest further in their Trump University "education" by enrolling in the Gold Elite mentorship program. The Gold Elite program promised access to "financing, counseling, information databases, and numerous other resources" of Trump University, including a year-long match with a designated "mentor," all meant to help enrollees launch successful careers in real estate investing. Simpson signed up for a shared membership, at the cost of almost $17,500.

Simpson believed that Trump University failed to provide her with the promised personal mentoring and real estate expertise. Her assigned mentor quickly disappeared and never returned her calls and emails. Simpson was not alone in her negative experience, as "students" throughout the country demanded refunds, complained to government agencies, and eventually sued Trump University and its founder for allegedly deceptive business practices. *See Makaeff*, 715 F.3d at 260.

Ultimately, two class actions were filed: *Low v. Trump University, LLC*, No. 3:10-cv-00940 (S.D. Cal. filed Apr. 30, 2010), which alleged violations of California, Florida, and New York law by the organization and its founder, and *Cohen v. Donald J. Trump*, No. 3:13-cv-02519 (S.D. Cal. filed Oct. 18, 2013), which alleged violations of federal law

by Trump as an individual.[1]  Plaintiffs in both cases alleged
that Trump University made material misrepresentations in
its advertising and promotions, including claims that Trump
University was an accredited university; that students would
be taught by real estate experts who were handpicked by
Trump; and that students would receive a year of support and
mentoring.  The Attorney General of New York also sued
Trump, Trump University, and related corporate entities,
alleging fraud and other unlawful business practices under
New York law.  *See People ex rel. Schneiderman v. The
Trump Entrepreneur Initiative, LLC*, Index No.
451463/2013 (N.Y. Sup. Ct. Aug. 24, 2013).

In *Low*, the district court certified a class of plaintiffs
who purchased Trump University programs in California,
Florida, and New York, but later decertified the class as to
damages.  A nationwide class was certified in *Cohen*.  In
September 2015, the court approved a joint class
certification notice to class members in both cases.

**B.  Class Certification Notice**

Both of the *Low* and *Cohen* classes were certified under
Federal Rule of Civil Procedure 23(b)(3), which requires the
court to provide class members "the best notice that is
practicable under the circumstances," including, in part, a
"clear[] and concise[] state[ment] in plain, easily understood
language . . . that the court will exclude from the class any
member who requests exclusion."   Fed. R. Civ. P.
23(c)(2)(B)(v).  The district court approved a joint two-page
mailed notice for the two classes.  The mailed notice directed

---

[1] The *Low* case was initially captioned as *Makaeff v. Trump
University*.  Sonny Low became the lead plaintiff after the court
permitted Tarla Makaeff to withdraw as a class representative.

recipients to a website, which contained a long-form notice of seven pages.  The notices conformed, almost verbatim, to model class action notices developed by the Federal Judicial Center.  *See* Federal Judicial Center, *Illustrative Forms of Class Action Notices: Employment Discrimination Notices* (2002), https://www.fjc.gov/sites/default/files/2016/ClaAct 11.pdf.

Both notices explained the basis of the lawsuit and presented prospective class members with a binary choice: remain in the class, or opt out.  The long-form notice explained these two options in more detail.  It provided that class members could "Do Nothing," which would result in inclusion in the lawsuit and potentially sharing in "money or benefits that may come from a trial or settlement."  Class members were expressly advised that as a consequence of such inaction, they would "give up any rights to sue Trump University and Trump separately about the same legal claims."  Alternatively, class members could "Ask To Be Excluded," which would mean getting out of the lawsuit and keeping the right to sue separately, but "[g]et[ting] no money from any recovery" in the class action.  The long-form notice later emphasized that the recipient must decide between the two options—staying in the class or asking to be excluded— and reiterated the consequences of each course of action.

Ten people opted out of the class by the deadline, which was November 16, 2015.[2]  Simpson, who received the notice and was frequently in contact with class counsel throughout 2015 and 2016, chose not to opt out.

---

[2] The court later allowed three additional class members to opt out after the court-imposed deadline but before the cases settled.

## C.  The Settlement

On December 19, 2016, the parties reached a settlement. No defendant admitted wrongdoing, but a successor entity of Trump University agreed to pay $21 million to class members.  As part of the settlement, the defendants also agreed to pay the New York Attorney General $4 million.  In part due to class counsel's admirable agreement to serve pro bono, the district court estimated that the settlement would provide class members with recovery of 80 to 90 percent of the monies they paid to Trump University.  The settlement expressly prohibited any late opt outs.

On January 4, 2017, settlement administrators mailed a court-approved settlement notice to the 8,253 class members, including Simpson.  The settlement notice explained the four options available to class members at the settlement stage: 1) submit a claim by March 6, 2017; 2) object to the settlement by March 6, 2017; 3) ask to speak about the fairness of the settlement in court; or 4) do nothing. The first three options were not mutually exclusive, in that a class member could both submit a claim and object to the settlement's terms.  Class members who did nothing would receive no payment and give up all rights to the settlement.

Simpson submitted her claim on February 1, 2017, over a month before the claims deadline.  As part of the claims submission process, she affirmed, by typing "I AFFIRM" on an online form, the following statement: "I understand that I am bound by the terms of any judgment in these actions and may not bring a separate lawsuit for these claims."  On March 6, 2017, now represented by counsel, Simpson filed an objection to the settlement, arguing that she had a due process right to opt out of the settlement and alternatively requesting that the district court allow her to opt out pursuant to its discretionary authority under Rule 23(e)(4).

On March 29, 2017, in a supplemental declaration in response to class counsel's opposition to her objection, Simpson argued for the first time that the long-form class action notice gave her the impression that she would have a second opportunity to opt out of the class if the case settled. Simpson did not attest to reading the long-form notice in full when she received it, only stating that she "believe[d]" she did since it "would have been typical" of her to do so. Simpson did not claim that she would have opted out at the class certification stage absent this supposed promise of a second opt-out opportunity.  However, she noted that she "would at the very least have investigated all [her] options and contacted a lawyer familiar with class action practice."

The district court approved the settlement over Simpson's objection and refused to allow her to opt out. This timely appeal followed.

## II.  Standard of Review

We review the sufficiency of the class notice de novo. *Silber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994); *see also DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005) ("The underlying question of whether a particular class action notice program satisfies the requirements of [Rule] 23 and the Due Process Clause is a legal determination we review *de novo*.").

## III.  Discussion

### A.  Standing

We must first address the "threshold question of whether [Simpson] has standing (and the court has jurisdiction)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). "Standing under Article III of the Constitution requires a

showing that: (1) the plaintiff has suffered an injury-in-fact, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) the injury is likely to be redressed by a favorable decision." *Loritz v. U.S. Ct. of Appeals for the Ninth Cir.*, 382 F.3d 990, 991–92 (9th Cir. 2004) (citing *Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 863 (9th Cir. 2003)).

Plaintiffs contend that Simpson lacks standing because she has not alleged an injury-in-fact traceable to the supposedly defective opt-out notice. Because Simpson decided to remain in the class after receiving the class action notice, Plaintiffs argue that she failed to show reliance on any purported inadequacy in the notice's description of her opt-out rights. This misconstrues Simpson's argument. She does not argue that the opt-out notice deprived her of the *first* opportunity to opt out. Rather, she claims that the settlement's approval improperly denied her a *second,* settlement-stage opportunity to remove herself from the class. Simpson therefore "has an interest in the settlement that creates a 'case or controversy' sufficient to satisfy the constitutional requirements of injury, causation, and redressability." *See Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)).[3] Because Simpson has standing, we consider the merits of her arguments.

---

[3] The district court concluded that Simpson lacked standing because any purported injury she suffered is not redressable, a ground not relied upon by Plaintiffs on appeal. Central to the district court's analysis was its view that Simpson had waived her right to bring a separate lawsuit when she submitted a settlement claim. We disagree. First, the injury she alleges—the deprivation of another opt-out chance—is redressable by a favorable decision in this case. *See Loritz*, 382 F.3d at 992. Second, Simpson waived her right to a separate suit only if she is bound by the

### B. The Class Notice Does Not Allow a Second Opt-Out Opportunity

Simpson's main argument is that the class notice promised a second opt-out right at the settlement stage, in addition to one at the class certification stage. She points to a single sentence in the long-form notice, which states that if "the Plaintiffs obtain money or benefits, either as a result of the trial or a settlement, [class members] will be notified about how to obtain a share (or how to ask to be excluded from any settlement)."  Simpson reads the ten-word parenthetical to promise her a second opt-out right at the settlement stage.

Rule 23(b)(3) entitles "class members [to] the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  "The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness."  *In re Bank of Am. Corp.*, 772 F.3d 125, 132 (2d Cir. 2014).

Here, reading the notice as a whole and in context, we conclude that it promised only one opportunity to opt out. The mailed notice stated repeatedly that class members' "legal rights are affected" and that they had "a choice to make now" about their class membership.  Under the bolded header "What Are Your Options?", the notice explained:

> If you wish to remain a member of one or
> both Classes and possibly get money in the
> cases, you do not need to do anything now.  If
> you remain in either or both Classes, you will

settlement and, of course, if she prevails here, the settlement is necessarily undone.

> be legally bound by all orders and judgments the Court makes.  If you do not want to be a part of either or both lawsuits, you must take steps to exclude yourself (sometimes called "opting-out").  If you exclude yourself, you cannot receive money from the lawsuit—if any is won—but you will not be bound by any Court orders or judgments.  If you want to start or continue your own lawsuit against Trump University and Trump regarding their Live Events, you must exclude yourself.

The next paragraph provided instructions on how to send an "Exclusion Request" form, with a deadline of November 16, 2015.

The long-form notice provided additional information about the litigation. The first page, headed with the bolded language "If you purchased a 'Trump University' program, two class action lawsuits may affect your rights," contained this conspicuous advisory:

| YOUR LEGAL RIGHTS AND OPTIONS IN THESE LAWSUITS | |
|---|---|
| **DO NOTHING** | **Stay in these lawsuits. Await the outcomes. Give up certain rights for the possibility of receiving money at a later time.**<br><br>By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or settlement. But, you give up any rights to sue Trump University and Trump separately about the same legal claims in these lawsuits. |
| **ASK TO BE EXCLUDED** | **Get out of the lawsuits. Get no money from any recovery. Keep rights.**<br><br>If you ask to be excluded from these lawsuits and money or benefits are later awarded, you will not share in those monies or benefits. But, you keep any rights to sue Trump University and Trump separately about the same legal claims in these lawsuits. |

Immediately underneath, the notice warned recipients that "[t]o ask to be excluded, you must act before November 16, 2015."

The remaining pages described, in a question-and-answer format, prospective class members' rights. Specifically, under the header "Your Rights and Options," Question 13 stated the following:

---

**YOUR RIGHTS AND OPTIONS**

You have to decide whether to stay in the Classes or ask to be excluded before the trial, and you have to decide this now.

**13. What happens if I do nothing?**

You don't have to do anything now if you want to keep the possibility of getting money or benefits from these lawsuits. By doing nothing, you are staying in one or both of the Classes. If you stay in, and the Plaintiffs obtain money or benefits, either as a result of the trial or a settlement, you will be notified about how to obtain a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing now, regardless of whether the Plaintiffs win or lose the trial, you will not be able to sue (by way of separate lawsuit) Trump University and Trump about the same legal claims that are the subject of these lawsuits. You will also be legally bound by all of the Orders and Judgments the Court makes in these class actions.

---

On the same page, the notice instructed class members how to ask to be excluded, and again noted that they must request exclusion by November 16, 2015: "To ask to be excluded, you must send an "Exclusion Request" . . . .  You must mail your Exclusion Request postmarked by November 16, 2015".

Read as a whole, the mailed and long-form notices informed class members that they faced a binary choice—to stay in the lawsuit, or to opt out—and that they needed to make that choice by November 16, 2015.  The most reasonable reading of the notice suggests that class members

had a single opt-out opportunity that expired if not exercised by the deadline. Indeed, the header immediately preceding the language Simpson relies upon advised class members that they "have to decide whether to stay in the Classes or ask to be excluded before the trial, and [they] *have to decide this now*." (Emphasis added). This pervasive language in both class notices supports the district court's conclusion that class members were "clearly apprised . . . that if they wished to bring a separate lawsuit against Defendants, they had to elect to opt out immediately."

Simpson argues that Question 13's assurance that class members would be notified of "how to ask to be excluded from any settlement" was intended to give class members a second opt-out opportunity in the case of settlement, but not trial. Looking at the cited sentence in isolation, her reading is not wholly unreasonable. But Simpson's argument depends on the success of two additional inferences. First, "ask to be excluded" must mean the *right* to exclusion. Second, "exclusion" must entitle her to exclusion from class membership, not just from the settlement's benefits.

The first inference is more plausible than the second. Though, in plain language, an opportunity to "ask" does not implicitly contain a corresponding right to *receive* what one asks for, in the context of the rest of the notice, "ask to be excluded" could connote the right to exclusion. But the second required inference—that exclusion from the settlement means exclusion from the class and resurrection of an individual right to litigate—is not at all plausible. The notice contains no other language supporting Simpson's theory that exclusion from the settlement would resurrect a class member's right to litigate separately. On the contrary, the notice clearly states that by failing to act by November 16, 2015, class members would "give up *any rights* to sue

Trump University and Trump separately about the same legal claims." (Emphasis added)**.**

Plaintiffs urge reading the phrase "how to ask to be excluded from any settlement" to mean the opportunity to refuse receipt of the settlement's benefits. Although the language could have been clearer, Plaintiffs' interpretation is more consistent with the notice as a whole. It may be unusual to refuse money awarded as part of a class action settlement, but at least one class member did so in this case. Simpson challenges this reading as illogical because class members had to request a share of the settlement by submitting a claims form, and could therefore refuse benefits through mere inaction. But at the time the class notice was mailed, the logistics of a possible settlement distribution were unknown, and a direct distribution scenario without the need of claims forms remained feasible.

The correct inquiry here is what an average class member would have understood the notice to guarantee, *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005), and the actions of the class members in this case bolster our conclusion that a reasonable reading of the notice precludes Simpson's interpretation. Among over eight thousand class members, Simpson is the only one advancing this understanding of the notice. Indeed, Simpson did not even raise this argument until the final settlement approval hearing.[4] The absence of more voices to corroborate Simpson's reading supports our conclusion that no reasonable class member would have understood the

---

[4] Plaintiffs repeatedly characterize Simpson's argument as "attorney-manufactured." The timeline and evolution of her objection support that assertion, but our court would have little work to do without creative arguments "manufactured" by zealous attorney advocates.

notice to guarantee a second opt-out opportunity at the settlement stage.

We agree with Simpson that the language in Question 13 could have been clearer as to the meaning of the phrase "ask to be excluded from any settlement."  But even if "[t]he notice in this case was not perfect," *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015), we conclude it was "of such nature as reasonably to convey the required information" regarding the window for class members to opt out of or remain in the class, *see Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The standard is not whether the notice could be written to avoid any "possibility of conceivable injury" or misunderstanding, but is one of reasonableness. *Id.* at 315 (citation omitted).  We hold that the class notice language did not provide a second, settlement-stage opportunity to opt-out of the class.[5]

## C.  Due Process Does Not Compel a Second Opt-Out Opportunity

Simpson next argues that even if the class notice did not give her a second opt-out right at the settlement stage, due process requires such an opportunity.  Our precedent squarely forecloses this argument.  In *Officers for Justice v.*

---

[5] Simpson cites several cases in which class members were allowed to opt out at the settlement stage after receiving initial class notices that included Question 13's exact parenthetical language.  *See, e.g.*, *Hoffman v. Blattner Energy, Inc.*, No. 14-cv-2195, ECF No. 94-1 at 5 (C.D. Cal. Sept. 1, 2016) *and id.* ECF No. 109 at 5-6.  But she does not show that the later opt-out period arose from a guarantee in the initial class notice, as opposed to the parties' negotiation of the settlement's terms.  *See Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 634 (9th Cir. 1982).

*Civil Service Commission of San Francisco*, Jesse Byrd, a named plaintiff and class representative, objected to several terms of a Rule 23(b) class action settlement.  688 F.2d 615, 622–23 (9th Cir. 1982).  Byrd received a class notice similar to the one here, which advised potential class members that they would be "included in the plaintiff class," unless they requested exclusion in writing by the deadline, extinguishing their right to "bring any further action against" the defendants.  *Id.* at 634.  Byrd did not opt out of the class, but argued that due process guaranteed him a second opt-out opportunity at the settlement stage that would revive his ability to litigate separately.  *Id.* at 634–35.

We rejected this argument and held that Byrd, having failed to exclude himself at the class certification stage, was not entitled to exercise that option at the settlement stage.  *Id.* at 635.  We recognized that while some class action settlements allow a second opt-out opportunity, "they are unusual and probably result from the bargaining strength of the class negotiators[]" rather than any due process concerns.  *Id.*  As we explained:

> [There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out.  We think it does not.  Byrd's rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal.  Moreover, to hold that due process requires a second opportunity to opt out after the terms of the settlement have been

disclosed to the class would impede the settlement process so favored in the law.

*Id.*

Simpson is incorrect that intervening Supreme Court precedent has implicitly overruled *Officers for Justice*. To the contrary, the cases she cites simply support the case's holding that due process requires that class members be given a single opportunity to opt out of a Rule 23(b)(3) class. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[D]ue process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court . . . [T]he procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) (citing *Shutts*, 472 U.S. at 812) ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process."). We are bound by *Officers for Justice* unless it is "clearly irreconcilable" with an intervening Supreme Court decision. *See Rodriguez v. AT & T Mobility Servs., LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). "This is a high standard" that has not been met here. *See id.* (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)).

## D. The District Court Did Not Abuse Its Discretion in Approving the Settlement

Finally, Simpson argues that the district court abused its discretion in approving the settlement. We may reverse only if the district court's decision was "illogical, implausible, or

without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

Here, we easily conclude that the district court properly exercised its discretion. The district court considered the "risks, expense, complexity, and likely duration of further litigation" and had ample reasons to approve the settlement despite its prohibition on additional opt-outs. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Both classes of plaintiffs would have faced significant hurdles had they proceeded to trial, including the difficulty of prevailing in a jury trial against either the President Elect (if the trial had proceeded as scheduled) or the sitting President (if the trial had been postponed, as Defendants requested). The *Low* class would have had to litigate thousands of individual damage claims, while the *Cohen* class faced possible decertification. Weighed against this was the fairness of the settlement as a whole, which the court estimated would provide class members with almost a full recovery. Under these challenging circumstances, the district court acted well within its discretion by approving the settlement.[6]

**AFFIRMED.**

---

[6] Simpson also urges us to clarify the "outer boundaries of a district court's discretion under Rule 23(e)(4)" and impose a per se rule mandating a settlement-stage opt-out opportunity in any case where members of a previously-certified class later learn of a settlement's actual value. We lack the authority to rewrite the Federal Rules to accommodate Simpson's policy concerns. Moreover, the Rule's language anticipates that parties can reach a settlement agreement that does not permit an additional opt-out opportunity. *See* Fed. R. Civ. P. 23(e)(4). The court's discretionary authority to reject a settlement in such cases provides the protection Simpson seeks.